1  Robert L. Herbst (NYSBN 1333194)
   rherbst@herbstlawny.com
2  HERBST LAW PLLC
   420 Lexington Avenue, Suite 300
3  New York, New York 10170
   Tel: 914-450-8163 / Fax: 888-482-4676
4
   Mark Kleiman (SBN 115919)
5  mark@krlaw.us
   KLEIMAN / RAJARAM
6  12121 Wilshire Blvd., Ste. 810
   Los Angeles, CA  90025
7  Tel: 310-392-5455 / Fax: 310-306-8491

8  Attorneys for Defendant
   WESPAC FOUNDATION
9

10              **UNITED STATES DISTRICT COURT**
11              **CENTRAL DISTRICT OF CALIFORNIA**

12

13  STANDWITHUS CENTER FOR              CASE NO: 2:24-cv-06253-SVW-PVCx
    LEGAL JUSTICE,
14                                      Honorable Stephen V. Wilson
               Plaintiff,               Courtroom 10A
15
    v.                                  **NOTICE OF MOTION AND
16                                      MEMORANDUM OF POI NTS AND
                                        AUTHORITIES IN SUPPORT OF
17                                      DEFENDANT WESPAC
    CODEPINK, PALESTINIAN               FOUNDATION'S MOTION TO
18  YOUTH MOVEMENT, and                 DISMISS COMPLAINT**
    WESPAC FOUNDATION,
19                                      [Filed concurrently with [Proposed] Order]

20             Defendants.              **Date:    December 9, 2024
                                        Time:    1:30 p.m.
21                                      Place:   Courtroom 10A**

22                                      **350 W. 1st Street
                                        Los Angeles, California 90012**
23
                                        Complaint Filed: July 24, 2024
24                                      Trial Date: Not Set

25

26

27

28

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

      PLEASE TAKE NOTICE THAT on December 9, 2024, at 1:30 p.m. or as soon thereafter as this matter may be heard in Courtroom 10A of the above-entitled Court located at First Street Courthouse, 350 W. 1st Street, Courtroom 10A, 10th Floor,  Los Angeles, CA 90012, Defendant WESPAC FOUNDATION, will and hereby does move the Court to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

      This motion is based upon this Notice of Motion, the attached Memorandum of Points & Authorities, [Proposed] Order, the files and records in the case, and any evidence or argument that may be presented at a hearing on this matter.

                  Respectfully submitted,

Dated: October 29, 2024          HERBST LAW PLLC


                  By:  /s/ Robert L. Herbst
                    Robert L. Herbst
                    rherbst@herbstlawny.com
                    420 Lexington Avenue, Suite 300
                    New York, New York 10170
                    Tel: 914-450-8163 Fax: 888-482-4676
                    Attorneys for Defendant
                    WESPAC FOUNDATION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant WESPAC Foundation ("WESPAC") submits this memorandum of points and authorities in support of its Motion to Dismiss the Complaint of StandWithUs Center for Legal Justice, pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Plaintiff alleges that a protest was held in response to an event regarding Israeli real estate that was presented at Adas Torah synagogue in Los Angeles.  According to Plaintiff, this protest turned confrontational.  Plaintiff seeks to place blame for the protest on WESPAC, the Palestinian Youth Movement ("PYM"), and CodePink.  *See generally* Complaint ¶¶ 1-8.

Putting aside whether Plaintiff accurately describes the events at issue, the Complaint should be dismissed against WESPAC due to Plaintiff's serial failure to plead that *anyone* acting on WESPAC's behalf did *anything* in relation to those events.  Specifically, while trying to lump WESPAC in with the other Defendants and offering conclusory statements about things all "Defendant Organizations" supposedly did, Plaintiff does not actually claim any WESPAC agent knew of the real estate event, went to the protest (or even was in California at the time), communicated with anyone who went to the protest, let alone urged anyone to protest, or said anything about the event or protest before, during or after it happened.

As a consequence, the Complaint fails for two independent reasons in relation to WESPAC.  First, Plaintiffs have failed entirely to plead plausible claims against WESPAC pursuant to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and their progeny.  Plaintiff's allegations against "Defendant Organizations" are entirely insufficient because not a single substantiating allegation is made in relation to WESPAC.  The only allegations specific to WESPAC are that it has acted as a fiscal sponsor to PYM.  Plaintiff does

1  offer the wild assertion that WESPAC's acting as a fiscal sponsor means it controls
2  – and is liable for – anything PYM allegedly does.  But that outlandish inference has
3  no basis in fact or law.

4      Second, there is no basis to exercise personal jurisdiction over WESPAC,
5  which, as Plaintiff concedes, is a New York entity that is not adequately alleged to
6  have done anything in California or to have engaged in conduct elsewhere directed
7  at California residents.  Thus, there is not even a colorable basis to contend that
8  general or specific personal jurisdiction exists here.

9      Put simply, Plaintiff has no legitimate basis to assert claims against WESPAC,
10  and those claims should be summarily dismissed, with prejudice.

11  **II.    PROCEDURAL BACKGROUND**

12      Plaintiff filed the Complaint on July 24, 2024.  On October 14 and 29, 2024
13  counsel for WESPAC and Plaintiff met and conferred pursuant to L.R. 7-3 regarding
14  the Complaint's deficiencies with respect to WESPAC, and WESPAC's anticipated
15  challenge to it.  Plaintiff refused to dismiss the Complaint against WESPAC.

16  **III.    RELEVANT FACTUAL ALLEGATIONS IN THE COMPLAINT**

17      The Complaint describes events outside a synagogue that, if they occurred as
18  described, were harrowing.  However, WESPAC had nothing to do with those events,
19  as underscored by the allegations in Plaintiff's Complaint – or, rather, by what the
20  Complaint does *not* allege.  Specifically, the Complaint does not allege that any
21  person acting on behalf of WESPAC engaged in any relevant, let alone actionable,
22  conduct.  The absence of such allegations, of course, is because WESPAC did
23  nothing in relation to the events at issue.

24      Of the Complaint's 230 paragraphs, precious few even mention WESPAC.
25  Those that do fall into two categories.  First, Plaintiff offers uncontroversial
26  statements that have nothing to do with the relevant events, including that WESPAC
27  is a nonprofit located in New York, has acted as fiscal sponsor to PYM and National
28

Students for Justice in Palestine (not even a party here), and has collected and disbursed funds as a fiscal sponsor.  Complaint ¶¶ 34, 35, 42, 44.  Plainly, none of those allegations state any claim against WESPAC, let alone in connection with alleged events at Adas Torah.

Second, Plaintiff asserts that, solely because WESPAC was a fiscal sponsor of PYM, "WESPAC is responsible for the promotion and funding that resulted in the violent riot that blocked the entrance to Adas Torah."  *See* Complaint ¶¶ 45-47.  This allegation is far too conclusory to state a claim, even ignoring that Plaintiff admits to not knowing if PYM members actually had anything to do with the episode at Adas Torah.  *See id.* ¶ 43 ("*Upon information and belief*, members of PYM were among those who blocked access to Adas Torah on June 23, 2024.") (emphasis added).

Plaintiff also offers a range of allegations against "Defendant Organizations," a group defined to include WESPAC.  Complaint ¶ 4.  Plaintiff claims that: (i) "more than two-hundred rioters, organized by Defendant Organizations, marched into the predominantly orthodox Jewish neighborhood of Pico-Robertson in Los Angeles's Westside and blocked access to Adas Torah"; (ii) "Upon learning of the Aliyah Event, Defendant Organizations called on their members to assemble outside Adas Torah"; and (iii) "organized by Defendant Organizations and others, more than two-hundred rioters (upon information and belief) descended to the streets surrounding Adas Torah."  Complaint ¶¶ 58, 79, 94.

Plaintiff does not offer a *single* allegation that substantiates any of these inflammatory assertions, to the extent that they truly are asserted against WESPAC. Indeed, Plaintiff does not plead that anyone on behalf of WESPAC actually:

- Knew of any event to be held by Adas Torah;

- Called for anyone to go to Adas Torah for any reason;

- Communicated with any "rioter";

- Communicated with anyone at PYM or CodePink about Adas Torah;

- Was anywhere near Adas Torah (or even in California);[1]

- Made any post-event statements relating to Adas Torah; or

- Did *anything* in relation to Adas Torah.

The utter absence of substantiating allegations is hardly just a matter of inattentive pleading. Plaintiff simply *cannot* offer any good-faith substantiating allegations because such allegations would be false.

## IV.    ARGUMENT

### A.    THIS ACTION SHOULD BE DISMISSED ALSO BECAUSE PLAINTIFF FAILS TO STATE A CLAIM AGAINST WESPAC

A district court must dismiss a claim if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. Proc. 12(b)(6). Rule 8(a) of the Federal Rules of Civil Procedure requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555). The Court need not accept as true conclusory legal allegations cast in the form of factual allegations. *See id*.; *see also Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) ("conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss"); *Sprewell v. Golden State Warriors*, Nos. 99-15602, 99-17186, 2001 U.S. App. LEXIS 20434, at *12 (9th Cir. Dec. 28, 2001) (court not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"). Finally, a complaint

---

[1] Plaintiff correctly pleads that WESPAC is located in New York. Complaint ¶ 34.

1 must give notice of the claim "such that the opposing party may defend himself or

2 herself effectively." *Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011).

3     Plaintiff brings a claim pursuant to 18 U.S.C. § 248(a)(2), a statute that does

4 not appear to have been substantively litigated within the 9th Circuit.  However,

5 other courts have found there are four requisite elements for such a claim:

6 "Plaintiffs must demonstrate that Defendants used or attempted to use (1) force,

7 threat of force, or physical obstruction; (2) with the intent to; (3) injure, intimidate,

8 or interfere with a person; (4) because that person is exercising or is seeking to

9 exercise his or her right of religious freedom at a place of religious worship." *New*

10 *Beginnings Ministries v. George*, 2018 U.S. Dist. LEXIS 245391, *16 (S.D. Ohio

11 2018) (citing *Lotierzo v. A Woman's World Med. Ctr.*, 278 F.3d 1180, 1182 (11th

12 Cir. 2002)).  The California FACE Act, upon which Plaintiff also brings a claim,

13 has nearly identical language to the federal FACE Act, except it adds a requirement

14 that a claim be based on an alleged physical obstruction and that physical

15 obstruction must also be a crime of violence.  Cal. Pen. Code § 423.2(b).  A "crime

16 of violence" is "an offense that has as an element the use, attempted use, or

17 threatened use of physical force." Cal. Pen. Code § 423.1(a).

18     Plaintiff has fallen woefully short of pleading these claims.  For the most part,

19 Plaintiff's allegations against WESPAC are presented through impermissible group

20 pleading, *i.e.*, allegations made against all "Defendant Organizations," a term defined

21 to include WESPAC.  *E.g.,* Complaint ¶ 4; *Top Rank, Inc. v. Haymon*, 2015 U.S.

22 Dist. LEXIS 164676, at *25-26 (C.D. Cal. Oct. 16, 2015) (granting motion to dismiss,

23 including because the plaintiff's "allegations draw no meaningful distinctions

24 between or among the nine defendants against whom they are collectively asserted").

25     In particular, Plaintiff claims that: (i) "On June 23, individuals organized by

26 Defendants Code Pink, Palestinian Youth Movement, and WESPAC Foundation

27 (collectively, '*Defendant Organizations*') terrorized Jewish congregants outside their

28

house of worship, blocking access to those seeking religious services and trapping others inside"; (ii) "more than two-hundred rioters, organized by *Defendant Organizations*, marched into the predominantly orthodox Jewish neighborhood of Pico-Robertson in Los Angeles's Westside and blocked access to Adas Torah"; (iii) "Upon learning of the Aliyah Event, *Defendant Organizations* called on their members to assemble outside Adas Torah"; and (iv) "organized by *Defendant Organizations* and others, more than two-hundred rioters (upon information and belief) descended to the streets surrounding Adas Torah."  Complaint ¶¶ 4, 58, 79, 94 (emphasis added).

Critically, and fatal to its claims, Plaintiff does not offer a single allegation to substantiate any of these inflammatory and conclusory assertions against WESPAC. Indeed, Plaintiff does not plead that anyone on behalf of WESPAC actually:

- Knew of any event to be held at Adas Torah, let alone the real estate event;

- Was involved in any way in the planning for the protest at Adas Torah;

- Called for anyone to go to Adas Torah for any reason;

- Communicated to or with any "rioter;"

- Communicated with anyone at PYM or CodePink about Adas Torah or the real estate event or protest there;

- Was anywhere near Adas Torah (or even in California);

- Made any post-event statements relating to Adas Torah; or, in fact,

- Did *anything at all* relating to the Adas Torah event or protest there.

The utter absence of even a single substantiating allegation renders entirely implausible Plaintiff's allegations against the "Defendant Organizations" – to the extent Plaintiff actually would contend that such allegations are being levelled against WESPAC itself.  *See Adams*, 355 F.3d at 1183 ("unwarranted inferences are

1    insufficient to defeat a motion to dismiss"); *Sprewell*, 2001 U.S. App. LEXIS 20434,

2    at \*12 ("unwarranted deductions of fact, or unreasonable inferences" are not to be

3    accepted as true).   Thus, these allegations cannot provide the basis for Plaintiff's

4    claims.

5         The few other allegations Plaintiff makes regarding WESPAC do not salvage

6    the claims.  Plaintiffs alleges – uncontroversially – that WESPAC acted generally as

7    a fiscal sponsor to PYM, which included collecting funds from donors and disbursing

8    the donor funds to PYM.  Complaint ¶¶ 34-35.  On this basis alone, Plaintiff contends

9    WESPAC is *a priori* responsible for any actions PYM might have taken in

10   connection with the protest.  *See id.* ¶¶ 45-47 (claiming that "as the fiscal sponsor of

11   PYM, WESPAC is responsible for how PYM uses its funds" and that "WESPAC is

12   responsible for the promotion and funding that resulted in the violent riot that blocked

13   the entrance to Adas Torah").[2]

14        These are prototypical examples of a legal conclusion presented as a factual

15   allegation, which is insufficient.  *See Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550

16   U.S. at 555); *Adams*, 355 F.3d at 1183.  Put differently, Plaintiff cites a brief IRS

17   opinion which states generally that a nonprofit does not lose its tax-exempt status by

18   being a fiscal sponsor, provided it maintains control and discretion over funds it

19   disburses.  *See* Complaint ¶ 45 n.11 (citing 1968 IRB LEXIS 179, \*1 (I.R.S. July 1,

20   1968)).  That abstract statement of law, however, cannot substitute for a good-faith

21   allegation that WESPAC provided funds to PYM that actually were used wrongfully

22   in connection with events at Adas Torah, knowing and intending that they would be

23   so used.  Again, no such allegations are made.

24        In sum, and to put it charitably, Plaintiff has not pled in a remotely plausible

25   fashion that WESPAC is liable under the federal or California FACE ACT, having

26

27   [2] As we noted above, at 3, these conclusory legal assertions are utterly undermined by Plaintiff's
own acknowledgment that it lacks actual knowledge that people associated with PYM were even
28   involved in the June 23, 2024 events at Adas Torah.  *See* Complaint ¶ 43.

1   failed to offer any non-conclusory allegation that any agent of WESPAC used or

2   attempted to use force to keep anyone from exercising his or her religious freedom.

3   Indeed, Plaintiff cannot even allege that any individual acting for WESPAC was in

4   the State of California at the relevant time.

5   **B.    THIS ACTION SHOULD BE DISMISSED FOR LACK OF**

6   **PERSONAL JURISDICTION OVER WESPAC**

7           Plaintiff does not offer a single allegation that would support the exercise of

8   personal jurisdiction over WESPAC here.  Its Complaint does not actually plead that

9   WESPAC itself specifically did anything in or directed at California.  Rather, the

10  only allegation offered relevant to this analysis demonstrates that personal

11  jurisdiction may *not* be exercised, *i.e.,* Plaintiff correctly contends WESPAC has "its

12  principal place of business in White Plains, New York."  Complaint ¶ 34.  Perhaps

13  because there is no cogent argument to be made regarding the exercise of personal

14  jurisdiction, the Complaint simply ignores the subject.  That is a failing tactic because

15  Plaintiff "bears the burden of establishing that jurisdiction is proper."  *CollegeSource,*

16  *Inc. v. AcademyOne, Inc.,* 653 F.3d 1066, 1073 (9th Cir. 2011).

17          "Federal courts ordinarily follow state law in determining the bounds of their

18  jurisdiction over [defendants]."  *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014)

19  (citing Fed. R. Civ. P. 4(k)(1)(A)).   However, Plaintiff must demonstrate that

20  WESPAC has "certain minimum contacts" with California, "such that the

21  maintenance of the suit does not offend 'traditional notions of fair play and

22  substantial justice.'" *Int'l Shoe Co. v. Washington*, 66 S. Ct. 154, 158 (1945) (citation

23  and quotation omitted).  The strength of contacts required depends on which category

24  of personal jurisdiction a plaintiff invokes: general or specific personal jurisdiction.

25  *See Daimler*, 134 S. Ct. at 754.

26          The standard for obtaining general personal jurisdiction over a corporation is

27  "demanding."  *Daimler*, 134 S. Ct. at 750-751.  For a corporation, "the place of

28

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT WESPAC'S MOTION TO DISMISS COMPLAINT
Case No:  2:24-cv-06253-SVW-PVCx

incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Id.* at 760 (internal quotations and citations omitted). Only in an "exceptional case" is general jurisdiction available elsewhere. *Id.* at 751 n.19. An "exceptional case" exists only if a defendant's contacts in the state are "substantial" or "continuous." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 104 S. Ct. 1868 (1984)).

Plaintiff alleges nothing that could justify the exercise of general jurisdiction. Plaintiff correctly asserts that WESPAC has "its principal place of business in White Plains, New York." Complaint ¶ 34. WESPAC is incorporated in New York. Moreover, Plaintiff alleges no actual contacts with California, let alone contacts that are "substantial" or "continuous." As such, Plaintiff fails entirely to offer any basis on which this could be deemed the kind of "exceptional case" in which general jurisdiction is available outside New York. *See Daimler*, 134 S. Ct. at 751 n.19, 760.

The specific jurisdiction inquiry is "defendant-focused," with an emphasis "on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121-22 (2014) (citation and quotation omitted). "[T]he defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 1121. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Court of Calif.*, 137 S. Ct. 1773, 1781 (2017).

As recently articulated by a California appellate court in *Preciado v. Freightliner Custom Chassis Corp.*, 87 Cal. App. 5th 964, 977 (Cal.App.4th 2023):

> For a state to have specific jurisdiction, the defendant "must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.'…The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'…They must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the

forum State or entering a contractual relationship centered there…Yet even then—because the defendant is not 'at home'— the forum State may exercise jurisdiction in only certain cases. The plaintiff's claims … 'must arise out of or relate to the defendant's contacts' with the forum."….

Thus, a two-part showing by the plaintiff is required to establish specific jurisdiction: "[(1)] the defendant has 'purposefully directed' his activities at residents of the forum, … and [(2)] the litigation results from alleged injuries that 'arise out of or relate to' those activities." (*Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 472–473 [85 L. Ed. 2d 528, 105 S. Ct. 2174]….

Plaintiff has made no attempt to meet this test.  Plaintiff does not allege that any specific person took any action on WESPAC's behalf that was directed at California residents (or had any relation to Plaintiff's claims).  Thus, it cannot be said that any alleged injury arose out of relevant actions by WESPAC.  As such, specific jurisdiction is simply lacking.

For these reasons, the Complaint should be dismissed for lack of personal jurisdiction.

## V.    CONCLUSION

For the foregoing reasons, WESPAC respectfully requests that this Court grant its motion pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) to dismiss Plaintiff's Complaint in its entirety as against WESPAC, with prejudice, and grant such additional relief as the Court may deem appropriate and proper.

Dated:  October 29, 2024            HERBST LAW PLLC

By:    /s/ Robert L. Herbst_____
            Robert L. Herbst
            rherbst@herbstlawny.com
            420 Lexington Avenue, Suite 300
            New York, New York 10170
            Tel: 914-450-8163 Fax: 888-482-4676
            Attorneys for Defendant
            WESPAC FOUNDATION