HOLTZMAN VOGEL BARAN TORCHINSKY
& JOSEFIAK PLLC
Dallin B. Holt
2555 East Camelback Rd, Ste 700
Phoenix, AZ 85016
Telephone: 602-388-1262
Facsimile: 549-341-8809
Email: dholt@holtzmanvogel.com
Admitted *Pro Hac Vice*

Attorney for
STANDWITHUS CENTER FOR LEGAL JUSTICE

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANDWITHUS CENTER FOR LEGAL JUSTICE<br><br>　　　　　　　　　　Plaintiff,<br><br>　vs.<br><br>CODEPINK, PALESTINIAN YOUTH MOVEMENT, and WESPAC FOUNDATION,<br><br>　　　　　　　　　　Defendants. | Case No.: 2:24-cv-06253-SVW-PVC<br><br>Assigned for all Purposes to:<br>Judge Stephen V. Wilson<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FILED BY DEFENDANT WESPAC FOUNDATION**<br><br>Date:　December 9, 2024<br>Time:　1:30 p.m.<br>Place:　Courtroom 10A |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ - 4 -

II. SUMMARY OF ALLEGATIONS ..................................................................... - 6 -

III. LEGAL STANDARD AND ARGUMENT ....................................................... - 7 -

   A. **PLAINTIFF SCLJ HAS ADEQUETLY STATED CLAIMS AGAINST WESPAC BECAUSE WESPAC IS RESPONSIBLE FOR THE WAY THAT PYM SPENDS ITS MONEY.** ................. - 8 -

   B. **THIS COURT MAY PROPERLY EXERCISE PERSONAL JURISDICTION OVER DEFENDANT WESPAC DUE TO ITS FISCAL SPONSORSHIP OF PYM.** ............................................. - 10 -

IV. CONCLUSION .................................................................................................. - 12 -

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) .................................................................. 8 , 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)…………………...…8

*Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 264 (2017) ........................ 11

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ................................................................ 11

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)........................................................ 11

*Nat'l Foundation v. United States*, 13 Cl. Ct. 486, 87-2 USTC para. 9602 (1987).. .... 5

*Preciado v. Freightliner Custom Chassis Corp.*, 87 Cal. App. 5th 964 (Cal.App.4th 2023) ..................................................................................................... 8, 11, 12

*Sprewell v. Golden State Warriors*, Nos. 99-15602, 99-17186, 2001 U.S. App. LEXIS 20434, at *12 (9th Cir. Dec. 28, 2001) ....................................................................... 9

**Other Authorities**

1968 IRB LEXIS 179 (I.R.S. July 1, 1968) ............................................................. 5, 9

Gregory L. Colvin, *Fiscal Sponsorship: Six Ways to Do It Right—A Synopsis*, 7 EXEMPT ORG. TAX REV. 604, 607 (1993) .......................................................... 9,10

**Rules**

Fed R. Civ. P. 8(a)...............................................................................................................7

Fed. R. Civ. P. 8(c)..............................................................................................................8

Fed. R. Civ. P. 12(b)(6).......................................................................................................8

- 3 -
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FILED BY
DEFENDANT WESPAC FOUNDATION
Case No.: 2:24-cv-06253-SVW-PVC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case stems from an antisemitic riot that occurred outside Adas Torah Synagogue (the "Synagogue") on June 23, 2024.[1] *See* Complaint ¶¶ 1-8. Plaintiff StandWithUs Center for Legal Justice ("Plaintiff" or "SCLJ") is a tax-exempt membership organization organized under the laws of California, whose membership includes congregants from the Synagogue and members of the Los Angeles Jewish community who were forcefully prevented from exercising their First Amendment right of religious freedom at a place of religious worship due to the riot. *See* Complaint ¶¶ 17-28.

The antisemitic riot was orchestrated by Defendants CodePink ("CodePink"), and Palestinian Youth Movement ("PYM"). WESPAC, a Section 501(c)(3) organization, is the fiscal sponsor of PYM, an unincorporated association without a formal principal place of business or public leadership structure. *See* Complaint ¶¶ 34-36. As PYM's fiscal sponsor, WESPAC collects and disburses donations on PYM's behalf due to PYM's lack of tax-exempt status. *See* Complaint ¶ 44.

---

[1] This case is currently pending the Court's ruling on consolidation with the related case, *Helmann v. CodePink Women for Peace, et al.*, C.D. Cal. Case No. 2:24-CV-05704-SVW-PVC. Additionally, this opposition is being filed to preserve Plaintiff StandWithUs Center for Legal Justice's arguments while the Court considers the joint application for ex parte relief, Doc. 57, which seeks an order abating all deadlines and briefing schedules pending the Court's ruling on consolidation with the related case, *Helmann v. CodePink Women for Peace, et al.*, C.D. Cal. Case No. 2:24-CV-05704-SVW-PVC. Plaintiff understands that WESPAC's Motion to Dismiss will likely become moot once an amended complaint is on file.

Importantly, while WESPAC's status as PYM's fiscal sponsor is described as "uncontroversial[ ]" in its motion to dismiss, WESPAC has recently indicated that it seeks to argue that it was *not* PYM's fiscal sponsor for purposes of the event that led to the Adas Torah riot. The evidence to support this claim, however, is insufficient to establish that WESPAC's sponsorship of PYM ended in any official capacity. While WESPAC may point to the fact that, on the day of the riot, PYM's website described Honor the Earth—a defendant in the related case, *Helmann*—as the organization that would act as its fiscal sponsor, *see* **Exhibit 3**, the same PYM webpage described WESPAC as its fiscal sponsor during the period preceding the riot. *See* **Exhibits 1, 2.** This abrupt change—which occurred at some point between June 7, 2024 and June 20, 2024—is not enough to terminate WESPAC's fiscal sponsorship of PYM. Moreover, if some official event or agreement occurred that did in fact terminate WESPAC's fiscal sponsorship of PYM, WESPAC has not made such documentation available to SCLJ. Thus, the facts at this stage indicate that WESPAC remained PYM's fiscal sponsor at the time of the violent riot at Adas Torah.

The IRS requires fiscal sponsors to retain "control and discretion as to the use of funds and maintain[ ] records establishing that the funds were used for section 501(c)(3) purposes." 1968 IRB LEXIS 179, *1 (I.R.S. July 1, 1968); *see also Nat'l Foundation v. United States*, 13 Cl. Ct. 486, 87-2 USTC para. 9602 (1987).

Accordingly, as PYM's fiscal sponsor, WESPAC is responsible for how PYM uses its funds.

WESPAC, however, has now filed a motion to dismiss the claims in the Complaint, Doc. No. 49, arguing that (1) SCLJ fails to plead plausible claims against WESPAC, and (2) there is no basis to exercise personal jurisdiction over WESPAC. The basis for both arguments is that WESPAC's fiscal sponsorship of PYM does not expose WESPAC to liability for PYM's conduct. This claim—and thus WESPAC's motion to dismiss—fails as a matter of law because WESPAC's admittedly uncontroversial fiscal sponsorship of PYM is indeed sufficient to state a claim against WESPAC and exercise personal jurisdiction over it.

## II.   SUMMARY OF ALLEGATIONS

As detailed in the Complaint, on June 23, 2024, over two-hundred rioters (some who were armed) entered the predominantly orthodox Jewish neighborhood of Pico-Robertson in Los Angeles's Westside and blocked access to the Synagogue. *See* Complaint ¶¶ 58-61. Motivated by the lie that the Synagogue was hosting an event that encouraged Jewish community members to "steal" Palestinian land, the rioters surrounded the Synagogue, attacked congregants and other Jewish allies, and chanted "Intifada" and other phrases calling for violence against Jewish people. *See generally* Complaint ¶¶ 94-101.

The rioters' violent outburst—which was widely covered in the news and condemned by numerous leaders, including Los Angeles Mayor Karen Bass, California Governor Gavin Newsom, and President Joe Biden—was far from spontaneous. On the contrary, organizations like CodePink and PYM on several occasions posted the date and address of the event at the Synagogue on social media, calling on fellow anti-Israel protesters to show up at "12 PM SHARP" and "STAND AGAINST SETTLER EXPANSION." *See* Complaint ¶¶ 79-93. PYM's posts were particularly inflammatory, referring to the synagogue as "THE BELLY OF THE BEAST" and declaring that there would be "NO JUSTICE, NO PEACE." *See* Complaint ¶¶ 92-93.

Critically, WESPAC remains responsible for the way that PYM spends its money. As PYM's fiscal sponsor, WESPAC is responsible for funding PYM's activities. Indeed, as the images of PYM's website from the period leading up to the riot that are described above make clear, individuals could donate to PYM by sending a check to WESPAC and indicating "PYM" in the memo line. *See* **Exhibits 1, 2.**

## III.  LEGAL STANDARD AND ARGUMENT

Plaintiffs in federal court are required to give "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e). The purpose of Rule 8(a)(2) is to "'give

the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Here, the allegations are well-pleaded and the Court should deny the motion to dismiss.

Additionally, a court may exercise personal jurisdiction over a defendant when the plaintiff shows that (1) "the defendant has 'purposefully directed' his activities at residents of the forum" state, and (2) "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Preciado v. Freightliner Custom Chassis Corp.*, 87 Cal. App. 5th 964 (Cal.App.4th 2023) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-473 (1985)). Here, SCLJ has made these required showings and the motion to dismiss should similarly be denied on this ground.

> A. **PLAINTIFF SCLJ HAS ADEQUETLY STATED CLAIMS AGAINST WESPAC BECAUSE WESPAC IS RESPONSIBLE FOR THE WAY THAT PYM SPENDS ITS MONEY.**

WESPAC alleges that none of SCLJ's allegations in connection with the riot state a claim against WESPAC. In making this argument, WESPAC posits that its undisputed status as PYM's fiscal sponsor does not expose WESPAC to liability for PYM's conduct, and that SCLJ's assertions to the contrary are merely "conclusory allegations of law" that this Court need not accept as true.

This, however, is not the case. Far from "merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, Nos. 99-15602, 99-17186, 2001 U.S. App. LEXIS 20434, at *12 (9th Cir. Dec. 28, 2001), SCLJ's claim that WESPAC's fiscal sponsorship of PYM makes it liable for PYM's unlawful conduct is well-supported by fact and law.

As noted above, the IRS requires fiscal sponsors to retain "control and discretion as to the use of funds and maintain[ ] records establishing that the funds were used for section 501(c)(3) purposes." 1968 IRB LEXIS 179, *1 (I.R.S. July 1, 1968). While there are many reasons for this requirement, it is largely because "there is a 'trap for the unwary' among fiscal sponsorship arrangements . . . . If the control mechanisms are not administered properly," the IRS will "disregard the role of the sponsor and declare that the funding source has, in effect, made a payment directly to a nonsection 501(c)(3) project."[2] When this occurs, "[t]he sponsor may lose its tax-exempt status for failure to exercise sufficient control over its funds," and for "permitting those funds to be used in a noncharitable manner."[3]

Tax ramifications aside, a critical component of this requirement is that it creates an agency relationship between the Section 501(c)(3) sponsor and the non-exempt organization. In this agency relationship, "the charity must be in the controlling

---

[2] Gregory L. Colvin, *Fiscal Sponsorship: Six Ways to Do It Right—A Synopsis*, 7 EXEMPT ORG. TAX REV. 604, 607 (1993).
[3] *Id.*

- 9 -
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FILED BY
DEFENDANT WESPAC FOUNDATION
Case No.: 2:24-cv-06253-SVW-PVC

position, and the nonexempt project must act so as to further the charity's exempt purposes."[4]

Accordingly, as PYM's Section 501(c)(3) sponsor, WESPAC is in the controlling position of an agency relationship with PYM. The effect of this relationship is that WESPAC may be held liable for PYM's conduct under common-law agency principles. Indeed, as SCLJ alleges—and WESPAC does not dispute in its motion to dismiss—that WESPAC "collects and disburses donations on PYM's behalf." *See* Complaint ¶ 44; **Exhibits 1, 2.**

As such, SCLJ's claim that WESPAC may be liable for PYM's conduct at and around the riot is hardly a conclusory legal allegation. Instead, it is based on facts regarding WESPAC's fiscal sponsorship of PYM and relevant caselaw and legal principles, such that this Court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B. THIS COURT MAY PROPERLY EXERCISE PERSONAL JURISDICTION OVER DEFENDANT WESPAC DUE TO ITS FISCAL SPONSORSHIP OF PYM.

WESPAC also argues in its motion to dismiss that this action should be dismissed for lack of personal jurisdiction. According to WESPAC, it does not have the "minimum contacts" with California that are required for this Court to exercise personal jurisdiction. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).

---

[4] *Id.* at 604.

This, however, is not the case. While WESPAC does indeed have its principal place of business in New York, WESPAC's contacts with California through its fiscal sponsorship of PYM are sufficient to establish at least specific personal jurisdiction in this Court. *See, e.g.*, *Preciado*, 87 Cal. App. 5th at 977.

"In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 264 (2017). As WESPAC correctly notes, "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction," *Daimler AG v. Bauman*, 571 U.S. 117 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)), and a California court in *Preciado* recently articulated a test for specific personal jurisdiction that applies here. *See* 87 Cal. App. 5th at 977.

Under that test, for a state to have specific jurisdiction, the defendant "must take some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Id.* (internal citations omitted). "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous,'" and "[t]hey must show that the defendant deliberately 'reached out beyond' its home"—by, for example—"entering a contractual relationship centered there." *Id.* (internal citations omitted). Additionally, the plaintiff's claims must "arise out of or relate to the defendant's contacts" with the forum state. *Id.* (internal citations omitted). In short, this

Court may exercise specific personal jurisdiction over a defendant if the plaintiff makes a "two-part showing": "[(1)] the defendant has 'purposefully directed' his activities at residents of the forum, . . . and [(2)] the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-473 (1985)) (alterations in original).

Despite WESPAC's claims to the contrary, SCLJ has met this test here. As for the first prong, SCLJ has demonstrated that WESPAC purposefully directed its activities at California by funding the operations of PYM, which organizes and participates in California-based events like the riot. *See* Complaint ¶¶ 35, 43-47; **Exhibits 1, 2.** As for the second prong, this litigation is a direct result of WESPAC's relationship with PYM, as its fiscal sponsorship of PYM enabled the group to secure the funding it needed to publicize and organize the Adas Torah riot that targeted California residents for antisemitic violence. *See* Complaint ¶¶ 35, 43-47; **Exhibits 1, 2.** As such, WESPAC's fiscal sponsorship of PYM—deliberately opaque as it may be—is sufficient to allow this Court to exercise personal jurisdiction over WESPAC.

IV. **CONCLUSION**

For the forgoing reasons, SCLJ respectfully requests that this Court deny WESPAC's motion to dismiss. In the alternative, SCLJ respectfully requests that this Court grant SCLJ leave to amend its Complaint, consistent with this Court's November 18, 2024 Order, Doc. 61, in the related case, *Helmann v. CodePink Women for Peace, et al.*, C.D. Cal. Case No. 2:24-CV-05704-SVW-PVC, recognizing that an amended

complaint or complaints are forthcoming after the Court rules on the plaintiffs' motion to consolidate.

DATED: November 18, 2024      /s/ Dallin B. Holt

Dallin B. Holt*
Holtzman Vogel Baran Torchinsky and Josefiak PLLC
2555 East Camelback Rd, Ste 700
Phoenix, AZ 85016
Telephone: 602-388-1262
Fax: 549-341-8809
Email: dholt@holtzmanvogel.com

Daniel Raphael Paluch
Gipson Hoffman and Pancione APC
1901 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067-6002
Telephone: 310-556-4660
Fax: 310-556-8945
Email: Dpaluch@ghplaw.Com

Bencion Schlager*
National Jewish Advocacy Center
666 Harless Place
West Hempstead, NY 11552
Telephone: 917-495-5790
Email: Schlager.Bencion@gmail.Com

Jason B. Torchinsky*
Edward M Wenger*
Erielle Davidson*
Holtzman Vogel Baran Torchinsky and Josefiak PLLC
2300 N Street, NW, Suite 643
Washington, DC 20037
Telephone: 202-737-8808
Fax: 540-341-8809
Email: Jtorchinsky@holtzmanvogel.com
emwenger@holtzmanvogel.com
edavidson@holtzmanvogel.com

John J. Cycon*
Holtzman Vogel Baran Torchinsky and Josefiak PLLC
15405 John Marshall Highway
Haymarket, VA 20169
Telephone: 540-341-8808
Fax: 540-341-8809
Email: Jcycon@holtzmanvogel.com

Mark Goldfeder*
National Jewish Advocacy Center Inc.
1718 General George Patton Drive
Brentwood, TN 37027
Telephone: 917-301-8746
Email: Mark@jewishadvocacycenter.Org

*Counsel for StandWithUs Center for Legal Justice*

_____
*Admitted Pro Hac Vice

# CERTIFICATE OF SERVICE

I hereby certify on November 18, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Central District of California by using the CM/ECF System.

Participants in the case who are registered CM/ECF Users will be served by the CM/ECF System.

DATED: November 18, 2024

HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC

/s/ Dallin B. Holt
Dallin B. Holt
2555 East Camelback Rd, Ste 700
Phoenix, AZ 85016
Telephone: 602-388-1262
Facsimile: 549-341-8809
Email: dholt@holtzmanvogel.com

Admitted *Pro Hac Vice*