Robert L. Herbst (NYSBN 1333194)
rherbst@herbstlawny.com
HERBST LAW PLLC
420 Lexington Avenue, Suite 300
New York, New York 10170
Tel: 914-450-8163 / Fax: 888-482-4676

Mark Kleiman (SBN 115919)
mark@krlaw.us
KLEIMAN / RAJARAM
12121 Wilshire Blvd., Ste. 810
Los Angeles, CA  90025
Tel: 310-392-5455 / Fax: 310-306-8491

Attorneys for Defendant
WESPAC FOUNDATION

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOAH POLLAK, on behalf of all others similarly situated, and STANDWITHUS CENTER FOR LEGAL JUSTICE, <br><br> Plaintiff, <br><br> v. <br><br> CODEPINK WOMEN FOR PEACE, a California entity; CODEPINK ACTION FUND, a California entity; WESPAC FOUNDATION, a New York entity; HONOR THE EARTH, a Minnesota entity; COURTNEY LENNA SCHIRF; REMO IBRAHIM, d/b/a PALESTINIAN YOUTH MOVEMENT; PALESTINIAN YOUTH MOVEMENT; and DOES #1-100, <br><br> Defendants. | CASE NO: 2:24-cv-06253-SVW-PVCx <br><br> Honorable Stephen V. Wilson <br> Courtroom 10A <br><br> **DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> [FILED CONCURRENTLY [PROPOSED] ORDER] <br><br> **Date:   Monday, February 3, 2025** <br> **Time:   1:30 p.m.** <br> **Place:  Courtroom 10A** <br> **350 W. 1st Street** <br> **Los Angeles, California 90012** <br><br> Complaint Filed: July 24, 2024 <br> Trial Date: Not Set |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on Monday, February 3, 2025, at 1:30 p.m. or as soon thereafter as this matter may be heard in Courtroom 10A of the above-entitled Court located at First Street Courthouse, 350 W. 1st Street, Courtroom 10A, 10th Floor,  Los Angeles, CA 90012, Defendant WESPAC FOUNDATION, will and hereby does move the Court to dismiss Plaintiffs' First Amended Class Action Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

This motion is based upon this Notice of Motion, the attached Memorandum of Points & Authorities, [Proposed] Order, the files and records in the case, and any evidence or argument that may be presented at a hearing on this matter.

Respectfully submitted,

Dated: January 2, 2025              HERBST LAW PLLC


By:   /s/ Robert L. Herbst
        Robert L. Herbst
        rherbst@herbstlawny.com
        420 Lexington Avenue, Suite 300
        New York, New York 10170
        Tel: 914-450-8163 Fax: 888-482-4676
        Attorneys for Defendant
        WESPAC FOUNDATION

# <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

<u>TABLE OF AUTHORITIES</u>.................................................................................. 4

MEMORANDUM OF POINTS AND AUTHORITIES....................................... 7

I.      INTRODUCTION........................................................................................ 7

      A.  WESPAC's Motion to Dismiss Plaintiff's
           Original Complaint ................................................................................ 7

      B.   The Amended Complaint.....................................................................10

II.      ARGUMENT ..............................................................................................13

      A.  The Amended Complaint Should Be Dismissed
           For Lack Of Personal Jurisdiction Over WESPAC .............................13

      B.  The Amended Complaint Should Be Dismissed For
           Failing To State A Claim Against WESPAC........................................17

      C.  WESPAC Respectfully Joins In The Motions Filed Or To
           Be Filed By Any Co-Defendant To Dismiss Plaintiffs'
           First Amended Class Action Complaint To The Extent
           They Apply To WESPAC .....................................................................23

III.      CONCLUSION ............................................................................................23

1

# TABLE OF AUTHORITIES

2

**Page**

3

4   Adams v. Johnson,
5       355 F.3d 1179 (9th Cir. 2004)..................................................................17,22

6   Ashcroft v. Iqbal,
7       556 U.S. 662 (2009) ...............................................................................17,22

8   Bancroft & Masters, Inc. v. Augusta Nat. Inc.,
9       223 F.3d 1082 (9th Cir. 2000).......................................................................13

10  Bank of Am., N.A. v. Knight,
11      725 F.3d 815 (7th Cir. 2013).........................................................................18

12  Bell Atlantic Corp. v. Twombly,
13      550 U.S. 544 (2007) ............................................................................17,20,22

14  Boschetto v. Hansing,
15      539 F.3d 1011 (9th Cir. 2008).......................................................................16

16  Bristol-Myers Squibb Co. v. Superior Court of Calif.,
17      137 S. Ct. 1773 (2017) ..................................................................................14

18  Burger King Corp. v. Rudzewicz,
19      (1985) 471 U.S. 462, [85 L. Ed. 2d 528, 105 S. Ct. 2174] .........................15

20  CollegeSource, Inc. v. AcademyOne, Inc.,
21      653 F.3d 1066 (9th Cir. 2011).......................................................................13

22  Daimler AG v. Bauman,
23      134 S. Ct. 746 (2014) .............................................................................13,14

24  Helicopteros Nacionales de Colombia, S.A. v. Hall,
25      104 S. Ct. 1868 (1984) .................................................................................13

26

27

28

4

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST
AMENDED CLASS ACTION COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF
Case No:  2:24-cv-06253-SVW-PVCx

Int'l Shoe Co. v. Washington,
　　66 S. Ct. 154 (1945) .......................................................................... 13

Lotierzo v. A Woman's World Med. Ctr.,
　　278 F.3d 1180 (11th Cir. 2002) ....................................................... 17

McCreary v. Heath, 04-cv-0623-PLF,
　　2005 U.S. Dist. LEXIS 34082 (D.D.C. Sept. 26, 2005) ......................... 20,22

New Beginnings Ministries v. George,
　　2018 U.S. Dist. LEXIS 245391 (S.D. Ohio 2018) ..................................... 18

Pasadena Republican Club v. W. Justice Ctr.,
985 F.3d 1161 (9th Cir. 2021) ................................................................ 20

Pavlovich v. Superior Court,
　　29 Cal.4th 262 (2002) ....................................................................... 16

Preciado v. Freightliner Custom Chassis Corp.,
　　87 Cal. App. 5th 964 (Cal.App.4th 2023) .................................................... 14

Schwarzenegger v. Fred Martin Mtr. Co.,
　　374 F.3d 797 (9th Cir. 2004) ........................................................... 16

Sprewell v. Golden State Warriors, Nos. 99-15602,
　　99-17186, 2001 U.S. App. LEXIS 20434,
　　(9th Cir. Dec. 28, 2001) ................................................................... 17

Starr v. Baca,
　　652 F.3d 1202 (9th Cir. 2011) ....................................................... 17

Strasner v Touchstone Wireless Repair & Logistics, LP,
　　5 Cal. App. 5th 215, 210 Cal. Rptr. 3d 16, (2016) ..................................... 15

Top Rank, Inc. v. Haymon,
　　2015 U.S. Dist. LEXIS 164676 (C.D. Cal. Oct. 16, 2015) ......................... 18

United Brothers of Carpenters and Joiners of Am., Local 610,
　　AFL-CIO v. Scott, 463 U.S. 825 (1983) ................................................. 20, 21

Walden v. Fiore,
    134 S. Ct. 1115, 1121-22 (2014) ........................................................................ 14

**STATUTES**

18 U.S.C. § 248(a)(2) ............................................................................ 17

42 U.S.C. § 1985(3) .............................................................................. 11,19

**RULES**

Fed. R. Civ. Proc. 4(k)(1)(A) ................................................................. 13

Fed. R. Civ. Proc. 8(a) .......................................................................... 17

Fed. R. Civ. Proc. 12(b)(2) ..................................................................... 7,23

Fed. R. Civ. Proc. 12(b)(6) ..................................................................... 7,16,23

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant WESPAC Foundation ("WESPAC") respectfully submits this memorandum of points and authorities in support of its Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("Amended Complaint"), pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, and Rule 12(b)(6) for failure to state a claim.

### A.    WESPAC's Motion to Dismiss Plaintiff's Original Complaint

Prior to the filing of Plaintiffs' Amended Complaint, the parties had fully briefed WESPAC's Motion to Dismiss the original Complaint. Because Plaintiffs have failed to correct any of the many deficiencies of the original Complaint, and the Amended Complaint's additional allegations are not actionable against WESPAC, a review of the prior Motion is relevant to this Motion to Dismiss the Amended Complaint. We therefore respectfully incorporate herein Doc. 49 and Doc. 60, our initial and reply briefs in support of WESPAC's first Motion to Dismiss, and summarize the issues and arguments therein, which are equally applicable to the Amended Complaint.

WESPAC's briefs pointed out that Plaintiff's initial Complaint had failed to plead that WESPAC had anything to do with the June 23, 2024 protest at Adas Torah, and that, in its Opposition Brief, Doc. 59, Plaintiff conceded that no one from WESPAC (1) knew in advance of the protest, (2) went to it, (3) called for anyone to go to it, (4) communicated with anyone about it, (5) provided any funds for it, or (6) did *anything* in connection with it. *See, e.g.,* Doc. 49 at 3-4; Doc. 60 at 1 (citing Doc. 59 at 3, 5-6, 8-9).

Indeed, the original Complaint failed even to definitively allege that members of defendant PYM actually were present at or did anything in connection with the protest, *see, e.g.,* Doc. 60 at 3 (*citing* Complaint ¶ 43 ("*Upon information and belief,*

members of PYM were among those who blocked access to Adas Torah on June 23, 2024.") (emphasis added)).  In fact, the Complaint failed to allege even that PYM had actually spent any money received from WESPAC on the protest.  *Id.* at 4-5 ("Plaintiff does not, and cannot, allege that any funds WESPAC ever sent to PYM were used in connection *with the events alleged in the Complaint"* [or] "that PYM itself used funds from *any source* in connection with the alleged events[.]" "Thus, Plaintiff has failed to plead that its alleged injuries arose from any activity by WESPAC, *as a fiscal sponsor or otherwise*, let alone activity in or directed at California.") (emphasis added). Accordingly, Plaintiff's original Complaint was defective in (1) failing to allege a basis to exercise personal jurisdiction over WESPAC, and (2) failing to allege claims on which relief could be granted against WESPAC.

In its Opposition Brief, Doc. 59, Plaintiff conceded that it was relying solely on WESPAC's general fiscal sponsorship of PYM (an entity it could not definitively say participated in the protest) to ground both personal jurisdiction and the validity of its claims.  *See* Doc. 59 at 6 ("WESPAC's [] fiscal sponsorship of PYM is indeed sufficient to state a claim against WESPAC and exercise personal jurisdiction over it."); *id.* at 7 ("As PYM's fiscal sponsor, WESPAC is responsible for funding PYM's activities."); *id.* at 9 ("SCLJ's claim that WESPAC's fiscal sponsorship of PYM makes it liable for PYM's unlawful conduct is well-supported by fact and law.").

On personal jurisdiction, Plaintiff disclaimed any reliance on general personal jurisdiction, and argued only that "WESPAC's contacts with California through its fiscal sponsorship of PYM are sufficient to establish at least specific personal jurisdiction[.]" *Id.* at 11.  Plaintiff conceded that specific personal jurisdiction requires a "two-part showing": "[(1)] the defendant has purposefully directed his activities at residents of the forum," and [(2)] the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* at 12.

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST
AMENDED CLASS ACTION COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF
Case No:  2:24-cv-06253-SVW-PVCx

As we noted in WESPAC's Reply Brief, the allegations and exhibits cited in Plaintiff's original Complaint – for the proposition that PYM generally operates in California – did not even mention California, but rather established that PYM has no place of business in California and operates across North America and Europe. Accordingly, that WESPAC allegedly acted generally as a fiscal sponsor to PYM – an entity not based or operating in California – could not possibly constitute "purposeful direction" of activity at California. Doc. 60 at 1-2. And since Plaintiff did not and could not claim that WESPAC sent funds to PYM that were used for the "riot," or even that PYM spent any funds for "riot" purposes, Plaintiff had utterly failed to allege that WESPAC did anything out of which Plaintiff's alleged injuries arose. Accordingly, Plaintiff failed to meet either prong of the "two-part showing" that must ground a finding of specific personal jurisdiction. In the same vein, Plaintiff also failed to show that its attempt to exercise jurisdiction in California over WESPAC – an entity that has no presence in California, took no alleged action in California, and directed no activity at California – did not "offend traditional notions of fair play and substantial justice." *Id.*

On the validity of Plaintiff's claims, again stemming solely from WESPAC's general fiscal sponsorship of PYM rather than WESPAC's provision of money to PYM in connection with the protest, WESPAC's Reply Brief noted that Plaintiff's Opposition Brief had failed to cite any authority holding that such fiscal sponsorship automatically created an agency relationship making the fiscal sponsor liable to anyone, anywhere, for anything the sponsoree does. The same was true with respect to the IRS requirement that a fiscal sponsor retain control of funds provided to a sponsoree, especially in the absence of plausible factual allegations linking the fiscal sponsor to the specific event out of which the plaintiff's injuries arose, like the protest here. Doc. 60, at 2.

WESPAC further explained that no agency relationship existed between WESPAC and PYM under California or federal law because Plaintiff had not and could not allege any facts suggesting WESPAC ever assented to PYM's acting as its agent, or that PYM ever played that role with any third parties. *See, e.g., id.* at 2-3, 5-7.

WESPAC also noted that Plaintiff's failure to plead that WESPAC provided money to PYM that was actually used in connection with the Adas Torah events – the only events out of which Plaintiff's claims arise – was fatal to Plaintiff's claims against WESPAC. Even if *arguendo* IRS rules required every fiscal sponsor to exercise discretion and control over every dime given to a fiscal sponsoree, Plaintiff's inability to allege that any WESPAC dime was spent in connection with the events at issue precluded Plaintiff from stating a valid claim against WESPAC.

## B.  <u>The Amended Complaint</u>

Despite being fully aware of the original Complaint's deficiencies, Plaintiffs' Amended Complaint, Doc. 71, does nothing to cure them.  Rather, it confirms that WESPAC had nothing to do with the alleged events at issue.  As with the Complaint, there are no specific factual allegations in Plaintiffs' amended pleading suggesting that anyone from WESPAC knew in advance of any protest at Adas Torah; went to it; called for anyone to go there; communicated with anyone about it; provided any funds for it; or did *anything* in relation to that protest.  Instead, Plaintiffs now allege that "[t]he attack was organized, publicized, aided, and (on information and belief) funded by" Defendants CodePink, PYM, Schirf and Ibrahim – not WESPAC. Doc. 71, ¶ 8.  This critical acknowledgment – that WESPAC did not fund the protest -- is fatal to Plaintiffs' Amended Complaint against WESPAC for the same reasons just noted in connection with WESPAC's motion to dismiss the earlier complaint.

Notably, WESPAC is not mentioned by name in the entire Introduction to the Amended Complaint, ¶¶ 1-22; nor in the sections purporting to describe (1) the

protest outside the Temple and its alleged prior organization, (2) the Plaintiffs'
experiences on the day of the protest, or (3) the post-protest statements and alleged
activities of other defendants, ¶¶ 207-341.  Nor do Plaintiffs name WESPAC in the
sections purporting to offer "Class Action Allegations" and Plaintiffs' two causes of
action, ¶¶ 346-432.

Indeed, in the entire 432-paragraph complaint, WESPAC appears to be named
only in the "Parties" section, where Plaintiffs allege that WESPAC has been a fiscal
sponsor of PYM, "meaning that WESPAC has collected and disbursed donations on
PYM's behalf[.]" ¶ 60.  Otherwise, the only allegations theoretically relating to
WESPAC are all examples of impermissible group pleading.  *E.g. id.*, ¶ 9 ("Working
collectively, the Named Defendants conspired with each other and then acted in
concert" in violation of the FACE Act and 42 U.S.C. §1985(3)).[1]

---

[1]  For other examples of general collective pleading, see ¶¶ 22, 207 ("the Named Defendants
organized a mob"); 208 ("the Named Defendants agreed with each other and worked
collectively on a plan to disrupt, impede and prevent the religious events at the Synagogue");
228 ("rioters that had been organized and incited by the Named Defendants"); 230, 238
(same); 236 ("Upon information and belief, these keffiyehs were distributed by Named
Defendants to Does [] to conceal the rioters' identities."); 242 ("By stoking such unrest and
perpetuating violence, Named Defendants and Does [] prevented [Plaintiffs] from practicing
their religion"); 347 ("This action concerns the Named Defendants' and Does #1-100's
actions both prior to and on June 23, 2024, and in relation to the riot at the Synagogue."); 366
("Named Defendants conspired with each other to act in a concerted manner with respect to
Class Members."); 367 ("Named Defendants acted in a concerted manner with respect to
Class Members when they incited a mob to block access to the Synagogue."); 394 ("members
of Named Defendants and Does [] either forcefully prevented them from [exercising the First
amendment right of religious freedom at a place of religious worship] or attempted to
forcefully prevent them from doing so."); 395 (Named Defendants and Does [] by force,
threat of force, or physical obstruction intentionally injured, intimidated, interfered with, and
attempted to injure, intimidate, and interfere with the worship services being held at the
Synagogue on June 23, 2024."); 396 ("Named Defendants and Does #1-100 helped to plan,
organize, advertise, and (on information and belief) fund the violent mob that threatened and
intimidated the individuals lawfully exercising or seeking to exercise their First Amendment
right of religious freedom at the Synagogue."); 413 ("the Named Defendants agreed among
themselves to organize the riot outside the Synagogue."); 415 ("By agreeing to work together
to organize and incite the riot outside the Synagogue, Named Defendants conspired to deprive
Plaintiff[s] of their rights, privileges and immunities under the law."); 419 ("In furtherance of
this conspiracy, Named Defendants helped plan, organize, advertise, and (on information and

1    Plaintiffs now try to compensate for the continued inadequacies of their

2    pleadings against WESPAC by citing its (irrelevant) status as a defendant in another

3    SLAPP suit pending outside California and its (irrelevant) fiscal sponsorship of two

4    other Palestinian advocacy organizations not involved in this case. ¶¶ 58, 128-29.

5    Irrelevant and inflammatory allegations like these, which Plaintiffs undoubtedly hope

6    will be seen as damning but instead illustrate the SLAPP aspects of this case, do not

7    help state a valid claim.

8    Plaintiffs have retained their conclusory suggestion that WESPAC's fiscal

9    sponsor relationship with PYM may have created an agency relationship between

10    WESPAC and PYM.  ¶ 119. In light of the lack of legal support for that theory

11    revealed in the briefs on the first Motion to Dismiss, Plaintiffs have also written an

12    (irrelevant) expanded "treatise" purporting to set forth their self-serving version of

13    the duties, obligations and recommended procedures for fiscal sponsorships to

14    preserve the tax-exempt status of donations, ¶¶ 96-119, leading to Plaintiffs'

15    alternative conclusory suggestion – *all on information and belief* – that WESPAC's

16    fiscal sponsorship of PYM may have created one integrated entity, in which PYM

17    became "an integral part of the fiscal sponsor with no legal identity separate from the

18    fiscal sponsor" – WESPAC. ¶ 115, 137.

19    Like those in the original Complaint, these allegations and theories are

20    supported by no case law or specific factual allegations about WESPAC's fiscal

21    sponsorship. Most critically, though, Plaintiffs continue to be unable to allege that

22    WESPAC knew about the protest, participated in it, encouraged it, planned it, funded

23    it, or did anything else resulting in any injury to anyone. And nothing in the Amended

24    Complaint suggests that WESPAC ever set foot in California, let alone did *anything*

25

26    ───────────────

    belief) fund the violence that occurred outside the Synagogue, calling to "Stand Against

27    Settler Expansion" and saying, "Racist settler expansionists are not welcome in Los

    Angeles!").

28

1  in California, including providing any funds that were used in connection with the

2  alleged "riot."  Consequently, there is no valid basis (1) for personal jurisdiction over

3  WESPAC, a New York entity, or (2) for Plaintiffs' two claims against WESPAC.

4  II.  **ARGUMENT**

5       A.  **The Amended Complaint Should Be Dismissed For Lack Of**

6            **Personal Jurisdiction Over WESPAC**

7       A plaintiff "bears the burden of establishing that jurisdiction is proper."

8  *CollegeSource, Inc. v. AcademyOne, Inc.,* 653 F.3d 1066, 1073 (9th Cir. 2011).

9  "Federal courts ordinarily follow state law in determining the bounds of their

10 jurisdiction over [defendants]."  *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014)

11 (citing Fed. R. Civ. P. 4(k)(1)(A)).  However, Plaintiffs must demonstrate that

12 WESPAC has "certain minimum contacts" with California, "such that the

13 maintenance of the suit does not offend 'traditional notions of fair play and

14 substantial justice.'" *Int'l Shoe Co. v. Washington*, 66 S. Ct. 154, 158 (1945) (citation

15 and quotation omitted).  The strength of contacts required depends on which category

16 of personal jurisdiction a plaintiff invokes: general or specific personal jurisdiction.

17 *See Daimler*, 134 S. Ct. at 754.

18      The standard for obtaining general personal jurisdiction over a corporation is

19 "demanding."  *Daimler*, 134 S. Ct. at 750-751.  For a corporation, "the place of

20 incorporation and principal place of business are paradig[m] . . . bases for general

21 jurisdiction."  *Id.* at 760 (internal quotations and citations omitted).  Only in an

22 "exceptional case" is general jurisdiction available elsewhere.  *Id.* at 751 n.19.  An

23 "exceptional case" exists only if a defendant's contacts in the state are "substantial"

24 or "continuous."  *Bancroft & Masters, Inc. v. Augusta Nat. Inc.,* 223 F.3d 1082, 1086

25 (9th Cir. 2000) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 104 S. Ct.

26 1868 (1984)).

27 //

28

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST
AMENDED CLASS ACTION COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF
Case No:  2:24-cv-06253-SVW-PVCx

The Amended Complaint alleges nothing that would justify the exercise of general jurisdiction. It alleges no actual contacts with California, let alone contacts that are "substantial" or "continuous." WESPAC is incorporated in and has its principal place of business in New York. Nothing is alleged to suggest that this is the "exceptional case" in which general jurisdiction is available outside New York. *See Daimler*, 134 S. Ct. at 751 n.19, 760. Accordingly, we do not expect Plaintiffs to claim general personal jurisdiction here, having disclaimed it in its Opposition Brief on WESPAC's earlier Motion to Dismiss. *See* Doc. 59 at 10-12.

The specific personal jurisdiction inquiry is "defendant-focused," with an emphasis "on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121-22 (2014) (citation and quotation omitted). "[T]he defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 1121. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Court of Calif.*, 137 S. Ct. 1773, 1781 (2017).

As recently articulated by a California appellate court in *Preciado v. Freightliner Custom Chassis Corp.*, 87 Cal. App. 5th 964, 977 (Cal.App.4th 2023):

> For a state to have specific jurisdiction, the defendant "must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.'…The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'…They must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there…Yet even then—because the defendant is not 'at home'— the forum State may exercise jurisdiction in only certain cases. The plaintiff's claims

1    … 'must arise out of or relate to the defendant's contacts' with the

2    forum."….

3

4    Thus, a two-part showing by the plaintiff is required to establish

5    specific jurisdiction: "[(1)] the defendant has 'purposefully directed'

6    his activities at residents of the forum, … and [(2)] the litigation results

7    from alleged injuries that 'arise out of or relate to' those activities."

8    (*Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 472–473 [85 L.

9    Ed. 2d 528, 105 S. Ct. 2174]….

10    The Amended Complaint, like the original, fails this test.  Plaintiffs do not

11    allege that any specific person connected to WESPAC took any action that was

12    purposefully directed at California residents (or had any relation to Plaintiffs'

13    claims).  Thus, it cannot be said that any alleged injury arose out of relevant actions

14    by WESPAC.  As such, there is no remotely colorable basis to exercise specific

15    jurisdiction, and Plaintiffs articulate none in the Amended Complaint, even though

16    this issue was fully raised in the prior briefing.

17    Thus, Plaintiffs' position appears not to have changed: that WESPAC's simply

18    acting as fiscal sponsor to PYM – an entity that does not have a place of business in

19    California and operates around the world – constitutes purposeful direction of

20    activities at California.  Plaintiffs have cited no authority, and we are unable to find

21    any authority, to support that frivolous contention, particularly given that it is not

22    even alleged that any funds were sent to California or sent somewhere else

23    specifically for use in California in connection with the "riot."  Plaintiffs' theory

24    would render meaningless the element of purposeful direction, which Plaintiffs

25    clearly have failed to establish here.  *See Strasner v Touchstone Wireless Repair &*

26    *Logistics, LP*, 5 Cal. App. 5th 215, 231, 210 Cal. Rptr. 3d 16, 28-30 (2016) ("Nor

27    has [plaintiff] identified any authority in which a court found specific jurisdiction

28

without sufficient evidentiary support establishing that the defendant's conduct was targeted at the forum state with knowledge that the act would cause harm in the state."); *citing Pavlovich v. Superior Court*, 29 Cal.4th 262, 274-75 (2002) (posting on a passive website insufficient to establish purposeful availment when defendant did not know his conduct would cause harm to plaintiff in California; "the fact that a defendant's actions in some way set into motion events which ultimately injured a California resident cannot, by itself, confer jurisdiction over that defendant").

As to the second element – litigation based on injuries arising out of such activities directed at California – Plaintiffs do not, and cannot, allege that any funds WESPAC ever sent to PYM were used in connection *with the events alleged in the Complaint*. In fact, Plaintiffs do not even allege that PYM itself used funds from *any source* in connection with the alleged events. Thus, Plaintiffs have failed to plead that their alleged injuries arose from any actions by WESPAC, let alone actions in or directed at California.

Finally, the Amended Complaint fails to satisfy the third element of the specific jurisdiction analysis: the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable. *See Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008); *Schwarzenegger v. Fred Martin Mtr. Co.*, 374 F.3d 797, 802 (9th Cir. 2004). It would be entirely unreasonable to exercise personal jurisdiction over WESPAC because it (i) has no presence in California, (ii) is not alleged to have sent any funds to California or done anything else in California, and (iii) is not alleged to have provided funds to PYM elsewhere that PYM used in California, let alone for purposes of starting a "riot." We have found no authority that could conceivably justify as reasonable such an unfair – indeed, absurd – result.

//

//

//

1    For all these reasons, the Amended Complaint should be dismissed for lack of

2    personal jurisdiction.

3    **B.**    **The Amended Complaint Should Be Dismissed For Failing To**

4         **State A Claim Against WESPAC**

5    A district court must dismiss a claim if it "fail[s] to state a claim upon which

6    relief can be granted." Fed. R. Civ. Proc. 12(b)(6).  Rule 8(a) of the Federal Rules of

7    Civil Procedure requires a plaintiff to plead "enough facts to state a claim to relief

8    that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

9    (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that

10   allows the court to draw the reasonable inference that the defendant is liable for the

11   misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

12   "Threadbare recitals of the elements of a cause of action, supported by mere

13   conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550

14   U.S. at 555).  The Court need not accept as true conclusory legal allegations cast in

15   the form of factual allegations.  *See id.*; *see also Adams v. Johnson*, 355 F.3d 1179,

16   1183 (9th Cir. 2004) ("conclusory allegations of law and unwarranted inferences are

17   insufficient to defeat a motion to dismiss"); *Sprewell v. Golden State Warriors*, Nos.

18   99-15602, 99-17186, 2001 U.S. App. LEXIS 20434, at *12 (9th Cir. Dec. 28, 2001)

19   (court not "required to accept as true allegations that are merely conclusory,

20   unwarranted deductions of fact, or unreasonable inferences").   Finally, a complaint

21   must give notice of the claim "such that the opposing party may defend himself or

22   herself effectively." *Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011).

23   Plaintiff brings a claim pursuant to 18 U.S.C. § 248(a)(2), a statute that does

24   not appear to have been substantively litigated within the 9th Circuit.  However,

25   other courts have found there are four requisite elements for such a claim:

26   "Plaintiffs must demonstrate that Defendants used or attempted to use (1) force,

27   threat of force, or physical obstruction; (2) with the intent to; (3) injure, intimidate,

28

1  or interfere with a person; (4) because that person is exercising or is seeking to

2  exercise his or her right of religious freedom at a place of religious worship." *New*

3  *Beginnings Ministries v. George*, 2018 U.S. Dist. LEXIS 245391, *16 (S.D. Ohio

4  2018) (citing *Lotierzo v. A Woman's World Med. Ctr.*, 278 F.3d 1180, 1182 (11th

5  Cir. 2002)).

6       Plaintiffs have fallen woefully short of pleading this claim.  Plaintiffs'

7  allegations against WESPAC are presented through impermissible group pleading,

8  *i.e.*, allegations made against all "Named Defendants," a term that appears to include

9  WESPAC.  *See ante*, at 11-12 n. 1; *Top Rank, Inc. v. Haymon*, 2015 U.S. Dist. LEXIS

10  164676, at *25-26 (C.D. Cal. Oct. 16, 2015) (granting motion to dismiss, including

11  because the plaintiff's "allegations draw no meaningful distinctions between or

12  among the nine defendants against whom they are collectively asserted"); *Bank of*

13  *Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("A contention that 'the

14  defendants looted the corporation'—without any details about who did what—is

15  inadequate. Liability is personal…The Rules of Civil Procedure set up a system of

16  notice pleading. Each defendant is entitled to know what he or she did that is asserted

17  to be wrongful. A complaint based on a theory of collective responsibility must be

18  dismissed. That is true even for allegations of conspiracy.").

19       Critically, and fatal to its claims, Plaintiffs do not plead that anyone on behalf

20  of WESPAC actually:

21

22       •    Knew of any event to be held at Adas Torah, let alone the real estate

23            event;

24

25       •    Was involved in any way in the planning for the protest at Adas Torah;

26

27       •    Called for anyone to go to Adas Torah for any reason;

28

- • Communicated to or with anyone who went to Adas Torah;

- • Communicated with anyone at PYM or CodePink about Adas Torah or the real estate event or protest there;

- • Was anywhere near Adas Torah (or even in California);

- • Made any post-event statements relating to Adas Torah; or, in fact,

- • Did *anything at all* relating to the Adas Torah event or protest there.

The utter absence of even a single substantiating allegation renders entirely implausible Plaintiff's claims against WESPAC as one of the "Named Defendants" (1) violating the Federal FACE Act (First Cause of Action), and (2) conspiring to violate their constitutional rights under 42 U.S.C § 1985(3) (Second Cause of Action).

Nowhere in the Amended Complaint is WESPAC specifically alleged to have used or attempted to use (1) force, threat of force, or physical obstruction; (2) with the intent to; (3) injure, intimidate, or interfere with a person; (4) because that person is exercising or seeking to exercise his or her right of religious freedom at a place of religious worship. Accordingly, Plaintiffs have failed to allege a valid claim against WESPAC under the federal FACE Act.[2]

Plaintiffs' conspiracy claim against WESPAC under 42 U.S.C. § 1985(3) fares no better. First, since the Amended Complaint contains no allegation that WESPAC even knew of the planned protest at Adas Torah before it occurred, WESPAC can hardly be guilty of any civil conspiracy since the principal element of such conspiracy

---

[2] Plaintiffs have dropped their claim against Defendants under the California Face Act.

is the defendant's *agreement* with another to inflict a wrong against or injury upon the Plaintiffs – that in these circumstances relate in some way to that protest. *See, e.g., Twombly,* 550 U.S. at 556-57 (explaining that "stating a [conspiracy] claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made"); *McCreary v. Heath,* 04-cv-0623-PLF, 2005 U.S. Dist. LEXIS 34082 *17-18 (D.D.C. Sept. 26, 2005) (dismissing claim that "fails to allege the existence of any events, conversations, or documents indicating that there was ever [such] agreement").

Second, Plaintiffs' § 1985(3) claim fails because Plaintiffs allege a (fanciful) private conspiracy to deprive them of equal protection and privileges and immunities, without any involvement of a state actor or allegations of state action. That frivolous claim is utterly devoid of legal merit. The 14th Amendment's Privileges and Immunities and Equal Protection Clauses are directed solely at state action. *See* 14th Amendment, Section 1 ("No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."). Section 1985(3) is remedial and provides no substantive rights on its own. *See United Brothers of Carpenters and Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 847 n.10 (1983). Accordingly, a conspiracy to deprive Plaintiffs of their Privileges and Immunities and Equal Protection rights violates Section 1985(3) only if Plaintiffs have alleged the involvement of a state actor. A private conspiracy without such allegation, like Plaintiffs' claim here, is not cognizable under Section 1985(3). *See, e.g., Pasadena Republican Club v. W. Justice Ctr.,* 985 F.3d 1161, 1171 (9th Cir. 2021) ("Like Section 1983, which requires the wrongdoer to be a state actor, Section 1985(3) requires at least one of the wrongdoers in the alleged conspiracy to be a state actor.").

1    While Plaintiffs also seek to invoke "rights under the First Amendment."
2    Amended Complaint, ¶ 416, a conspiracy alleging deprivation of First Amendment
3    rights also requires state action to be actionable under Section 1985(3).    *United*
4    *Brothers of Carpenters and Joiners of Am., Local 610, AFL-CIO*, 463 U.S. at 831-
5    33. Plaintiffs have therefore failed to state claims against WESPAC under both of
6    their Causes of Action.

7    The Amended Complaint repeats the original's allegation that the IRS requires
8    fiscal sponsors to retain control and discretion over use of funds sent to sponsored
9    entities for section 501(c)(3) purposes in order to maintain their tax-exempt status.
10   *See* Amended Complaint ¶ 105.  Obviously, this does not amount to an allegation that
11   WESPAC did anything, let alone something actionable, to the Plaintiffs.  And the
12   issue of WESPAC's preservation of its tax-exempt status is entirely irrelevant to
13   WESPAC's alleged liability under the FACE Act or Section 1985(3).[3]

14   Again, as in the original, the Amended Complaint does not, and cannot, allege
15   specific facts that might plausibly show an agency relationship. Plaintiffs do not
16   allege that PYM has ever represented WESPAC in dealings with third parties, or that
17   PYM has ever had the power to alter the legal relations between WESPAC and any
18   other party, or that PYM has ever acted as a fiduciary to WESPAC, or that WESPAC
19   has ever entrusted PYM with conducting business on WESPAC's behalf.  And,
20   certainly, Plaintiffs do not, and cannot, allege that WESPAC has ever done anything
21   to assent to PYM's acting on WESPAC's behalf.  Thus, there is no basis to conclude
22   that WESPAC and PYM share an agency relationship, let alone one that makes
23   WESPAC automatically liable for anything and everything PYM allegedly does, to
24   any human being who feels aggrieved, anywhere on the planet.

25   Cognizant of the lack of legal authority for their agency relationship theory,
26   *see* Doc. 60 at 5-8, Plaintiffs' Amended Complaint now suggests, again citing

27
_____
[3] To be clear, WESPAC does not, in any way, suggest it has done anything to lose such status.
28
DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST
AMENDED CLASS ACTION COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF
Case No:  2:24-cv-06253-SVW-PVCx

secondary sources, that there are some fiscal sponsorships in which the fiscal sponsor and its sponsoree become one integrated entity, with no separate legal identities, making the fiscal sponsor liable for everything the sponsoree does. Amended Complaint, ¶ 115.  This academic discourse is of no help to Plaintiffs here, because they do not, and cannot, actually allege any specific facts – any "events, conversations, or documents" indicating that WESPAC and PYM have ever held themselves out or operated as such integrated entity. *McCreary v. Heath*. All of their allegations about the nature of WESPAC's fiscal sponsorship of PYM are on information and belief, *id.,* ¶¶ 131-37, including the allegation, "on information and belief," that "WESPAC's fiscal-sponsorship []caused PYM to become an integrated part of WESPAC with no separate legal identity." This is paradigmatic pleading of "unwarranted inferences" and conclusory legal allegations that the Court should not accept as true.  *See Ashcroft v. Iqbal,* 556 U.S. at 678 (2009) (*citing Bell Atlantic Corp. v. Twombly,* 550 U.S. at 555); *Adams v. Johnson,* 355 F.3d at 1183.

Even if *arguendo* there were some authority for a cognizable legal theory supporting Plaintiff's legal conclusion that WESPAC could be liable to it solely because WESPAC generally provided to PYM donor funds earmarked for PYM (to accord donors a tax exemption), the failure to plead that WESPAC provided money that was actually used in connection with the Adas Torah events – the only events out of which Plaintiff's claims arise – is fatal to Plaintiff's claims against WESPAC. Even if *arguendo* the IRS regulation required every fiscal sponsor to exercise discretion and control over every dollar it gives to its fiscal sponsoree, the fact that Plaintiff has failed to allege – and cannot allege – that any WESPAC dollar was spent in connection with the June 23 events at issue makes it impossible for Plaintiff to state a valid claim against WESPAC.

//

//

**C.**   **WESPAC Respectfully Joins In The Motions Filed Or To Be Filed By Any Co-Defendant To Dismiss Plaintiffs' First Amended Class Action Complaint To The Extent They Apply To WESPAC**

WESPAC anticipates that other defendants in this case may file motions to dismiss the Amended Complaint raising other arguments common to all defendants, including, without limitation, those relating to Plaintiffs' lack of standing.  WESPAC respectfully joins in those arguments.

**III.   CONCLUSION**

For the foregoing reasons, WESPAC respectfully requests that this Court grant its motion pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) to dismiss Plaintiffs' First Amended Class Action Complaint in its entirety as against WESPAC, with prejudice, and grant such additional relief to WESPAC as the Court may deem appropriate and proper.


Dated:  January 2, 2025                    HERBST LAW PLLC


                                          By:  /s/ Robert L. Herbst
                                               Robert L. Herbst
                                               rherbst@herbstlawny.com
                                               420 Lexington Avenue, Suite 300
                                               New York, New York 10170
                                               Tel: 914-450-8163 Fax: 888-482-4676
                                               Attorneys for Defendant
                                               WESPAC FOUNDATION