HOLTZMAN VOGEL BARAN TORCHINSKY
 & JOSEFIAK PLLC
Dallin B. Holt*
dholt@holtzmanvogel.com
2555 East Camelback Rd, Ste 700
Phoenix, AZ 85016
Telephone: (602) 388-1262
Facsimile: (549) 341-8809
*Admitted Pro Hac Vice

Attorneys for Plaintiffs and Class Members

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOAH POLLAK, on behalf of all others similarly situated, and STANDWITHUS CENTER FOR LEGAL JUSTICE,<br><br>         Plaintiffs,<br><br>   v.<br><br>CODEPINK WOMEN FOR PEACE, a California entity; CODEPINK ACTION FUND, a California entity; WESPAC FOUNDATION, a New York entity; HONOR THE EARTH, a Minnesota entity; COURTNEY LENNA SCHIRF; REMO IBRAHIM, d/b/a PALESTINIAN YOUTH MOVEMENT; PALESTINIAN YOUTH MOVEMENT; and DOES #1-100,<br><br>         Defendants. | 2:24-cv-06253-SVW-PVC<br><br>Honorable Stephen V. Wilson<br>Courtroom 10A<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT WESPAC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**Date:  February 3, 2025**<br>**Time:  1:30 p.m.**<br>**Place:  Courtroom 10A** |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES ..................................... 1

I.    INTRODUCTION ...................................................................................... 1

II.    LEGAL STANDARD ................................................................................ 3

    A.    Personal Jurisdiction ........................................................................ 3

    B.    Failure to State a Claim.................................................................... 5

III.    ARGUMENT .............................................................................................. 6

    A.    This Court Has Personal Jurisdiction over WESPAC Because of Its Fiscal Sponsorship of PYM's Injurious California Conduct. ............ 6

    B.    Plaintiffs Have Adequately Stated Claims Against WESPAC Because It Alleges That WESPAC Exercised Control and Discretion over PYM's Activities, Including the Riot....................... 9

IV.    CONCLUSION ........................................................................................ 15

CERTIFICATE OF SERVICE......................................................................... 17

L.R. 11-6.2 CERTIFICATE OF COMPLIANCE ............................................ 18

# TABLE OF AUTHORITIES

**Cases**             **Page(s)**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................... 5, 6

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,*
  223 F.3d 1082 (9th Cir. 2000) .................................................... 4

*Bank of America, N.A. v. Knight,*
  725 F.3d 815 (7th Cir. 2013) ...................................................... 13

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................ 5, 12

*Bray v. Alexandria Women's Health Clinic,*
  506 U.S. 263 (1993) ............................................................... 13, 14

*Caltex Plastics, Inc. v. Lockheed Martin Corp.,*
  824 F.3d 1156 (9th Cir. 2016) .................................................... 5

*Davis v. Cranfield Aero. Sols., Ltd.,*
  71 F.4th 1154 (9th Cir. 2023) ..................................................... 3

*Griffin v. Breckenridge,*
  403 U.S. 88 (1971) ................................................................... 13

*In re Gilead Scis. Secs. Litig.,*
  536 F.3d 1049 (9th Cir. 2008) .................................................... 5

*Jingrong v. Chinese Anti-Cult World All. Inc.,*
  16 F.4th 47 (2d Cir. 2021) ........................................................ 11

*Mendocino Env't Ctr. v. Mendocino County,*
  192 F.3d 1283 (9th Cir. 1999) .................................................... 14

*New York ex rel. Tzac, Inc. v. New Isr. Fund,*
  520 F. Supp. 3d 362 (S.D.N.Y. 2021) ......................................... 7

*Preciado v. Freightliner Custom Chassis Corp.,*
  87 Cal. App. 5th 964 (Cal.App.4th 2023) ................................... 4, 6

*Rank, Inc. v. Haymon,*
  2015 U.S. Dist. LEXIS 164676 (C.D. Cal. Oct. 16, 2015) ............ 13

*Ranza v. Nike, Inc.,*
  793 F.3d 1059 (9th Cir. 2015) .................................................... 4

*Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.,*
  768 F.3d 938 (9th Cir. 2014) ...................................................... 5

*Roe v. Aware Woman Ctr. for Choice, Inc.*,
    253 F.3d 678 (11th Cir. 2001) ..................................................... 10, 11

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ........................................................ 4, 6

*Sharpe v. Conole*,
    386 F.3d 482 (2d Cir. 2004) ............................................................ 11

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ........................................................... 5

*Strasner v. Touchstone Wireless Repair & Logistics, LP*,
    5 Cal. App. 5th 215 (Cal.App.4th 2016) ............................................. 8

*Tucker v. Sedlak, No. 2:24-CV-00303-CCW*,
    2024 WL 4434965 (W.D. Pa. Oct. 7, 2024) ..................................... 10

*United Brotherhood of Carpenters & Joiners, Local 610 v. Scott*,
    463 U.S. 825 (1983) ................................................................... 13, 14

*United States v. 313.34 Acres of Land*,
923 F.2d 698 (9th Cir. 1991) ....................................... 6, 7, 10, 13

*United States v. Balint*,
    201 F.3d 928 (7th Cir. 2000) .......................................................... 10

*United States v. Gregg*,
    226 F.3d 253 (3d Cir. 2000) ........................................................... 13

*United States v. Retta*,
    840 F. Supp. 2d 262 (D.D.C. 2012) ................................................ 11

*United States v. Soderna*,
    82 F.3d 1370 (7th Cir. 1996) .......................................................... 10

*United States v. Wilson*,
    2 F. Supp. 2d 1170 (E.D. Wis. 1998) .............................................. 11

*United States v. Washington*,
    233 F.2d 811 (9th Cir. 1956) ......................................... 6, 7, 10, 13

*Zhang Jingrong v. Chinese Anti-Cult World All.*,
    287 F. Supp. 3d 290 (E.D.N.Y. 2018) ............................................. 14

**Statutes**

18 U.S.C. § 248 ....................................................... 3, 10, 11, 12

42 U.S.C. § 1985 ....................................................... 3, 10, 13

**Other**

Federal Rule of Civil Procedure 12 ....................................................................... 4, 5

Federal Rule of Civil Procedure 8 ........................................................................ 5

PLF'S OPPOSITION TO DEF WESPAC'S MOT. TO DISMISS FIRST AMENDED COMPL.
CASE NO. 2:24-CV-06253-SVW-PVC

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On June 23, 2024, a violent mob descended upon the heart of Los Angeles's Jewish community. *See* Am. Compl. ¶¶ 1-7, 228-230. Armed with bear spray and other weapons, donning the attire of Hamas terrorists, and yelling "Hitler didn't finish the job!", "Intifada!", and "Leave the neighborhood, we are coming!", the rioters used force and threats of force to prevent Jewish congregants from safely entering their house of worship, the Adas Torah Synagogue (the "Synagogue"). *See* Am. Compl. ¶¶ 1, 230-239, 244, 258, 261-269). The over two-hundred rioters who stood shoulder-to-shoulder in front of the main entrances to the Synagogue—which they called "THE BELLY OF THE BEAST"—intended to obstruct would-be worshippers from practicing their religion. *See* Am. Compl. ¶¶ 223, 240. They were largely successful in this goal: through their violent attacks and intimidating threats, the rioters rendered passage to and from the Synagogue too difficult and hazardous for many congregants to attempt. *See* Am. Compl. ¶¶ 271-307.

Plaintiff Noah Pollak is a resident of Los Angles whose ability to enter the Synagogue on June 23, 2024, was made unreasonably difficult or hazardous by virtue of Defendants' actions. ¶¶ 29, 308-21. Plaintiff StandWithUs Center for Legal Justice ("SCLJ") is a tax-exempt membership organization whose members include congregants from the Synagogue and members of the Los Angeles Jewish community who were forcefully prevented from exercising their First Amendment right of religious freedom at a place of religious worship due to the riot. *See* Am. Compl. ¶¶ 8-10, 20-22. Plaintiffs bring this action against the entities and individuals who organized, facilitated, and participated in the riot.

Defendant Palestinian Youth Movement ("PYM") is one such entity. *See* Am. Compl. ¶ 59. As an unincorporated association without a formal principal place of business or publicly identified leadership structure, PYM operates through local

chapters. *See* Am. Compl. ¶ 49. For example, PYM's local chapter for Los Angeles, Orange County, and the Inland Empire is run by Defendant Remo Ibrahim ("Ibrahim"), a resident of Mission Viejo, California. *See* Am. Compl. ¶¶ 93-95, 225-226. Together with Defendant Courtney Lenna Schirf ("Schirf"), a lead organizer for PYM, Ibrahim helped organize, publicize, and aid the attack on the Synagogue. *See* Am. Compl. ¶¶ 8, 91, 225-226.

PYM exists as an opaque organization that lacks tax-exempt status. Accordingly, it operates through the support of fiscal sponsors like Defendants WESPAC Foundation ("WESPAC") and Honor the Earth, who collect and disburse donations on PYM's behalf. *See* Am. Compl. ¶¶ 51, 60.

In its first Motion to Dismiss, Doc. 49, WESPAC described its status as PYM's fiscal sponsor as "uncontroversial[]." Doc. 49 at 9. This was further evidenced by the exhibits to SCLJ's Opposition Brief, Doc. 59, which showed that WESPAC was accepting and disbursing donations for PYM during the period immediately preceding the riot. *See* Doc. 59, Exs. 1, 2. And, as SCLJ explained in its Opposition Brief and First Amended Complaint, what is just as "uncontroversial" as WESPAC's fiscal sponsorship of PYM are the legal implications it carries: WESPAC "retain[ed] control and discretion" over how PYM used its funds, and is thus liable for PYM's unlawful conduct. *See* Am. Compl. ¶¶ 96-137.

WESPAC, however, has filed a second Motion to Dismiss, Doc. 76, in which it denies this legal reality to argue that (1) WESPAC is not subject to this Court's personal jurisdiction, and (2) the Amended Complaint fails to state a claim against WESPAC. As in WESPAC's first Motion to Dismiss (which WESPAC incorporated into the current Motion to Dismiss, *see* Doc. 76 at 7), the basis for these arguments is that WESPAC's fiscal sponsorship of PYM in the days leading up to the riot does not expose it to liability for PYM's conduct. Once again, these arguments fail as a matter of law because—absent evidence that WESPAC did *not*

PLF'S OPPOSITION TO DEF WESPAC'S MOT. TO DISMISS FIRST AMENDED COMPL.
CASE NO. 2:24-CV-06253-SVW-PVC

comply with the legal requirements of a fiscal sponsor—WESPAC's fiscal sponsorship arrangement with PYM is indeed sufficient to state a claim against WESPAC and exercise personal jurisdiction over it. WESPAC cannot have its cake and eat it too—it either followed the fiscal sponsorship rules and exercised control and discretion over PYM, thus retaining its tax-exempt status, or, it did not exercise control and discretion over PYM, and therefore is at risk of losing its status as a tax-exempt organization.

## II.    <u>LEGAL STANDARD</u>

As PYM's fiscal sponsor, WESPAC served as PYM's conduit to receive tax-exempt contributions in the days leading up to the riot. In order to maintain its own tax-exempt benefits, WESPAC exercised control and discretion over PYM and reviewed and approved its activities to ensure that PYM was acting in furtherance of WESPAC's tax-exempt purposes. PYM and its Los Angeles representative Ibrahim openly called for people to descend upon the Synagogue and obstruct access to would-be worshippers, and people—including members of PYM—heeded the call. This lawsuit followed. As such, this Court can properly exercise personal jurisdiction over WESPAC, and Plaintiffs can adequately state claims against WESPAC under 18 U.S.C. § 248(a)(2) (the "FACE Act") (Count I) and 42 U.S.C. § 1985(3) (Count II).

### A.    <u>Personal Jurisdiction</u>

"General jurisdiction—or 'all-purpose' jurisdiction—comes into play when a defendant is 'essentially at home' in the forum state." *Davis v. Cranfield Aero. Sols., Ltd.*, 71 F.4th 1154, 1161 (9th Cir. 2023) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 372 (2021) (Alito, J., concurring)). "Specific jurisdiction, on the other hand, permits jurisdiction over a defendant 'less intimately connected' with a forum state." *Id.* Here, specific jurisdiction exists and is sufficient.

The U.S. Court of Appeals for the Ninth Circuit uses a three-part test to determine whether specific jurisdiction exists. *See id.* First, "[t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof," or perform some other act "by which he purposefully avails himself of the privilege of conducting activities in the forum." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). Second, "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Id.* Third, the exercise of jurisdiction "must be reasonable." *Id.* "The plaintiff bears the burden of satisfying the first two prongs of the test," at which point "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)); *see also Preciado v. Freightliner Custom Chassis Corp.*, 87 Cal. App. 5th 964, 977 (Cal.App.4th 2023).

When evaluating a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) "based on written materials rather than an evidentiary hearing," the court "only inquire[s] into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Schwarzenegger*, 374 F.3d at 800 (quoting *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995)). "[U]ncontroverted allegations in the complaint must be taken as true," and to the extent that relevant affidavits exist, conflicts "must be resolved in the plaintiff's favor." *Id.* (citing *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)); *see also Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) ("Because the prima facie jurisdictional analysis requires us to accept the plaintiff's allegations as true, we must adopt [the plaintiff's] version of events for purposes of this appeal."); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (same).

PLF'S OPPOSITION TO DEF WESPAC'S MOT. TO DISMISS FIRST AMENDED COMPL. CASE NO. 2:24-CV-06253-SVW-PVC

### B.     Failure to State a Claim

A court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party" when evaluating a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). A court does not need to accept as true "allegations that are merely conclusory," *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008), but if the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" the court must deny the motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)).

This standard stems from Federal Rule of Civil Procedure 8(a), which requires the plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This theory of "notice-pleading" replaced state pleading rules that "largely required code, or fact, pleading, under which pleaders were required to allege very specifically the factual bases for their claims." *Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011). "By contrast, under the federal rules a complaint is required only to give the notice of the claim such that the opposing party may defend himself or herself effectively." *Id.*

As such, a claim will survive a motion to dismiss under Rule 12(b)(6) if the plaintiff pleads enough non-conclusory facts to state a plausible claim for relief. *See Twombly*, 550 U.S. at 570. Indeed, "[a] complaint may be dismissed for failure to state a claim *only* when it fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed*

PLF'S OPPOSITION TO DEF WESPAC'S MOT. TO DISMISS FIRST AMENDED COMPL. CASE NO. 2:24-CV-06253-SVW-PVC

*Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016) (emphasis added). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Regarding judicial experience and common sense, it is the Ninth Circuit's longstanding precedent that courts presume "that the ordinary course of business was followed and that the law was obeyed" when the plaintiff's legal theory relies on the defendant's adherence to its legal obligations. *United States v. 313.34 Acres of Land*, 923 F.2d 698, 703 (9th Cir. 1991) (quoting *United States v. Washington*, 233 F.2d 811, 816 (9th Cir. 1956)). While this presumption "is not an irrebuttable one," it "shifts to the [defendant] the burden of going forward with evidence demonstrating" that it did not follow the ordinary course of business and fulfill its legal duties. *Id.* If the defendant does not satisfy this burden, the plaintiff's allegations that stem from this presumption must be taken as true. *See id.*; *Washington*, 233 F.2d at 816.

## III.  <u>ARGUMENT</u>

### A. <u>This Court Has Personal Jurisdiction over WESPAC Because of Its Fiscal Sponsorship of PYM's Injurious California Conduct.</u>

Plaintiffs have made the required two-part showing to establish this Court's specific personal jurisdiction over WESPAC. First, due to WESPAC's uncontroverted fiscal sponsorship of PYM in the period leading up to the riot, WESPAC has purposefully directed its activities and engaged in transactions with California residents. *See, e.g.*, *Schwarzenegger*, 374 F.3d at 802. Second, the claims in this lawsuit arise out of and relate to WESPAC's activities and transactions in California. *See id.*; *Preciado*, 87 Cal. App. 5th at 977.

When WESPAC decided to enter into a fiscal sponsorship arrangement with PYM, it made the voluntary choice to accept, collect, and disburse tax-deductible donations on PYM's behalf. This decision was not accidental: WESPAC regularly

PLF'S OPPOSITION TO DEF WESPAC'S MOT. TO DISMISS FIRST AMENDED COMPL.
CASE NO. 2:24-CV-06253-SVW-PVC

enters into similar fiscal sponsorship agreements with other groups that align with its antisemitic mission, such as National Students for Justice in Palestine ("NSJP") and Within Our Lifetime. *See* Am. Compl. ¶¶ 58, 127-130. The decision to become PYM's fiscal sponsor also created legal responsibilities for WESPAC. *See, e.g.*, *New York ex rel. Tzac, Inc. v. New Isr. Fund*, 520 F. Supp. 3d 362, 388-89 (S.D.N.Y. 2021). As it is undoubtedly aware due to its other fiscal sponsorships, WESPAC was required to (among other requirements) "review[] and approve[]" PYM's activities "as being in furtherance of it[s] own exempt purposes," maintain "adequate documentation or adequate controls over finances to demonstrate that no funds [were] used for non-exempt purposes," and retain "complete discretion and control over the use of the contributions it receive[d] on behalf" of PYM. Am. Compl. ¶¶ 101-109 (citing *id.* and other authorities). Despite WESPAC's assertions to the contrary, these requirements are far from irrelevant "academic discourse." Doc. 76 at 12, 22. Instead, they establish the extent of WESPAC's involvement in PYM's activities by highlighting the actions WESPAC was legally required to take, lest it jeopardize its own tax-exempt status. *See* Am. Compl. ¶ 105. WESPAC can of course rebut this presumption by providing the information and/or documentation pertaining to its fiscal sponsorship. Despite multiple requests, WESPAC has yet to provide *any* information pertaining to its fiscal sponsorship arrangement with PYM. It is Plaintiffs' position that the First Amended Complaint is more than sufficient in its allegations to support the Court in denying WESPAC's Motion to Dismiss outright and moving forward with full discovery. However, in the event the Court feels it needs more information, limited jurisdictional discovery from WESPAC, PYM, and Honor the Earth would be appropriate to assist in determining the exact scope of the fiscal sponsorship arrangments.

Accordingly, absent any evidence that WESPAC willfully *ignored* its obligations as PYM's fiscal sponsor (which would pose a host of problems for

WESPAC's tax exempt status), it is presumed that WESPAC followed the law and exercised control and discretion over PYM's activities. *See 313.34 Acres*, 923 F.2d at 703; *Washington*, 233 F.2d at 816. And there is no doubt that these activities occurred in California: the riot, which PYM and Ibrahim publicized, organized, and aided, was at a Los Angeles synagogue. *See* Am. Compl. ¶¶ 8, 91, 225-226. As such, this Court may properly determine that WESPAC purposefully directed conduct towards California residents.

WESPAC, however, declares this a "frivolous contention," Doc. 76 at 15, and cites *Strasner v. Touchstone Wireless Repair & Logistics, LP*, 5 Cal. App. 5th 215 (Cal.App.4th 2016) to support its argument that WESPAC's activities do not satisfy the purposeful direction test. Not only is this case inapposite; it actually *supports* this Court's proper exercise of personal jurisdiction over WESPAC. In *Strasner*, the court held that dismissal for lack of personal jurisdiction was appropriate because the plaintiff attempted "to impute a California parent company's forum contacts to an out-of-state subsidiary," but did not "contend she [could] establish an alter-ego relationship" between the parent company and the defendant out-of-state subsidiaries. *Strasner*, 5 Cal. App. 5th at 224. Here, however, Plaintiffs do contend that they can establish such a relationship between WESPAC and PYM, as "the project becomes an integrated part of the fiscal sponsor, with no legal identity separate from the fiscal sponsor" under the most common form of fiscal sponsorship. Am. Compl. ¶¶ 115, 137. Moreover, the relationship between WESPAC and PYM reflects "the underlying principle of imputation through agency" that the court in *Strasner* said would in fact be sufficient to establish personal jurisdiction. *Strasner*, 5 Cal. App. 5th at 224. Indeed, personal jurisdiction is proper when "a nonresident entity exert[s] power over the day-to-day operations of the resident corporation, akin to a nonresident puppeteer pulling the strings of a

California puppet." *Id.* (citing *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 542 (Cal.App.4th 2000)).

Regardless, a robust agency theory is not necessary for this Court to exercise personal jurisdiction over WESPAC. Even if PYM was not an integrated part of WESPAC, WESPAC's fiscal sponsorship means it purposefully directed its activities at California by exercising control and discretion over PYM's California operations. These operations include the riot out of which this lawsuit stems, which means Plaintiffs can meet the two-pronged test for personal jurisdiction. Because WESPAC cannot establish that personal jurisdiction would be unreasonable beyond its base allegation that it would be "absurd," Doc. 76 at 16, the Motion to Dismiss for lack of personal jurisdiction should be denied.

**B.   Plaintiffs Have Adequately Stated Claims Against WESPAC Because They Allege That WESPAC Exercised Control and Discretion over PYM's Activities, Including the Riot.**

Plaintiffs allege that, as PYM's fiscal sponsor, WESPAC is liable for PYM's unlawful conduct in connection with the riot. These are not conclusory allegations as WESPAC contends, but are factual assertions grounded in the legal responsibilities of fiscal sponsors. As such, because WESPAC's liability is plausible on the basis of well-pleaded facts, WESPAC's Motion to Dismiss for failure to state a claim should be denied.

According to WESPAC, the discussion of WESPAC's responsibilities as PYM's fiscal sponsor and related factual assertions "do[] not amount to an allegation that WESPAC did anything, let alone something actionable, to the Plaintiffs." Doc. 76 at 21. This assertion, however, is untrue: the Amended Complaint alleges, among other facts, that (1) PYM and its representatives organized, aided, and participated in the riot [CITE]; (2) "PYM became an integrated part of WESPAC with no separate legal identity," Am. Compl. ¶ 137; (3)

WESPAC's Board was required to and did make "an independent determination that PYM's activities as alleged herein furthered WESPAC's mission, and approved of the same," Am. Compl. ¶ 131; and (4) WESPAC maintained "complete oversight over PYM's activities" and retained "complete control and discretion" over PYM's use of funds. Am. Compl. ¶¶ 132-134. These factual allegations stem from the actions that all proper fiscal sponsorship arrangements entail, and as of this filing, there is no evidence to suggest that WESPAC acted otherwise. *See 313.34 Acres*, 923 F.2d at 703; *Washington*, 233 F.2d at 816**.**

To that end, WESPAC can only assert that these allegations are insufficient because they do not meet the elements required for claims under the FACE Act or 42 U.S.C. § 1985(3), or because they constitute "impermissible group pleading." Doc. 76 at 17-18. Each of these arguments, however, is incorrect.

Indeed, WESPAC misrepresents the requirements to plead a claim under § 248(a)(2) of the FACE Act. "The [FACE] Act forbids the use of force or threats of force or physical obstruction deliberately to injure, intimidate, or interfere with . . . people seeking to exercise their religious rights in a church or other house of worship." *United States v. Soderna*, 82 F.3d 1370, 1372-73 (7th Cir. 1996) (citing 18 U.S.C. § 248(a)). While this FACE Act provision has not been litigated as much as its parallel "reproductive health services" provision, 18 U.S.C. § 248(a)(1), courts have recognized that the purpose and verbiage of both provisions are essentially the same. *See Soderna*, 82 F.3d at 1372-73 (discussing both provisions in tandem); *Tucker v. Sedlak*, No. 2:24-CV-00303-CCW, 2024 WL 4434965, at *3 (W.D. Pa. Oct. 7, 2024) (same). And because "statute itself sets out the three elements" of a claim under § 248(a)(1), the same applies to claims under § 248(a)(2). *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 680-81 (11th Cir. 2001); *see also United States v. Balint*, 201 F.3d 928, 932 (7th Cir. 2000) ("Parsing this language, a violation of the Act has three elements."). As such, a

PLF'S OPPOSITION TO DEF WESPAC'S MOT. TO DISMISS FIRST AMENDED COMPL.
CASE NO. 2:24-CV-06253-SVW-PVC

plaintiff can state a claim under § 248(a)(2) by alleging that a defendant (1) "by force or threat of force or by physical obstruction," (2) "intentionally injure[d], intimidate[d] or interfere[d] with or attempt[ed] to injure, intimidate or interfere with" (3) "any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship." 18 U.S.C. § 248(a)(2); *Roe*, 253 F.3d at 680-81.

The FACE Act, as it pertains to abortion clinic claims, requires not only intent to engage in the physical activity that leads to violence, obstruction, or intimidation, but also requires that defendants have a subjective motive to prevent someone from obtaining reproductive health services. *See* 18 U.S.C. § 248(a)(1)&(3) (both subsections include the word "because"); *see also Roe v. Aware Woman Ctr. for Choice*, 253 F.3d 678, 680-83 (11th Cir. 2001) (discusses the the difference between intent and motive and the importance of the word "because" in creating a subjective motive requirment for defendants in abortion clinic FACE Act claims); *Jingrong v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47, 58-59 (2d Cir. 2021) (holds that § 248 (a)(2) affirmitivly protects individuals who are practicing their religion at places of religious worship); *Sharpe v. Conole*, 386 F.3d 482, 484-85 (2d Cir. 2004) (discusses the importance of the word "because" in requiring subjective motive from defendants in abortion clinic FACE Act claims); *United States v. Retta*, 840 F. Supp. 2d 262, 265-68 (D.D.C. 2012) (discusses the importance of the word "because" in requiring subjective motive from defendants in abortion clinic FACE Act claims); *United States v. Wilson*, 2 F. Supp. 2d 1170, 1171-72 (E.D. Wis. 1998) (discusses the the difference between intent and motive and the importance of the word "because" in requiring subjective motive from defendants in abortion clinic FACE Act claims). However, § 248(a)(2), the religious protection subsection of the FACE Act, removes the word "because" and instead focuses on why someone is seeking to enter or exit a place of religious worship. *See* 18 U.S.C. § 248(a)(2) ("by

PLF'S OPPOSITION TO DEF WESPAC'S MOT. TO DISMISS FIRST AMENDED COMPL.
CASE NO. 2:24-CV-06253-SVW-PVC

force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere *with any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship*") (emphasis added). As such, while the "that is not why I blocked the entrance to the Synangogue" defense might work in the abortion clinic context, it is of no import in the religious protection context. Instead, the reason why someone is seeking to enter the place of religious worship is what is important. *Id.*

Plaintiffs have alleged enough specific facts that allow this Court to determine that it has a facially plausible claim for relief under the FACE Act. *See Twombly*, 550 U.S. at 570. As detailed in the First Amended Complaint, Plaintiffs tried to practice their religion at the Synagogue on June 23, 2024 (32-39) but were prevented from doing so because a violent mob of Defendants attacked them with bear spray, beat them with blunt objects, and physically obstructed their access to the building. *See* Am. Compl. ¶¶ 32-39, 207-248, 271-307. The Amended Complaint alleges that this was not a spontaneous occurrence (although even that would be sufficient) but was instead actively organized and facilitated by Defendants. *See* Am. Compl. ¶¶ 207-230, 236-238. These allegations are more than sufficient to meet the pleading requirements for a claim under § 248(a)(2).

WESPAC, however, argues that Plaintiffs' FACE Act claim should be dismissed because it has not specifically alleged that WESPAC "[d]id *anything at all* relating to the Adas Torah event" or the riot. Doc. 76 at 18-19. This is not so. Plaintiffs have indeed alleged that, as PYM's fiscal sponsor, WESPAC maintained complete oversight, control, and discretion over PYM's activities, including the riot that PYM promoted, organized, and joined. *See* Am. Compl. ¶¶ 132-135. Plaintiffs also allege that WESPAC "provided PYM with access to WESPAC's administrative services, staff, and facilities" through its fiscal sponsorship

arrangement, and that all these resources "were used to plan and/or carry out PYM's activities" relating the riot. Am. Compl. ¶ 136. Additionally, Plaintiffs allege that the fiscal sponsorship agreement between WESPAC and PYM "caused PYM to become an integrated part of WESPAC with no separate legal identity." Am. Compl. ¶ 137. These factual allegations—which are presumed to be true absent contrary evidence from WESPAC—are more than sufficient to survive WESPAC's Motion to Dismiss the FACE Act claim. *See 313.34 Acres*, 923 F.2d at 703; *Washington*, 233 F.2d at 816.

Relatedly, WESPAC incorrectly claims that Plaintiffs cannot state a claim under the FACE Act because their allegations are presented through impermissible group pleading. This is wrong on two counts. First, for all the reasons discussed above, Plaintiffs allege that WESPAC had direct control over and substantial involvement in PYM's activities, including the riot. Second, "damages under [the] FACE [Act] are properly awarded jointly and severally among defendants," *United States v. Gregg*, 226 F.3d 253, 256 (3d Cir. 2000), as opposed to on the basis of personal liability. Indeed, the cases that WESPAC cites—*Top Rank, Inc. v. Haymon*, 2015 U.S. Dist. LEXIS 164676, at *25-26 (C.D. Cal. Oct. 16, 2015), and *Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013)—do not discuss FACE Act claims.

Lastly, WESPAC misstates the elements of a claim under 42 U.S.C. § 1985(3), as well as Plaintiffs' ability to plead them. First, it is not true that all claims under § 1985(3) require the involvement of a state actor. In *Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971), the Court held "that all indicators—text, companion provisions, and legislative history—point unwaveringly to § 1985(3)'s coverage of private conspiracies." While state involvement in the conspiracy is required "when the alleged conspiracy is aimed at a right that is by definition a right *only* against state interference," *United Brotherhood of Carpenters & Joiners, Local 610 v. Scott*,

PLF'S OPPOSITION TO DEF WESPAC'S MOT. TO DISMISS FIRST AMENDED COMPL.
CASE NO. 2:24-CV-06253-SVW-PVC

463 U.S. 825, 833 (1983), state participation is *not* required when the conspiracy is "'aimed at interfering with rights' that are 'protected against private, as well as official, encroachment.'" *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993) (quoting *id.*). Because Plaintiffs allege that Defendants conspired to deprive its members of their rights under the FACE Act (which protects individuals against private encroachment), Plaintiffs do not need to allege state involvement in the conspiracy to state a claim under § 1985(3). *See id.*; *Zhang Jingrong v. Chinese Anti-Cult World All.*, 287 F. Supp. 3d 290, 303 (E.D.N.Y. 2018) ("Where a plaintiff seeks to vindicate a right under § 1985(3) which is otherwise protected against private encroachment, '[§] 1985(3) constitutionally can and does protect those rights from interference by purely private conspiracies.'" (quoting *Carpenters*, 463 U.S at 833)).

As such, Plaintiffs need only allege that, due to invidiously discriminatory animus, Defendants entered into a conspiracy to deprive Plaintiffs of their rights and took an injurious act in furtherance of that conspiracy. *See Carpenters*, 463 U.S at 828-29; *Bray*, 506 U.S. 267-68. Plaintiffs have met these requirements, alleging that—as PYM's fiscal sponsor—WESPAC conspired with the other Defendants to violate the FACE Act, which was in turn violated to Plaintiffs' detriment when the riot occurred. *See* Am. Compl. ¶¶ 208, 416-419. This conspiracy and the riot to which it led was motivated by discriminatory animus towards Jews, as evidenced by WESPAC's history of supporting antisemitic causes and organizations and the hateful conduct of the rioters themselves. *See* Am. Compl. ¶¶ 122-129, 261-269. These allegations are sufficiently plausible to state a claim of conspiracy. *See Mendocino Env't Ctr. v. Mendocino County*, 192 F.3d 1283, 1302 (9th Cir. 1999) ("[D]irect evidence of improper motive or an agreement among the parties to violate a plaintiff's constitutional rights will only rarely be available.

Instead, it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action.").

## IV.    **CONCLUSION**

For the forgoing reasons, Plaintiffs respectfully request that this Court deny WESPAC's motion to dismiss and allow discovery to proceed.

Respectfully submitted this 13th day of January 2025.

*/s/ Dallin B. Holt*
Dallin B. Holt*
dholt@holtzmanvogel.com
Holtzman Vogel Baran Torchinsky
and Josefiak PLLC
2555 East Camelback Rd, Ste 700
Phoenix, AZ 85016
Telephone: (602) 388-1262
Fax: (549) 341-8809

Jason B. Torchinsky*
jtorchinsky@holtzmanvogel.com
Edward M. Wenger*
emwenger@holtzmanvogel.com
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK, PLLC
2300 N Street NW, Suite 643
Washington, DC 20037
(202) 737-8808 (telephone)
(540) 341-8809 (facsimile)

Mark Goldfeder*
mark@jewishadvocacycenter.org
Ben Schlager*
ben@jewishadvocacycenter.org
NATIONAL JEWISH ADVOCACY
CENTER, INC.
INTERNATIONAL LEGAL
FORUM
1718 General George Patton Drive

PLF'S OPPOSITION TO DEF WESPAC'S MOT. TO DISMISS FIRST AMENDED COMPL.
CASE NO. 2:24-CV-06253-SVW-PVC

Brentwood, TN 37027
(800) 269-9895 (telephone)
(800) 758-5232 (facsimile)

Daniel R. Paluch
dpaluch@ghplaw.com
GIPSON HOFFMAN & PANCIONE
1901 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-6002
Telephone: (310) 556-4660
Facsimile: (310) 556-8945

*Attorneys for Plaintiffs and Class Members*

*\* Admitted Pro Hac Vice*

PLF'S OPPOSITION TO DEF WESPAC'S MOT. TO DISMISS FIRST AMENDED COMPL.
CASE NO. 2:24-CV-06253-SVW-PVC

## **CERTIFICATE OF SERVICE**

I hereby certify on January 13, 2025 I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Central District of California by using the CM/ECF System.

Participants in the case who are registered CM/ECF Users will be served by the CM/ECF System.


DATED: January 13, 2025

                                                                    */s/ Dallin B. Holt*
                                                                    Dallin B. Holt*
                                                                    dholt@holtzmanvogel.com
                                                                    Holtzman Vogel Baran Torchinsky
                                                                    and Josefiak PLLC
                                                                    2555 East Camelback Rd, Ste 700
                                                                    Phoenix, AZ 85016
                                                                    Telephone: (602) 388-1262
                                                                    Fax: (549) 341-8809

                                                                    *Admitted Pro Hac Vice*

PLF'S OPPOSITION TO DEF WESPAC'S MOT. TO DISMISS FIRST AMENDED COMPL.
CASE NO. 2:24-CV-06253-SVW-PVC

## **L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Plaintiffs certifies that this brief contains 4,559 words, which complies with the word limit of L.R. 11–6.1.

DATED: January 13, 2025

*/s/ Dallin B. Holt*
Dallin B. Holt*
dholt@holtzmanvogel.com
Holtzman Vogel Baran Torchinsky and Josefiak PLLC
2555 East Camelback Rd, Ste 700
Phoenix, AZ 85016
Telephone: (602) 388-1262
Fax: (549) 341-8809

*Admitted Pro Hac Vice*

PLF'S OPPOSITION TO DEF WESPAC'S MOT. TO DISMISS FIRST AMENDED COMPL.
CASE NO. 2:24-CV-06253-SVW-PVC