Robert L. Herbst (NYSBN 1333194)
rherbst@herbstlawny.com
HERBST LAW PLLC
420 Lexington Avenue, Suite 300
New York, New York 10170
Tel: 914-450-8163 / Fax: 888-482-4676

Ramsey Judah (SBN 342300)
ramsey@judahlawgroup.com
JUDAH LAW GROUP
1026 W. Foothill Blvd
Upland, CA  91786
Tel: 626-899-7667

Attorneys for Defendant
WESPAC FOUNDATION

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NOAH POLLAK, on behalf of all others similarly situated, and STANDWITHUS CENTER FOR LEGAL JUSTICE,<br><br>Plaintiff,<br><br>v.<br><br>CODEPINK WOMEN FOR PEACE, a California entity; CODEPINK ACTION FUND, a California entity; WESPAC FOUNDATION, a New York entity; HONOR THE EARTH, a Minnesota entity; COURTNEY LENNA SCHIRF; REMO IBRAHIM, d/b/a PALESTINIAN YOUTH MOVEMENT; PALESTINIAN YOUTH MOVEMENT; and DOES #1-100,<br><br>Defendants. | CASE NO: 2:24-cv-06253-SVW-PVCx<br><br>Honorable Stephen V. Wilson<br>Courtroom 10A<br><br>**DEFENDANT WESPAC FOUNDATION'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**Date:** **Monday, February 3, 2025**<br>**Time:** **1:30 p.m.**<br>**Place:** **Courtroom 10A**<br>**350 W. 1st Street**<br>**Los Angeles, California 90012**<br><br>Complaint Filed: July 24, 2024<br>Trial Date: Not Set |

# REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant WESPAC Foundation ("WESPAC") respectfully submits this Reply Memorandum of Points and Authorities in support of its Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("Amended Complaint" or "FAC"), pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, and Rule 12(b)(6) for failure to state a claim.

## II. ARGUMENT

### A. PLAINTIFFS' FAILURE TO CONTEST WESPAC'S FUNDAMENTAL ARGUMENTS HIGHLIGHTS THE ABSENCE OF PERSONAL JURISDICTION AND THE INVALIDITY OF PLAINTIFFS' CLAIMS

Like their prior opposition to WESPAC's motion to dismiss the original Complaint, Plaintiffs' Opposition Brief ("Opp. Br."), Doc. 85, concedes that WESPAC had nothing to do with the alleged events at issue. Plaintiffs do not dispute that they have not and cannot allege that anyone from WESPAC knew in advance of the protest at Adas Torah; went to it; urged anyone (including PYM) to go to it; communicated with anyone about it; provided any funds for it; or did anything itself in relation to it. In fact, Plaintiffs do not even allege definitively that PYM was actually present at, funded, or did anything else in connection with the protest.

In both its prior motion papers and its Initial Brief on this motion to dismiss the FAC, WESPAC emphasized that Plaintiffs do not and cannot allege that WESPAC or PYM spent any funds in connection with the June 23, 2024 "riot" event out of which Plaintiffs' alleged injuries arose. Indeed, in that Brief, Doc. 76, at 4, we pointed out that, in the Amended Complaint, Plaintiffs have withdrawn their allegation in the original Complaint that the attack (out of which their injuries arose) was "funded" by WESPAC. Both before and now, Plaintiffs rely solely on the alleged fact that WESPAC acted generally as PYM's fiscal sponsor, rather than on

any specific allegation that WESPAC provided PYM with money that PYM spent in connection with the Adas Torah "riot" or that WESPAC did anything else itself relating to the "riot," either in California or anywhere else.

In response, we have argued repeatedly that (1) Plaintiffs do not allege that any funds WESPAC ever sent to PYM were used in connection with the alleged events, or that PYM itself used funds from any source in connection with those events, and thus (2) Plaintiffs have failed to plead that their alleged injuries arose from any activity by WESPAC, *as a fiscal sponsor or otherwise*, let alone activity in or directed at California, and therefore (3) Plaintiffs have failed to allege a basis either for specific personal jurisdiction over, or valid claims against, WESPAC. *See, e.g.,* Doc. 76, at 1, 2, 3, 4, 15, 16.[1]

Considering the prominence WESPAC has accorded this critical, fundamental argument, one might think that Plaintiffs would address it. But there is not one word about it in their Opposition Brief. They do not contest that they have withdrawn their allegation that WESPAC funded the June 23 protest and related events. They do not argue that they have alleged that either WESPAC or PYM spent one dime in connection with those events. And Plaintiffs do not mention, let alone challenge, WESPAC's contention that, if neither PYM nor WESPAC was responsible for one dime spent on those events, WESPAC cannot be liable to Plaintiffs, *as fiscal sponsor or otherwise,* for any injuries they allegedly suffered arising out of those events. That alone warrants dismissal of Plaintiffs' case.

Specific personal jurisdiction is also clearly lacking for the same reasons.

---

[1] As we emphasized in concluding our Initial Brief, at 15-16: "[T]he failure to plead that WESPAC provided money that was actually used in connection with the Adas Torah events – the only events out of which Plaintiff[s'] claims arise – is fatal to Plaintiff[s'] claims against WESPAC. Even if *arguendo* the IRS regulation required every fiscal sponsor to exercise discretion and control over every dollar it gives to its fiscal sponsoree, the fact that Plaintiff has failed to allege – and cannot allege – that any WESPAC dollar was spent in connection with the June 23 events at issue makes it impossible for plaintiff to state a valid claim against WESPAC."

1  Plaintiffs agree that specific jurisdiction requires that WESPAC's "suit-related
2  conduct must create a substantial connection with" California.  But the Amended
3  Complaint alleges no such connection, nor can it, because WESPAC – whose sole
4  connection to this case, according to Plaintiffs, is because of WESPAC's general
5  fiscal sponsorship activities "accepting and disbursing donations for PYM during the
6  period immediately preceding the riot[,]" Doc. 85, at 2 – did not provide one dime of
7  such donations to support the June 23 events out of which Plaintiffs' injuries
8  allegedly arose, and Plaintiffs neither allege nor argue otherwise.

9  　　　This, too, is a jurisdictional point we have made repeatedly, yet Plaintiffs do
10 not address it in their Opposition.  Plaintiffs do not dispute that PYM does not have
11 a place of business in California but rather operates around the world.  Accordingly,
12 WESPAC's general provision of donor funds to PYM – without providing any funds
13 used or to be used in California in connection with the June 23 events out of which
14 Plaintiffs' injuries allegedly arose – can hardly be said to be "purposely directed" at
15 California residents (or to have any relation to Plaintiffs' claims).  Plaintiffs' failure
16 to address this argument is fatal to their jurisdictional claim.  None of Plaintiffs' cases
17 support their claim.[2]  There are simply no factual allegations in the FAC that plausibly
18 establish that WESPAC's conduct was targeted at California with the knowledge that
19 its general provision of funds to PYM would harm Plaintiffs in California.  *See* Doc.
20 76, at 15-16, *quoting Strasner v Touchstone Wireless Repair & Logistics, LP*, 5 Cal.

---

[2] *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 807 (9th Cir. 2004), *rejected* Schwarzenegger's specific personal jurisdictional claim for *lack* of purposeful direction for failure to show that the Ohio defendant's intentional act was "expressly aimed" at California. Here, too, Plaintiffs have plausibly failed to allege that any intentional act of WESPAC's was expressly aimed at California, let alone that any such act "caused harm that [WESPAC] knows is likely to be suffered in" California. *Preciado v. Freightliner Custom Chassis Corp.*, 87 Cal. App. 5th 964, 977 (Cal.App.4th 2023) also rejected plaintiffs' specific personal jurisdictional claim for failure to show "that their claims against FCCC arise out of or relate to FCCC's contacts with California." Plaintiffs here share the same defect. *New York ex rel. Tzac, Inc. v. New Isr. Fund*, 520 F. Supp. 3d 362, 388-89 (S.D.N.Y. 2021) does not even discuss personal jurisdiction.

App. 5th 215, 231, 210 Cal. Rptr. 3d 16, 28-30 (2016). Nor can Plaintiffs obtain jurisdiction over WESPAC by alleging that WESPAC's actions in providing general donor funds to PYM for other charitable purposes or uses, or allegedly providing general administrative support, in some way "set in motion" the June 23 events which allegedly ultimately injured Plaintiffs in California. *See* Doc. 76, at 16, *quoting Pavlovich v. Superior Court*, 29 Cal.4th 262, 274-75 (2002).

Plaintiffs do not even mention *Pavlovich,* let alone address that critical part of its holding. They also dodge *Strasner* and WESPAC's argument based upon it, suggesting that it is inapposite only because WESPAC and PYM's general fiscal sponsorship arrangement purportedly created an "alter-ego relationship" or "integrated entity," in which PYM and WESPAC have "no legal identity" separate from each other. *See* Am. Compl. Par. 115, 137; Doc. 85, at 8, 9 13 (13, 14 and 18 of 23).

Let's be clear about why this unsupported and unsupportable legal conclusion came to be added to the Amended Complaint: WESPAC's motion to dismiss the original Complaint made clear that Plaintiffs' agency theory – making WESPAC vicariously liable for anything PYM did, to anyone, anywhere in the world, solely because of WESPAC's general fiscal sponsorship of PYM – was contrary to agency principles and, in Plaintiffs' word, not "robust" enough to preserve its case against WESPAC. *See* Opp. Br. 9 (declaring that "a robust agency theory is not necessary for this Court to exercise personal jurisdiction over WESPAC").

But Plaintiffs' "integrated entity" theory is as bankrupt as their agency theory. In WESPAC's Corporate Disclosure Statement and Notice of Interested Parties, WESPAC's attorney of record has certified that there are no persons, associations of persons, firms, partnerships, or corporations (including parent or affiliated corporations or entities) which have a pecuniary interest in the outcome of this case, with the possible exception of WESPAC's liability insurance carrier, which has

4

DEFENDANT WESPAC FOUNDATION'S REPLY MEMO OF POINTS & AUTHORITIES IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case No: 2:24-cv-06253-SVW-PVCx

disclaimed coverage and declined to provide WESPAC a defense. Doc. 87. That PYM is not listed shows that WESPAC's fiscal sponsorship arrangement with PYM has never been the kind of fiscal sponsorship arrangement which would, could or did create an alter-ego relationship" between them, or "cause[] PYM to become an integrated part of WESPAC with no separate legal identity." *Id.*

Notably, the FAC contained nothing but the threadbare hope, *upon information and belief,* that WESPAC and PYM might be one integrated entity because one author of some articles on Fiscal Sponsorships opined that many, or most, fiscal sponsorships are integrated entities.[3] But nowhere in the Complaint are there any specific factual allegations of "events, conversations or documents" plausibly establishing that the WESPAC-PYM fiscal sponsorship was of that sort. *See*

---

[3] A Tides Foundation whitepaper containing the findings of the first actual survey of fiscal sponsorships may be found at wp_fiscalsponsorfieldscan(1)(1).pdf and evidences otherwise:

> The practice of fiscal sponsorship varies greatly. At the most fundamental level, a fiscal sponsor is a tax-exempt, nonprofit corporation that receives and disburses funds for programs that may or may not be incorporated. The fiscal sponsor often provides administrative and financial services to these groups, which may lack administrative or fiscal capacity. Fiscal sponsors vary greatly in the roles they play, the support they offer, the degree of liability they assume and the organizational models they utilize.

At 3. "The level of contact between fiscal sponsors and their projects varies greatly. All have some contact, but a surprising number have very limited contact." 31% of fiscal sponsors meet with their projects once a year or less. Only half make site visits at least once a year. At 18. "Only half of fiscal sponsors say that they have full discretion and control over project funds. Just over a quarter say that discretion and control is shared between the sponsor and the project." At 22. "The legal relationship between project staff and their fiscal sponsor varies considerably. Most commonly (57%), project staff are independent contractors of the projects (not the fiscal sponsor) for which they work. Only one-quarter (26%) of fiscal sponsors say that project staff are employees of the fiscal sponsors." At 24.

Accordingly, there appears to be no factual support in the real world for Plaintiffs' allegation that the most common form of fiscal sponsorship is the "integrated entity" arrangement, and no plausibility for Plaintiffs' factually unsupported, conclusory allegation that WESPAC's fiscal sponsorship arrangement with PYM was of that kind.

WESPAC's Initial Brief, at 15, *citing McCreary v. Heath.* WESPAC's certification makes clear that it is not.

Even if Plaintiffs had been able plausibly to allege their integrated entity theory, Plaintiffs still would have been unable to cite any case anywhere in the country imposing liability on a fiscal sponsor generally providing donor funds to its sponsoree – integrated entity or not – *that did not fund the event out of which Plaintiffs' injuries arose*. Thus, even if, in Plaintiffs' alternate universe, WESPAC and PYM were completely joined at the hip, Plaintiffs would still be unable to get past the fundamental obstacle to their case against WESPAC: They cannot and have not alleged that WESPAC provided, or PYM spent, one dime of WESPAC's fiscal sponsorship funds in connection with the June 23 events out of which all of Plaintiffs' injuries arose.

We now turn to other dispositive legal defects in Plaintiffs' claims.

## B.   PLAINTIFFS' SUBSTANTIVE FACE ACT CAUSE OF ACTION FAILS

Plaintiffs concede that their substantive Section 248(a)(2) claim against WESPAC requires WESPAC to have used force, threat of force or physical obstruction, and to have *intentionally* injured, intimidated or interfered with, or *intentionally* attempted to injure, intimidate or interfere with Plaintiffs' First Amendment religious rights.

Yet Plaintiffs' Opposition cites no case that provides even an iota of support for their frivolous notion that a person or organization that was not present at an event, was not aware that it was taking place or going to take place, and did not plan or fund it, could be held liable for violating any provision of the FACE Act by intentionally interfering or attempting to interfere with their abortion or religious rights. We have been unable to find such a case because, frankly, such a position is absurd. But that is Plaintiffs' position in this case against WESPAC, notwithstanding that they have not been able to explain how WESPAC could possibly form either

intent or motive to harm Plaintiffs when it did not even know anything about the June 23 events. Plaintiffs bat away a "that is not why I blocked the entrance to the Synagogue defense," Opp. Br. 12 (17 of 23). But WESPAC's defense has nothing to do with "why," but rather with "I wasn't there, knew nothing about it, and didn't fund it!"[4] While Plaintiffs continue to assert that WESPAC is liable as PYM's fiscal sponsor because PYM promoted, organized and joined the "riot," *id.,* Plaintiffs have not alleged any specific facts that might plausibly establish that PYM was there, and they have not alleged that PYM spent any money obtained from WESPAC in connection with it.[5] Accordingly, Plaintiffs' substantive FACE Act claim remains frivolous.

## C.   PLAINTIFFS' CONSPIRACY CAUSE OF ACTION FAILS

Plaintiffs styled their Second Cause of Action a "Conspiracy to Deprive Plaintiffs of Equal Protection of the Laws and Equal Privileges and Immunities Under the Law in Violation of 42 U.S.C. 1985(3)."

Plaintiffs do not take issue with WESPAC's argument that a conspiracy to violate the constitutional rights of equal protection and privileges and immunities under the Fourteenth Amendment, requires the involvement of a state actor. In desperation to save their Second Claim, however, Plaintiffs now suggest that they did not plead *that* kind of conspiracy, or even a conspiracy to violate First Amendment

---

[4] Plaintiffs continue in that distracting vein, arguing that "a violent mob of Defendants attacked them," *id.,* but Plaintiffs have not alleged that WESPAC was there or ever aware of the event, so WESPAC could not have been part of the "mob."

[5] We note that Plaintiffs have misconstrued the IRS Revenue Ruling which requires fiscal sponsors to maintain discretion and control over the use of the donated *funds* it provides to its sponsoree so that those funds are used for charitable purposes (which are broadly defined, *see* the Tides Whitepaper, *ante,* n. 3, at 6). With absolutely no supporting authority, however, Plaintiffs have turned that requirement into a conclusory (and false) legal allegation that "WESPAC maintained complete oversight, control and discretion over PYM's *activities*, including the riot that PYM promoted, organized and joined." Even if this were true, which it is not, WESPAC would not be liable here because no WESPAC-provided funds were, or are alleged to have been, used in connection with the June 23 "riot" or any events related thereto out of which Plaintiffs' injuries allegedly arise.

rights, which also require state action; but rather one to violate the FACE Act.[6]

It is apparent that the text of Section 1985(3) set out above in n. 6 protects only constitutional rights, not other statutory rights arguably protected by the FACE Act. And indeed, the Amended Complaint's sole paragraph invoking Section 1985(3), par. 409, makes no reference to any alleged protected right other than "equal protection of the laws, or equal privileges and immunities under the laws[.]"

None of Plaintiffs' cited cases involve, let alone support, an actionable Section 1985(3) "private" conspiracy to violate the FACE Act, or to interfere with statutory rights analogous to it. In fact, *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 274-78 (1993), heavily relied upon by Plaintiffs, held that Section 1985(3) does *not* provide a federal cause of action against persons obstructing access to abortion clinics, and that such obstruction was not "aimed at interfering with rights" that are "protected against private as well as official, encroachment[.]" Here, the only additional constitutional right specified by Plaintiffs' Opposition in connection with

---

[6] It is true that, in one of the 27 paragraphs of the Second Claim, Plaintiffs allege that "Named Defendants conspired to violate Plaintiffs' rights under the First and Fourteenth Amendments, as well as the FACE Act." Par. 416. But that "as well as" reference to the FACE Act hardly amounts to a valid claim of conspiracy *under Section 1985(3),* which reads:

"If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

1  the essential elements of a FACE Act claim is a First Amendment right. Doc. 85, at
2  11 (16 of 23). But as we noted in our initial Brief, Doc 76, at 14, a Section 1985(3)
3  conspiracy claim alleging deprivation of First Amendment rights also requires state
4  action, not present here. Plaintiffs' Opposition does not dispute that First Amendment
5  rights are not protected against private encroachment under Section 1985(3).

6        Plaintiffs repeatedly cite the abortion provisions of Section 248(a)(1) of the
7  FACE Act as "parallel" to those of Section 248(a)(2), without acknowledging that,
8  if true, *Bray* is fatal to their conspiracy claim. *Bray* held that deprivation of the
9  "asserted right to abortion [] cannot be the object of a purely private conspiracy," and
10 confirmed that an alleged private conspiracy claim to infringe First Amendment
11 rights does not violate Section 1985(3). 506 U.S. at 278. *Bray* also held that "the
12 predominant purpose of the conspiracy [must be] to impede or prevent the exercise
13 of the [protected] right"; "it does not suffice for application of Section 1985(3) that
14 a protected right be incidentally affected[,]" or "simply because it has an effect upon
15 a protected right. The right must be "*aimed at*[.]" (citation omitted). 506 U.S. at 275.

16       Like the respondents in *Bray*, Plaintiffs have not explained how those
17 protesting a real estate sale of stolen Palestinian land, which happens to be taking
18 place on the grounds of a religious institution, could plausibly be alleged to have
19 *aimed at* Plaintiffs' First Amendment religious rights, with the predominant purpose
20 of impeding the exercise of those rights – as opposed to protesting the real estate sale
21 – even if such rights were protected by Section 1985(3), which they are not.[7]

---

[7] *Zhang Jingrong v. Chinese Anti-Cult World All.,* 287 F.Supp. 3d 290 (E.D.N.Y. 2018) is of no help to Plaintiffs either, as it involved the right to travel, not a First Amendment right that requires state action to be actionable under Section 1985(3). Moreover, citing *Bray,* 506 U.S. at 276, the court pointed out that a defendant must "do more than merely be aware of a deprivation of right that he causes, and more than merely accept it; he must act at least in part for the very purpose of producing it." 287 F. Supp. 3d at 298. That is a showing that Plaintiffs have utterly failed to make, certainly with respect to WESPAC. Alleging that WESPAC was a general fiscal sponsor of PYM without knowing or participating in any way

9

DEFENDANT WESPAC FOUNDATION'S REPLY MEMO OF POINTS & AUTHORITIES IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case No: 2:24-cv-06253-SVW-PVCx

1    Moreover, as we noted in our Initial Brief, at 13, *any* civil conspiracy claim
2 requires a plausible allegation of an *agreement* with another to inflict a wrong or
3 injury upon the Plaintiffs.  Plaintiffs' Opposition does not dispute this fundamental
4 requirement but cites no specific factual allegation evidencing such agreement by
5 WESPAC other than the repeated refrain that WESPAC acted generally "as PYM's
6 fiscal sponsor."  Doc. 85, at 14 (19 of 23).  However, nowhere does Plaintiffs'
7 Opposition explain how a fiscal sponsor which did not fund the protest at Adas Torah
8 – and *concededly* was unaware that it was going to occur – could possibly have
9 *agreed* to inflict an injury upon the Plaintiffs, let alone to have formed an "improper
10 motive" to violate Plaintiffs' constitutional rights. *Zhang Jingrong*, cited by
11 Plaintiffs, notes that "a plaintiff seeking to make out a conspiracy claim must have
12 some factual basis supporting a meeting of the minds."  287 F. Supp. at 298.
13 Plaintiffs have provided no such factual basis for WESPAC.

14    For these reasons, Plaintiffs' Second Cause of Action is as legally defective as
15 their First, and indeed their entire case against WESPAC.

## III.   CONCLUSION

17    For the foregoing reasons and those contained in our Initial Brief, WESPAC
18 respectfully requests that this Court grant its motion pursuant to Federal Rules of
19 Civil Procedure 12(b)(2) and 12(b)(6) to dismiss Plaintiffs' First Amended Class
20 Action Complaint in its entirety against WESPAC, with prejudice, and grant such
21 additional relief to WESPAC as the Court may deem appropriate and proper.

---

in the June 23 events does not even amount to an awareness of a deprivation of Plaintiffs' rights, let alone acting for the very purpose of producing such deprivation.

10

Dated: January 20, 2025

HERBST LAW PLLC

By: /s/ Robert L. Herbst_____
Robert L. Herbst
rherbst@herbstlawny.com
420 Lexington Avenue, Suite 300
New York, New York 10170
Tel: 914-450-8163 Fax: 888-482-4676
Attorneys for Defendant
WESPAC FOUNDATION