Mark Kleiman (SBN 115919)
mark@krlaw.us
KLEIMAN / RAJARAM
12121 Wilshire Blvd., Ste. 810
Los Angeles, CA  90025
Tel: 310-392-5455 / Fax: 310-306-8491

Collin Poirot (NY 5673405)
*(pro hac vice)*
cpoirot.law@gmail.com
2603 Oak Lawn, Suite 300
Dallas TX  75219
214-392-2281

Attorneys for Defendants
CODEPINK WOMEN FOR PEACE
CODEPINK ACTION FUND

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| NOAH POLLAK, on behalf of all others similarly situated, and STANDWITHUS CENTER FOR LEGAL JUSTICE<br><br>       Plaintiffs,<br><br>       v.<br><br>CODEPINK WOMEN FOR PEACE, a California entity; CODEPINK ACTION FUND, a California entity; HONOR THE EARTH, a Minnesota entity; COURTNEY LENNA SCHIRF; REMO IBRAHIM, d/b/a PALESTINIAN YOUTH MOVEMENT; and JOHN AND JANE DOES 1-100,<br><br>       Defendants. | Case No. 2:24-cv-06253-SVW-PVC<br><br>DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT<br><br>(Declaration of Mark Kleiman in Support Thereof Filed Concurrently Herewith)<br><br>Judge:  Hon Stephen V. Wilson<br>Hearing Date:  February 24, 2025<br>Time:  1:30 p.m.<br>Courtroom:  10A |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on February 24, 2025, at 1:30 p.m. or as soon thereafter as this matter may be heard in Courtroom 10A of the above-entitled Court located at First Street Courthouse, 350 W. 1st Street, Courtroom 10A, 10th Floor,  Los Angeles, CA 90012, Defendants CODEPINK WOMEN FOR PEACE and CODEPINK ACTION FUND, will and hereby do move the Court to dismiss Plaintiffs' First Amended Class Action Complaint pursuant to Fed.R.Civ.Proc. 12(b)(1) and Fed.R.Civ.Proc. 12(b)(6)

This motion is based upon this Notice of Motion, the attached Memorandum of Points & Authorities, the Declaration in Support thereof, the files and records in the case, and any evidence or argument that may be presented at a hearing on this matter.

Respectfully submitted,

Dated:  January 21, 2025          KLEIMAN / RAJARAM


By:_____
    /s/ Mark Kleiman
    Mark Kleiman

    Attorneys for Defendants
    CODEPINK WOMEN FOR PEACE
    CODEPINK ACTION FUND

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES.................................................................5

I.   INTRODUCTION.....................................................................10

II.  FACTS ALLEGED....................................................................11

   A.  Plaintiffs Fail to Tie CodePink to Any Alleged Harms...........................11

III. STANDARDS OF REVIEW........................................................12

   A,  Fed.R.Civ.Proc. 12(b)(1) Requires an Injury in Fact That is
      Fairly Traceable to the Defendants.........................................12

   B.  Fed.R.Civ.Proc. 12(b)(6) Requires Facts Sufficient to Make a Claim
      Plausible.................................................................13

IV. ELEMENTS OF THE ALLEGED OFFENSES ..............................14

   A. The FACE Act (18 U.S.C. § 248) ........................................14

   B. Ku Klux Klan Act (42 U.S.C. § 1985(3))................................15

V.   DEFENDANTS' MOTION TO STRIKE ....................................16

VI. ARGUMENT ........................................................................18

   A. Plaintiff Pollak Cannot Satisfy the Requirements for
      Class Certification.......................................................18

   B. Plaintiff SCLJ Cannot Satisfy the Requirements for
      Organizational Standing…..............................................19

   C. Plaintiffs Fail to State a Claim Under the Pled Causes of Action and
      the Complaint Must be Dismissed Pursuant to Rule 12(b)(6)...................20

      1.  Plaintiffs Fail to State a Claim Under the FACE Act...........................20

DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION
AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

a)  Plaintiffs Fail to Plausibly Allege CodePink Intended to Injure, Interfere with, or Intimidate Them Because of Their Freedom of Religion ........................................................... 21

b)  Plaintiffs Have Alleged No Facts Allowing Them to Plausibly Claim That CodePink is Responsible for any Harmful Acts ..................................................................... 22

c)  CodePink's Alleged Activities Constitute Protected First Amendment Speech and Advocacy ................................... 24

d)  Plaintiffs Fail to Plausibly Allege CodePink Used Force, Threats of Force, or Physical Obstruction to Interfere with Their Freedom of Religion ........................................... 25

2.  Plaintiffs Fail to State a Claim Under 42 U.S.C. § 1985(3) .................. 28

a)  Plaintiffs Fail to Allege Specific Facts that Plausibly Show a Conspiracy by Defendants ................................................. 28

b)  Plaintiffs Fail to Allege Any Conspirator Was a State Actor, or That Conspiracy Was Aimed at State Action ................................. 28

c)  Plaintiffs Do Not Plausibly Allege a Racial or Class-Based Animus ....................................................... 29

d)   Plaintiffs Do Not Plausibly Allege Harms That Are Fairly Traceable to CodePink ................................................... 30

D. This Court Lacks Jurisdiction to Shield and Facilitate the Commission of War Crimes in Violation of International Law, as Plaintiffs Request ... 31

1.  The United States is Party to the Fourth Geneva Convention Which Prohibits Confiscation of Land and Forcible Population Transfer ....... 32

2.  Israel's Annexation, Confiscation, and Settlement Practices Constitute Crimes Against Humanity and War Crimes ..................... 33

VII. CONCLUSION ............................................................. 34

DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

1

# **TABLE OF AUTHORITIES**

2

**Page**

3
Alaska Right to Life Political Action Comm. v. Feldman,
4
    504 F.3d 840 (9th Cir. 2007)..................................................................30

5
Allen v. Wright,
6
    468 U.S. 737 (1984) .....................................................................13

7
Ashcroft v. Iqbal,
8
    556 U.S. 662 (2009) ...............................................................13.34

9
Bank of Am., N.A. v. Knight,
10
    725 F.3d 815, 818 (7th Cir. 2013) .......................................12

11
Bell Atl. Corp. v. Twombly,
12
    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 868 (2009).......................13,17,34

13
Blakemore v. Superior Ct.,
14
    (2005) 129 Cal. App. 4th 36, 53 ............................................18

15
Boquist v. Courtney,
16
    32 F.4th 764, 774 (9th Cir. 2022) ..........................................30

17
Bray v. Alexandria Women's Health Clinic,
18
    506 U.S. 263, 113 S.Ct. 753 (1993) ...........................................16

19
Carbon Fuel Co. v. UMW,
20
    444 U.S. 212 (1979) .....................................................................23

21
Clapper v. Amnesty Int'l.
22
    USA, 568 U.S. 398, (2013) ......................................................30

23
Clausing v. San Francisco Unified School Dist.,
24
    (1990) 221 Cal.App.3d 1224, 1234 ......................................18

25
Collins v. Jordan,
26
    110 F.3d 1363 (9th Cir. 1996)...............................................24

27
Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.,
28
    235 F. Supp. 3d 1132 (E.D. Cal. 2017)......................................15,28

DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION
AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

Conservation Force v. Salazar,
    646 F.3d 1240 (9th Cir. 2011)...................................................................14

Coronado Coal Co. v. Mine Workers,
    268 U.S. 295 (1925) ...................................................................................23

Counterman v. Colorado,
    600 U.S. 66 (2023) .....................................................................................26

Cousins v. Lockyer,
    568 F.3d 1063 (9th Cir. 2009) ...................................................................13

Dahlia v. Rodriguez,
    735 F.3d 1060 (9th Cir. 2013) ...................................................................13

Elhanafi v. Fox Television Stations, Inc.,
    2012 WL 6569341, *2 (Sup. Ct. Kings County, Dec. 17, 2012) ..............18

Fabricant v. Elavon, Inc.,
    2:20-cv-02960-SVW-MAA (C.D.C.A. 2020)...........................................22

Gaxiola v. City of Los Angeles,
    No. CV 10-6632 AHM (FMO), 2011 WL 13152832
    (C.D. Cal. Aug. 30, 2011) .........................................................................15

Gerber v. Herskovitz,
    14 F.4th 500, 504, 508-509 (6th Cir. 2021)..............................................24

Harmston v. City & County of San Francisco,
    627 F.3d 1273 (9th Cir. 2010) ...................................................................30

Hunt v. Wash. State Apple Adver. Comm'n,
    432 U.S. 333 (1977)...................................................................................20

In re Honest Co., Inc. Sec. Litig.,
    343 F.R.D. 147, 150 (C.D. Cal. 2022).......................................................16

Karim-Panahi v. L.A. Police Dep't,,
    839 F.2d 621, 626 (9th Cir. 1988) .............................................................28

DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

*Kindschy v. Aish*,
    412 Wis.2d 319 (Sup. Ct. Wis. 2024) ........................................................26

*Kokkonen v. Guardian Life Ins. Co. of America*,
    511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed. 2d 391 (1994) ...........................12

*Kristensen v. Credit Payment Servs. Inc.*,
    879 F.3d 1010 (9th Cir. 2018)....................................................................22

*Laughon v. Int'l Alliance of Theatrical Stage Emples.*,
    248 F.3d 931 (9th Cir. 2001)......................................................................23

*Lotierzo v. A Woman's World Med. Ctr.*,
    278 F.3d 1180 (11th Cir. 2002) .................................................................15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014) ...............................................................................13

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed. 2d 351 (1992) .......................12,30

*Manistee Town Center v. City of Glendale*,
    227 F.3d 1090 (9th Cir. 2000)....................................................................15

*McCalden v. California Library Ass'n*,,
    955 F.2d 1214, 1219 (9th Cir. 1990) ..........................................................30

*NAACP v. Clairborne Hardware Co.*,
    458 U.S. 886 (1982) ...................................................................................26

*Native Village of Kivalina v. Exxon Mobil Corp.*,
    696 F.3d 849 (9th Cir. 2012)......................................................................13

*New Beginnings Ministries v. George*,
    2018 WL 11378829 (S.D.O.H. 2018) ........................................................14

*Pasadena Republican Club v. W. Just. Ctr.*,
    985 F.3d 1161 (9th Cir. 2021).................................................................15,29

*Planned Parenthood of Columbia/Willamette, Inc. v.*
    *Am. Coal. of Life Activists*, 290 F.3d 1058 (9th Cir. 2002).......................26

DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

Prince v. CLS Transportation, Inc.,
    (2004) 118 Cal. App. 4th 1320, 1323–24 .................................................. 19

RK Ventures, Inc. v. City of Seattle,
    307 F.3d 1045 (9th Cir. 2002) ................................................................ 16

Sanchez v. City of Santa Ana,
    936 F.2d 1027, 1039 (9th Cir. 1991) ..................................................... 28

Scott v. Kuhlmann,
    746 F.2d 1377, 1378 (9th Cir. 1984) ..................................................... 30

Security Farms v. International Broth. of Teamsters, Chauffeurs,
    124 F.3d 999 (9th Cir. 1997) ................................................................. 23

Sever v. Alaska Pulp Corp.,
    978 F.2d 1529 (9th Cir. 1992) ........................................................... 15,29

Simo v. Union of Needletrades, Indus. & Textile Emps.,
    Sw. Dist. Council, 322 F.3d 602 (9th Cir. 2003) ................................... 23

Sirer v. Aksoy,
    2023 WL 3166453, *2 (S.D. Fla., May 1, 2023) ................................... 18

Sprewell v. Golden State Warriors,
    266 F.3d 979 (9th Cir. 2001) ................................................................. 13

Top Rank, Inc. v. Haymon,
    2015 U.S. Dist. LEXIS 164676, at *25-26 (C.D. Cal. Oct. 16, 2015) ........ 12

United Bhd. of Carpenters & Joiners, Local 610 v. Scott,
    463 U.S. 825 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) ....................... 15,16,29

Van Der Linden v. Khan,
    535 S.W.3d 179, 198 (Tex. App 2017) ................................................. 18

Vavak v. Abbott Labs., Inc., No. SACV 10-1995 JVS (RZx),
    2011 U.S. Dist. LEXIS 111408, at *6 (C.D. Cal. June 17, 2011) .............. 18

Williams v. Yamaha Motor Co.,
    851 F.3d 1015 (9th Cir. 2017) ............................................................... 22

DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION
AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

## **STATUTES**

18 U.S.C. § 248...................................................................................................... 14

18 U.S.C. § 248(a)(2) .....................................................................................14,21,25

18 U.S.C. § 248(d)(1) ............................................................................................ 24

18 U.S.C. § 248(e) ................................................................................................. 21

18 U.S.C. § 248(e)(4) ............................................................................................ 27

42 U.S.C. § 1985(3) ......................................................................................*passim*

Fed.R.Civ.Proc. 12(b)(1) ...................................................................................... 12

Fed.R.Civ.Proc. 12(b)(6) ..............................................................................13,20,30

Fed.R.Civ.Proc. 12(f)............................................................................................ 16

## **MISCELLANEOUS**

29 U.S.C.S. § 185, the Taft-Hartley Act, § 301(b)................................................ 23

139 Cong. Rec. S15660, 1993 WL 470962 (Nov. 3, 1993) .................................. 25

H.R. Conf. Rep No. 103-488, 9 (1994) ................................................................. 27

Norris–LaGuardia Act § 6, 29 U.S.C. § 106 ........................................................ 23

S. Rep. 117, 103d Cong. 1st Sess. 31 (1993) ........................................................ 27

Art. III, U.S. Const............................................................................................... 12

DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION
AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

# I.      __INTRODUCTION__

Defendants CodePink Women for Peace and CodePink Action Fund (collectively "CodePink") move to dismiss Plaintiffs' First Amended Complaint ("FAC"). In sum, Plaintiffs take offense to CodePink's support for Palestinians and principled opposition to Israel's illegal occupation of the West Bank and its ongoing genocide in Gaza. Plaintiffs bring the underlying complaint to punish CodePink for organizing a protest against real estate company My Home in Israel's ("MHI") illegal sale of occupied Palestinian land in the illegal, Jewish-only settlements in Occupied Palestine; an event which never mentioned or claimed religious obligations to purchase land or move. FAC ¶. 100, 104. MHI is being investigated by the New Jersey Division on Civil Rights for possible "discrimination on the basis of race, religion, ancestry, national origin and other protected characteristics" during the company's previous real estate events.[1] MHI events have drawn protests throughout the country, and it has repeatedly been accused of aiding and abetting apartheid and genocide. MHI's event in Los Angeles was no different.

Based on these allegations, Plaintiffs seek damages from CodePink for violations of the Freedom of Access to Clinic Entrances ("FACE") Act and the Civil Rights Act. None of Plaintiffs' pled injuries are fairly traceable to CodePink's alleged conduct, and they depend entirely on third parties who were not subject to Defendants' control or authorization. The FACE Act specifically prohibits liability based on protected free speech activity, and the Civil Rights Act requires both a conspiracy to deny one's legal rights based on animus, as well as a culpable act that goes beyond mere protected speech. CodePink's speech is clearly protected First Amendment activity and Plaintiffs' claims of a "conspiracy" are purely speculative, so their second failed attempt at this complaint should be dismissed with prejudice.

---

[1] Arvind Dilawar, "Organizers of Israeli Real Estate Event in LA Under Investigation in New Jersey," Sept. 4, 2024 (last accessed Oct. 22, 2024) https://tinyurl.com/ysdkxc6r.

DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

1

## II.    FACTS ALLEGED

### A. Plaintiffs Fail to Tie CodePink to Any Alleged Harms

Plaintiffs allege that CodePink "organized, publicized, aided, and (on information and belief) funded" the demonstration, and that "upon information and belief, members of CodePink were among those who physically obstructed Plaintiffs Pollak, Proposed Class Members, and SCLJ from accessing the Synagogue on June 23, 2024." FAC ¶¶ 8, 46. Plaintiffs allege that CodePink is "fully aware that their protests often result in violence, arrests, and unlawful disruptions of government proceedings, roads, bridges, and city streets" and that "their organizers openly state that disruption is their goal." FAC ¶¶ 61-2.

Plaintiffs allege CodePink publicly stated that it believed the protest was "a peaceful protest against the illegal sale of stolen land in Palestine in a synagogue," that "Zionists attacked peaceful protestors [and] stole their phones," that "no religious services were scheduled at the time of the real estate sale," and that "[c]ontrary to what the media is falsely reporting, the entrance was never blocked by anyone." FAC ¶¶ 333-4. Plaintiffs allege that after the protest, CodePink made a series of social media posts and statements in which the organization referred to some of the attendees as "our comrades." FAC ¶¶ 328-9. Finally, Plaintiffs states that "all three events continued at the Synagogue on June 23, 2024" but that, "upon information and belief," some members were unable to attend. FAC ¶ 303.

Once relieved of legally conclusory language and mere restatements of the alleged offenses' elements, the facts asserted against CodePink boil down to First Amendment protected speech activity. None of the pled facts can support Plaintiffs' claims under the invoked statutes, and in fact, the FAC includes facts that make it impossible for Plaintiffs to plead these causes of action. For these reasons, the complaint should be dismissed with prejudice.

Plaintiffs impermissibly indulge in group pleading, *i.e.*, allegations made against all "Named Defendants," a term that appears to include CodePink. Where a plaintiff fails to allege specific facts that plausibly show culpable behavior by a specific defendant, and instead relies on blanket allegations that all defendants conspired, the Complaint must be dismissed. *See* Top Rank, Inc. v. Haymon, 2015 U.S. Dist. LEXIS 164676, at *25-26 (C.D. Cal. Oct. 16, 2015) (granting motion to dismiss, including because Plaintiffs' "allegations draw no meaningful distinctions between or among the nine defendants against whom they are collectively asserted"); Bank of Am., N.A. v. Knight, 725 F.3d 815, 818 (7th Cir. 2013) ("A contention that 'the defendants looted the corporation'—without any details about who did what—is inadequate. Liability is personal…The Rules of Civil Procedure set up a system of notice pleading. Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed. That is true even for allegations of conspiracy.").

## III.    STANDARDS OF REVIEW

### A.    Fed.R.Civ.Proc. 12(b)(1) Requires an Injury in Fact That is Fairly Traceable to the Defendants

Federal courts have limited jurisdiction *see*, Art. III, U.S. Const. and plaintiffs must prove their case lies within a court's jurisdiction. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377-78 (1994). Plaintiffs must establish they have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992). Plaintiffs "bea[r] the burden of establishing these elements" and "at the pleading stage, must clearly allege facts demonstrating each element." Id. (citation omitted). The injury pled must "be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Lujan, 504

DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

U.S. at 560-61 (citation omitted). Further, "the line of causation between the [alleged] illegal conduct and injury" must not be "too attenuated." <u>Allen v. Wright</u>, 468 U.S. 737, 752 (1984) (concluding that a weak demonstration of causation precludes Article III standing), *overruled on other grounds by* <u>Lexmark Int'l, Inc. v. Static Control Components, Inc.</u>, 134 S. Ct. 1377, 1388 (2014). Since the line of causation must be more than attenuated, "where the causal chain 'involves third parties whose numerous independent decisions collectively have a significant effect on plaintiffs' injuries . . . the causal chain [is] too weak to support standing at the pleading stage.'" (citations and internal quotation marks omitted). <u>Native Village of Kivalina v. Exxon Mobil Corp.</u>, 696 F.3d 849, 867 (9th Cir. 2012).

## B. <u>Fed.R.Civ.Proc. 12(b)(6) Requires Facts Sufficient to Make a Claim Plausible</u>

Although "a complaint need not contain detailed factual allegations . . . it must plead enough facts to state a claim to relief that is plausible on its face." <u>Cousins v. Lockyer</u>, 568 F.3d 1063, 1067-68 (9th Cir. 2009) (internal quotation marks and citations omitted). A claim is facially plausible only when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, (2009) (internal quotation marks omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient to avoid . . . dismissal" under this standard. <u>Cousins</u>, 568 F.3d at 1067 (internal quotation marks omitted). A court may reject as implausible allegations that are too speculative to warrant further factual development. <u>Dahlia v. Rodriguez</u>, 735 F.3d 1060, 1076 (9th Cir. 2013). The allegations must be enough to raise a right to relief above the speculative level. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 548 (2009). The court need not accept allegations that are merely conclusory, are unwarranted deductions, or unreasonable inferences. <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001).

When the guesses, conclusory language, and innuendo are stripped away, what remains of Plaintiffs' allegations that are grounded in specific facts is this: (1) CodePink was one of several organizations which called for a demonstration to oppose a real estate event illegally offering land sales in the occupied West Bank; (2) CodePink made social media posts promoting the demonstration, and invited its supporters to "help advocate" against the illegal sale of occupied land; (3) persons unknown acted threateningly and said frightening things; (4) some unknown persons used "bear spray" and brandished "blunt objects"; and (5) CodePink later stated that it had no idea that a synagogue would be holding religious services on a Sunday, that the protest itself was peaceful, and that none of its members blocked the synagogue entrance. From these crumbs, Plaintiffs builds a mountain of surmise to insist that CodePink must have directed these activities. These are not facts sufficient to make a cognizable legal theory plausible. <u>Conservation Force v. Salazar</u>, 646 F.3d 1240, 1241-42 (9th Cir. 2011).

## IV.    <u>ELEMENTS OF THE ALLEGED OFFENSES</u>

### A. <u>The FACE Act (18 U.S.C. § 248)</u>

The FACE Act was passed in 1994, when women's health clinics were being bombed and doctors who worked there were being murdered. A far lesser-known provision in the bill protects places of worship. The law's "religious freedom" cause of action has so seldom been invoked that caselaw interpreting this provision is scarce. Defendants could find no cases from the Ninth Circuit where such a suit has been brought. Other circuits, however, have identified four elements required to plead a violation of 18 U.S.C. § 248(a)(2): "Plaintiffs must demonstrate that Defendants used or attempted to use (1) force, threat of force, or physical obstruction; (2) with the intent to; (3) injure, intimidate, or interfere with a person; (4) because that person is exercising or is seeking to exercise his or her right of religious freedom at a place of religious worship." <u>New Beginnings Ministries v.</u>

George, 2018 WL 11378829, *15 (S.D.O.H. 2018) (citing Lotierzo v. A Woman's
World Med. Ctr., 278 F.3d 1180, 1182 (11th Cir. 2002) (citations omitted)).

**B. Ku Klux Klan Act (42 U.S.C. § 1985(3))**

To state a claim under 42 U.S.C. § 1985(3), Plaintiffs must prove "(i) a
conspiracy; (ii) for the purpose of depriving, either directly or indirectly, any person
or class of persons of the equal protection of the laws, or of equal privileges and
immunities under the laws; and (iii) an act in furtherance of this conspiracy; (iv)
whereby a person is either injured in his person or property or deprived of any right
or privilege of a citizen of the United States." Comm. to Protect our Agric. Water v.
Occidental Oil & Gas Corp., 235 F. Supp. 3d 1132, 1185 (E.D. Cal. 2017).

The cause of action under 42 U.S.C. § 1985(3) "requires at least one of the
wrongdoers in the alleged conspiracy to be a state actor. Indeed, the Supreme Court
has held that "'an alleged conspiracy to infringe First Amendment rights is not a
violation of § 1985(3) unless it is proved that the State is involved in the
conspiracy'" or that the aim of the conspiracy is to influence state actors. Pasadena
Republican Club v. W. Just. Ctr., 985 F.3d 1161, 1171 (9th Cir. 2021) (citing United
Bhd. Of Carpenters & Joiners, Local 610 v. Scott, 463 U.S. 825, 830 (1983).

To plead a claim under 42 U.S.C. § 1985(3), Plaintiffs must also plausibly
allege that the intended deprivation was "'motivated by some racial, or … other[ ]
class-based' animus." Comm. to Protect our Agric. Water, 235 F. Supp. 3d at 1185
(citing Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992); *see also*
Manistee Town Center v. City of Glendale, 227 F.3d 1090 (9th Cir. 2000); Gaxiola
v. City of Los Angeles, No. CV 10-6632 AHM (FMO), 2011 WL 13152832, at *9
(C.D. Cal. Aug. 30, 2011) ("To avoid interpreting § 1985(3) as a general federal tort
law, the Supreme Court has emphasized that, as under § 1981, the Plaintiffs must
prove as an element of the cause of action 'some racial, or perhaps otherwise class-
based, invidiously discriminatory animus behind the conspirators' action'" (citing

<u>Bray v. Alexandria Women's Health Clinic</u>, 506 U.S. 263, 268 (1993)); *see also* <u>RK Ventures, Inc. v. City of Seattle</u>, 307 F.3d 1045, 1056 (9th Cir. 2002). 42 U.S.C. § 1985(3) does not extend to "conspiracies motivated by bias towards others on account of their economic views, status, or activities." <u>United Bhd. of Carpenters and Joiners of Am, Local 610, AFL-CIO v. Scott</u>, 463 U.S. 825, 837 (1983).

## V.    **DEFENDANTS' MOTION TO STRIKE**

Under Federal Rule of Civil Procedure 12(f) ("Rule 12(f)"), the Court may strike any "redundant, immaterial, impertinent, or scandalous matter" from a complaint. Fed.R.Civ.Proc. 12(f). A motion to strike is proper where such relief is "necessary to avoid prejudice or will further the interests of judicial efficiency." <u>In re Honost Co., Inc. Sec. Litig.</u>, 343 F.R.D. 147, 150 (C.D. Cal. 2022).

The FAC is replete with scandalous and impertinent allegations against CodePink and co-defendant Palestinian Youth Movement ("PYM") which have no possible relation to the causes of action in this case. These claims are included for the sole purpose of prejudicing Defendants in the eyes of the Court and the general public by scandalously maligning them as antisemitic and supportive of terrorism.[2] For these reasons, Defendants hereby move the court to strike the following paragraphs of the amended complaint under Rule 12(f):

a. Paragraph 8's text: "(two organizations that seek to destroy the Jewish State of Israel)." There are no facts plead whatsoever that could show CodePink "seek[s] to destroy" Israel; this blatant smear is included solely for its potential to scandalize and prejudice Defendants. The allegation also has nothing to do with the plead causes of action and is therefore irrelevant.

---

[2] For example, Plaintiffs alleges that CodePink members are long-time supporters of Hamas and have met with Hamas "several times." FAC ¶ 45. This allegation clearly conflates meeting with elected officials from Hamas to gather information on the one hand, and actively supporting the party on the other.

b.  Paragraph 40's text: "that supports the terrorist organization Hamas and opposes the State of Israel." This is strikable for the same reason as the excerpt from paragraph 8, above.

c.  Paragraphs 43 through 45 in their entirety. These paragraphs broadly allege that CodePink "has long supported terrorists" who call "for the annihilation of the Jewish people." These patently absurd accusations are based solely on CodePink's alleged attendance at a conference and alleged meetings with Palestinian elected officials. The accusation that CodePink supports terrorism or joins in a call to annihilate Jewish people is scandalous and defamatory.

d.  Paragraphs 53 through 58 in their entirety. These paragraphs accuse PYM of "terrorizing Jews" and supporting terrorism, based, again, on alleged participation in a national conference. The claims in these paragraphs have nothing whatsoever to do with the elements of the plead causes of action. These paragraphs are included solely to malign and prejudice the Defendants as antisemites and supporters of terrorism.

e.  Paragraphs 65 through 90, in their entirety. These paragraphs describe other, wholly unrelated protests that CodePink and PYM allegedly supported via social media posts, and argue these protests required additional security and were disruptive. These unrelated protest events have nothing to do with the plead causes of action and are included solely to muddy the waters and prejudice Defendants. None of these events are relevant to the Adas Torah protest, and Plaintiffs have not pled facts showing that Defendants are even responsible for these other, wholly unrelated protest.

f.  Paragraph 224, in its entirety. Here Plaintiffs allege that "[u]pon information and belief, the phrase 'BELLY OF THE BEAST' refers to a synagogue." FAC ¶ 224. The Twombly plausibility standard only permits a Plaintiff to plead facts alleged upon information and belief where those facts "are

peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference" plausible. <u>Vavak v. Abbott Labs., Inc.</u>, No. SACV 10-1995 JVS (RZx), 2011 U.S. Dist. LEXIS 111408, at \*6 (C.D. Cal. June 17, 2011). Here Plaintiffs improperly allege a fact which is facially implausible, solely in order to malign the defendants as antisemites. This allegation is both impertinent and prejudicial.

These sections of the FAC by and large seek to defame Defendants as avowed supporters of terrorism, which is directly prejudicial to Defendants. *See, e.g.* <u>Van Der Linden v. </u>Khan, 535 S.W.3d 179, 198 (Tex. App 2017) ("Khan alleges that falsely accusing someone of having admitted that he provided financial support to terrorists constitutes defamation per se. We agree."); <u>Elhanafi v. Fox Television Stations, Inc.</u>, 2012 WL 6569341, \*2 (Sup. Ct. Kings County, Dec. 17, 2012) (finding possible defamation where the public "might infer that plaintiffs are terrorists and/or terrorist sympathizers/abettors" based on Fox News story); <u>Sirer v. Aksoy</u>, 2023 WL 3166453, \*2 (S.D. Fla., May 1, 2023). These scandalous and impertinent allegations have no relevance to the FAC's claims and are prejudicial to Defendants. As such, they should be stricken from the complaint.

## VI.  <u>ARGUMENT</u>

### A. <u>Plaintiff Pollak Cannot Satisfy the Requirements for Class Certification</u>

At the motion to dismiss stage, a demurrer to class allegations may be sustained "where it is clear that there is no reasonable possibility that the plaintiffs could establish a community of interest among the potential class members and that individual issues predominate over common questions of law and fact." <u>Blakemore v. Superior Ct.</u>, (2005) 129 Cal. App. 4th 36, 53, , citing <u>Clausing v. San Francisco Unified School Dist.</u> (1990) 221 Cal.App.3d 1224, 1234. Where the ability of each class member to recover depends on separate facts applicable only to that individual

member, there is no reasonable possibility the named Plaintiffs can plead a prima facie community of interests among class members. Prince v. CLS Transportation, Inc., (2004)118 Cal. App. 4th 1320, 1323–24. Where each claim requires highly individualized determinations of each potential class member's right to recover, there is no community of interest, no commonality or typicality among potential class members. *ibid*.

Plaintiffs' own FAC demonstrates the highly individualized factual determinations of each potential class member's right to recover. Named Plaintiff Pollak alleges being confronted by Jane Does yelling at him, scaring him such that he was compelled to enter the Synagogue through a side door. FAC ¶¶ 12-4. SCLJ Member #1 makes no allegations of threats, being yelled at or intimidated out of the area, and entered the synagogue through a side entrance after learning of this entrance from a Whatsapp group. FAC ¶¶ 271-4. SCLJ Member #6 attended morning prayers before the protests, remained inside, attempted to study the Torah when the protests began but was unable to do so because of the commotion outside. FAC ¶¶ 298-9. These are just a few examples of the widely varying individual experiences and facts of the proposed class that nullify the class action commonality and typicality requirements, and make it nearly impossible for the named Plaintiff to plead a prima facie community of interests among class members.

## B. **Plaintiff SCLJ Cannot Satisfy the Requirements for Organizational Standing**

To establish organizational standing to sue on behalf of individuals, a plaintiff organization must show that (1) its members would otherwise have standing to sue in their own right,[3] (2) the interests it seeks to protect are germane to the

---

[3] Plaintiffs SCLJ Members 1-7 fail to show any need for anonymity and do not qualify under Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1067-1068 (9th Cir. 2000) and they do not even explain why their co-Plaintiff, Helmann has been unscathed despite five months' of exposure, or why Pollak is not similarly fearful. See Decl. of Mark Kleiman.

organization's purpose, and (3) neither the claim asserted, nor the relief requested requires the participation of individual members in the lawsuit. *See generally*, <u>Hunt v. Wash. State Apple Adver. Comm'n</u>, 432 U.S. 333 (1977). Plaintiff organization has failed to meet these standards, and  has no organizational standing to bring this suit.

For standing to bring the two causes of action based on the real estate event, Plaintiff organization must show that the individual members were personally attempting to exercise their freedom of religion. It is not enough to make a blanket claim that the event was religious "for many in the community, including members of SCLJ" – if the specific people on behalf of whom SCLJ has sued do not personally view the event as such, they have no standing to sue. Therefore, determining standing clearly requires participation from the individual plaintiffs to determine whether they attempted to attend the real estate event (the 'housing event' (FAC ¶208)) as an exercise of religious freedom or merely as a way to get discounted access to desirable real estate. This defect precludes SCLJ from establishing organizational standing to pursue the claims based on the real estate Event. SCLJ has not even *attempted* to allege that a purported interest in attending an illegal real estate event is somehow germane to its organizational purpose, nor that the participation of individual SCLJ members will not be required. SCLJ has not addressed these requirements, in any way, in the pleadings, and therefore fails to establish organizational standing to sue.

## C. <u>Plaintiffs Fail to State a Claim Under the Pled Causes of Action and the Complaint Must be Dismissed Pursuant to Rule 12(b)(6)</u>

### 1. <u>Plaintiffs Fail to State a Claim Under the FACE Act</u>

Plaintiffs fail to allege facts that can plausibly show a violation of the statute. Although the "religious exercise" subsection of the FACE Act has not been

addressed by this Court in any published decision, the plain language does not encompass a real estate sales event.

### a) **Plaintiffs Fail to Plausibly Allege CodePink Intended to Injure, Interfere with, or Intimidate Them Because of Their Freedom of Religion**

Plaintiffs' only specific facts pled against CodePink are that the organization announced a "Mega Zionist Real Estate Event," and encouraged supporters to "HELP US ADVOCATE THE STOP OF HOMES BEING SOLD ON STOLEN PALESTINIAN LAND." FAC ¶¶ 212-3. To state a claim for relief under 18 U.S.C. § 248(a)(2), Plaintiffs must allege facts that plausibly show that Defendants intended to injure, intimidate, or interfere with them because of their exercise of freedom of religion. The statute defines "intimidate" as placing one in "reasonable apprehension of bodily harm," and "interfere with" as restricting one's freedom of movement. 18 U.S.C. § 248(e). Plaintiffs fail to allege any facts that plausibly show CodePink intended to interfere with their religious exercise by seeking to injure them, restrict their freedom of movement, or place them in apprehension of bodily harm.

Strikingly absent from Plaintiffs' allegations are any facts that could plausibly show CodePink intended to injure Plaintiffs, restrict their freedom of movement, or threaten bodily harm, much less that they intended to do so *because* of Plaintiffs' exercise of freedom of religion. Plaintiffs do not allege any mention by CodePink of prayer, worship, Jewish people, or Judaism, nor any call for violence, physical force, or intimidation. There are also no facts pled that could plausibly show CodePink intended to injure, restrict the bodily movement of, or threaten violence against people coming to exercise their religious freedom at the synagogue.

Plaintiffs' sources in the FAC show that the published advertisement for the real estate event made no mention whatsoever of religion, prayer, worship, nor even of *Aliyah*; the event is described as a real estate opportunity, with discounts offered

in exchange for participation. FAC n. 74, linked in article. There is no information

in the advertisement from which Defendants could have concluded that the event

would be religious in nature. In fact, the FAC shows that Defendants were *unaware*,

and believed that "no religious services were scheduled" at the time. FAC ¶ 334. At

most, Plaintiffs' alleged facts could show CodePink intended to make the real estate

event attendees less comfortable, discourage people from attending the event, and

speak out against an ongoing genocide.

The facts pled therefore make it impossible for Plaintiffs to plausibly allege

that CodePink intended to injure, intimidate, or interfere with them because of their

exercise of freedom of religion.

### b) **Plaintiffs Have Alleged No Facts Allowing Them to Plausibly Claim That CodePink is Responsible for any Harmful Acts**

Plaintiffs implicitly rely on an imputed agency relationship to hold CodePink

liable for unidentified individuals' acts. Yet Plaintiffs fail to allege facts making it

plausible that CodePink had "the right to substantially control [these alleged

agent's] activities," Williams v. Yamaha Motor Co., 851 F.3d 1015, 1024 (9th Cir.

2017), nor how CodePink did or knew these things. Fabricant v. Elavon, Inc., 2:20-

cv-02960-SVW-MAA, 12-13 (C.D.C.A. 2020). Even where the principal ratifies an

act without knowledge of material facts of the agent's acts, the principal must still

choose to ratify the act while aware that they lack such knowledge to be liable for

the act. Fabricant, 2:20-cv-02960-SVW-MAA at 13-14, quoting Kristensen v. Credit

Payment Servs. Inc., 879 F.3d 1010, 1014 (9th Cir. 2018).

Even if the unidentified Does *were* CodePink members (which is nowhere

alleged) CodePink can only be responsible under some respondeat superior theory.

Other national organizations (for example, labor unions) are only responsible for

members' actions if common law respondeat superior doctrines apply. To hold a

union responsible for an agent's acts, under the common law "'it must be clearly shown . . . that what was done was done by their agents in accordance with their fundamental agreement of association.'" <u>Carbon Fuel Co. v. UMW</u>, 444 U.S. 212, 217 (1979), quoting <u>Coronado Coal Co. v. Mine Workers</u>, 268 U.S. 295, 304 (1925). Statutes governing labor-management relations imported common law *respondeat superior* doctrine, *see generally* 29 U.S.C.S. § 185, the Taft-Hartley Act, § 301(b), Norris–LaGuardia Act § 6, 29 U.S.C. § 106, making a union liable for its members' acts only where there is "clear proof" of participation, authorization, or ratification. <u>Simo v. Union of Needletrades, Indus. & Textile Emps., Sw. Dist. Council</u>, 322 F.3d 602, 620 (9th Cir. 2003). Thus, even courts invoking these statutes rely upon traditional agency law. Liability turns on the nature and extent of the actual control an international union exercises over a local union and the local's degree of autonomy. <u>Laughon v. Int'l Alliance of Theatrical Stage Emples</u>., 248 F.3d 931, 935 (9th Cir. 2001). Without evidence a union has instigated, supported, encouraged, or ratified acts by its subdivision union, there is no proof of an agency relationship, and thus a union cannot be held liable for the subdivision union's acts. <u>Carbon Fuel Co</u>, 444 U.S. at 218; *see also* <u>Simo</u>, 322 F.3d at 620. Even where an individual serves a double role as both the local and international union official, looking to the organization being served at the time of the conduct, courts "do not impute the conduct, or knowledge of the conduct, to the international solely by virtue of the individual's double role." <u>Laughon</u>, 248 F.3d at 937. Even participating in negotiations and reporting to the international's representative on the local's progress fails to demonstrate the international controlled the local in order to impute liability. <u>Security Farms v. International Broth. of Teamsters, Chauffeurs</u>, 124 F.3d 999, 1012-1013 (9th Cir. 1997).

Finally, the FACE Act does not establish separate conspiracy liability for a civil cause of action. Plaintiffs must show that their injuries are fairly traceable to

the specific alleged conduct of the particular defendants. Merely alleging that Defendants conspired ahead of time, without specific facts to show that Defendants each took actions that caused Plaintiffs' specific injuries, is insufficient.

Plaintiffs' allegations are broad and sweeping. They are also devoid of any facts showing how CodePink did the things it is accused of doing, nor how it knew of the things it is accused of knowing. There are no facts to support that CodePink controlled any individuals present at the event, nor any facts supporting that CodePink instigated, authorized, ratified or even encouraged any of the acts named in the complaint. With no facts to support its broad sweeping allegations, Plaintiffs have failed to sufficiently plead CodePink's vicarious liability.

### c) CodePink's Alleged Activities Constitute Protected First Amendment Speech and Advocacy

Demonstrations, marches, and picketing are undeniably protected First Amendment activities. Collins v. Jordan 110 F.3d 1363, 1371 (9th Cir. 1996). This includes protests far more aggressive than this one. Gerber v. Herskovitz, 14 F.4th 500, 504, 508-509 (6th Cir. 2021) (First Amendment protected regular, prolonged protests in front of a synagogue routinely held during scheduled worship, even with inflammatory signs saying "Resist Jewish Power."). Even where protected First Amendment speech becomes intertwined with someone else's later illegal conduct, the solution is to punish the conduct, not the speech. Id. The federal FACE Act explicitly forbids construing its language to capture "expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution[.]" 18 U.S.C. § 248(d)(1). Plaintiffs therefore cannot plausibly allege a violation based on CodePink's protected speech.

24

DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

### d) **Plaintiffs Fail to Plausibly Allege CodePink Used Force, Threats of Force, or Physical Obstruction to Interfere with Their Freedom of Religion**

Plaintiffs do not plausibly allege that Defendants' social media posting used force, threats of force, or physical obstruction against him as required under 18 U.S.C. § 248(a)(2). In its legislative history, 18 U.S.C. § 248(a)(2)'s sponsor stated the proposal would "do no more than give religious liberty the same protection that [the FACE Act] would give abortion," and would address recent violence, including a protest where activists entered a facility during prayer and threw things at the congregants, and a series of arson attacks against churches. 139 Cong. Rec. S15660, 1993 WL 470962 (Nov. 3, 1993).

A large, outspoken demonstration (and a viciously brutal counterprotest) bears little resemblance to the violent acts contemplated by the statute. Plaintiffs have not pled a single fact that could plausibly show that CodePink used physical force against them—the only alleged physical force was by unidentified people.

Furthermore, Plaintiffs' own pleading shows that any force or threats of force that may have occurred were not at the direction of CodePink, but instead resulted from clashes provoked by the pro-Israel counter-protesters. The FAC links to a Yahoo News article which includes an interview with a physician who explains that the pro-genocide counter-protesters clashed with the anti-war crimes protesters for more than an hour, while the Los Angeles Police Department formed a line that prevented any of the anti-war crimes protesters from dispersing to their vehicles; "the protesters were effectively 'sandwiched' between the counter-protesters and the police." FAC ¶¶ 74, 100. The source further states that "a pro-Israel demonstrator who was carrying a spiked pole was arrested." Id. Another quoted source stated that it was in fact "a handful of LAPD officers" who were "standing at the entrance of the synagogue," obstructing entry, not the anti-genocide protesters. Id. The Plaintiffs

therefore cannot plausibly show that CodePink intended or used force or violence, and their own sources suggest the demonstration was nonviolent until the counter-protesters—over whom CodePink has no power whatsoever—arrived with weapons.

Plaintiffs have also failed to plausibly allege that CodePink used a *threat* of force against them. The First Amendment protects "offensive and coercive speech," including "the use of speeches, marches, and threats of social ostracism." Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists, 290 F.3d 1058, 1070 (9th Cir. 2002), *as amended* (July 10, 2002) (citing NAACP v. Clairborne Hardware Co., 458 U.S. 886, 933 (1982)). Where Plaintiffs rely on a "threat of force" to plead a violation of the FACE Act, they must show that the threat was a "true threat", not subject to the First Amendment's protection. Planned Parenthood, 290 F.3d 1073 (providing that "FACE on its face requires that 'threat of force' be defined and applied consistent with the First Amendment").

Under the Supreme Court's true threat doctrine, Defendant's speech was not a "true threat" sufficient to remove it from the First Amendment's protection. Speech only qualifies as a "true threat" where "in the entire context and under all the circumstances, a reasonable person would foresee [it] would be interpreted by those to whom the statement is communicated as a serious expression of intent to inflict bodily harm upon that person." Id. at 1077. The Supreme Court recently recognized a recklessness *scienter* requirement for culpable true threats, such that the Defendant must have "consciously disregarded a substantial risk that his communications would be viewed as threatening violence." Counterman v. Colorado, 600 U.S. 66, 69 (2023). Although Counterman arose in the context of a criminal charge, its *scienter* requirement has also been applied to civil causes of action based on threats. Id. at 80-81. *See also* Kindschy v. Aish, 412 Wis.2d 319, 333 (Sup. Ct. Wis. 2024) (applying Counterman's *scienter* rule to a civil dispute).

In this case, Plaintiffs do not plausibly allege that CodePink's statements are true threats such that they are unprotected by the First Amendment. Plaintiffs do not allege that CodePink's statements could be interpreted as a serious expression of intent to inflict bodily harm upon them, nor that CodePink was aware of any substantial risk of their communications being viewed as a threat of violence. As such, Plaintiffs fail to plausibly allege CodePink used a threat of force against them.

Plaintiffs allege that some protesters called for indiscriminate violence against Jewish people. FAC ¶ 239. Not only did Plaintiffs fail to plead that CodePink controlled those protesters, the very article cited in support of that allegation provides no support whatsoever—in fact, the only call for indiscriminate violence mentioned in the source is a pro-Israel chanter who shouted, "we have the bullets, you have the blood." FAC ¶¶. 74, 100.

Plaintiffs also fail to plausibly allege that CodePink engaged in physical obstruction. To plead a violation based on physical obstruction, Plaintiffs must specifically show that the alleged obstruction Defendants created rendered ingress and egress to the facility impossible or unreasonably difficult or hazardous. 18 U.S.C. § 248(e)(4); *see also* S. Rep. 117, 103d Cong. 1st Sess. 31 (1993) (explaining that "physical obstruction" would include blockades, "chaining people and cars to entrances with bicycle locks," strewing nails on public roads leading to clinics, and "blocking entrances with immobilized cars"); H.R. Conf. Rep No. 103-488, 9 (1994) (clarifying that physical obstruction would include, for example "physically blocking access to a church or pouring glue in the locks of a synagogue."). Plaintiffs fail to plausibly allege that CodePink physically made ingress or egress unreasonably hazardous; only that they called for a political demonstration outside of the facility, and that there were clashes between unidentified individuals. This could not be further from the church burnings and intentional, coordinated physical violence against parishioners that the FACE Act was intended to prevent.

Plaintiffs have therefore failed to allege any facts that can plausibly show CodePink used force, threats of force, or physical obstruction to interfere with his freedom of religion under the FACE Act, and the claim must be dismissed.

### 2. Plaintiffs Fail to State a Claim Under 42 U.S.C. § 1985(3)

#### a) Plaintiffs Fail to Allege Specific Facts that Plausibly Show a Conspiracy by Defendants

A claim under 42 U.S.C. § 1985(3) requires specific factual allegations that plausibly show the Defendants conspired to violate the statute. Comm. to Protect our Agric. Water, 235 F. Supp. 3d at 1185. Plaintiffs must "allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988); see also Sanchez v. City of Santa Ana, 936 F.2d 1027, 1039 (9th Cir. 1991). Plaintiffs have failed to do so in this case.

Rather than alleging specific facts that plausibly show a conspiracy among the Defendants, the FAC relies on blanket generalized assertions that "Named Defendants conspired with each other and then acted in concert." FAC ¶ 9; see also FAC ¶¶ 156, 366. Plaintiffs allege that "Named Defendants agreed among themselves to organize the riot" without alleging who agreed, what was agreed to, when, by what means such agreement was communicated, nor even what said alleged agreement included. FAC ¶ 413. Without specific factual allegations that make a conspiracy plausible, the blanket assertion that 'Defendants conspired to organize a riot' is insufficient to plead a claim. 235 F. Supp. 3d at 1185.

#### b) Plaintiffs Fail to Allege Any Conspirator Was a State Actor, or That Conspiracy Was Aimed at State Action

Plaintiffs fail to allege a state actor was part of any conspiracy, or that CodePink was intending to influence state action. To state a claim under 42 U.S.C. § 1985(3), Plaintiffs must plausibly allege that one or more of the conspirators is a

state actor, or that the conspiracy was intended to influence state action. <u>Pasadena Republic Club v. Western Justice Center</u>, 985 F.3d 1161, 1171 (9th Cir. 2021) (citing <u>United Bhd. Of Carpenters & Joiners, Local 610 v. Scott</u>, 463 U.S. 825, 830 (1983) ("an alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) unless it is proved that the State is involved in the conspiracy."). The FAC contains none of this.

### c) **Plaintiffs Do Not Plausibly Allege a Racial or Class-Based Animus**

Plaintiffs do not plausibly allege a racial or class-based animus as required under 42 U.S.C. § 1985(3). <u>Sever v. Alaska Pulp Corp.</u>, 978 F.2d 1529, 1536 (9th Cir. 1992). Plaintiffs only allege that CodePink told its supporters "that 'A Mega Zionist Real Estate Event is in LA This Week,'" and called upon supporters to help advocate against the sale of illegally occupied land. FAC ¶¶ 212-3. CodePink further clarified that, as far as it was aware, "no religious services were scheduled" at the time of the protest. FAC ¶ 334. These pled facts cannot plausibly show a racial or class-based animus by CodePink when it encouraged supporters to attend.

Sources cited in the FAC instead show that CodePink was motivated by a desire to oppose "the illegal sale of stolen, occupied land in Palestine." FAC n. 90. CodePink specifically and clearly denounced the allegation that their activities were motivated by any antisemitic animus whatsoever, and labelled the accusation a lie. FAC nn. 90, 92. Even if CodePink had animus towards people who sought to attend the real estate event to purchase land in Occupied Palestine, that would not amount to the kind of animus required for a claim under 42 U.S.C. § 1985(3). <u>United Bhd. of Carpenters and Joiners of Am, Local 610, AFL-CIO</u>, 463 U.S. at 837 (42 U.S.C. § 1985(3) does not extend to "conspiracies motivated by bias towards others on account of their economic views, status, or activities."). Plaintiffs have not set forth—and cannot point to a single CodePink statement or action establishing—a

plausible factual basis for finding a racial or class-based animus, and in fact have provided specific reasons to find such a motivation *im*plausible.

Where, as here, the pleadings include citation to clear, consistent statements by the Defendants regarding their motivation, the Court cannot ignore these facts and should treat them as true under Rule 12(b)(6). Ordinarily, affirmative defenses may not be raised by motion to dismiss. Scott v. Kuhlmann, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam). But a complaint may be dismissed when the allegations of the complaint give rise to an affirmative defense that clearly appears on the face of the pleading. McCalden v. California Library Ass'n, 955 F.2d 1214, 1219 (9th Cir. 1990) (superseded by rule on other grounds as stated in Harmston v. City & County of San Francisco, 627 F.3d 1273 (9th Cir. 2010); Boquist v. Courtney, 32 F.4th 764, 774 (9th Cir. 2022).

### d) Plaintiffs Do Not Plausibly Allege Harms That Are Fairly Traceable to CodePink

None of Plaintiffs' pled injuries are fairly traceable to any of CodePink's alleged conduct. Standing under Article III requires Plaintiffs to demonstrate a concrete injury that is fairly-traceable to the complained-of conduct. Alaska Right to Life Political Action Comm. v. Feldman, 504 F.3d 840, 848 (9th Cir. 2007) (quoting Lujan, 504 U.S. at 560-561. Courts are reluctant to endorse standing theories that rest on speculation about the decisions of an independent actor. Clapper v. Amnesty Int'l. USA, 568 U.S. 398, 414 (2013).

Plaintiff Pollak's pled injuries are that he tried to enter the synagogue through the front entrance but was "blocked by the angry mob," and instead "enter[ed] the Synagogue through a side entrance" that was apparently unobstructed. FAC ¶¶ 12-4. Being intimidated from using one of several entrances to a facility does not rise to the level of a cognizable injury, and even if it did, it would not be fairly-traceable to any alleged conduct by CodePink. There are no facts plead that suggest that

CodePink controlled, directed, or even encouraged, John Does 1-100, nor the rest of "the mob" that scared Plaintiff Pollak, only that CodePink encouraged supporters to attend the anti-genocide demonstration and to help *advocate* against a war crime.

Plaintiffs' injuries are therefore not fairly-traceable to the alleged conduct of CodePink, but rather depend on the acts of unidentified third parties, including the individual who allegedly sprayed others with mace, the individuals who allegedly photographed houses and cars, the counter-protesters who—according to the sources in the FAC—started the violent clash, and the police and private security kettled crowd members near the front door and failed to control the resulting conflict. Sources cited in the FAC show that the anti-genocide protesters were the smaller of the various groups involved, were attacked by the pro-Israel counter-protesters, and were surrounded and kettled by security. FAC ¶¶. 74, 100. CodePink did not control any of these actors, and Plaintiffs fail to offer a single fact to plausibly suggest otherwise.

As such, because Plaintiffs' injuries depend upon the acts of independent third parties and are not fairly traceable to the alleged acts of CodePink, Plaintiffs have no standing to bring this suit under 42 U.S.C. § 1985(3).

**D. <u>This Court Lacks Jurisdiction to Shield and Facilitate the Commission of War Crimes in Violation of International Law, as Plaintiffs Request</u>**

This Court may take judicial notice that all nations are subject to international humanitarian law (the law of war/armed conflict) and human rights law, and particularly to customary international law regardless of their signatory status. U.N. member states including the U.S. are not only bound to abide by these international law principles, but to refrain from aiding and abetting violations of them.[4] In the commentary to Article 16 of the Draft Articles on State Responsibility, the

---

[4] United Nations Charter, Art. 1(1)-(3), https://tinyurl.com/5n7fdwvc..

International Law Commission clarifies: "[t]he obligation not to provide aid or assistance to facilitate the commission of an internationally wrongful act by another State is not limited to the prohibition on the use of force."[5] This includes an obligation not to permit misusing its legal system to shield the wrongful act.

When Defendants labelled the MHI real estate sale an international war crime, they were not engaging in hyperbole, but invoking clearly established principles of international law. As the International Court of Justice ruled in 2024, Israel's occupation of Gaza and the West Bank, along with the associated settlement regime, annexation, and use of natural resources, is unlawful.[6]

### 1. The United States is Party to the Fourth Geneva Convention Which Prohibits Confiscation of Land and Forcible Population Transfer

The Fourth Geneva Convention, to which the U.S. is a party, prohibits confiscating or annexing land by force or forcibly transferring populations into and out of the territory.[7] The Geneva Conventions and the Hague Regulations have become customary international law and are thus universally binding.[8] Plaintiffs demand that this Court obstruct accountability for violations of the Geneva Conventions. They would have this Court abrogate the United States' obligations as a High Contracting Party per Common Article 1.[9]

---

[5] International Law Commission, *Articles on State Responsibility, Art. 16*, available at https://tinyurl.com/53d6p6f8.
[6] United Nations, OHCHR, Press Release, "Experts hail ICJ declaration on illegality of Israel's presence in the occupied Palestinian territory as "historic" for Palestinians and international law," July 30, 2024, available at https://tinyurl.com/4bptuzka.
[7] The Fourth Geneva Convention Relative to the Protection of Civilian Persons in Time of War, 1949, Art. 47, available at https://tinyurl.com/2aa2ujy6; The Fourth Geneva Convention Art. 49, available at https://tinyurl.com/32htsmyz; The Fourth Geneva Convention, 1949, Art. 147, available at https://tinyurl.com/3xt43az6.
[8] International Committee of the Red Cross ("ICRC"), *Customary International Humanitarian Law*, available at https://tinyurl.com/k2at4v4c.
[9] The Fourth Geneva Convention, 1949, Art. 1, available at https://tinyurl.com/mttw42sh.

### 2. Israel's Annexation, Confiscation, and Settlement Practices Constitute Crimes Against Humanity and War Crimes

Israel's settlement practice constitutes a war crime and a crime against humanity, violating international humanitarian law principles prohibiting establishing settlements in occupied territories to confiscate occupied land.[10] The 1907 Hague Regulations IV, to which the U.S. is a party, prohibits land annexation and the confiscating private property, and requires the occupying state to only administer and usufruct occupied territory to safeguard their capital.[11] Rule 130 of the ICRC's customary international law database provides that "[s]tates may not deport or transfer parts of their own civilian population into a territory they occupy," and is binding customary international law.[12]

In addition to constituting war crimes and crimes against humanity under international humanitarian law, Israel's settlement regime also violates numerous international human rights law treaties.[13] The 1973 U.N. Convention on the Suppression and Punishment of the Crime of Apartheid deems Apartheid an entirely separate crime against humanity.[14] Israel's settlement project violates these long-standing customary international humanitarian law and human rights law principles by forcibly transferring its occupying population to the Occupied Territories via its settlements, and by enforcing a regime of racial apartheid.

---

[10] ICRC, *Customary International Humanitarian Law*, available at https://tinyurl.com/k2at4v4c.

[11] 1907 Hague Regulations IV, Respecting the Laws and Customs of War on Land and its Annex: Regulations Concerning the Laws and Customs of War on Land, available at https://tinyurl.com/2hwzu7h5.

[12] ICRC. *International Humanitarian Law Database*, Rule 130, available at https://tinyurl.com/yay4rddd

[13] The International Convention on the Elimination of All Forms of Racial Discrimination ("ICERD"), to which the U.S. is a party, Article 1 prohibits racial discrimination and condemns racial segregation and apartheid. International Convention on the Elimination of All Forms of Racial Discrimination ("ICERD"), 1965, available at https://tinyurl.com/fjzy2c59.

[14] Convention on the Suppression and Punishment of the Crime of Apartheid, 1976, Art. 1, available at https://tinyurl.com/yc7kfj9x

In conclusion, this Court cannot legally shield or facilitate violations of international law in such a way as to render itself culpable. As such an exercise of jurisdiction would be *ultra vires*, the FAC must be dismissed.

## VII. <u>CONCLUSION</u>

The Court has a gate-keeping function, even at the pleading stage. That function is most needed when political actors dress as litigants and demand that judges turn their courtrooms into stages for ideological or even theological disputes. That is why <u>Iqbal</u> and <u>Twombly</u> demand that Plaintiffs' rhetoric be tethered to enough facts to at least make the theories plausible. Those guardrails have been entirely breached here, where Plaintiffs' hyperbole recasts a call for lawful protest against an illegal real estate event as a campaign of antisemitic terror. The law requires more of Plaintiffs than hyperbole; there must be at least a nod to the reality-based community. Plaintiffs have utterly failed at even this most basic requirement.

Plaintiffs' FAC still fails to identify a single specific fact making their claims against CodePink plausible or establishing Article III standing. Because Plaintiffs have repeatedly failed to plausibly plead their invoked causes of action, and because further amendment would be a futile waste of the Court's resources, this complaint should be dismissed with prejudice.

Respectfully submitted,

Dated: January 21, 2025                     KLEIMAN / RAJARAM

By:_____
/s/ Mark Kleiman
Mark Kleiman

Attorneys for Defendants
CODEPINK WOMEN FOR PEACE
CODEPINK ACTION FUND