HOLTZMAN VOGEL BARAN TORCHINSKY
& JOSEFIAK PLLC
Dallin B. Holt (*Pro Hac Vice*)
dholt@holtzmanvogel.com
2555 East Camelback Road, Ste. 700
Phoenix, AZ 85016
Telephone: (602) 388-1262
Facsimile: (549) 341-8809

Attorneys for Plaintiffs and Class Members

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

NOAH POLLAK, on behalf of all others similarly situated, and STANDWITHUS CENTER FOR LEGAL JUSTICE,

Plaintiffs,

v.

CODEPINK WOMEN FOR PEACE, a California entity; CODEPINK ACTION FUND, a California entity; WESPAC FOUNDATION, a New York entity; HONOR THE EARTH, a Minnesota entity; COURTNEY LENNA SCHIRF; REMO IBRAHIM, d/b/a PALESTINIAN YOUTH MOVEMENT; PALESTINIAN YOUTH MOVEMENT; and DOES #1-100,

Defendants.

CASE NO.: 2:24-cv-06253-SVW-PVC

Honorable Stephen V. Wilson
Courtroom 10A

**PLAINTIFFS' OPPOSITION TO DEFENDANTS PALESTINIAN YOUTH MOVEMENT, COURTNEY LENNA SCHIRF, AND REMO IBRAHIM'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Date:   February 24, 2025
Time:   1:30 p.m.
Place:  Courtroom 10A

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................1

I. INTRODUCTION ............................................................................................1

II. ARGUMENT ..................................................................................................2

    A.    PYM, Schirf, and Ibrahim's Motion to Strike Is Frivolous...............2

    B.    The Court Has Personal Jurisdiction over PYM and Schirf..............3

    C.    Defendants' Class-Certification Arguments Are Meritless...............6

    D.    StandWithUs Plainly Has *Associational* Standing. ...........................7

    E.    The First Amended Complaint far Surpasses the Standard for Surviving a Rule 12(b)(6) Motion to Dismiss. ..................................9

        1.    Plaintiffs have plausibly alleged that PYM, Schirf, and Ibrahim violated the FACE Act. ...............................................9

        2.    Plaintiffs have plausibly alleged that PYM, Schirf, and Ibrahim violated 42 U.S.C. § 1985. ......................................14

            a.    A conspiracy plainly existed.......................15

            b.    The "State Action" argument is misplaced. ..................................................15

            c.    PYM, Schirf, and Ibrahim were driven by antisemitic animus. ....................................16

            d.    The alleged harms are directly attributable to defendants' conduct. ................................17

III. CONCLUSION ............................................................................................17

CERTIFICATE OF SERVICE ..........................................................................19

L.R. 11-6.2 CERTIFICATE OF COMPLIANCE...............................................20

PLAINTIFFS' OPPOSITION TO PYM, SCHIRF, AND IBRAHIM'S MOTION TO DISMISS
2:24-cv-06253-SVW-PVC

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Am. Diabetes Ass'n v. U.S. Dep't of the Army*,
  938 F.3d 1147 (9th Cir. 2019) ............................................................... 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................... 12

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,
  223 F.3d 1082 (9th Cir. 2000) ............................................................... 5

*Blakemore v. Super. Ct.*,
  129 Cal. App. 4th 36 (2005) ............................................................... 6

*Bray v. Alexandria Women's Health Clinic*,
  506 U.S. 263 (1993) ............................................................... 16

*Butcher v. City of Marysville*,
  398 F. Supp. 3d 715 (E.D. Cal. 2019) ............................................................... 7

*Clerkin v. MyLife.Com*,
  2011 U.S. Dist. LEXIS 96735, (N.D. Cal. Aug. 29, 2011) ............................................................... 7

*Cruz v. Sky Chefs, Inc.*,
  2013 U.S. Dist. LEXIS 65114, (N.D. Cal. May 6, 2013) ............................................................... 7

*Davis v. Cranfield Aero. Sols., Ltd.*,
  71 F.4th 1154 (9th Cir. 2023) ............................................................... 4

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
  592 U.S. 351 (2021) ............................................................... 3, 4, 5

*Gillibeau v. City of Richmond,*

   417 F.2d 426 (9th Cir. 1969) .................................................................................. 7

*Griffin v. Breckenridge,*

   403 U.S. 88 (1971) ............................................................................................... 15

 *iSpot.tv Inc. v. Teyfukova,*

   2023 WL 1967958 (C.D. Cal. Jan. 25, 2023) ...................................................... 14

*Jews for Jesus, Inc. v. Jewish Cmty. Relations Council, Inc.,*

   968 F.2d 286 (2d Cir. 1992) ................................................................................. 16

*Luehring v. Metro. State Hosp.,*

   2024 U.S. Dist. LEXIS 235458 (C.D. Cal. Dec. 16, 2024) .................................. 2

*Martin v. Masters,*

   2025 U.S. Dist. LEXIS 4742 (N.D. Cal. Jan. 7, 2025) ....................................... 15

*Mavrix Photo, Inc. v. Brand Techs., Inc.,*

   647 F.3d 1218 (9th Cir. 2011) ........................................................................... 5, 6

*Meyer v. Nat'l Tenant Network, Inc.,*

   10 F. Supp. 3d 1096 (N.D. Cal. 2014) .................................................................. 7

*Nat'l Fam. Farm Coal. v. U.S. EPA,*

   966 F.3d 893 (9th Cir. 2020) ................................................................................. 8

*Preciado v. Freightliner Custom Chassis Corp.,*

   87 Cal. App. 5th 964 (Cal.App.4th 2023) ............................................................. 4

*Prince v. CLS Transp., Inc.,*

   118 Cal. App. 4th 1320 (2004) .............................................................................. 6

PLAINTIFFS' OPPOSITION TO PYM, SCHIRF, AND IBRAHIM'S MOTION TO DISMISS
2:24-cv-06253-SVW-PVC

*Ranza v. Nike, Inc.*,

   793 F.3d 1059 (9th Cir. 2015) ............................................................................. 5

*RDF Media Ltd. v. Fox Broad. Co.*,

   372 F. Supp. 2d 556 (C.D. Cal. 2005) ................................................................. 2

*Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*,

   768 F.3d 938 (9th Cir. 2014) ............................................................................ 12

*Rieves v. Town of Smyrna*,

   67 F.4th 856 (6th Cir. 2023) ............................................................................. 17

*Russello v. United States*,

   464 U.S. 16 (1983) ............................................................................................ 11

*Safe Air for Everyone v. Meyer*,

   373 F.3d 1035 (9th Cir. 2004) .......................................................................... 14

*Sánchez v. Foley*,

   972 F.3d 1 (1st Cir. 2020) ................................................................................ 17

*Schwarzenegger v. Fred Martin Motor Co.*,

   374 F.3d 797 (9th Cir. 2004) ......................................................................... 4, 6

*United States v. Gregg*,

   226 F.3d 253 (3d Cir. 2000) ............................................................................ 12

*United States v. Navarrette-Aguilar*,

   813 F.3d 785 (9th Cir. 2015) ............................................................................ 15

*White v. Lee*,

   227 F.3d 1214 (9th Cir. 2000) .......................................................................... 13

**Statutes**

18 U.S.C. § 248 ........................................................................................ 7, 10, 11

42 U.S.C. § 1983 .................................................................... 14, 15, 16, 17

42 U.S.C. § 1985 ................................................................................... 17

**Other**

Fed. R. Civ. P. 12 ...........................................................................*passim*

Fed. R. Civ. 23 ...................................................................................... 7

U.S. Const. amend. I ............................................................................. 8

PLAINTIFFS' OPPOSITION TO PYM, SCHIRF, AND IBRAHIM'S MOTION TO DISMISS
2:24-cv-06253-SVW-PVC

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

On June 23, 2024, a violent mob descended upon the heart of Los Angeles's Jewish community. *See* Am. Compl. ¶¶ 1-7, 228-230. Armed with bear spray and other weapons, donning the attire of Hamas terrorists, and yelling "Hitler didn't finish the job!", "Intifada!", and "Leave the neighborhood, we are coming!", the rioters used force and threats of force to prevent Jewish congregants from safely entering their house of worship, the Adas Torah Synagogue (the "Synagogue"). *See* Am. Compl. ¶¶ 1, 230-239, 244, 258, 261-269. The over two-hundred rioters who stood shoulder-to-shoulder in front of the main entrances to the Synagogue—which they called "THE BELLY OF THE BEAST"—intended to obstruct would-be worshippers from practicing their religion. *See* Am. Compl. ¶¶ 223, 240. They succeeded in this goal: through their violent attacks and intimidating threats, the rioters rendered passage to and from the Synagogue too difficult and hazardous for many congregants to attempt. *See* Am. Compl. ¶¶ 271-307.

Plaintiff Noah Pollak is a resident of Los Angeles whose ability to enter the Synagogue on June 23, 2024 was made unreasonably difficult or hazardous by virtue of Defendants' actions. *See* Am. Compl. ¶¶ 29, 308-321. Plaintiff StandWithUs Center for Legal Justice ("StandWithUs") is a tax-exempt membership organization whose members include congregants from the Synagogue and members of the Los Angeles Jewish community who were forcefully prevented from exercising their First Amendment right of religious freedom at a place of religious worship due to the riot. *See* Am. Compl. ¶¶ 8-10, 20-22. Plaintiffs bring this action against the entities and individuals who organized, facilitated, and participated in the riot, including Defendants Palestinian Youth Movement ("PYM"), Courtney Lenna Schirf ("Schirf"), and Remo Ibrahim ("Ibrahim").

PLAINTIFFS' OPPOSITION TO PYM, SCHIRF, AND IBRAHIM'S MOTION TO DISMISS
2:24-cv-06253-SVW-PVC

## II.   ARGUMENT

### A.   PYM, Schirf, and Ibrahim's Motion to Strike Is Frivolous.

PYM, Schirf, and Ibrahim move to strike various matter from the operative complaint. Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). That said, "[m]otions to strike are generally disfavored . . . because" they are "usually used as a delaying tactic." *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005). Courts throughout this State have, for more than thirty years, consistently rejected motions to strike "unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Luehring v. Metro. State Hosp.*, 2024 U.S. Dist. LEXIS 235458, at *2 (C.D. Cal. Dec. 16, 2024) (quoting *LeDuc v. Ky. Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992)).

At bottom, Plaintiffs have alleged that Schirf, Ibrahim, and PYM, an organization with a demonstrated history of antisemitic conduct, (1) caused a riot that prevented orthodox Jews from worshiping at a synagogue after (2) agreeing with other antisemitic organizations and individuals to work side-by-side in depriving the proposed class of their constitutionally guaranteed civil rights. It is hard to imagine a fact with *more* bearing on Plaintiffs' claims than PYM, Ibrahim, and Schirf's relentless, demonstrable, and very public hostility to the Jewish community. On those grounds alone, Defendants' motion to strike should be summarily rejected.

Importantly, the paragraphs Defendants consider "scandalous" and "defamatory" sit at the heart of the allegations that Plaintiffs have brought against it. Indeed, the Motion proves the point: it simultaneously argues that (1) PYM's long, unbroken history of anti-Jewish animus is "irrelevant to the causes of action" and (2) Plaintiffs "cannot point to a single statement or action establishing a plausible factual basis for racial or class-based animus." Doc. 96 at 8, 21.

PLAINTIFFS' OPPOSITION TO PYM, SCHIRF, AND IBRAHIM'S MOTION TO DISMISS
2:24-cv-06253-SVW-PVC

Simply put, Plaintiffs allege that PYM, Schirf, and Ibrahim "terrorized" Jews by orchestrating a riot outside of a synagogue that involved violence and threats of violence. Plaintiffs have further alleged that PYM, Schirf, and Ibrahim terrorized Jews *because* they are Jews. For that reason, PYM, Schirf, and Ibrahim's history of terrorizing Jews  is plainly relevant, especially insofar as it shows that the Adas Torah riot did not occur in a vacuum. *See* Am. Compl. at ¶¶ 61–90. The allegations at issue are true, and therefore cannot be defamatory.  Further, they establish Defendants' anti-Jewish animus, and put the lie to any claim that PYM, Schirf, and Ibrahim's actions leading up to June 23, 2024 were motivated by anything but antisemitic hatred. They should not be stricken.

### B.    The Court Has Personal Jurisdiction over PYM and Schirf.

PYM and Schirf move this Court to dismiss Plaintiffs' claims for lack of personal jurisdiction under Rule 12(b)(2). The Supreme Court has held that "a tribunal's authority depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945)). "In giving content to that formulation, the Court has long focused on the nature and extent of 'the defendant's relationship to the forum State.'" *Id*. (quoting *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017)). As a result of that "focus," the Court recognizes two forms of personal jurisdiction: "general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Id*. (citing *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)).

While general jurisdiction "comes into play when a defendant is 'essentially at home' in the forum state," "[s]pecific jurisdiction, on the other hand, permits jurisdiction over a defendant 'less intimately connected' with a forum state." *Davis*

PLAINTIFFS' OPPOSITION TO PYM, SCHIRF, AND IBRAHIM'S MOTION TO DISMISS
2:24-cv-06253-SVW-PVC

*v. Cranfield Aero. Sols., Ltd.*, 71 F.4th 1154, 1161 (9th Cir. 2023) (quoting *Ford*, 592 U.S. at 372 (Alito, J., concurring)). As its alternative name suggests, specific jurisdiction is linked to the facts of the case at hand, being appropriate when the plaintiff's claims "arise out of or relate to" the defendant's deliberate efforts to "reach[] out beyond" its home state and "conduct[] activities within the forum State." *Ford*, 592 U.S. at 359.

The Ninth Circuit employs a three-part test to determine whether specific jurisdiction exists. It is the plaintiff's burden to establish the first two prongs of the test, which are: (1) whether the defendant "purposefully direct[ed] his activities or consummate[d] some transaction with the forum or resident thereof," and (2) whether the plaintiff's claim "arises out of or relates to" those "forum-related activities." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). Once the plaintiff satisfies these two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)); *see also Preciado v. Freightliner Custom Chassis Corp.*, 87 Cal. App. 5th 964, 977 (Cal.App.4th 2023). If the defendant cannot satisfy this burden, the third prong is met and the court may properly exercise specific jurisdiction over the defendant.

Importantly, when evaluating a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction "based on written materials rather than an evidentiary hearing," the court may "only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Schwarzenegger*, 374 F.3d at 800. At this stage, "uncontroverted allegations in the complaint must be taken as true," and conflicts regarding affidavits (to the extent they exist) "must be resolved in the plaintiff's favor." *Id.* (citing *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)); *see also Bancroft & Masters, Inc. v.*

4

*Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) ("Because the prima facie jurisdictional analysis requires us to accept the plaintiff's allegations as true, we must adopt [the plaintiff's] version of events for purposes of this appeal."); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (same).

Here, Plaintiffs have made the required showing for specific jurisdiction over both PYM and Schirf. First, PYM purposefully directed its activities at California by organizing, promoting, and participating in the June 23 riot at a Los Angeles synagogue. *See* Am. Compl. ¶¶ 8, 91, 59, 220-226. PYM's social media posts specifically targeted California residents, calling for them to participate in the demonstration. Am. Compl. ¶¶ 220-226. These were not "random" or "fortuitous" contacts with California: instead, they represent PYM's intentional targeting of California venues and residents for its activities. *See Ford*, 592 U.S. at 361.

Similarly, Schirf's role in PYM's social media strategy demonstrates purposeful direction toward California. Am. Compl. ¶¶ 91-92, 225. While PYM argues that social media posts alone cannot establish jurisdiction, Doc. 96 at 10, courts have recognized that virtual contacts targeting forum residents can satisfy the minimum contacts test. *See, e.g.*, *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230-32 (9th Cir. 2011) (finding specific jurisdiction when a national website included material targeting California residents). Schirf's deliberate use of social media to organize California-based activities thus satisfies the purposeful direction prong for both herself and PYM.

Second, the claims in this lawsuit directly arise from these California-focused activities. The entire case stems from the June 23 riot that PYM helped organize and promote. The relationship between PYM's California-directed conduct and Plaintiffs' claims could not be closer. Am. Compl. ¶¶ 220-226, 242.

Because the allegations in the Amended Complaint—which must be taken as true at this stage—establish the first two prongs of the Ninth Circuit's test for specific jurisdiction, the burden of presenting a "compelling case" as to why

5

specific jurisdiction is not reasonable shifts to PYM and Schirf. *Schwarzenegger*, 374 F.3d at 802. Neither PYM nor Schirf can satisfy this burden. In fact, they misstate the governing legal standard for this prong, claiming that it is Plaintiffs' burden "to satisfy the third specific jurisdiction element." Doc. 96 at 11. Regardless, their suggestion that specific jurisdiction would be unreasonable because PYM and Schirf do not reside in California and are "not alleged to have sent any funds to California" is insufficient given modern jurisprudence recognizing that virtual contacts alone can indeed support specific jurisdiction. Doc. 96 at 11; *Mavrix Photo*, 647 F.3d at 1230-32. Accordingly, because (1) PYM and Schirf purposefully directed conduct at California, (2) such conduct directly relates to this litigation, and (3) PYM and Schirf cannot present a compelling case that jurisdiction would be unreasonable, this Court has a sufficient basis to exercise specific personal jurisdiction over PYM and Schirf.

### C. Defendants' Class-Certification Arguments Are Meritless.

PYM, Schirf, and Ibrahim's next line of attack fares no better.  Relying on two California *state court* cases discussing *state court* standards for class certification in the context of *state court* demurrers and motions to strike, PYM argues that Plaintiffs' class claims fail.

Neither of the cases cited by PYM supports its argument.  *Blakemore v. Super. Ct.*, 129 Cal. App. 4th 36 (2005) held that a trial court erred in striking class certification allegations from the complaint at issue.  In *Prince v. CLS Transp., Inc.*, 118 Cal. App. 4th 1320, 1325 (2004), the Court of Appeal held that the trial court erred in granting a demurrer to class claims in a complaint, noting that "it is only in mass tort actions (or other actions equally unsuited to class action treatment) that class suitability can and should be determined at the pleading stage."  Even if this were a state court case, PYM has cited no law supporting the proposition that Plaintiffs' class claims should be dismissed.

Of course, this isn't a state court case. And for more than 50 years, the governing law in the Ninth Circuit has been that "compliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim." *Gillibeau v. City of Richmond*, 417 F.2d 426, 432 (9th Cir. 1969). District courts throughout the Circuit have consistently applied this principle ever since.[1]

Even on PYM, Schirf, and Ibrahim's (mistaken) terms, their argument fails. The FACE Act provides a claim for any class member who was attempting to enter the Adas Torah Synagogue but experienced "force," a "threat of force," or "physical obstruction" while doing so. 18 U.S.C. § 248(a)(2). It matters not whether one person encountered a spear-wielding PYM acolyte; another was assaulted with bear spray; another simply observed scores of individuals who, organized by PYM, Schirf, and Ibrahim, stood shoulder-to-shoulder and screeched antisemitic vitriol until that person declined to exercise her constitutionally protected freedom of worship out of fear for her physical safety; or another made it into the Synagogue after facing attempts to prevent him from doing so. The injury inflicted upon each— a FACE Act violation—is common (indeed, identical), which makes the allegations brought against PYM, Schirf, Ibrahim, and their co-conspirators uniquely amendable to class-wide adjudication.

### D. StandWithUs Plainly Has *Associational* Standing.

PYM, Schirf, and Ibrahim next argue that StandWithUs has no "organizational" standing (a theory entirely distinct from the "associational" standing on which StandWithUs relies). Doc. 96 at 12. Their argument, however, is as wrong as their mistaken vernacular. To establish associational standing, an organization like StandWithUs must show that "(a) its members would otherwise

---

[1] *See, e.g.*, *Butcher v. City of Marysville*, 398 F. Supp. 3d 715, 728 (E.D. Cal. 2019); *Meyer v. Nat'l Tenant Network, Inc.*, 10 F. Supp. 3d 1096, 1104 (N.D. Cal. 2014); *Cruz v. Sky Chefs, Inc.*, 2013 U.S. Dist. LEXIS 65114, 2013 WL 1892337, at *5 (N.D. Cal. May 6, 2013); *Clerkin v. MyLife.Com*, 2011 U.S. Dist. LEXIS 96735, 2011 WL 3809912, at *3 (N.D. Cal. Aug. 29, 2011).

7

have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purposes; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1155 (9th Cir. 2019) (citation omitted). StandWithUs easily clears each of these elemental hurdles.

*First*, while StandWithUs need only show that "one of its members would have Article III standing to sue in his or her own right," *Nat'l Fam. Farm Coal. v. U.S. EPA*, 966 F.3d 893, 908 (9th Cir. 2020), StandWithUs has described seven who would. Am. Compl. ¶¶ 33-39. Each member, even those that were already inside the Synagogue, encountered "force or threat of force," as well as intimidation, when attempting to enter or exit the Synagogue. Defendants' acts at the Synagogue made entering or exiting the Synagogue unreasonably difficult or hazardous. Each of StandWithUs's members was trying to *worship* freely, as guaranteed by the First Amendment to the U.S. Constitution. In other words, the members on whose behalf StandWithUs is suing were in fact personally attempting to exercise their religious freedom when the PYM, Schirf, and Ibrahim-organized riot interfered with their ability to do so. Because Plaintiffs have pleaded as much, PYM, Schirf, and Ibrahim's argument fails.

*Second*, safeguarding the constitutionally guaranteed freedom of Jews to worship without fear of physical violence sits at the very center of StandWithUs's organizational purpose. As a tax-exempt membership organization with members from across the United States who are united in combatting antisemitism and protecting the rights of Jewish Americans, StandWithUs's participation in this litigation directly serves its central mission and goals. *See* Am. Compl. ¶¶ 30-32.

*Third*, there is no need for any individual member of StandWithUs to participate in this lawsuit. For all the same reasons why this case is uniquely well suited for class-action treatment, it is also uniquely amenable to prosecution by StandWithUs under an associational standing theory. The injuries suffered by the

class and the StandWithUs members are identical—violations of the FACE Act. Nor is participation from any individual necessary for the relief sought by this lawsuit; under the law of this Circuit, the Defendants are jointly and severally liable for the statutory and punitive damages that the FACE Act contemplates, and the injunctive relief sought is similarly directed to the Defendants. Tellingly, PYM, Ibrahim, and Schirf make no attempt to argue otherwise.

### E. The First Amended Complaint far Surpasses the Standard for Surviving a Rule 12(b)(6) Motion to Dismiss.

#### 1. Plaintiffs have plausibly alleged that PYM, Schirf, and Ibrahim violated the FACE Act.

**A.** At the outset, a fundamental misunderstanding that permeates Defendants' motion to dismiss needs correcting. According to PYM, Schirf, and Ibrahim, no FACE Act violation could have arisen because neither they nor the mob they stirred to action knew that the congregants they terrorized were attempting to exercise their constitutional right to religious practice, which means they could not have specifically intended to prevent anyone from worshiping at Adas Torah. Even assuming that PYM, Schirf, Ibrahim, or the rioters they organized were too oblivious to realize that Orthodox Jews use synagogues for prayer and other religious activities,  PYM, Schirf, and Ibrahim's head-in-the-sand intentionality argument fails as a matter of grammar. In full, the provision of the FACE Act that Defendants violated states:

Whoever . . . .

[a]    by force or threat of force or by physical obstruction,

[b]    *intentionally* injures, intimidates or interferes with or attempts to injure, intimidate or interfere with

[c]    any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship . . .

9

shall be subject to . . . penalties.

18 U.S.C. § 248(a)(2) (emphasis added).

Here, the word "intentionally" only modifies the phrase "injures, intimidates or interferes with or attempts to injure, intimidate or interfere with." *Id*. It does not extend past that clause.

In other words, the "intentionality" *mens rea* requirement means that the FACE Act violator must have meant to injure, intimidate, or create an interference; accidentally or negligently creating an impediment is not enough. But "intentionally" does not, as Defendants would have it, mean Plaintiffs must show that the rioters or their organizers had the subjective awareness that the victims of their intentional conduct were trying to enter the synagogue to worship. Were it otherwise, the FACE Act would have to read as follows:

Whoever . . . .

[a]    by force or threat of force or by physical obstruction,

[b]    intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with

[c]    any person **[because that person is or has been]** lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship . . .

shall be subject to . . . penalties.

18 U.S.C. § 248(a)(2). That, however, is not the statute that Congress enacted. Critically, when Congress does want to create this type of scienter requirement, it knows how to do so. The Court need look no further than the abortion-clinic provision of the FACE Act to see an example. That provision, enumerated at 18 U.S.C. § 248(1), provides that:

Whoever . . . .

[a]    by force or threat of force or by physical obstruction,

10

      [b]    intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with

      [c]    any person *because that person* is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services

    shall be subject to . . . penalties.

*Id*. (emphasis added). The *inclusion* of the phrase "because that person" in Section 248(1) is proof positive that the *exclusion* of a similar modifier in Section 248(2) was an intentional decision by the Congress that enacted the FACE Act. The Supreme Court has recognized this canon of statutory construction for more than two-score years: "[Where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972) (alteration in original)).

    And this makes sense; similar to the eggshell-skull theory of tort liability, if PYM, Schirf, and Ibrahim decide to stir up a riot to assault and batter Jews who are trying to enter a synagogue, they should assume the risk that those Jews are entering the synagogue to "exercise[e] or seek[] to exercise the First Amendment right of religious freedom at a place of religious worship." *Id*. For that reason, even if the Court credits Defendants' farcical argument that they had no idea, and could not have had any idea, that the Orthodox Jews whom their rioters were intentionally attacking and intimidating were trying to enter their house of worship so that they could worship there, PYM, Schirf, and Ibrahim are still liable under the FACE Act for the violence they incited.

    Lastly, Plaintiffs are not required to plead or prove that PYM, or any single Defendant for that matter, was the sole cause of the Adas Torah riot—only that they played a part—for liability under the FACE Act is joint and several. *See, e.g.,*

*United States v. Gregg*, 226 F.3d 253, 258-60 (3d Cir. 2000) (finding that liability under the FACE Act is joint and several among defendants).

**B.** Next, PYM, Schirf, and Ibrahim argue that Plaintiffs have not alleged facts to plausibly demonstrate that they were responsible for the riot they caused. To be certain, PYM, Schirf, and Ibrahim never deny that violence ensued or that the Adas Torah congregation was intimidated and/or prevented from entering the synagogue *en masse*. They merely disclaim responsibility for causing the riot, and insist that their fellow PYM members were not among the rioters.

At this stage, the Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) (citation omitted). So long as the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" the case must proceed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plaintiffs have far exceeded the *Twombly/Iqbal* "plausibility" standard. As an initial matter, PYM, Ibrahim, and Schirf are wrong that their members did not participate in the riot; their own publicly available videos depict PYM members at the scene while the riot was in progress. But more fundamentally, it remains blackletter law that the organizer of a riot can (and should) be held liable for the damage caused by the ensuing riot. This is true not only as a matter of common sense; it is also a principle established well enough to be memorialized in the Restatement (Second) of Torts, which provides that "[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." Restatement (Second) of Torts § 876. Under any conceivable interpretation of the FACE Act, so long as the FACE Act violations were a reasonably foreseeable

12

outcome of PYM Schirf, and Ibrahim's incitement, Defendants are liable for the FACE Act violations they caused.

And Plaintiffs' First Amended Complaint makes it profoundly "plausible" that PYM, Schirf, and Ibrahim did in fact violate the FACE Act, injuring scores of proposed class and StandWithUs members along the way. When it advertised its "protest," Defendants declared that "Racist settler expansionists are not welcome in Los Angeles!" and that "[t]he Nakba is ongoing and must be *confronted*!" (emphasis added) before concluding, "FROM THE BELLY OF THE BEAST [.] NO JUSTICE, NO PEACE." Am. Compl. ¶¶ 222–23. This, when combined with PYM's long history of using physical obstruction (and not just expression) in response to pro-Israel events, makes it quite "plausible" that PYM, Schirf, and Ibrahim intended for the riot to proceed exactly as it did on June 23, 2024. This is more than enough for the Court to reject their Rule 12(b)(6) argument and allow this case to proceed to discovery.[2]

**C.** Finally, as a final effort, PYM, Schirf, and Ibrahim insist that their actions are all protected by the First Amendment. But even though PYM, Schirf, and Ibrahim have the right to *express* antisemitic hatred, they have no First Amendment right to *incite* violence or criminal activity. *White v. Lee*, 227 F.3d 1214, 1227 (9th Cir. 2000) (citing *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969)). When PYM, Schirf, and Ibrahim shifted from speech to the organization, assistance, incitement, and funding of a riot that prevented an entire proposed class of Orthodox Jews from worshipping at their chosen synagogue, they shed whatever shield the First Amendment may have provided them.

---

[2] Defendants' argument "that any alleged force or threats of force resulted from clashes provoked by the pro-Israel counter-protesters" not only runs afoul of the principle that, at the Rule 12(b)(6) stage, Plaintiffs' allegations must be assumed true, but it also underscores that discovery in this case should begin in earnest. Doc. 96 at 17.

13

Even granting PYM, Schirf, and Ibrahim every benefit of the doubt, their First Amendment argument still fails. According to Defendants, "where protected First Amendment speech becomes intertwined with someone's later illegal conduct, the solution is to punish the conduct, not the speech." Doc. 96 at 16. That, in turn, is precisely what Plaintiffs are asking the Court to do here: punish PYM, Schirf, and Ibrahim not for their expression but instead for their role in violating the FACE Act by physically preventing and intimidating proposed class members from entering their house of worship. For that reason, Defendants' argument fails, and along with it, their Rule 12(b)(6) motion to dismiss Plaintiffs' FACE Act claim.[3]

### 2. Plaintiffs have plausibly alleged that PYM, Schirf, and Ibrahim violated 42 U.S.C. § 1985.

To succeed on their Section 1985 claim, Plaintiffs must show that (1) "two or more persons . . . [(2)] conspire[d] . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," and (3) "one or more persons engaged therein d[id], or cause[d] to be done, any act in furtherance of the object of such conspiracy, [(4)] whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States." 42 U.S.C. § 1985(3). Here, Plaintiffs have plausibly alleged that (1) PYM, Schirf, Ibrahim, and others; (2) conspired to violate the privileges and immunities of Plaintiffs and the proposed class members; (3) members of the conspiracy took

---

[3] Defendants reference the legal standard for a Rule 12(b)(1) motion to dismiss for lack of Article III standing but do not elaborate on their arguments in this regard beyond incorporating them into their Rule 12(b)(6) arguments. *See* Doc. 96 at 3, 21-22. That said, because (1) such a motion would be a "facial attack" wherein the Court presumes the truthfulness of Plaintiffs' factual allegations, and (2) Defendants only challenge the traceability requirement of Article III standing (at most), a Rule 12(b)(1) motion would be rightfully denied regarding both of Plaintiffs' claims for the same reasons described above. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *iSpot.tv, Inc. v. Teyfukova*, No. 2:21-CV-06815, 2023 WL 1967958, at *4 (C.D. Cal. Jan. 25, 2023) ("When the motion attacks the complaint on its face, the court considers the complaint's allegations to be true, and draws all reasonable inferences in the plaintiff's favor." (citing *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009)).

14

actions in furtherance of their agreement; and (4) Plaintiffs and proposed class members did in fact experience a deprivation of their rights and privileges as a result of these actions. Defendants' contrary arguments have no merit.

### a. A conspiracy plainly existed.

PYM, Schirf, and Ibrahim's first argument—that Plaintiffs failed to plead the existence of a conspiracy—ignores that it does not take much for a conspiracy to exist. Indeed, any agreement between two or more individuals or entities will do; there need not be a formal agreement or even an explicit intention to operate in concert. In this Circuit, a conspiracy can be established through circumstantial evidence, coordinated actions, communications, and shared objectives. *See United States v. Navarrette-Aguilar,* 813 F.3d 785, 794 (9th Cir. 2015). Throughout the First Amended Complaint, Plaintiffs have plausibly established that PYM, Schirf, and Ibrahim coordinated their actions and communications with others to animate a shared objective: ensuring that a crowd would show up in front of the Adas Torah Synagogue and interfere with the congregation's plans to worship there. *See, e.g.*, Am. Compl. ¶¶ 211-226. And, plainly, the First Amended Complaint is replete with steps taken in furtherance of that agreement. Nothing else is required to establish this first element. *See, e.g.*, Am. Compl. ¶¶ 236-238.

### b. The "State Action" argument is misplaced.

Next, PYM, Schirf, and Ibrahim argue that, without state action, no Section 1985 liability can arise. This is incorrect. Where, as here, the conspiracy aims to deprive individuals of their right to associate, practice religion, or be free from discrimination, a purely private conspiracy may proceed. This has been the case for more than fifty years, when the U.S. Supreme Court held that purely private conspiracies are actionable when discriminatory animus is present. See *Griffin v. Breckenridge*, 403 U.S. 88, 101-102 (1971); *see also Martin v. Masters*, 2025 U.S. Dist. LEXIS 4742, at *3 (N.D. Cal. Jan. 7, 2025). And since the early 1990s, the Court has recognized that religious discrimination constitutes the sort of class-based

15

animus necessary for a state-actor-free claim under Section 1985. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993).

The conspiracy through which PYM, Schirf, and Ibrahim transgressed Plaintiffs' rights is of the kind that does not require a state actor. PYM, Schirf, and Ibrahim joined with others to target a class of Jews who were attempting to exercise their constitutional and statutory right to worship without interference, intimidation, or impediment. Decades of Supreme Court precedent establishes that private conspiracies of this sort are actionable under Section 1985.

### c. PYM, Schirf, and Ibrahim were driven by antisemitic animus.

In an attempt to buttress their no-state-actor argument, PYM, Schirf, and Ibrahim argue that Plaintiffs failed to allege class-based discriminatory animus. This argument runs counter to page after page of Plaintiffs' allegations, all of which plausibly establish that antisemitism motivated the actions of PYM, Schirf, Ibrahim, and their co-conspirators. Am. Compl. ¶¶ 59, 303, 328-334.

Religious groups, including Jews, are recognized as protected classes under Section 1985. *Jews for Jesus, Inc. v. Jewish Cmty. Relations Council, Inc.*, 968 F.2d 286, 291 (2d Cir. 1992). Given that anti-Zionism has been recognized by—among other courts—this Court as synonymous with antisemitism, especially when directed towards Jewish individuals, PYM, Schirf and Ibrahim's express targeting of a "Racist settler expansionist[]" event "SELLING HOMES TO BUILD 'ANGLO NEIGHBORHOODS' IN PALESTINE" is all that Plaintiffs need to show that religious animus motivated every step that PYM, Ibrahim, and Schirf took vis-à-vis the Adas Torah riot. *See* Am. Compl. ¶¶ 220-222. To be certain, PYM, Schirf, and Ibrahim, with their co-conspirators, intentionally targeted Jewish congregants at a Jewish house of worship, with the goal of instilling so much fear and terror that those Jewish attendees would cease engaging in their religious activities.

It defies reason to suggest that those who showed up at a Synagogue, clad in Hamas insignia, to chant antisemitic rhetoric while physically attacking obviously

16

Orthodox Jews had no class-based animus. At a minimum, the existence of antisemitic animus is plainly "plausible" from the First Amended Complaint's allegations. For that reason, Defendants' argument fails.

### d. The alleged harms are directly attributable to defendants' conduct.

Finally, PYM, Schirf, and Ibrahim argue that the injuries alleged by Plaintiffs cannot be traced to them. *See* Doc. 96 at 21-22. This argument, however, fundamentally misunderstands how conspiracy liability works. PYM helped to organize and direct an event involving its members, who then engaged in obstruction, intimidation, and assault, which in turn proximately caused harm to Jewish worshippers. Am. Compl. ¶¶ 397. That is all that it takes to establish conspiracy liability.

Causation under Section 1985(3) does not require each defendant to have personally committed acts of violence. To do so "would defeat the purpose of permitting a civil conspiracy claim." *Rieves v. Town of Smyrna*, 67 F.4th 856, 863 (6th Cir. 2023). Instead, Section 1983 "permits a jury to hold co-conspirators liable for the damages flowing from a constitutional deprivation that all of the co-conspirators may not have personally carried out." *Sánchez v. Foley*, 972 F.3d 1, 11 (1st Cir. 2020). Here, PYM, Schirf, and Ibrahim agreed to organize, promote, and facilitate a riot outside of an Orthodox Jewish synagogue, and it predictably resulted in violence targeting Jewish worshippers. For that reason, PYM, Schirf, and Ibrahim's argument fails.

## III. CONCLUSION

For the foregoing reasons, PYM, Schirf, and Ibrahim's Motion to Dismiss should be denied.

17

Dated:  February 3, 2025                    Respectfully Submitted,

*/s/ Dallin B. Holt*
Dallin B. Holt*
dholt@holtzmanvogel.com
Holtzman Vogel Baran Torchinsky
and Josefiak PLLC
2555 East Camelback Rd, Ste 700
Phoenix, AZ 85016
Telephone: (602) 388-1262
Fax: (549) 341-8809

Jason B. Torchinsky*
jtorchinsky@holtzmanvogel.com
Edward M. Wenger*
emwenger@holtzmanvogel.com
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK, PLLC
2300 N Street NW, Suite 643
Washington, DC 20037
(202) 737-8808 (telephone)
(540) 341-8809 (facsimile)

Mark Goldfeder*
mark@jewishadvocacycenter.org
Ben Schlager*
ben@jewishadvocacycenter.org
NATIONAL JEWISH ADVOCACY
CENTER, INC.
INTERNATIONAL LEGAL
FORUM
1718 General George Patton Drive
Brentwood, TN 37027
(800) 269-9895 (telephone)
(800) 758-5232 (facsimile)

Daniel R. Paluch
dpaluch@ghplaw.com
GIPSON HOFFMAN & PANCIONE
1901 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-6002
Telephone: (310) 556-4660
Facsimile: (310) 556-8945

*Attorneys for Plaintiffs and Class
Members*

* *Admitted Pro Hac Vice*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on February 3, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Central District of California by using the CM/ECF System.

Participants in the case who are registered CM/ECF Users will be served by the CM/ECF System.

Dated:  February 3, 2025

*/s/ Dallin B. Holt*
Dallin B. Holt*
dholt@holtzmanvogel.com
Holtzman Vogel Baran Torchinsky
and Josefiak PLLC
2555 East Camelback Rd, Ste 700
Phoenix, AZ 85016
Telephone: (602) 388-1262
Fax: (549) 341-8809
*Admitted Pro Hac Vice*

19

## **L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Plaintiffs certifies that this brief contains 5, 554 words, which complies with the word limit of L.R. 11-61.

Dated: February 3, 2025

*/s/ Dallin B. Holt*
Dallin B. Holt*
dholt@holtzmanvogel.com
Holtzman Vogel Baran Torchinsky and Josefiak PLLC
2555 East Camelback Rd, Ste 700
Phoenix, AZ 85016
Telephone: (602) 388-1262
Fax: (549) 341-8809
*Admitted Pro Hac Vice*

PLAINTIFFS' OPPOSITION TO PYM, SCHIRF, AND IBRAHIM'S MOTION TO DISMISS
2:24-cv-06253-SVW-PVC