HOLTZMAN VOGEL BARAN TORCHINSKY
 & JOSEFIAK PLLC
Dallin B. Holt*
dholt@holtzmanvogel.com
2555 East Camelback Rd, Ste 700
Phoenix, AZ 85016
Telephone: (602) 388-1262
Facsimile: (549) 341-8809
*Admitted Pro Hac Vice

Attorneys for Plaintiffs and Putative Class Members

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOAH POLLAK, on behalf of all others similarly situated, and STANDWITHUS CENTER FOR LEGAL JUSTICE,<br><br>            Plaintiffs,<br><br>  v.<br><br>CODEPINK WOMEN FOR PEACE, a California entity; CODEPINK ACTION FUND, a California entity; WESPAC FOUNDATION, a New York entity; HONOR THE EARTH, a Minnesota entity; COURTNEY LENNA SCHIRF; REMO IBRAHIM, d/b/a PALESTINIAN YOUTH MOVEMENT; PALESTINIAN YOUTH MOVEMENT; and DOES #1-100,<br><br>            Defendants. | 2:24-cv-06253-SVW-PVC<br><br><br>Honorable Stephen V. Wilson<br>Courtroom 10A<br><br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT HONOR THE EARTH'S MOTION TO STRIKE AND DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**Date:  April 28, 2025**<br>**Time:  1:30 p.m.**<br>**Place:  Courtroom 10A** |

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ....................................... 1

I.     INTRODUCTION ........................................................................... 1

II.    ARGUMENT ................................................................................... 2

    A.  Honor the Earth's Motion to Strike Is Frivolous. ............................... 2
    B.  This Court Has Personal Jurisdiction over Honor the Earth, Based on Its Fiscal Sponsorship of PYM and Under General Agency Theory. ............................................................................... 4

       1.  HTE's Fiscal Sponsorship of PYM Creates Liability and Personal Jurisdiction. ................................................. 5
       2.  Agency Theory Provides Additional Grounds for Personal Jurisdiction. .............................................................. 7

    C.  Honor the Earth's Class-Certification Arguments Are Meritless and Misplaced. ...................................................................... 8
    D.  Plaintiffs Have Adequately Stated Claims Against Honor the Earth Because They Allege That HTE Exercised Control and Discretion over PYM's Activities, Including the Riot. ..................................... 10

       1.  Plaintiffs State a Plausible Claim for Relief Under the FACE Act. ................................................................................ 11
       2.  Plaintiffs State a Plausible Claim for Relief Under 42 U.S.C. § 1985(3). .......................................................... 12

III.    CONCLUSION ........................................................................... 13

CERTIFICATE OF SERVICE................................................................... 15

L.R. 11-6.2 CERTIFICATE OF COMPLIANCE ........................................ 16

i

# TABLE OF AUTHORITIES

**Cases**                                                                                  **Page(s)**

*Abdullah v. U.S. Sec. Assocs.*,
    731 F.3d 952 (9th Cir. 2013) ............................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................10

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.* ,
    223 F.3d 1082 (9th Cir. 2000) ...........................................................4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................11

*Butcher v. City of Marysville*,
    398 F. Supp. 3d 715 (E.D. Cal. 2019) .............................................9

*Davis v. Cranfield Aero. Sols., Ltd.*,
    71 F.4th 1154 (9th Cir. 2023) ...........................................................4

*Fenton v. Freedman*,
    748 F.2d 1358 (9th Cir. 1984) ...........................................................8

*Gillibeau v. Richmond*,
    417 F.2d 426 (9th Cir. 1969) ............................................................8

*Jones v. Royal Admin. Servs.*,
    887 F.3d 443 (9th Cir. 2018) ............................................................7

*Kristensen v. Credit Payment Servs.*,
    879 F.3d 1010 (9th Cir. 2018) ...........................................................8

*Long v. Nationwide Legal File & Serve, Inc.* ,
    2013 U.S. Dist. LEXIS 132971 (N.D. Cal. Sept. 17, 2013) ....... 7, 10

*Luehring v. Metro. State Hosp.*,
    2024 U.S. Dist. LEXIS 235458 (C.D. Cal. Dec. 16, 2024) ..............3

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ............................................................9

*Mendocino Env't Ctr. v. Mendocino Cnty.*,
    192 F.3d 1283 (9th Cir. 1999) .........................................................12

*Meyer v. Nat'l Tenant Network, Inc.*,
    10 F. Supp. 3d 1096 (N.D. Cal. 2014) ...............................................9

*New York ex rel. Tzac, Inc. v. New Isr. Fund*,
    520 F. Supp. 3d 362 (S.D.N.Y. 2021) .................................................5

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) .............................................................4

*RDF Media Ltd. v. Fox Broad. Co.*,
    372 F. Supp. 2d 556 (C.D. Cal. 2005) ...............................................2

*Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*,
    768 F.3d 938 (9th Cir. 2014) .............................................................10

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ...........................................................4, 5

*Sher v. Johnson*,
    911 F.2d 1357 (9th Cir. 1990) .............................................................7

*United States v. 313.34 Acres of Land*,
    923 F.2d 698 (9th Cir. 1991) ..........................................................6, 10

*United States v. Gregg*,
    226 F.3d 253 (3d Cir. 2000) ..............................................................11

*United States v. Washington*,
    233 F.2d 811 (9th Cir. 1956) ...............................................................6

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................9

**Statutes**

18 U.S.C. § 248 .................................................................................9, 12

42 U.S.C. § 1985 ...........................................................................10, 12

**Other**

Fed. R. Civ. P. 12 ...................................................................2, 4, 10, 13

Fed. R. Civ. P. 23 ................................................................................8, 9

PLF'S OPPOSITION TO DEF HTE'S MOT. TO STRIKE AND DISMISS FIRST AMENDED
COMPL., CASE NO. 2:24-CV-06253-SVW-PVC

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

## I.    <u>INTRODUCTION</u>

3

On June 23, 2024, violence erupted outside the Adas Torah Synagogue (the

4

"Synagogue") in Los Angeles's Pico-Robertson neighborhood. *See* Am. Compl. ¶¶

5

1-7, 228-230. An angry mob, many wearing Hamas-associated attire and armed

6

with weapons including bear spray, surrounded the Synagogue shouting antisemitic

7

slurs like "Hitler didn't finish the job!", "Intifada!", and "Leave the neighborhood,

8

we are coming!" *See* Am. Compl. ¶¶ 1, 230-239, 244, 258, 261-269. These rioters—

9

numbering over two hundred—formed a human barrier in front of the Synagogue

10

entrances, referring to the house of worship as "THE BELLY OF THE BEAST"

11

while deliberately obstructing Jewish congregants attempting to practice their faith.

12

*See* Am. Compl. ¶¶ 223, 240. Their violent intimidation tactics effectively

13

prevented many worshippers from safely accessing their place of religious worship.

14

*See* Am. Compl. ¶¶ 271-307.

15

Plaintiff and putative class representative, Noah Pollak, a Los Angeles

16

resident, encountered unreasonable difficulty and hazard when attempting to enter

17

the Synagogue that day due to Defendants' coordinated actions. *See* Am. Compl.

18

¶¶ 29, 308-321. Fellow Plaintiff StandWithUs Center for Legal Justice ("SCLJ"), a

19

tax-exempt membership organization, represents members who were prevented

20

from exercising their constitutionally-protected religious freedoms at the

21

Synagogue during this incident. *See* Am. Compl. ¶¶ 8-10, 20-22. Together, they

22

seek accountability from those entities and individuals responsible for organizing,

23

facilitating, and participating in this religiously-targeted violence.

24

Defendant Palestinian Youth Movement ("PYM") played a central role in

25

these events. *See* Am. Compl. ¶¶ 49-59. Operating as an unincorporated association

26

with deliberately opaque leadership and no formal business address, PYM relies on

27

fiscal sponsors—including Defendant Honor the Earth ("HTE")—to handle its

28

1

financial affairs and provide administrative support for its activities. *See* Am. Compl. ¶¶ 49-51, 60, 138-140.

HTE now attempts to evade responsibility through a Motion to Strike and Motion to Dismiss (Doc. 125), which mistakenly argue: (1) certain allegations should be stricken as improper characterizations; (2) this Court lacks personal jurisdiction over HTE; (3) class action claims are improper; and (4) no viable claims exist against HTE. However, HTE's Motion to Strike is frivolous, and its class certification arguments are inappropriate at this stage of litigation. Moreover, HTE's Rule 12(b)(2) arguments fundamentally misunderstand the legal responsibilities inherent in fiscal sponsorship arrangements and under agency law, and its Rule 12(b)(6) arguments ignore Plaintiff's well-pled allegations, which must be taken as true. Accordingly, this Court should deny HTE's Motion to Strike and Motion to Dismiss.

## II.  ARGUMENT

### A.  Honor the Earth's Motion to Strike Is Frivolous.

HTE seeks to sanitize the Amended Complaint by invoking Rule 12(f) to eliminate what it characterizes as "scandalous" material. Rule 12(f) permits courts to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, such motions face significant judicial skepticism, as courts have long recognized them as procedural tactics that typically serve to delay rather than streamline litigation. *See RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005) (noting that "[m]otions to strike are generally disfavored" because they are "usually used as a delaying tactic"). The standard for granting such motions is notably strict—courts consistently decline to strike allegations unless "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."

1
2
3

*Luehring v. Metro. State Hosp.*, 2024 U.S. Dist. LEXIS 235458, at *2 (C.D. Cal. Dec. 16, 2024) (quoting *LeDuc v. Ky. Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992)).

4
5
6
7
8
9
10
11
12
13
14
15

     In its Motion, HTE objects to allegations characterizing it as antisemitic and targets "scandalous terms such as 'attack,' 'mob,' and 'riot'" for elimination. Doc. 125-1 at 4-5. Additionally, HTE claims that "[n]ebulous descriptions obscure the actors in the allegations," suggesting that "affiliates of the *Plaintiffs*" were actually the ones who engaged in violence. *Id.* at 4. These arguments miss the mark. The challenged allegations and terms directly relate to Plaintiffs' core claims—namely, that HTE, with its documented history of antisemitic positions, facilitated a riot targeting Orthodox Jewish worshippers through its fiscal sponsorship of PYM, and did so motivated by antisemitic animus. Such allegations are not peripheral, but are central to establishing both the factual narrative and the legal elements of Plaintiffs' claims, particularly regarding discriminatory intent. And neither are they "[n]ebulous," despite HTE's thinly-veiled attempt at victim-blaming.

16
17
18
19
20
21
22
23
24
25
26
27

     HTE's contradictory positions further undermine its Motion to Strike. While arguing that allegations about its well-documented antisemitic motivations should be stricken, HTE simultaneously claims it lacks sufficient connection to PYM's activities to be held accountable—despite its acknowledged fiscal sponsorship role. This inconsistency highlights the substantive relevance of the challenged allegations, which demonstrate HTE's ideological alignment with PYM and explain why HTE would choose to sponsor an organization engaged in targeting Jews *because they are Jews*. In another attempt to have it both ways, HTE later claims in its Motion to Dismiss that Plaintiffs "fail to allege facts demonstrating that HTE committed any acts based upon antisemitism or a discriminatory hostility towards Jewish people," despite targeting those same allegations in its Motion to Strike. *See* Doc. 125-1 at 19. This Court should not allow HTE to benefit from this blatant self-contradiction.

28

PLF'S OPPOSITION TO DEF HTE'S MOT. TO STRIKE AND DISMISS FIRST AMENDED
COMPL., CASE NO. 2:24-CV-06253-SVW-PVC

In short, the allegations regarding HTE's anti-Jewish animus and support of antisemitic causes are factually accurate and directly pertinent to the claims at issue. *See* Am. Compl. at ¶¶ 138-154. They provide essential context for understanding HTE's decision to serve as PYM's fiscal sponsor and help establish the discriminatory motivations that support Plaintiffs' other claims. They should therefore remain in the Amended Complaint.

### B. This Court Has Personal Jurisdiction over Honor the Earth, Based on Its Fiscal Sponsorship of PYM and Under General Agency Theory.

When addressing a Rule 12(b)(2) motion challenging personal jurisdiction based solely on written submissions (rather than an evidentiary hearing), courts in the Ninth Circuit apply a prima facie standard that heavily favors plaintiffs. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Under this standard, courts must accept uncontroverted allegations as true and resolve any existing evidentiary conflicts in the plaintiff's favor. *Id.* This plaintiff-friendly approach recognizes that jurisdictional questions often involve factual determinations that, at the motion to dismiss stage, are "adopt[ed]" from the plaintiff's "version of events." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000); *see also Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).

For specific jurisdiction to exist, the Ninth Circuit requires satisfaction of a three-pronged analysis: first, the defendant must have purposefully directed activities toward the forum or purposefully availed itself of forum benefits; second, the claims must arise from these forum-related activities; and third, exercising jurisdiction must be reasonable. *See Davis v. Cranfield Aero. Sols., Ltd.*, 71 F.4th 1154, 1161 (9th Cir. 2023); *Schwarzenegger*, 374 F.3d at 802. While plaintiffs bear the burden on the first two elements, once established, the burden shifts to the

defendant to present a "compelling case" that jurisdiction would be unreasonable. *Schwarzenegger*, 374 F.3d at 802.

### 1. HTE's Fiscal Sponsorship of PYM Creates Liability and Personal Jurisdiction.

Applying this framework, Plaintiffs have sufficiently established specific jurisdiction over HTE. HTE's deliberate choice to enter a fiscal sponsorship arrangement with PYM constitutes purposeful direction of activities toward California. By agreeing to serve as PYM's fiscal sponsor, HTE voluntarily assumed the responsibility to oversee PYM's operations, including PYM's extensive and ongoing activities in California. This was no passive relationship or inadvertent connection to the forum; it represented HTE's conscious decision to facilitate PYM's activities, including those in California.

Fiscal sponsorship creates substantial legal obligations that HTE must fulfill to maintain its tax-exempt status. These include reviewing and approving the sponsored organization's activities as consistent with the sponsor's exempt purposes, maintaining appropriate financial controls, and retaining discretion over funds disbursed to the sponsored entity. *See* Am. Compl. ¶¶ 101-119; *New York ex rel. Tzac, Inc. v. New Isr. Fund*, 520 F. Supp. 3d 362, 388-89 (S.D.N.Y. 2021). Indeed, "standard" agreements governing fiscal-sponsorship arrangements, such as that governing the relationship between the Tides Foundation and Black Lives Matter, that is currently involved in state court litigation in California, include provisions providing that the sponsor "has full governing authority over and full legal and fiduciary responsibility for all projects," and that the sponsored projects constitute "a constituent part of the [sponsor's] corporate structure" rather than discrete entities. *See, e.g.*, Dkt. 113-1.

Accordingly, HTE's claim that this Court cannot exercise personal jurisdiction because "[t]here are no allegations that HTE did anything beyond enter

into a fiscal sponsorship agreement with PYM" misses the point. Dkt. 125-1 at 6-7. HTE does not dispute that it is or was PYM's fiscal sponsor, and it has provided no evidence that its relationship with PYM did not comply with applicable requirements. Thus, at this stage in the proceedings, the Court must presume that HTE followed the law and actually did what fiscal sponsors are required to do: namely, oversee PYM's operations, ensure PYM's activities aligned with HTE's exempt purposes, maintain discretionary control over PYM's funds, and maintain "governing authority over and full… responsibility for" PYM—including PYM's self-acknowledged participation in the riot at Adas Torah on June 23, 2024. *See* Dkt. 113-1; *see also* Am. Compl. ¶¶ 145-153; *see United States v. 313.34 Acres of Land*, 923 F.2d 698, 703 (9th Cir. 1991) (noting that it is the Ninth Circuit's longstanding precedent that courts presume "that the ordinary course of business was followed and that the law was obeyed" when the plaintiff's legal theory relies on the defendant's adherence to its legal obligations (quoting *United States v. Washington*, 233 F.2d 811, 816 (9th Cir. 1956)).

The Amended Complaint's allegations directly connect this forum-directed conduct to the claims at issue. Plaintiffs' lawsuit stems directly from the June 23 riot that PYM helped organize, and that HTE oversaw through its fiscal sponsorship of PYM. By providing financial support and administrative resources without which PYM could not have operated effectively, HTE facilitated the very conduct that harmed Plaintiffs. This establishes a sufficient nexus between HTE's California-directed activities and the asserted claims.

Finally, HTE has failed to present the "compelling case" required to demonstrate that jurisdiction would be unreasonable. While HTE may be headquartered elsewhere, its deliberate decision to sponsor an organization operating in California—particularly one engaged in activities directly targeting

PLF'S OPPOSITION TO DEF HTE'S MOT. TO STRIKE AND DISMISS FIRST AMENDED COMPL., CASE NO. 2:24-CV-06253-SVW-PVC

California residents—makes it entirely reasonable for HTE to anticipate being haled into California courts for claims arising from those activities.

### 2. Agency Theory Provides Additional Grounds for Personal Jurisdiction.

Beyond fiscal sponsorship requirements, common-law agency theory provides an independent basis for exercising personal jurisdiction over HTE. Under well-established legal principles, a principal can be held accountable for its agent's actions when those actions fall within the scope of the agency relationship. *See, e.g.*, *Jones v. Royal Admin. Servs.*, 887 F.3d 443, 448-49 (9th Cir. 2018) (discussing the Restatement (Third) of Agency). The fiscal sponsorship arrangement between HTE and PYM creates precisely such an agency relationship.

The control element necessary for agency is clearly established in the Amended Complaint, which alleges that HTE "maintained complete oversight over PYM's activities" and "retained complete control and discretion" over PYM's use of funds. Am. Compl. ¶¶ 148-149. These allegations, which must be accepted as true at this stage, establish the requisite control element for an agency relationship.

The Ninth Circuit has expressly recognized that "[f]or purposes of personal jurisdiction, the actions of an agent are attributable to the principal." *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 419 (9th Cir. 1977)). Consequently, PYM's California activities—including organizing and participating in the Adas Torah riot—can be properly attributed to HTE as the principal in this agency relationship, providing a further basis for exercising jurisdiction even if HTE did not actually fulfill its legal obligations as PYM's fiscal sponsor. *See Long v. Nationwide Legal File & Serve, Inc.*, No. 12-CV-03578-LHK, 2013 U.S. Dist. LEXIS 132971, at *26 (N.D. Cal. Sep. 17, 2013) ("It is not necessary to prove that the principal exercised his right of control or actually supervised the work of the agent, so long as the existence of the

right is established from the facts." (quoting *Fenton v. Freedman*, 748 F.2d 1358, 1362 (9th Cir. 1984)).

Additionally, the doctrine of ratification strengthens the jurisdictional basis. Ratification occurs when a principal affirms or adopts its agent's conduct, even retroactively. *See Kristensen v. Credit Payment Servs.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (quoting Restatement (Third) of Agency § 4.01(1)). The Amended Complaint alleges that HTE began holding itself out as PYM's fiscal sponsor "at or around the time of the riot," and that it continued to do so after the riot. Am. Compl. ¶¶ 140, 144. Furthermore, the Amended Complaint shows that HTE used the same anti-Israel and antisemitic rhetoric that PYM used at the riot in a social media post just weeks before the riot. *See* Am. Compl. ¶ 143. Thus, by choosing to enter a fiscal sponsorship arrangement with PYM at this critical juncture and publicly assenting to PYM's positions, HTE effectively ratified PYM's conduct, including its role in organizing the riot. This ratification further supports exercising personal jurisdiction over HTE. *See* Restatement (Third) of Agency § 7.04 cmt. b. ("If a principal ratifies an agent's conduct, the principal assents to be affected by the legal consequences of the action.").

## C. **Honor the Earth's Class-Certification Arguments Are Meritless and Misplaced.**

HTE's attack on Plaintiffs' class allegations fundamentally misunderstands the appropriate procedural stage for challenging class certification. Drawing on cases that evaluated motions for class certification under Rule 23, HTE argues prematurely that Plaintiffs' class claims are legally deficient. Doc. 125-1 at 11-16. Moreover, HTE's arguments are as incorrect as they are improperly raised.

For over five decades, federal courts in this circuit have consistently held that "compliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim." *Gillibeau v. City of Richmond*, 417 F.2d 426, 432 (9th Cir. 1969).

This principle reflects the recognition that class certification determinations typically require factual development beyond the pleading stage. California district courts have faithfully applied this principle across a wide range of cases. *See, e.g.*, *Butcher v. City of Marysville*, 398 F. Supp. 3d 715, 728 (E.D. Cal. 2019); *Meyer v. Nat'l Tenant Network, Inc.*, 10 F. Supp. 3d 1096, 1103-04 (N.D. Cal. 2014).

Even if the Court were to consider the merits of HTE's arguments at this stage, they would fail substantially. The FACE Act violations alleged here present precisely the type of common injury well-suited for class treatment. *See, e.g.*, *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 957 ("[A]ll that Rule 23(a)(2) requires is 'a single *significant* question of law or fact.'" (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012)). Each proposed class member experienced the same essential harm—interference with their constitutional right to religious worship through force, threats of force, or physical obstruction. *See* 18 U.S.C. § 248(a)(2). Whether through direct physical obstruction, bear spray attacks, or the creation of a threatening environment that rendered Synagogue access unreasonably hazardous, each class member suffered the same statutory violation stemming from the same coordinated conduct by the defendants.

The uniformity of the defendants' actions and the resulting violations make this case particularly amenable to class treatment. The proposed class definition appropriately captures individuals who were subject to the same unlawful conduct, experienced the same type of statutory harm, and seek the same forms of relief. *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (Rule 23 applies "when a single injunction or declaratory judgment would provide relief to each member of the class"). Nevertheless, this Court should reject HTE's premature challenge to class certification and allow these issues to be properly addressed at the class certification stage.

### D. <u>Plaintiffs Have Adequately Stated Claims Against Honor the Earth Because They Allege That HTE Exercised Control and Discretion over PYM's Activities, Including the Riot.</u>

When evaluating a Rule 12(b)(6) motion, courts must accept all factual allegations as true and draw reasonable inferences in the plaintiff's favor. *See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). While courts need not accept purely conclusory assertions, complaints that contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must survive dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Contrary to HTE's general assertions, Plaintiffs' claims regarding HTE's liability are not merely conclusory legal assertions but are instead substantiated by specific factual allegations grounded in the legal responsibilities inherent in fiscal sponsorship arrangements and common-law agency theory. The Amended Complaint alleges that PYM organized and participated in the riot, that "PYM became an integrated part of [HTE] with no separate legal identity" (Am. Compl. ¶ 152), that HTE's board made "an independent determination that PYM's activities as alleged herein furthered [HTE's] mission, and approved of the same" (Am. Compl. ¶ 146), and that HTE maintained "complete oversight over PYM's activities" and retained "complete control and discretion" over PYM's finances (Am. Compl. ¶¶ 147-149). These allegations reflect the requirements that all legitimate fiscal sponsors must meet, and in the absence of evidence that HTE disregarded these requirements, they must be accepted as true. *See 313.34 Acres*, 923 F.2d at 703. And even if HTE did indeed neglect its legal responsibilities as PYM's fiscal sponsor, Plaintiffs may still state claims against it under common-law agency principles. *See Long*, 2013 U.S. Dist. LEXIS 132971, at *26.

HTE's specific assertions regarding Plaintiffs' ability to state claims for relief under the FACE Act and 42 U.S.C. § 1985(3) are likewise incorrect. As detailed

PLF'S OPPOSITION TO DEF HTE'S MOT. TO STRIKE AND DISMISS FIRST AMENDED COMPL., CASE NO. 2:24-CV-06253-SVW-PVC

below, the Amended Complaint contains sufficient factual allegations to sustain both claims against HTE.

### 1. Plaintiffs State a Plausible Claim for Relief Under the FACE Act.

Plaintiffs allege sufficient facts to state a plausible claim for relief under the FACE Act. *See Twombly*, 550 U.S. at 570. As detailed in the Amended Complaint, Plaintiffs tried to practice their religion at the Synagogue on June 23, 2024, but were prevented from doing so because a violent mob—that included Defendants—attacked them and physically obstructed their access to the house of whorship. *See* Am. Compl. ¶¶ 32-39, 207-248, 271-307. Plaintiffs allege that this was not a spontaneous occurrence (although even that would be sufficient) but was instead actively organized and facilitated by Defendants. *See* Am. Compl. ¶¶ 207-230, 236-238. These allegations are more than enough to meet the pleading requirements for a claim under the FACE Act.

Nevertheless, HTE argues that Plaintiffs' FACE Act claim should be dismissed because "[t]he only factual information concerning HTE within the [Amended Complaint] is that it served as a fiscal sponsor for PYM and promoted the event." Doc. 125-1 at 17. But this is indeed sufficient to state a claim against HTE, which the Amended Complaint alleges (1) maintained complete oversight, control, and discretion over PYM's activities in and around the riot; and (2) "provided PYM with access to [HTE's] administrative services, staff, and facilities, all of which were used to plan and/or carry out PYM's activities." *See* Am. Compl. ¶¶ 149-153. These factual allegations—which are presumed to be true at this stage—are more than sufficient to survive HTE's Motion to Dismiss the FACE Act claim. This is especially true in light of the fact that "damages under [the] FACE [Act] are properly awarded jointly and severally among defendants," *United States v. Gregg*, 226 F.3d 253, 256 (3d Cir. 2000), which is not something HTE addresses.

PLF'S OPPOSITION TO DEF HTE'S MOT. TO STRIKE AND DISMISS FIRST AMENDED COMPL., CASE NO. 2:24-CV-06253-SVW-PVC

Additionally, HTE suggests that—even if it is liable for PYM's actions—the riot itself is "excluded from the [FACE Act's] reach" because it was a "peaceful demonstration." Doc. 125-1 at 17 (quoting 18 U.S.C. § 248(d)(1)). This is not so. As the Amended Complaint details, the riot was far from "peaceful," with Defendants attacking Jewish would-be worshippers with bear spray, beating them with blunt objects, and announcing "Hitler didn't finish the job" while threatening them with violent "Intifada." *See* Am. Compl. ¶¶ 1, 230-239, 244, 258, 261-269. This is precisely the sort of conduct the FACE Act covers, and HTE cannot seriously claim that the riot it facilitated was protected First Amendment activity.

### 2. Plaintiffs State a Plausible Claim for Relief Under 42 U.S.C. § 1985(3).

Similarly, HTE cannot succeed in its argument that Plaintiffs fail to establish a claim under § 1985(3). Contrary to HTE's assertions, Plaintiffs sufficiently allege that HTE conspired with the other Defendants to deprive them of equal protection of law, and that this conspiracy was based on antisemitic animus.

As for the existence of a conspiracy, Plaintiffs allege that—as PYM's fiscal sponsor—HTE conspired with the other Defendants to violate the FACE Act (which was in fact violated when the riot occurred). *See* Am. Compl. ¶¶ 208, 416-419. These allegations are sufficiently plausible to state a claim for conspiracy, as "direct evidence of improper motive or an agreement among the parties to violate a plaintiff's constitutional rights will only rarely be available. Instead, it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action." *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1302 (9th Cir. 1999).

As for HTE's antisemitic motivations, Plaintiffs clearly allege that HTE entered into this conspiracy because it has "been co-opted by persons and groups with an anti-Israel and antisemitic focus, and it has turned its sights on Jewish

targets in the United States." Am. Compl. ¶ 142. Evidence of this animus includes the hateful conduct of the rioters themselves, HTE's pre-riot social media post that repeated antisemitic claims that Jewish people "colonize[d]" and "stole[]" Israel (the ancient homeland of the Jewish people), and the use of "a target designator to identify Jews and Jewish targets for extermination" in materials promoting the riot. *See* Am. Compl. ¶¶ 143, 219. Although HTE attempts to take these facts out of context throughout its Motion to Strike and Motion to Dismiss—selectively quoting Plaintiffs' cited source to omit its conclusion that "the inverted red triangle is now used to represent Hamas itself and glorify its use of violence in many popular anti-Zionist memes and political cartoons" (*see* source cited at Am. Compl. ¶ 219 n.68), and diminishing the deeply religious concept of *Aliyah* as little more than an issue of real estate "sales in a controversial region of the world" (*see* Doc. 125-1 at 19)—it cannot be disputed that Plaintiffs have alleged that antisemitism motivated Defendants' conspiracy and conduct.

Accordingly, Plaintiffs' allegations, which must be accepted as true for purposes of this motion, establish plausible claims against HTE under both the FACE Act and § 1985(3). HTE's Rule 12(b)(6) Motion to Dismiss should therefore be denied along with its Rule 12(b)(2) and class certification arguments and Motion to Strike.

## III.    **CONCLUSION**

For the forgoing reasons, Plaintiffs respectfully request that this Court deny HTE's Motion to Strike and Motion to Dismiss.

Respectfully submitted this 7th day of April 2025.

*/s/ Dallin B. Holt*
Dallin B. Holt*
dholt@holtzmanvogel.com
Holtzman Vogel Baran Torchinsky
and Josefiak PLLC

PLF'S OPPOSITION TO DEF HTE'S MOT. TO STRIKE AND DISMISS FIRST AMENDED COMPL., CASE NO. 2:24-CV-06253-SVW-PVC

2555 East Camelback Rd, Ste 700
Phoenix, AZ 85016
Telephone: (602) 388-1262
Fax: (549) 341-8809

Jason B. Torchinsky*
jtorchinsky@holtzmanvogel.com
Edward M. Wenger*
emwenger@holtzmanvogel.com
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK, PLLC
2300 N Street NW, Suite 643
Washington, DC 20037
(202) 737-8808 (telephone)
(540) 341-8809 (facsimile)

Mark Goldfeder*
mark@jewishadvocacycenter.org
Ben Schlager*
ben@jewishadvocacycenter.org
NATIONAL JEWISH ADVOCACY
CENTER, INC.
INTERNATIONAL LEGAL
FORUM
1718 General George Patton Drive
Brentwood, TN 37027
(800) 269-9895 (telephone)
(800) 758-5232 (facsimile)

Daniel R. Paluch
dpaluch@ghplaw.com
GIPSON HOFFMAN & PANCIONE
1901 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-6002
Telephone: (310) 556-4660
Facsimile: (310) 556-8945

*Attorneys for Plaintiffs and Class
Members*
*Admitted Pro Hac Vice*

14

1

## **CERTIFICATE OF SERVICE**

2          I hereby certify on April 7, 2025, I electronically filed the foregoing with the

3   Clerk of the Court for the United States District Court, Central District of California

4   by using the CM/ECF System.

5          Participants in the case who are registered CM/ECF Users will be served by

6   the CM/ECF System.

7

8   DATED: April 7, 2025

9
                                        */s/ Dallin B. Holt*
10                                      Dallin B. Holt*
                                        dholt@holtzmanvogel.com
11                                      Holtzman Vogel Baran Torchinsky
                                        and Josefiak PLLC
12                                      2555 East Camelback Rd, Ste 700
                                        Phoenix, AZ 85016
13                                      Telephone: (602) 388-1262
                                        Fax: (549) 341-8809
14

15
                                        *Admitted Pro Hac Vice*
16

17

18

19

20

21

22

23

24

25

26

27

28

PLF'S OPPOSITION TO DEF HTE'S MOT. TO STRIKE AND DISMISS FIRST AMENDED
COMPL., CASE NO. 2:24-CV-06253-SVW-PVC

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs certifies that this brief contains 3,871 words, which complies with the word limit of L.R. 11–6.1.

DATED: April 7, 2025

*/s/ Dallin B. Holt*

Dallin B. Holt*
dholt@holtzmanvogel.com
Holtzman Vogel Baran Torchinsky
and Josefiak PLLC
2555 East Camelback Rd, Ste 700
Phoenix, AZ 85016
Telephone: (602) 388-1262
Fax: (549) 341-8809

*Admitted Pro Hac Vice*

PLF'S OPPOSITION TO DEF HTE'S MOT. TO STRIKE AND DISMISS FIRST AMENDED COMPL., CASE NO. 2:24-CV-06253-SVW-PVC
1523037.1 - 06297.00001