

**User Name:** Robert Herbst
**Date and Time:** Monday, May 12, 2025 3:23 PM EDT
**Job Number:** 252641710

# Document (1)

1. *Gerwaski v. Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.*
   **Client/Matter:** Wespac
   **Search Terms:** Gerwaski v. nevada
   **Search Type:** Natural Language
   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | | -None- |

🅐 Neutral
As of: May 12, 2025 7:23 PM Z

## *Gerwaski v. Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.*

United States District Court for the District of Nevada

May 5, 2025, Decided; May 5, 2025, Filed

Case No.: 2:24-cv-00985-APG-MDC

**Reporter**
2025 U.S. Dist. LEXIS 84645 *; 2025 LX 33334

COREY GERWASKI, Plaintiff v. STATE OF NEVADA ex rel. BOARD OF REGENTS OF THE NEVADA SYSTEM OF HIGHER EDUCATION, et al., Defendants

**Prior History:** *Gerwaski v. Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ., 2025 U.S. Dist. LEXIS 4817, 2025 WL 406670 (D. Nev., Jan. 10, 2025)*

## Core Terms

allegations, terrorist, communications, emotional distress, anti-SLAPP, organizations, media, international terrorism, personal jurisdiction, quotation, special motion, motion to dismiss, outrageous, campus, campuses, messaging, terrorism, protests, responds, violence, toolkit, substantial assistance, advocacy, public concern, forum state, good cause, affiliates, facie, posts, objectively verifiable

**Counsel:** [*1] For Corey Gerwaski, Plaintiff: Joseph S. Gilbert, LEAD ATTORNEY, Joey Gilbert Law, Reno, NV; Sigal Chattah, Chattah Law Group, Las Vegas, NV.

For State of Nevada ex rel. Board of Regents of the Nevada System of Higher Education, on behalf of, University of Nevada, Las Vegas, Keith Whitfield, Defendants: Andrew D. Smith, LEAD ATTORNEY, University of Nevada, Las Vegas, Las Vegas, NV.

For AJP Educational Foundation Inc., Defendant: Margaret A McLetchie, LEAD ATTORNEY, McLetchie Law, Las Vegas, NV; Christina A. Jump, Samira S. Elhosary, PRO HAC VICE, Muslim Legal Fund of America, Richardson, TX.

**Judges:** ANDREW P. GORDON, CHIEF UNITED STATES DISTRICT JUDGE.

**Opinion by:** ANDREW P. GORDON

## Opinion

### Order Granting Defendants AJP Educational Foundation and SJP-UNLV's Motions to Dismiss

[ECF Nos. 24, 37, 51, 61]

Plaintiff Corey Gerwaski sues the University of Nevada, Las Vegas (UNLV), its president, and several advocacy organizations. Gerwaski alleges that demonstrations on the UNLV campus caused him mental anguish, violated his constitutional rights, and caused him to lose his job at the UNLV library. Gerwaski also sues AJP Educational Foundation, doing business as American Muslims for Palestine (AMP), and the UNLV chapter of Students [*2] for Justice in Palestine[1] (SJP-UNLV) for aiding and abetting terrorism and for intentional infliction of emotional distress (IIED).

AMP moves to dismiss Gerwaski's first amended complaint (FAC) arguing that it is not subject to personal jurisdiction in Nevada and Gerwaski's service was untimely. Both AMP and SJP-UNLV move to dismiss for failing to state a claim upon which relief can be granted, arguing that Gerwaski has not plausibly alleged a compensable injury or sufficient underlying facts to bring these claims. Gerwaski responds that he has plausibly alleged a connection between these groups and terrorist organizations and that he was injured. Both AMP and SJP-UNLV also argue that Gerwaski's claims are predicated on conduct that is protected under the *First Amendment*. Gerwaski responds that his complaint

---

[1] Although named as Students for Justice of Palestine-UNLV, this defendant self-identifies as Students for Justice in Palestine UNLV. *See* ECF No. 51 at 1.

Case 2:24-cv-06253-SVW-PVC   Document 129-1   Filed 05/12/25   Page 3 of 11   Page ID #:1084

Gerwaski v. Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.

alleges conduct that is material support for terrorism and therefore not protected by the *First Amendment*.

AMP and SJP-UNLV also bring special motions to dismiss Gerwaski's IIED claims under Nevada's anti-SLAPP (strategic lawsuit against public participation) statute. They argue that the IIED claims are based on good faith communications made in public on matters of public concern. Gerwaski responds that all **[*3]** of AMP and SJP-UNLV's communications constituted material support for terrorism and were therefore unprotected and not made in good faith.

I grant AMP and SJP-UNLV's motions to dismiss because Gerwaski has not plausibly alleged sufficient facts to establish personal jurisdiction over AMP and because he has not plausibly alleged the elements of his claims. I dismiss Gerwaski's Antiterrorism Act claims without prejudice and grant him leave to amend his complaint. I grant AMP and SJP-UNLV's special motions to dismiss Gerwaski's state law IIED claims. Under Nevada's anti-SLAPP statute, a dismissal operates as an adjudication upon the merits. Therefore, I dismiss Gerwaski's IIED claims with prejudice.

## I. BACKGROUND[2]

AMP is a nonprofit organization incorporated in California and headquartered in Virginia. It is "dedicated to advancing the movement for justice in Palestine by educating the American public about Palestine and its rich cultural, historical and religious heritage through grassroots mobilization and advocacy." ECF No. 6 at 5. Gerwaski alleges that AMP controls the National Students for Justice in Palestine (NSJP) group, of which SJP-UNLV is an affiliate. He further claims that AMP **[*4]** uses NSJP "to operate a propaganda machine for Hamas and its affiliates across American college campuses to influence, wreak havoc and intimidate Jewish students on university campuses across the Nation." *Id.* at 8. According to Gerwaski, NSJP supports Hamas, justifies Hamas's terrorist activities through its rhetoric and messaging, and perceives itself as a part of the group. Hamas, in turn, allegedly welcomes support from NSJP and its affiliates and encourages them to be "part of this battle" in the United States. *Id.* at 17.

The day after Hamas's October 7, 2023 terrorist attack in Israel, NSJP released a "Day of Resistance Toolkit" to students on American campuses and on the internet. *Id.* at 18. The toolkit contained instructions and templates for users to create online announcements to organize protests. Some of the slogans in this toolkit mirror the messaging used by Hamas. After this toolkit came out, SJP-UNLV organized several protests both on and off the UNLV campus, called for an economic boycott at UNLV, and called for UNLV to divest from investment in Israeli companies. At one of the demonstrations organized by SJP-UNLV, protestors chanted "[f]rom the river to the sea, Palestine **[*5]** will be free" and "[l]ong live the intifada." *Id.* at 45. Gerwaski alleges that these chants call for eliminating the country of Israel and express support for terrorist campaigns.

Gerwaski is a Jewish student at UNLV who wears the Jewish skullcap, or kippah, at all times. Gerwaski serves in the UNLV student government and briefly worked at the UNLV Lied Library. He alleges that he has been exposed to verbal assaults by members of Nevada Palestine Liberation, another nonstudent group, who made hateful, antisemitic comments to him. Gerwaski has elected to cover his kippah with a baseball cap or other head covering due to the antisemitic chants and chaos on the UNLV campus. Due to the conditions on UNLV's campus, Gerwaski suffered "severe and extreme emotional distress manifested as great humiliation, embarrassment, shame, and other pain and suffering." *Id.* at 72.

## II. ANALYSIS

### A. Timeliness of Service

AMP contends Gerwaski failed to serve it within 90 days of filing his complaint. Gerwaski acknowledges that his service was untimely but argues that I should exercise my discretion to retroactively extend the service period.

"A federal court is without personal jurisdiction over a defendant unless **[*6]** the defendant has been served in accordance with Fed[eral] R[ule of] Civ[il] P[rocedure] 4." *Crowley v. Bannister, 734 F.3d 967, 974-75 (9th Cir. 2013)* (quotation omitted). If a defendant is not properly served under *Rule 4*, it can assert the defense of insufficient service of process under *Federal Rule of Civil Procedure 12(b)(5)*. While "*Rule 4* is a flexible rule that should be liberally construed so long as a party

---

[2] All facts are taken from the FAC (ECF No. 6), which I take as true when considering a motion to dismiss.

Case 2:24-cv-06253-SVW-PVC   Document 129-1   Filed 05/12/25   Page 4 of 11   Page ID #:1085

Gerwaski v. Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.

receives sufficient notice of the complaint," the serving party must substantially comply with the rule. *Crowley, 734 F.3d at 975* (quotation omitted). The serving plaintiff bears the burden of establishing that a challenged service was valid. *Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004)*.

*Federal Rule of Civil Procedure 4(m)* requires the plaintiff to serve a defendant "within 90 days after the complaint is filed." If the plaintiff fails to do so, I "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id. Rule 4(m)*'s time limit "is not restarted by the filing of an amended complaint except as to those defendants newly added in the amended complaint" because otherwise the plaintiff could repeatedly file amended complaints "to extend the time for service indefinitely." *See Bolden v. City of Topeka, Kan., 441 F.3d 1129, 1148 (10th Cir. 2006)* (quotation omitted)).

Nevertheless, I must extend the 90-day time limit of *Rule 4(m)* if Gerwaski shows good cause for failure to serve within 90 days. *Lemoge v. United States, 587 F.3d 1188, 1198 (9th Cir. 2009)*. Gerwaski bears **[*7]** the burden of demonstrating good cause for the delay. *Fed. R. Civ. P. 4(m)*; *Boudette v. Barnette, 923 F.2d 754, 755-56 (9th Cir. 1991)*. Generally good cause is equated with diligence. *Townsel v. Contra Costa Cnty., Cal., 820 F.2d 319, 320 (9th Cir. 1987)*. A showing of good cause requires more than inadvertence or mistake of counsel. *Id.* "[A]t a minimum, good cause means excusable neglect." *In re Sheehan, 253 F.3d 507, 512 (9th Cir. 2001)* (quotation omitted).

Gerwaski has not shown good cause for the delay. He states that he attempted to serve AMP at its Virginia headquarters prior to the August 26, 2024 deadline but found the office locked and vacant until his fourth attempt at service. He successfully served AMP on September 3, 2024. ECF No. 10. Despite his assertion that he attempted timely service, the emails with the process server are dated August 27-30, which would also be untimely. ECF No. 30-1 at 2-3.

Even though Gerwaski has not demonstrated good cause, I have discretion to extend time for service or to dismiss the complaint without prejudice. *In re Sheehan, 253 F.3d at 513*. I may extend time for service even after the 90-day period expires. *Efaw v. Williams, 473 F.3d 1038, 1041 (9th Cir. 2007)*. In making this determination, I consider factors such as whether the party to be served received actual notice of the lawsuit, the party to be served would suffer no prejudice, and the serving party would be severely prejudiced if the complaint is dismissed. **[*8]** *Id.* I also may consider whether the serving party eventually accomplished service. *Id.*

I extend the period for service in this case. Because the statute of limitations has not yet run, Gerwaski could simply refile his lawsuit against AMP and then move to consolidate the cases. AMP was eventually served properly, approximately two weeks after the deadline for timely service. Because it would not prejudice either party and will promote economy of judicial resources, I deny AMP's motion to dismiss for untimely service and retroactively extend the time for Gerwaski to serve it to September 4, 2024.

**B. Personal Jurisdiction**

AMP argues that Gerwaski has not alleged sufficient facts to establish personal jurisdiction over it in Nevada because AMP is not a Nevada corporation and has not purposefully directed any of its activity towards Nevada. Gerwaski responds that AMP is subject to both general and specific jurisdiction because it disseminated its messaging toolkit to more than 300 American college campuses and made social media posts that directed protests in Nevada.

"When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008)*. Nevada's longarm **[*9]** statute is co-extensive with federal standards, so I may exercise personal jurisdiction if doing so comports with federal constitutional due process. *Nev. Rev. Stat. § 14.065(1)*; *Walden v. Fiore, 571 U.S. 277, 283, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014)*. "There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction." *Boschetto, 539 F.3d at 1016*.

General jurisdiction over a foreign corporation is proper only when the corporation's affiliations with the State "are so continuous and systematic as to render them essentially at home in the forum State." *Daimler AG v. Bauman, 571 U.S. 117, 127, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014)* (simplified). Outside of exceptional cases, a corporation is at home where it is incorporated or has its principal place of business. *Ford Motor Co. v. Mont. Eighth Jud. Ct., 592 U.S. 351, 359, 141 S. Ct. 1017, 209*

Case 2:24-cv-06253-SVW-PVC   Document 129-1   Filed 05/12/25   Page 5 of 11   Page ID #:1086

Gerwaski v. Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.

L. Ed. 2d 225 (2021).

Specific jurisdiction depends on an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011). In contrast with general jurisdiction, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Id. (quotation omitted). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least minimum contacts with the relevant forum such that the exercise of jurisdiction **[*10]** does not offend traditional notions of fair play and substantial justice." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004) (quotation omitted). I apply a three-prong test to determine whether specific jurisdiction exists: (1) the defendant "must have performed some act or consummated some transaction with the forum by which it purposefully availed itself of the privilege of conducting business" in the forum state; (2) the plaintiff's claims "must arise out of or result from [those] forum-related activities; and (3) the exercise of jurisdiction must be reasonable." Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002).

"Purposeful availment requires that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." Doe v. Am. Nat. Red Cross, 112 F.3d 1048, 1051 (9th Cir. 1997) (quotation omitted). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the state." Walden, 571 U.S. at 286 (quoting Burger King v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). Where "the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." Schwarzenegger, 374 F.3d at 800.

Gerwaski has not established a prima facie showing of personal **[*11]** jurisdiction over AMP in Nevada. The FAC acknowledges that AMP is incorporated in California and headquartered in Virginia. ECF No. 6 at 4. And no additional facts are alleged that would suggest AMP is essentially at home in Nevada and thus subject to general jurisdiction.

Gerwaski also fails to allege any contacts with Nevada that show purposeful availment in this State to support specific jurisdiction. He alleges that AMP controls NSJP and that NSJP communicates with its local chapters including SJP-UNLV. But none of the NSJP social media posts in the FAC are directed at Nevada or UNLV. Although Gerwaski alleges that NSJP sent its toolkit out to "more than 300 American college campuses and on the internet," he does not allege that UNLV was one of those campuses or even that SJP-UNLV utilized the toolkit in its activities. Id. at 18. Distributing a message through social media, absent specific targeting of the forum, is insufficient to establish specific jurisdiction. See Ayla, LLC v. Alya Skin Pty. Ltd., 11 F.4th 972, 980 (9th Cir. 2021); Impossible Foods Inc. v. Impossible X LLC, 80 F.4th 1079, 1097 (9th Cir. 2023) (noting the difference between undifferentiated nationwide sales and marketing efforts through social media and using California as a "base point" and "headquarters" to build the brand).

I therefore grant AMP's **[*12]** motion to dismiss for lack of personal jurisdiction. I grant Gerwaski leave to amend his complaint if he is able to plausibly allege additional facts to establish personal jurisdiction over AMP. Because I allow amendment, I will also address AMP's substantive arguments for dismissal, which are similar to SJP-UNLV's.

**C. Failure to State a Claim**

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. Kwan v. SanMedica Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017). However, I do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations. Navajo Nation v. Dep't of the Interior, 876 F.3d 1144, 1163 (9th Cir. 2017). A plaintiff must also make sufficient factual allegations to establish a plausible entitlement to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed. Twombly, 550 U.S. at 570.

Case 2:24-cv-06253-SVW-PVC   Document 129-1   Filed 05/12/25   Page 6 of 11   Page ID #:1087

Gerwaski v. Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.

1. Antiterrorism Act

Both AMP and SJP-UNLV argue that Gerwaski has not plausibly alleged that he suffered an injury from an act of international terrorism or that **[\*13]** either organization provided substantial assistance to an act of international terrorism. Gerwaski responds that AMP and SJP-UNLV provided substantial assistance to Hamas by justifying its terroristic actions and promoting "resistance" in the United States, and that he was injured by this activity.

A United States national who has been injured by an act of international terrorism may sue the terrorists or organizations that carried out the attack, or "any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism." *18 U.S.C. § 2333(d)(2)*. To sustain his claim, Gerwaski must plausibly allege (1) "an injury arising from an act of international terrorism," (2) committed by a designated foreign terrorist organization, and (3) AMP and SJP-UNLV "knowingly provide[d] substantial assistance or conspire[d] with the person who committed such an act of international terrorism." *Id.*; *Twitter, Inc. v. Taamneh, 598 U.S. 471, 483-84, 143 S. Ct. 1206, 215 L. Ed. 2d 444 (2023)*. Aiding-and-abetting liability requires "that the defendant consciously and culpably participated in a wrongful act so as to help make it succeed." *Taamneh, 598 U.S. at 493* (simplified). The defendants must have "aided and abetted the act of international terrorism **[\*14]** that injured" Gerwaski, though he need not necessarily show "a strict nexus between the alleged assistance and the terrorist act." *Id. at 497*. The greater the assistance, the less scienter is necessary to show conscious and culpable assistance. *Id. at 491-93*.

Gerwaski has not alleged an injury arising out of an act of international terrorism. The only event that Gerwaski discusses in his complaint that qualifies as an act of international terrorism is Hamas's October 7, 2023 attack in Israel. Gerwaski does not allege that he was present in Israel during the attack. In response to the defendants' argument that he fails to allege an injury, Gerwaski asserts,

> [t]he mutual reliance and relationship that exists between Hamas and AMP and NSJP and SJP-UNLV have resulted in injuries to Mr. Gerwaski, insofar as the acts of terrorism against Jews in Israel, refusing to release hostages and collectively and collaterally justifying these acts as resistance to harm students at UNLV and specifically Gerwaski. Further, Plaintiff's FAC provides 27 pages of extensive facts creating a direct nexus between Hamas, Defendants AMP and UNLV's substantially assisting and complicity allowing SJP-UNLV to engage in these egregious **[\*15]** acts which directly caused damages to Mr. Gerwaski.

ECF No. 30 at 14; *see also* ECF No. 53 at 23 (nearly identical passage). This conclusory statement that he is injured without describing what injuries he sustained or how those injuries arose out of an act of international terrorism is not sufficient to plausibly allege an injury under the Antiterrorism Act.

Gerwaski also does not plausibly allege that AMP and SJP-UNLV provided substantial assistance to Hamas for its act of international terrorism. The FAC alleges that AMP and SJPUNLV repeat Hamas's rhetoric in the United States and justify its actions. It also alleges that Hamas welcomes this support, and its goals are renewed and reinvigorated by this support. Even if vocal support from across the world could be substantial assistance for future acts of terrorism, Gerwaski does not allege any actions by the defendants that substantially assisted the October 7, 2023 act of international terrorism. All of the defendants' conduct alleged in the FAC took place after this event.

I therefore dismiss Gerwaski's Antiterrorism Act claims against AMP and SJP-UNLV without prejudice. Although it is difficult to imagine what facts might show that **[\*16]** he suffered injuries from an act of international terrorism that the defendants substantially assisted, I grant Gerwaski leave to amend his complaint if he is able to plausibly allege additional facts to support this claim.

2. IIED

Both AMP and SJP-UNLV argue that Gerwaski has not plausibly alleged that either of them engaged in extreme and outrageous conduct, that he suffered a cognizable injury, or that any injury he suffered is traceable to the defendants' conduct. Gerwaski responds that both defendants solicited and encouraged antisemitic vitriol and incited violence against Jewish students at UNLV. Gerwaski asserts that he suffered emotional distress and "great humiliation, embarrassment, shame, and other pain and suffering." ECF Nos. 6 at 72; 30 at 16; 53 at 17-18.

Case 2:24-cv-06253-SVW-PVC    Document 129-1    Filed 05/12/25    Page 7 of 11    Page ID #:1088

Gerwaski v. Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.

To state an IIED claim under Nevada law, Gerwaski must plausibly allege that (1) the defendants' conduct was extreme and outrageous; (2) the defendants either intended or recklessly disregarded causing Gerwaski emotional distress; (3) Gerwaski suffered severe or extreme emotional distress; and (4) proximate cause. Nelson v. City of Las Vegas, 99 Nev. 548, 665 P.2d 1141, 1145 (Nev. 1983). Extreme and outrageous conduct "is that which is outside all possible bounds of decency and is regarded **[*17]** as utterly intolerable in a civilized community." Maduike v. Agency Rent-A-Car, 114 Nev. 1, 953 P.2d 24, 26 (Nev. 1998) (simplified). "Liability for emotional distress will not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Abrams v. Sanson, 136 Nev. 83, 458 P.3d 1062, 1070 (Nev. 2020) (simplified). Severe or extreme emotional distress must be shown with "objectively verifiable indicia" of its severity. Blige v. Terry, 540 P.3d 421, 432 (Nev. 2023) (en banc). Although Nevada follows a "sliding scale approach" that allows more extreme conduct to require less proof of emotional distress, Gerwaski must still provide some objectively verifiable evidence of that distress. Franchise Tax Bd. of State of Cal. v. Hyatt, 133 Nev. 826, 407 P.3d 717, 741-42 (Nev. 2017) (en banc), *rev'd and remanded on other grounds sub nom* Franchise Tax Bd. of Cal. v. Hyatt, 587 U.S. 230, 139 S. Ct. 1485, 203 L. Ed. 2d 768 (2019).

Gerwaski has not plausibly alleged conduct that was extreme and outrageous by either defendant. He points to a single social media post from SJP-UNLV that states "Zionist presence on our campus cannot go unchecked," which encourages support for Palestine by attending a counter-demonstration. ECF No. 6 at 24. He also alleges that the organizations encourage antisemitic vitriol by "globalizing the intifada." ECF No. 30 at 16. Although Gerwaski may not like these messages, they do not rise to the level of extreme and outrageous behavior. Further, neither of these messages was directed **[*18]** at Gerwaski or made in a way that intends or recklessly disregards the risk of emotional distress for Gerwaski. The only specific allegation of conduct directed at Gerwaski that might meet the extreme and outrageous standard was offensive comments allegedly made by members of non-party organization Nevada Palestine Liberation. *See* ECF No. 6 at 55-56.

Gerwaski also has not alleged that he suffered severe emotional distress that is recoverable under Nevada law. His allegation that he felt emotional distress through "great humiliation, embarrassment, shame, and other pain and suffering" is wholly subjective. *Id.* at 72. He has not plausibly alleged any objectively verifiable indicia of emotional distress.

Because Gerwaski has failed to meet several elements of IIED, I dismiss that claim against AMP and SJP-UNLV. Because I also grant AMP and SJP-UNLV's special motions to dismiss Gerwaski's IIED claims, I dismiss those claims with prejudice.

3. First Amendment

Both AMP and SJP-UNLV also argue that Gerwaski fails to state a claim against them because his allegations rely on conduct protected by the First Amendment. Gerwaski responds that material support to terrorists and true threats are not protected speech.

The defendants rely on **[*19]** Snyder v. Phelps, 562 U.S. 443, 131 S. Ct. 1207, 179 L. Ed. 2d 172 (2011) and N.A.A.C.P. v. Claiborne Hardwood Co., 458 U.S. 886, 102 S. Ct. 3409, 73 L. Ed. 2d 1215 (1982) to argue that the allegations in the FAC are First Amendment protected activities. In *Snyder*, demonstrators picketed the funeral of a U.S. soldier killed in Iraq and displayed signs expressing support for those who killed the soldier and other offensive slogans. 562 U.S. at 448. The Supreme Court of the United States held that, absent more, speech made in a public place on a matter of public concern is entitled to "special protection under the First Amendment" and could not support liability for IIED. Id. at 458.

In *Claiborne*, National Association for the Advancement of Colored People (NAACP) members and others organized a boycott of white-owned businesses in Mississippi to encourage social changes. 458 U.S. at 889. The Supreme Court reversed the state courts' imposition of liability on the boycott participants holding that "the nonviolent elements of [the boycotters'] activities are entitled to the protection of the First Amendment." Id. at 915, 934. The court further remarked that although violence is not protected by the First Amendment, "[c]ivil liability may not be imposed merely because an individual belonged to a group, some members of which committed acts of violence." Id. at 920. Even "advocacy of the use of force or violence does not remove speech from the protection of the First Amendment," unless such speech is likely **[*20]** to provoke immediate violence or immediate panic. Id. at

Case 2:24-cv-06253-SVW-PVC   Document 129-1   Filed 05/12/25   Page 8 of 11   Page ID #:1089

Gerwaski v. Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.

927; see also Brandenburg v. Ohio, 395 U.S. 444, 447, 89 S. Ct. 1827, 23 L. Ed. 2d 430 (1969) (articulating that states may not "forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action").

Gerwaski argues that the conduct of AMP and SJP-UNLV falls outside First Amendment protections because it constitutes material support for terrorism, and, for SJP-UNLV, true threats. Gerwaski notes that *Holder v. Humanitarian Law Project* rejected a First Amendment challenge to a law that criminalized providing material support to foreign terrorist organizations. 561 U.S. 1, 8, 130 S. Ct. 2705, 177 L. Ed. 2d 355 (2010). In holding that the law was constitutional as applied, the Supreme Court noted that "[i]ndividuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control." Id. at 23; 18 U.S.C. § 2339B(h). Similarly, "service" does not apply to independent advocacy but only "providing service *to* a foreign terrorist organization." Holder, 561 U.S. at 23-24 (quotation omitted) (emphasis in original). With these caveats, the Court upheld the statute because it "reaches only material [*21] support coordinated with or under the direction of a designated foreign terrorist organization" of which speech may be included. Id. at 28, 31.

"True threats encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." Virginia v. Black, 538 U.S. 343, 359, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003) (quotation omitted). "Even a statement that appears to threaten violence may not be a true threat if the context indicates that it only expressed political opposition or was emotionally charged rhetoric." Thunder Studios, Inc. v. Kazal, 13 F.4th 736, 746 (9th Cir. 2021). The Ninth Circuit employs an objective test that asks "whether a reasonable person would foresee that a statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." Id. (quotation omitted).

As pleaded, AMP and SJP-UNLV's conduct alleged in the FAC is protected by the First Amendment. All the conduct alleged appears to take place in public areas and involves speech on the conflict between Israel and Palestine and UNLV's response to that conflict. This is a matter of public, rather than private concern. Gerwaski does not allege any conduct by either of these organizations that is directed [*22] at him in a private setting. None of the speech described could be interpreted as likely to incite imminent lawless action or as a serious expression of intent to harm any particular individual.

Gerwaski alleges that AMP has "knowingly used or permitted the use of funds . . . to provide support to terrorists, terrorist organizations, terrorist activities, or family members of terrorists" and that "[d]efendants identify themselves as not just aligned with Hamas's terrorist activities, but 'PART of' them . . .." ECF No. 6 at 6, 21. But these conclusory statements are not plausibly supported by the factual allegations in the FAC. Gerwaski relies on the fact that NSJP claims to be part of the "Unity Intifada" movement and allegedly puts forth its messages in response to Hamas's rhetoric or vice versa. Id. at 20-21, 27. And Hamas has expressed that it is pleased and reinvigorated by the protests on American college campuses. Id. at 26-27. Even taking these allegations as true, they do not plausibly show that AMP and SJP-UNLV are providing personnel or service to Hamas rather than independent advocacy.

If Gerwaski chooses to amend his complaint, he is advised to plead his claims against AMP [*23] and SJP-UNLV in accordance with the First Amendment principles I have described. He is also advised to comply with Federal Rule of Procedure 8(a), which requires only "a short and plain statement of the claim" showing he is entitled to relief and "a demand for the relief sought." Gerwaski's FAC contains 51 pages of background material before getting to a fivepage "Statement of Facts" that actually pertains to Gerwaski. ECF No. 6 at 52-56. Although some background and jurisdictional information may be helpful, Gerwaski also spends pages describing a national organization's response to a congressional subpoena, repetitive allegations about the inner workings of various terrorist organizations, and activities at campuses other than UNLV. None of that seems relevant to this case.

### III. SPECIAL MOTIONS TO DISMISS

AMP and SJP-UNLV also bring special motions to dismiss Gerwaski's IIED claim under Nevada's anti-SLAPP statute, arguing that his claims are based on their good faith communications made in public about

Case 2:24-cv-06253-SVW-PVC   Document 129-1   Filed 05/12/25   Page 9 of 11   Page ID #:1090

Gerwaski v. Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.

issues of public concern. Gerwaski responds that his claims arise out of the defendants' conduct of providing material support to foreign terrorist organizations and that such conduct is not protected. Gerwaski also argues that **[*24]** any otherwise protected speech was not either truthful or made without knowledge of its falsehood and that he has pleaded a prima facie case for IIED.

I evaluate an anti-SLAPP motion using a two-step analysis. *Spirtos v. Yemenidjian, 137 Nev. 711, 499 P.3d 611, 614 (Nev. 2021)*. At step one, I must "[d]etermine whether the moving party has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." *Nev. Rev. Stat. § 41.660(3)(a)*. Second, if the movant has met its burden, I must "determine whether the plaintiff has demonstrated with prima facie evidence a probability of prevailing on the claim." *Id. § 41.660(3)(b)*.

The anti-SLAPP statute protects speech in four categories:

> (1) Communication that is aimed at procuring any governmental or electoral action, result or outcome;
> (2) Communication of information or a complaint to a Legislator, officer or employee of the Federal Government, this state or a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity;
>
> (3) Written or oral statement made in direct connection with an issue under consideration by a legislative, executive or **[*25]** judicial body, or any other official proceeding authorized by law; or
> (4) Communication made in direct connection with an issue of public interest in a place open to the public or in a public forum.

*Id. § 41.637*. To determine whether a communication is protected under the anti-SLAPP statute, I assess only whether it falls within one of these definitions and need not look to *First Amendment* law or "wrestle with difficult questions of constitutional law." *Delucchi v. Songer, 133 Nev. 290, 396 P.3d 826, 833 (Nev. 2017)* (en banc) (quotation omitted). Regardless of which category the communication falls into it must be "truthful or [] made without knowledge of its falsehood." *Nev. Rev. Stat. § 41.637*.

### A. AMP

Gerwaski is not clear about what conduct by AMP forms the basis of his IIED claim. The complaint does not attribute specific allegations to that claim for relief. *See* ECF No. 6 at 72. In Gerwaski's response to AMP's motion to dismiss, he claims that AMP was soliciting and encouraging "antisemitic vitriol," inciting "violence against Jewish students at UNLV by 'globalizing the intifada,'" and making "[s]ocial media posts that say 'Zionist presence on our campus can't go unchecked.'" ECF No. 30 at 16. And in response to the special motion to dismiss, Gerwaski argues that his IIED claim "is not based **[*26]** on communications made by AMP, but on a course of conduct that violates federal law" by providing material support to foreign terrorist organizations. ECF No. 45 at 12. But Gerwaski later clarifies that this "conduct" includes "calling for a 'Unity Intifada' against the Jewish state and vowing to 'contribute to the fight for Palestinian liberation.'" *Id.* at 14.

The FAC describes only one communication by AMP in its own words, rather than through its purported subsidiary NSJP. That communication is a screenshot of a third-party social media post that claims that AMP's executive director stated, "We Will Take Back Elite Colleges, America, And Palestine; We Are The Future; Zionism is No Less Evil Than White Supremacy; Your Generation Will Bring This Disgrace To An End." ECF No. 6 at 7. Gerwaski characterized this statement as a "threat" to American universities and college students. *Id.* Gerwaski also appears to attribute NSJP's conduct to AMP. The only conduct by AMP, through NSJP, alleged in the FAC that could arguably be the proximate cause of Gerwaski's emotional distress are NSJP's social media posts and messaging to other activist organizations by distributing a resistance toolkit. **[*27]**

At step one, AMP has met its burden to show by a preponderance of the evidence that its statements, as alleged by Gerwaski, were truthful or made without knowledge of their falsehood in furtherance of the right to free speech in direct connection with an issue of public concern. In his attached declaration, AMP cofounder and board member Munjed Ahmad denied any relationship with or control over NSJP. ECF No. 37-1 at 3. Although Ahmad therefore denies making many of the statements that form the basis of Gerwaski's claim, he asserts that any communications AMP made were "truthful, or made without knowledge of falsity" and that some communications expressed the "opinion" of

Case 2:24-cv-06253-SVW-PVC   Document 129-1   Filed 05/12/25   Page 10 of 11   Page ID #:1091

Gerwaski v. Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.

AMP and its board. *Id.* And the FAC's allegations show that the ongoing conflict in Gaza is a matter of public interest, as it describes student protests at college campuses, including at UNLV. Absent contradictory evidence in the record, "an affidavit stating that the defendant believed the communications to be truthful or made them without knowledge of their falsehood is sufficient to meet the defendant's burden" to show good faith by a preponderance of the evidence. *Stark v. Lackey, 136 Nev. 38, 458 P.3d 342, 347 (Nev. 2020)* (en banc). And communications via social media **[*28]** are made in a public forum. *Id. at 345 n.2*.[3]

Gerwaski does not dispute the truthfulness of the statements, arguing that even if true, the statements were substantial assistance to foreign terrorist organizations and therefore outside *First Amendment* protections. But the question here is not whether the statements are entitled to *First Amendment* protection. Rather, the question is whether the statements meet the statutory definition of communications protected under Nevada's anti-SLAPP statute, which they do. And even if NSJP's communications can be fairly attributed to AMP, these communications are largely calls to action or statements of support that either express an opinion or do not contain provably false factual assertions. *See Abrams v. Sanson, 136 Nev. 83, 458 P.3d 1062, 1068 (Nev. 2020)* (Statements of opinion are made without knowledge of their falsehood because "there is no such thing as a false idea." (quotation omitted)). AMP has thus satisfied the first step of the anti-SLAPP analysis.

At step two, Gerwaski has not demonstrated with prima facie evidence that he is likely to succeed on his IIED claim. As discussed above, Gerwaski fails to plausibly allege that AMP engaged in extreme and outrageous conduct, that he suffered an injury with objectively verifiable indicia of that injury, **[*29]** or that his emotional distress was proximately caused by AMP's conduct. And in response to AMP's anti-SLAPP motion, he did not provide any evidence to meet his prima face case. Because both steps of the anti-SLAPP analysis are met, I grant AMP's special motion to dismiss. Because a dismissal under the anti-SLAPP statute "operates as an adjudication upon the merits," I dismiss Gerwaski's IIED claim against AMP with prejudice. *Nev. Rev. Stat. § 41.660(5)*.

## B. SJP-UNLV

The FAC attributes several communications to SJP-UNLV, including social media posts, public protests, and in-person meetings with UNLV President Keith Whitfield. The social media posts include encouragement to attend events or other statements such as "all out for Gaza," "UNLV you will see Palestine will be free!" and "Zionist presence on our campus cannot go unchecked." ECF No. 6 at 11, 24. A longer social media post also declared, "[b]y establishing spaces for popular education on campus, we will disrupt the university's operations, usurp its existing structures, and undermine its elite reputation to force university administrators to either cut ties with the Zionist entity or allow their universities to shatter." *Id.* at 16. SJP-UNLV organized protests **[*30]** on campus and invited other organizations to participate. *Id.* at 19-20, 23-24, 28-29, 45. It also publicly criticized President Whitfield's statements on the Palestine conflict and met with him privately to discuss SJP-UNLV's concerns. *Id.* at 25, 47-48.

Gerwaski clarifies that the communication including "Zionism presence on our campus can't go unchecked" forms the basis of his IIED claim against SJP-UNLV. ECF No. 53 at 17. In response to SJP-UNLV's special motion to dismiss, Gerwaski does not elaborate on what conduct by SJP-UNLV was extreme and outrageous. Instead, he focuses on his conclusory allegations that SJP-UNLV provided material support to terrorism, which is extreme and outrageous behavior, and that SJP-UNLV made its statements knowing them to be false.

SJP-UNLV has met its burden at step one of the anti-SLAPP analysis. Gerwaski's IIED claim against SJP-UNLV is based on protected communications. SJP-UNLV's communications as described in the FAC were made in public about the conflict in Gaza, a matter of public concern. SJP-UNLV's president, Alexa Hayden, provided an affidavit asserting that the organization does not coordinate with Hamas or take direction from NSJP; SJP-UNLV's **[*31]** social media accounts are public and represent its official views; and its statements at protests and on social media were "truthful or made without knowledge of falsity." ECF No. 61-1 at 2-5. There is no evidence in the record to contradict Hayden's affidavit other than Gerwaski's conclusory allegations that SJP-UNLV knew its statements were false or constituted material support for terrorism. SJP-

---

[3] The statements attributed to AMP's founder appeared on a non-party's social media. The underlying statements appear to have been made during a protest at George Washington University in a public area, and Gerwaski does not argue otherwise.

Case 2:24-cv-06253-SVW-PVC   Document 129-1   Filed 05/12/25   Page 11 of 11   Page ID #:1092

Gerwaski v. Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.

UNLV therefore satisfies step one of the anti-SLAPP analysis.

Gerwaski has not demonstrated with prima facie evidence that he is likely to succeed on his IIED claim. As discussed above, Gerwaski fails to plausibly allege that SJP-UNLV engaged in extreme and outrageous conduct, that he suffered an injury with objectively verifiable indicia of that injury, or that his emotional distress was proximately caused by SJP-UNLV's conduct. And in response to SJP-UNLV's anti-SLAPP motion, he did not provide any evidence to meet his prima face case. Because both steps of the anti-SLAPP analysis are met, I grant SJP-UNLV's special motion to dismiss. I dismiss Gerwaski's IIED claim with prejudice.

## IV. CONCLUSION

I THEREFORE ORDER that defendant AJP Legal Foundation, Inc.'s motion to dismiss **(ECF No. 24) [\*32] is GRANTED in part**. I dismiss all claims against AJP for lack of personal jurisdiction, and I dismiss Gerwaski's Antiterrorism Act claims without prejudice.

I FURTHER ORDER that defendant Students for Justice in Palestine — UNLV's motion to dismiss **(ECF No. 51) is GRANTED**. I dismiss Gerwaski's Antiterrorism Act claims without prejudice.

I FURTHER ORDER that defendant AJP Legal Foundation, Inc.'s special motion to dismiss **(ECF No. 37) is GRANTED**. Gerwaski's IIED claim against AJP is dismissed **with prejudice**.

I FURTHER ORDER that defendant Students for Justice in Palestine — UNLV's special motion to dismiss **(ECF No. 61) is GRANTED**. Gerwaski's IIED claim against SJP-UNLV is dismissed **with prejudice**.

I FURTHER ORDER that by June 3, 2025, plaintiff Corey Gerwaski may file an amended complaint to cure the deficiencies identified in this order. If Gerwaski does not amend by that date, this case will proceed against any remaining defendants.

DATED this 5th day of May, 2025.

/s/ Andrew P. Gordon

ANDREW P. GORDON

CHIEF UNITED STATES DISTRICT JUDGE

**End of Document**