Robert L. Herbst (NYSBN 1333194)
rherbst@herbstlawny.com
HERBST LAW PLLC
420 Lexington Avenue, Suite 300
New York, New York 10170
Tel: 914-450-8163

Ramsey Judah (SBN 342300)
ramsey@judahlawgroup.com
JUDAH LAW GROUP
1026 W. Foothill Blvd
Upland, CA 91786
Tel: 626-899-7667

Joshua Colangelo-Bryan (NYSBN 4162319; *pro hac vice* pending)
colangeloj@humanrightsfirst.org
HUMAN RIGHTS FIRST
121 West 36th Street
PMB 520
New York, NY 10018
Tel: 212-845-5243

Attorneys for Defendant
WESPAC FOUNDATION

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANDWITHUS CENTER FOR LEGAL JUSTICE<br><br>v.<br><br>CODEPINK WOMEN FOR PEACE, et al. | CASE NO: 2:24-cv-06253-SVW-PVCx<br><br>Honorable Stephen V. Wilson<br><br>**DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date:  Monday, September 29, 2025**<br>**Time:  1:30 p.m.**<br>**Place:  Courtroom 10A**<br><br>**350 W. 1ˢᵗ Street**<br>**Los Angeles, California 90012** |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on Monday, September 29, 2025, at 1:30 p.m. or as soon thereafter as this matter may be heard in Courtroom 10A of the above-entitled Court located at First Street Courthouse, 350 W. 1st Street, Courtroom 10A, 10th Floor, Los Angeles, CA 90012, Defendant WESPAC FOUNDATION, INC., will and hereby does move the Court for an Order imposing sanctions against Plaintiffs and their counsel pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the Court's inherent authority, and for attorneys' fees and costs under 42 U.S.C. § 1988.

This motion is based upon this Notice of Motion, the attached Memorandum of Points & Authorities, [Proposed] Order, the files and records in the case, and any evidence or argument that may be presented at a hearing on this matter.

Respectfully submitted,

Dated: August 21, 2025

By:__/s/ Robert L. Herbst_____
Robert L. Herbst
rherbst@herbstlawny.com
HERBST LAW PLLC
420 Lexington Avenue, Suite 300
New York, New York 10170
Tel: 914-450-8163 Fax: 888-482-4676

Attorneys for Defendant
WESPAC FOUNDATION

1

<u>TABLE OF CONTENTS</u>

2
TABLE OF AUTHORITIES .................................................................................4

3
INTRODUCTION ...............................................................................................6

4
BACKGROUND .................................................................................................9

5
A.  Procedural History, Including WESPAC's Rule 11 Letter. ...........................9

6
B.  Plaintiffs and Counsel State They Intend to "Bring Down" WESPAC. ........11

7
LEGAL STANDARD .......................................................................................13

8
ARGUMENT ....................................................................................................15

9
A.  The Court Should Award Rule 11 Sanctions Because Plaintiffs' Pleadings

10
Were Frivolous and/or Were Filed to Harass WESPAC. ...................................15

11
I.     There Clearly Was No Basis to Exercise Personal Jurisdiction over

12
WESPAC. .......................................................................................................15

13
II.   Plaintiffs' Purported Theories of Liability Were Frivolous. ......................18

14
III.  Plaintiffs' Counsel Filed This Suit to Harass WESPAC and Needlessly

15
Increased Litigation Costs Once It Was Commenced. .....................................21

16
B.   Sanctions Are Also Warranted Under 28 U.S.C. § 1927 Because Plaintiffs'

17
Counsel Unreasonably Multiplied the Proceedings and Recklessly Litigated

18
Frivolous Claims. ...............................................................................................24

19
C.  Pursuant to Its Inherent Authority, the Court May Sanction Plaintiffs and

20
Their Counsel for Acting in Bad Faith................................................................25

21
D.  WESPAC Is Also Entitled to Attorneys' Fees and Costs Under 42 U.S.C. §

22
1988. ...................................................................................................................25

23
CONCLUSION..................................................................................................26

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

*Bristol-Myers Squibb Co. v. Superior Court of Calif.*, 137 S. Ct. 1773 (2017)..................................................................................16

*Buster v. Greisen*, 104 F.3d 1186 (9th Cir. 1997) ..................................13

*Christian v. Mattel, Inc.*, 286 F.3d 1118 (9th Cir. 2002) ..............................passim

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978)..........................14, 25

*CollegeSource, Inc. v. AcademyOne, Inc.,* 653 F.3d 1066 (9th Cir. 2011)..................................................................................15

*ConsumerDirect, Inc. v. Pentius, LLC*, No. 8:21-CV-01968-JVS (ADS), 2023 WL 8876198 (C.D. Cal. Sept. 21, 2023) ....................................25

*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014)......................................15

*Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001).............................8, 14, 25

*Fox v. Vice*, 563 U.S. 826 (2011) .........................................8, 14, 25, 26

*Goel v. Coal. Am. Holding Co.*, No. CV 11-02349 JGB (EX), 2013 WL 12122302 (C.D. Cal. Feb. 26, 2013)..............................15, 21, 22

*Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531 (9th Cir. 1986)..................................................................................13, 18

*Hendrix v. Naphtal*, 971 F.2d 398 (9th Cir. 1992) ..................................17

*Holgate v. Baldwin*, 425 F.3d 671 (9th Cir. 2005)..................................20

*Huettig & Schromm, Inc. v. Landscape Contractors Council*, 790 F.2d 1421 (9th Cir. 1986) ..................................................................................21

*Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216 (9th Cir. 2010) ......................................................7, 8, 14, 24

*Love v. The Mail on Sunday*, No. CV05-7798ABCPJWX, 2006 WL 4046169 (C.D. Cal. July 13, 2006)..................................................17

*Lucas v. Jos. A. Bank Clothiers, Inc.*, 217 F. Supp. 3d 1200 (S.D. Cal. 2016)..................................................................................14

4

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION FOR SANCTIONS; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No.: 2-24-cv-06253-SVW-PVCx

*Manhart* v. *WESPAC Foundation, Inc.*, No. 24-cv-08209, 2025 WL
2257408 (N.D. Ill. Aug. 7, 2025) ........................................................ 24

*Margolis v. Ryan,* 140 F.3d 850 (9th Cir. 1998) ....................................... 25

*New York ex rel. TZAC, Inc. v. New Israel Fund*, 520 F. Supp. 3d 362
(S.D.N.Y. 2021)........................................................................ 6, 16, 18

*Orange Prod. Credit Ass'n v. Frontline Ventures Ltd.*, 792 F.2d 797
(9th Cir. 1986) ................................................................................ 13

Order Granting in Part Defendants' Motions to Dismiss, ECF No. 131 ........passim

*Paciulan v. George*, 38 F. Supp. 2d 1128 (N.D. Cal. 1999) ................................ 22

*Ramirez v. Pasternak*, No. SACV09-0245DOC(AGRX), 2009 WL
10680752 (C.D. Cal. June 18, 2009) ............................................. 15, 22

*Sanders v. Tyco Elecs. Corp.*, 235 F.R.D. 315 (W.D.N.C. 2006) ................. 13, 14

*Smith v. Ricks* 31 F.3d 1478 (9th Cir. 1994) ....................................... 15

*Tanasescu v. Sohail I. Simjee, DMD, Inc.*, No. 8:23-CV-00110-MWF-
SP, 2024 WL 4480130 (C.D. Cal. July 9, 2024).......................... 20, 26

*Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055 (9th Cir. 2006) ................. 26

*United Bhd. of Carpenters & Joinders of Am., Loc. 610, AFL-CIO v.
Scott*, 463 U.S. 825 (1983) .......................................................... 19, 20

*Walden v. Fiore*, 134 S. Ct. 1115 (2014)........................................... 16

*Warehousemen & Helpers of America*, AFL–CIO, 948 F.2d 1338 (2d
Cir.1991).......................................................................................... 14

**STATUTES AND RULES**

18 U.S.C. § 248(a) ........................................................................ 21

28 U.S.C. § 1927..................................................................... passim

42 U.S.C. § 1985.....................................................................passim

42 U.S.C. § 1988.....................................................................passim

Fed. R. Civ. P. 11...................................................................passim

Fed. R. Civ. P. 4(k)(1)(A)............................................................ 16

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION FOR
SANCTIONS; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No.: 2-24-cv-06253-SVW-PVCx

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This case and its companion case, *Helmann v. CodePink et al.*, 2:24-cv-05704, arose out of events allegedly taking place at the Adas Torah Synagogue (the "Synagogue") on June 23, 2024. Order Granting in Part Defendants' Motions to Dismiss, ECF No. 131 at 2. Plaintiffs alleged that a subset of Defendants ("Organizing Defendants") arranged a protest at the Synagogue for which they are liable under 42 U.S.C. § 1985 and the FACE Act. *Id.* at 3. Plaintiffs also alleged that while WESPAC Foundation, Inc. and another Defendant (collectively, "Sponsoring Defendants") "did not organize, participate in or fund the protest at the Synagogue," they served generally as fiscal sponsors for the Palestinian Youth Movement ("PYM"), one of the Organizing Defendants, thereby assuming liability for PYM's actions. *Id.* at 4-5.

However, the Court found not only that Plaintiffs' claims against PYM failed (precluding liability for WESPAC on that basis alone), but that "Plaintiffs cite[d] *no legal authority* holding that fiscal sponsorship alone creates such liability, and the Court finds *none.*" *Id.* at 33 (emphasis added). Moreover, the Court concluded that "[t]he most relevant case Plaintiffs cite, *New York ex rel. TZAC, Inc. v. New Israel Fund*, 520 F. Supp. 3d 362 (S.D.N.Y. 2021), *actually undercuts* their argument." *Id.* (emphasis added).

Beyond the utter absence of law justifying Plaintiffs' legal theory, the Court noted that no agency relationship had ever existed between PYM and WESPAC – a relationship that was the factual underpinning of Plaintiffs' theory. Indeed, as described by the Court, Plaintiffs did not even allege that WESPAC authorized, directed, or even knew of PYM's activities in relation to the Synagogue. *Id.* at 34. The Court found likewise that Plaintiffs did not even posit any facts suggesting PYM acted with actual or apparent authority of WESPAC. *Id.* at 34.

Plaintiffs also failed to plead any facts to meet the elements of their 42 U.S.C.

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION FOR
SANCTIONS; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No.: 2-24-cv-06253-SVW-PVCx

§ 1985(3) conspiracy and FACE Act claims. A section 1985(3) claim for infringement of First or Fourteenth Amendment rights requires a showing of conspiracy, intent to deprive a plaintiff of those rights, and state action. But Plaintiffs did not allege any facts to establish any of those elements as to WESPAC, which is unsurprising given that Plaintiffs never alleged WESPAC took *any* action in connection with the Synagogue. Worse yet, when the failure to plead the requisite elements was discussed in each Defendant's motion to dismiss, Plaintiffs pointed to a baseless legal theory already rejected by the Supreme Court. *Id.* at 16-17.

For their FACE Act claim, Plaintiffs were required to plead that WESPAC by force or threat thereof intentionally interfered with Plaintiffs' right of religious freedom at a place of worship. But Plaintiffs pleaded none of those elements against WESPAC.

Plaintiffs' lawsuit against WESPAC was equally frivolous with respect to personal jurisdiction. Plaintiffs did not allege and could not truthfully have alleged that WESPAC had any relevant contact with California. *Id*. at 34-35. After all, WESPAC is a New York entity and, again, Plaintiffs have never claimed WESPAC organized, participated in, or provided any funds in connection with the events at the Synagogue or that it purposefully directed any activities at California. *See id.* at 35. To the extent Plaintiffs attempted to rely upon WESPAC's fiscal sponsorship of PYM to establish personal jurisdiction, the Court concluded such a theory was legally baseless. *Id* at 35.

For these reasons, it is an inescapable conclusion that Plaintiffs' counsel filed frivolous claims against WESPAC and, even after the objectively baseless nature of those claims was fully explicated via Rule 11 correspondence and motions to dismiss, counsel doubled down, continuing to waste WESPAC's and this Court's resources. Put differently, Plaintiffs' counsel knowingly and recklessly pursued claims against WESPAC, establishing bad faith as a matter of law. *Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1218–19 (9th Cir. 2010).

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION FOR
SANCTIONS; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No.: 2-24-cv-06253-SVW-PVCx

Why did Plaintiffs and their counsel pursue claims in the absence of factual or legal support? As their own commentary makes clear, they commenced and maintained this litigation for the purpose of harassing WESPAC due to WESPAC's advocacy on behalf of the Palestinian community and its fiscal support of others so inclined. This too establishes bad faith. In the words of Mark Goldfeder, one of Plaintiffs' lawyers: "Incredibly proud to be one of the 'forces of darkness' *bringing down WESPAC*. Most of these cases have been brought by @[National Jewish Advocacy Center] and our partners." Exhibit B (Mark Goldfeder Tweet, Jan. 13, 2025) (emphasis added). And as Plaintiff Noah Pollak described his advocacy approach: "The activism has to be very provocative and, like, attention getting and, like, total no-fucks-given. We're going to be more pro-Israel than you can even imagine. Just to, like, provoke everyone." Exhibit F (Grayzone Article, Aug 28, 2018). Consistent with their desire to bring down WESPAC, Plaintiffs' counsel have filed another similarly frivolous lawsuit against WESPAC, which WESPAC's counsel here is also defending.[1]

For all these reasons, Plaintiffs and their counsel[2] should be sanctioned under Rule 11, 28 U.S.C. § 1927, and the Court's inherent authority. *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002); *Lahiri*, 606 F.3d at 1218–19; *Fink v. Gomez*, 239 F.3d 989, 991–94 (9th Cir. 2001).

WESPAC may also be awarded attorneys' fees under 42 U.S.C. § 1988 because Plaintiffs' 42 U.S.C. § 1985(3) claim "was frivolous, unreasonable, [and] without foundation." *Fox v. Vice*, 563 U.S. 826, 832-33 (2011). No bad faith is required for an attorneys' fees award under Rule 11 or 42 U.S.C. § 1988 (even though Plaintiffs' counsel acted in bad faith).

---

[1] *See post,* at 12 n. 4.

[2] WESPAC seeks sanctions against Plaintiffs and each of their counsel, except for Gipson Hoffman & Pancione, which appeared in this case by Daniel Paluch, who recently passed away.

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION FOR
SANCTIONS; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No.: 2-24-cv-06253-SVW-PVCx

In sum, Plaintiffs' counsel improperly brought and pursued this frivolous case as part of an expansive, legally baseless campaign to harass and bring down WESPAC. WESPAC deserves relief for the time and resources it spent defending against Plaintiffs' frivolous claims – relief which might also deter Plaintiffs' counsel from continuing to harass WESPAC with additional baseless lawsuits.

## **BACKGROUND**

### A. Procedural History, Including WESPAC's Rule 11 Letter.

Plaintiff StandWithUs Center for Legal Justice and their counsel initiated this action on July 24, 2024. *See* Complaint, ECF No. 1. The Complaint alleged state and federal FACE Act claims against WESPAC, PYM, and CodePink in connection with a protest outside Adas Torah on June 23, 2024. *Id*. In that Complaint, StandWithUs did not claim WESPAC took any action in connection with the protest, but rather alleged WESPAC was a fiscal sponsor of PYM and therefore – on that basis alone – was responsible for any actions of PYM allegedly taken in connection with the protest. *Id*. ¶¶ 42-47.

On October 21, 2024, WESPAC's counsel served a Rule 11 letter on Plaintiffs' counsel. *See* Exhibit A ("Rule 11 Letter"). WESPAC's counsel explained why StandWithUs's claims were objectively baseless, previewing some of the arguments this Court ultimately held were dispositive in dismissing this case against WESPAC. *Id*. at 4-5. For example, the Rule 11 Letter pointed out that the Complaint did not offer a single allegation that anyone on behalf of WESPAC knew of the June 23 protest, was involved in planning it, communicated with PYM or anyone else about it, transmitted any money to PYM knowing it would be used in connection with the protest, or did anything at all relating to it. *Id*. at 2-3.

On October 29, 2024, WESPAC filed a motion to dismiss. *See* ECF No. 49. In response, on December 19, 2024, counsel filed an Amended Complaint, adding Plaintiff Noah Pollak and several other Defendants. *See* First Amended Complaint, ECF No. 71 ("FAC").

9

In their FAC, Plaintiffs asserted FACE Act and 42 U.S.C. § 1985(3) claims against WESPAC. *Id*. Plaintiffs also doubled down on their legally baseless fiscal sponsorship theory as the sole basis for their claims against WESPAC. *Id*. at ¶¶ 120-137. On January 2, 2025, WESPAC filed another motion to dismiss because Plaintiffs' FAC had all the deficiencies seen in the original pleading in addition to adding a baseless § 1985(3) claim. *See* ECF No. 76.

On June 13, 2025, the Court granted WESPAC's motion to dismiss. ECF No. 131. First, the Court held Plaintiffs' claims against WESPAC "fail because they depend on PYM's liability," and Plaintiffs did not state claims against PYM. *Id*. at 32.

Second, the Court noted that "Plaintiffs do not allege that the Sponsoring Defendants [WESPAC and Honor the Earth] organized or participated in the protest themselves; rather, *they seek to hold them liable solely for financially supporting PYM*." *Id*. (emphasis added). But, the Court found, "even if Plaintiffs could state a claim against PYM, the Sponsoring Defendants' fiscal sponsorship of PYM is not enough to establish their liability or support personal jurisdiction over them." *Id*.

On this point, the Court explained that WESPAC's "role as PYM's fiscal sponsor[] does not create a sufficient link to PYM's conduct to support liability or personal jurisdiction," given that fiscal sponsors need only retain control "over how donated funds are used … in order to preserve their tax-exempt status—not to create an agency relationship or vicarious liability." *Id*. at 33. Critically, the Court found "Plaintiffs cite *no legal authority* holding that fiscal sponsorship alone creates such liability, and the Court finds none." *Id*. (emphasis added). In fact, the Court concluded that the "most relevant case Plaintiffs cite … *actually undercuts their argument*" because in that case, the "court did not hold the nonprofit liable for grantees' actions themselves." *Id*. at 33-34 (emphasis added).

As to the question of whether WESPAC and PYM had an agency-principal relationship, the Court found Plaintiffs offered "no allegations that the Sponsoring

Defendants authorized, directed, or even knew about PYM's social media posts or the protest outside the Synagogue." *Id*. at 34. Similarly, Plaintiffs did not allege "any facts suggesting that PYM acted with actual or apparent authority on behalf of" WESPAC. *Id*. at 34.

In short order, the Court ruled out personal jurisdiction over WESPAC: "Plaintiffs allege almost no contacts by the Sponsoring Defendants that would submit them to personal jurisdiction in California," as they are "not residents of California" nor did they "organize[] or participate[] in the" events at issue. *Id*. Moreover, "[n]othing in the Complaint suggests that the Sponsoring Defendants purposefully directed any activities at California or otherwise availed themselves of the privileges of California." *Id*. The Court concluded that "there are no allegations sufficient to support general or specific jurisdiction." *Id*. at 34-35. Advancing a frivolous personal jurisdiction claim with no basis in "existing law or a good faith argument," *Christian*, 286 F.3d at 1127, is yet another reason for sanctions here.

## B. Plaintiffs and Counsel State They Intend to "Bring Down" WESPAC.

Plaintiffs' counsel includes Mark Goldfeder, the CEO of the National Jewish Advocacy Center, Inc. ("NJAC"), the NJAC's Associate Director Ben Schlager,[3] and the NJAC itself. On January 13, 2025, Goldfeder explained the purpose of this and other similar lawsuits against WESPAC: "Incredibly proud to be one of the 'forces of darkness' *bringing down WESPAC*. Most of these case [sic] have been brought by @NJACLaw and our partners." Exhibit B (emphasis added).

In January 2025, the NJAC posted a Times of Israel article on its LinkedIn page trumpeting the news that WESPAC "says it's at risk of closing due to lawsuits." Exhibit C (NJAC LinkedIn Post, January 2025). The subject of the article was a WESPAC "'urgent request' to its supporters asking for funding to cover legal expenses" because the "threat to WESPAC's survival is real," given the serial

---

[3] National Jewish Advocacy Center, *Meet Our Team*, NJAC, https://www.njaclaw.org/team.

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION FOR SANCTIONS; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No.: 2-24-cv-06253-SVW-PVCx

litigation filed against it. In posting the article, NJAC commented: "*We are even more proud to have filed three cases that have the potential to take down this dangerous organization* [*i.e.,* WESPAC] posing as advocate for social advancement." Ex. C (emphasis added).[4] Thus, Plaintiffs' counsel have been clear about their objective to destroy WESPAC.

Plaintiffs' co-counsel Holtzman Vogel also posted a press release on this lawsuit with inflammatory and false allegations against WESPAC: "On June 23, 2024, more than 200 rioters, organized by … WESPAC Foundation, marched into the predominantly Orthodox Jewish neighborhood of Pico-Robertson in Los Angeles' Westside and blocked access to the Adas Torah synagogue." Exhibit D (Holtzman Vogel Press Release). Holtzman Vogel's press release goes on to discuss WESPAC by way of a quote from Mr. Goldfeder: "The evidence is overwhelming that these groups maliciously organized more than 200 people to deprive Jewish citizens of their First Amendment right to freedom of religion using violence and intimidation … That's more than 200 clear-cut violations of federal law and more than 200 clear-cut violations of state law." *Id*. StandWithUs, an impact litigation organization,[5] is a Plaintiff in this case and also posted an identical press release. Exhibit E (StandWithUs Press Release, July 25, 2024). Critically, as the Court made clear in its Order dismissing this case, Plaintiffs made no allegation that WESPAC "marched" anywhere or "organized" anything in relation to the relevant protest, "maliciously" or otherwise. ECF No. 131 at 34.

Plaintiff Noah Pollak has made his intent to harass clear as well. In explaining his advocacy approach to a reporter, he said: "The activism has to be very provocative and, like, attention getting and, like, total no-fucks-given. We're going to be more

---

[4] NJAC also brought *Winer v. Umaymah Mohammad et al*., No. 1:25-cv-2329 (N.D. Ga.).

[5] *See* StandWithUs Center for Legal Justice, *Legal Action Against Antisemitism*, StandWithUs, https://swulegaljustice.org/ ("SCLJ enhances StandWithUs' mission through impact litigation and other legal actions.")

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION FOR SANCTIONS; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No.: 2-24-cv-06253-SVW-PVCx

pro-Israel than you can even imagine. Just to, like, provoke everyone." Ex. F.

In addition to posting defamatory statements, Plaintiff StandWithUs has likewise manifested a goal of quelling pro-Palestinian advocacy, even maintaining dossiers on people who speak out for Palestinian rights to help silence those voices.[6]

## **LEGAL STANDARD**

Rule 11 requires an attorney "presenting to the court a pleading, written motion, or other paper" to certify that: (1) "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; (2) "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery"; (3) "it is not being presented for any improper purpose, such as to harass … or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b). "One of the fundamental purposes of Rule 11 is to 'reduce frivolous claims, defenses or motions and to deter costly meritless maneuvers, ... [thereby] avoid[ing] delay and unnecessary expense in litigation.'" *Christian*, 286 F.3d at 1127 (citing *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir. 1986)). A frivolous filing is one that is both baseless and made without a reasonable and competent inquiry. *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997). Moreover, while filing for an improper purpose is sanctionable, "bad faith is not necessary to impose sanctions under Rule 11." *Orange Prod. Credit Ass'n v. Frontline Ventures Ltd*., 792 F.2d 797, 800–01 (9th Cir. 1986).

Pursuant to Rule 11, the Court may sanction Plaintiffs' counsel and Plaintiffs themselves. *Sanders v. Tyco Elecs. Corp*., 235 F.R.D. 315, 322 (W.D.N.C. 2006) ("pursuant to the Court's inherent powers and [Rule] 11, the undersigned may impose

---

[6] *See* Alex Kane, *Israel Lobby Group Compiles Secret Dossiers on Pro-Palestine Speakers*, MONDOWEISS (February 25, 2014), http://mondoweiss.net/2014/02/compiles-palestinian-speakers.

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION FOR SANCTIONS; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No.: 2-24-cv-06253-SVW-PVCx

sanctions on a party who is or was represented by counsel"). *See also Warehousemen & Helpers of America*, AFL–CIO, 948 F.2d 1338, 1344 (2d Cir.1991) ("Rule 11 subjects the client—'the represented party'—to sanctions even if he has not signed the offending paper.") For example, the *Sanders* court sanctioned the represented plaintiff for "filing and pursuit of [that] litigation" because plaintiff "acted in bad faith, vexatiously, and to harass and obtain revenge against the Defendant." 235 F.R.D. at 322.

Under 28 U.S.C. § 1927, the Court may require "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously ... to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "Recklessness suffices for § 1927 sanctions." *Lahiri*, 606 F.3d at 1219.

Separately, the Court has the inherent power to sanction represented parties and their attorneys. *Fink*, 239 F.3d at 991. *See also Sanders*, 235 F.R.D. at 322; *Lucas v. Jos. A. Bank Clothiers, Inc*., 217 F. Supp. 3d 1200, 1205–07 (S.D. Cal. 2016) (sanctioning represented plaintiff for acting recklessly in litigation). This "inherent power extends to a full range of litigation abuses," and sanctions may be awarded upon a finding of "bad faith or conduct tantamount to bad faith." *Id*. at 992–94.

Lastly, under 42 U.S.C. § 1988, the "court, in its discretion, may allow the prevailing party" in a 42 U.S.C. § 1985 action to recover "attorney's fee as part of the costs." The Supreme Court has held that "[i]n enacting § 1988 … Congress sought 'to protect defendants from burdensome litigation having no legal or factual basis.'" *Fox v. Vice*, 563 U.S. 826, 833 (2011) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 420 (1978)). Accordingly, "§ 1988 authorizes a district court to award attorney's fees to a defendant 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation.'" *Id*. (citing *Christiansburg*, 434 U.S. at 421).

# ARGUMENT

## A. The Court Should Award Rule 11 Sanctions Because Plaintiffs' Pleadings Were Frivolous and/or Were Filed to Harass WESPAC.

Where a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *Christian*, 286 F.3d at 1127. A plaintiff's "failure to bring forth a cause of action with merit is indicative of a lack of inquiry into the matter as required by the second prong of the" test. *Ramirez v. Pasternak*, No. SACV09-0245DOC(AGRX), 2009 WL 10680752, at *3 (C.D. Cal. June 18, 2009).

Moreover, frivolous or legally unreasonable claims violate Rule 11 regardless of whether they were filed in good faith because if "there is no legal or factual basis for a claim, improper purpose may be deduced." *Goel v. Coal. Am. Holding Co.*, No. CV 11-02349 JGB (EX), 2013 WL 12122302, at *5 (C.D. Cal. Feb. 26, 2013). *See also Smith v. Ricks* 31 F.3d 1478, 1488 (9th Cir. 1994) ("Counsel can no longer avoid the sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head") (internal quotation marks omitted).

## I. There Clearly Was No Basis to Exercise Personal Jurisdiction over WESPAC.

Sanctions are appropriate, first, because there was no nonfrivolous basis to contend WESPAC was subject to personal jurisdiction in California. A plaintiff "bears the burden of establishing that jurisdiction is proper." *CollegeSource, Inc. v. AcademyOne, Inc.,* 653 F.3d 1066, 1073 (9th Cir. 2011).

The standard for obtaining general personal jurisdiction over a corporation is "demanding." *Daimler AG v. Bauman*, 134 S. Ct. 746, 750-51 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). Accordingly, for a corporation, "the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Id.* at

760 (internal quotations and citations omitted). Plaintiffs did not allege that WESPAC is a "resident[] of California," and, thus, instead relied solely on specific jurisdiction. *See* ECF No. 131 at 34; ECF 85, at 3-4.

To establish specific personal jurisdiction, courts assess the "relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121–22 (2014) (citation and quotation omitted). "[T]he defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 1121. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Court of Calif.*, 137 S. Ct. 1773, 1781 (2017).

Plaintiffs' pleadings said nothing even hinting at a theory as to how specific personal jurisdiction could have been exercised over WESPAC here. In their opposition papers, Plaintiffs argued that:

> First, due to WESPAC's uncontroverted fiscal sponsorship of PYM in the period leading up to the riot, WESPAC has purposefully directed its activities and engaged in transactions with California residents. *See, e.g.*, *Schwarzenegger*, 374 F.3d at 802. Second, according to Plaintiffs, the claims in this lawsuit arose out of and related to WESPAC's activities and transactions in California. *See id.*; *Preciado*, 87 Cal. App. 5th at 977.

ECF. No. 85 at 6.

However, *Schwarzenegger* and *Preciado* say nothing about the exercise of personal jurisdiction over a fiscal sponsor based on the purported activities of a sponsoree. Nor did Plaintiffs cite authority supporting that proposition elsewhere in their opposition brief. Rather, Plaintiffs cited *New York ex rel. Tzac, Inc.*, 520 F. Supp. 3d at 388–89 (ECF No. 85 at 7), a case the Court properly determined "*actually undercuts* their argument." ECF No. 131 at 33 (emphasis added).

As such, Plaintiffs submitted two pleadings, ECF No. 1 and ECF No. 71, in

16

which they asked the Court to exercise personal jurisdiction over a New York entity that they did not claim took any action in California, all based on a fiscal-sponsor-based theory for which they could offer no legal support. Even after WESPAC advised Plaintiffs' counsel that there was no basis for personal jurisdiction in its Rule 11 Letter, Plaintiffs still persisted with filing their FAC, ECF No. 71, without addressing these glaring jurisdictional deficiencies.

Unsurprisingly, the Court quickly dispensed with Plaintiffs' position as to personal jurisdiction. Specifically, the Court held that "[n]othing in the Complaint suggests that the Sponsoring Defendants purposefully directed any activities at California or otherwise availed themselves of the privileges of California." ECF No. 131 at 34. The Court further noted that Plaintiffs alleged virtually "no contacts by the Sponsoring Defendants that would submit them to personal jurisdiction in California." *Id*. at 34. "In other words, there are no allegations sufficient to support general or specific jurisdiction." *Id*. at 34–35.

In sum, sanctions are warranted given the utter absence of legal authority to support the exercise of personal jurisdiction here and given that Plaintiffs took the same unjustifiable position regarding jurisdiction in successive complaints. *See Love v. The Mail on Sunday*, No. 2:05-cv-07798-ABC-PJW, 2006 WL 4046169, at *6 (C.D. Cal. July 13, 2006) (an amended pleading "flagrantly violates Rule 11(b)" where plaintiffs have "not provided any new bases to satisfy [their] prima facie burden to establish personal jurisdiction," but "merely re-worded arguments…without providing any material amendments"). Indeed, considering that sanctions are proper when counsel fails to conduct a reasonable investigation into jurisdictional facts, sanctions are especially warranted when counsel *knows* the relevant jurisdictional facts and persists in positing baseless jurisdictional theories. *See, e.g., Hendrix v. Naphtal*, 971 F.2d 398, 399 (9th Cir. 1992) (affirming Rule 11 sanctions where attorney failed to conduct reasonable investigation of client's domicile before filing diversity action).

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION FOR SANCTIONS; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No.: 2-24-cv-06253-SVW-PVCx

## II.    Plaintiffs' Purported Theories of Liability Were Frivolous.

Sanctions are warranted not only by Plaintiffs' baseless persistence in asking the Court to exercise personal jurisdiction over WESPAC, but also because Plaintiffs utterly lacked any legal or factual basis for their claims against WESPAC. As the Court explained, "Plaintiffs do not allege that the Sponsoring Defendants organized or participated in the protest themselves; rather they seek to hold them liable solely for financially supporting PYM." ECF No. 131 at 32.

Specifically, as the Court addressed, Plaintiffs argued that "the Sponsoring Defendants' fiscal sponsorship of PYM creates an agency relationship that makes them liable as principals for PYM's actions," relying on IRS Revenue Ruling 68-499. *Id.* at 33. But, as the Court held, Plaintiffs' theory was entirely baseless: "That ruling requires fiscal sponsors to retain 'control and discretion' over how donated funds are used, but only in order to preserve their tax-exempt status—not to create an agency relationship or vicarious liability." *Id*. Therefore, even "assuming the Sponsoring Defendants complied with this IRS revenue ruling, their role as PYM's fiscal sponsors does not create a sufficient link to PYM's conduct to support liability or personal jurisdiction." *Id*.

The Court found further that "Plaintiffs *cite no legal authority* holding that fiscal sponsorship alone creates such liability, and the Court found none. The most relevant case Plaintiffs cite, *New York ex rel. TZAC, Inc.*, *actually undercuts* their argument." *Id* (emphasis added). But an "attorney has a duty prior to filing a complaint not only to conduct a reasonable factual investigation, but also to perform adequate legal research that confirms whether the theoretical underpinnings of the complaint are 'warranted by existing law or a good faith argument.'" *Christian,* 286 F.3d at 1127 (citing *Golden Eagle Distrib. Corp.*, 801 F.2d at 1537).

Beyond the absence of legal basis for their claims, Plaintiffs also were unable to even plead an agency relationship between the Sponsoring Defendants and PYM as a factual matter. All Plaintiffs could muster were "vague assertions [that] fall short

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION FOR SANCTIONS; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No.: 2-24-cv-06253-SVW-PVCx

of establishing an agency relationship." ECF 131, at 34. Indeed, as the Court explained, Plaintiffs offered "no allegations that the Sponsoring Defendants authorized, directed, or even knew about PYM's social media posts or the protest outside the Synagogue. Nor are there any facts suggesting that PYM acted with actual or apparent authority on behalf of the Sponsoring Defendants." *Id*. And "[w]ithout plausible allegations of authorization, control, or ratification," Plaintiffs could not "state[] a viable theory of agency or vicarious liability." *Id*.

For all these reasons, Plaintiffs' "failure to perform even minimal due diligence … fell below the requisite standard established by Rule 11" with respect to the fiscal sponsorship theory. *Christian*, 286 F.3d at 1129 (holding a plaintiff's "failure to investigate" the facts underlying the core elements of a claim warranted Rule 11 sanctions). Moreover, WESPAC informed Plaintiffs of these dispositive deficiencies in its Rule 11 Letter, but Plaintiffs nonetheless filed their FAC without curing any of the defects. *See* Ex. A at 2–3.

Given Plaintiffs' reliance on a legally unmoored fiscal sponsorship theory, frivolousness is established. But if one also considers Plaintiffs' failure to plead the requisite elements of each substantive claim, the frivolous nature of this action stands out even more starkly. To state a claim under 42 U.S.C. § 1985(3), Plaintiffs needed to allege four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joinders of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 828–29 (1983). *See also* ECF No. 131 at 15. Furthermore, "if a plaintiff alleges a conspiracy to infringe a person's First or Fourteenth Amendment rights, then they must allege a fifth element: state action. As the Supreme Court put it, a conspiracy to infringe First or Fourteenth Amendment rights 'is not a violation of § 1985(3) unless

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION FOR SANCTIONS; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No.: 2-24-cv-06253-SVW-PVCx

it is proved that the state is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the state.'" ECF No. 131 at 15–16 (citing *Scott*, 463 U.S. at 830).

Plaintiffs purported to plead a 42 U.S.C. § 1985(3) claim against WESPAC without even attempting to plead several requisite elements. First, since Plaintiffs alleged a conspiracy violated their "First and Fourteenth Amendment rights to practice their religion," FAC ¶¶ 410, 416, they were required to plead state action. They did not attempt to do so. *See* ECF No. 108 at 15–16. As the Court explained in dismissing Plaintiff's § 1985(3) claim as to all Defendants, Plaintiffs ignored clear, on-point Supreme Court precedent on this point. *See* ECF No. 131 at 16–17 (holding "Plaintiffs' reliance of *Griffin* is misplaced" because "the Supreme Court examined *Griffin* and clarified … 'it would be untenable' to say those constitutional rights could 'be violated by a conspiracy that did not somehow involve or affect a state'"). Plaintiffs' obvious failure to adequately research their section 1985(3) claim is sanctionable. *Christian,* 286 F.3d at 1127.

Second, Plaintiffs failed to allege any facts establishing WESPAC knew of any event at the Synagogue, communicated with anyone at PYM or CodePink about the event, or did anything at all relating to the event. *See* WESPAC's Motion to Dismiss, ECF No. 76 at 18–19. There can be no section 1985(3) conspiracy involving WESPAC in relation to an event WESPAC did not know of, let alone agree to take action to injure Plaintiffs in connection with it. Plaintiffs' failure to plead WESPAC's knowledge of, involvement in, or agreement to a § 1985(3) conspiracy is sanctionable conduct. *See Holgate v. Baldwin*, 425 F.3d 671, 675–77 (9th Cir. 2005) (holding a plaintiff's failure to "allege evidence of a conspiracy and an act in furtherance of that conspiracy, which are required elements of a § 1985(3) action," warranted "Rule 11 sanctions"); *Tanasescu v. Sohail I. Simjee, DMD, Inc*., No. 8:23-CV-00110-MWF-SP, 2024 WL 4480130, at *1–2 (C.D. Cal. July 9, 2024), report and recommendation adopted, No. SACV 23-0110-MWF (SP), 2024 WL 4479853 (C.D. Cal. Oct. 11,

20

2024) (awarding attorney's fees to defendants because plaintiff's "entirely conclusory § 1985 claim" was "frivolous and legally baseless").

Plaintiffs' FACE Act claim against WESPAC was equally frivolous. The FACE Act gives a private right of action against anyone who: (1) "by force or threat of force or by physical obstruction," (2) "intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with" (3) "any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship." 18 U.S.C. § 248(a). *See* ECF No. 131 at 17. Plaintiffs' inability even to plead that WESPAC knew of the event or did anything at all relating to the event obviously made their FACE Act claim frivolous. Yet Plaintiffs persisted in including such claims in two pleadings.

Ultimately, Plaintiffs had absolutely no good faith reason to include WESPAC in this lawsuit at all. Indeed, they did not even have a basis for claims against PYM, which engaged only in protected speech activities. ECF No. 131 at 22-24 (holding PYM's speech activities were "protected by the First Amendment"). Yet, Plaintiffs *knowingly* filed objectively baseless claims, failing even to plead the bare minimum elements of FACE Act and section 1985(3) claims against WESPAC. This is sanctionable conduct by Plaintiffs and their counsel. *See Christian*, 286 F.3d at 1129.

### III. Plaintiffs' Counsel Filed This Suit to Harass WESPAC and Needlessly Increased Litigation Costs Once It Was Commenced.

Plaintiffs' counsel also filed this suit against WESPAC for an "improper purpose." Fed. R. Civ. P. 11(b)(1). First, where, as here, "there is no legal or factual basis for a claim, improper purpose may be deduced." *Goel*, 2013 WL 12122302, at *6 (citing *Huettig & Schromm, Inc. v. Landscape Contractors Council*, 790 F.2d 1421, 1427 (9th Cir. 1986)). As set forth above, Plaintiffs' claims were so facially baseless – legally and factually – that such improper purpose *should* be deduced.

Second, Plaintiffs' maintaining and defending their claims, including in the FAC, after it had become entirely clear they couldn't even allege WESPAC was

involved in the relevant protest, underscored their improper purpose. Rule 11 "'subject[s] litigants to potential sanctions for insisting upon a position after it is no longer tenable.'" *Paciulan v. George*, 38 F. Supp. 2d 1128, 1144 (N.D. Cal. 1999) *aff'd*, 229 F.3d 1226 (9th Cir. 2000) (quoting Advisory Committee Note on Rule 11). *See, e.g., Ramirez*, 2009 WL 10680752, at *3 (awarding sanctions because "Plaintiffs were warned repeatedly by Defendant that the Receiver could not be sued … [but] Plaintiffs [still] brought the suit against the Receiver apparently without undertaking any kind of inquiry as to whether suit could be brought"). In *Goel*, the defendant informed plaintiff "that no contract existed" but the plaintiff "continued to allege this frivolous claim," justifying sanctions under Rule 11 and 28 U.S.C. § 1927. 2013 WL 12122302, at *7–8.

Just so here, if not worse. In the Rule 11 Letter, Ex. A, WESPAC's counsel explained in detail that the claims against WESPAC lacked any factual or legal basis. Nonetheless, Plaintiffs proceeded to file the FAC and maintain and defend their insupportable claims against WESPAC without curing any of the clear deficiencies in their original pleading. Ex. A at 4.

Beyond the obvious inferences of bad faith to be drawn from the pursuit of claims as to which the Court found there was "no legal authority," Plaintiffs' and counsel's public statements leave no doubt that they filed this suit to "harass" WESPAC and "needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Mark Goldfeder, Ben Schlager, and the NJAC instituted this suit – in their words – to "bring[] down WESPAC." Ex. B. Or, as they explained in different words, Mark Goldfeder, Ben Schlager, and the NJAC were "proud to have filed three cases that have the potential to take down" WESPAC. Ex. C. These comments were made in response to an article suggesting that such lawsuits posed an existential financial threat to WESPAC. Bringing a suit to "take down" WESPAC is clear evidence of intent to harass. Fed. R. Civ. P. 11(b)(1). Likewise, bringing a suit because of its potential to bankrupt WESPAC is clear evidence of an improper motive, from which

an intent to maximize WESPAC's legal costs may clearly be inferred. Such intent clearly was manifested here. *Id*.

Holtzman Vogel and StandWithUs's inflammatory press releases similarly establish intent to harass WESPAC. Both groups published false statements that WESPAC "organized" "more than 200 rioters" to "deprive Jewish citizens of their First Amendment right to freedom of religion using violence and intimidation." *See* Ex. D; Ex. E. Both also endorsed Mr. Goldfeder's false comment that "[t]he evidence is overwhelming that these groups [including, specifically, WESPAC]" committed "more than 200 clear-cut violations of federal law and more than 200 clear-cut violations of state law." *See id*. As noted above, no evidence of such conduct by WESPAC exists.

Plaintiff Pollak's description of his advocacy approach also makes clear his intent to silence pro-Palestinian advocacy. In his own words, Mr. Pollak's "pro-Israel" "activism has to be very provocative and, like, attention getting and, like, total no-fucks-given … Just to, like, provoke everyone." Ex. F. And StandWithUs's activities have been geared toward quashing pro-Palestinian advocates.[7] But WESPAC's pro-Palestinian advocacy is protected speech and filing a lawsuit to squelch protected speech is sanctionable. *See, e.g*., ECF No. 131 at 22–23 (holding that the "political message: if there is no justice for Palestinians, there will be no peace—even in religious spaces" and "political speech that call[s] for protest … [are] protected by the First Amendment").

If one simply accepts that their words reflect their intent, the only plausible explanation for the conduct of Plaintiffs and their counsel is that they wanted to harass WESPAC and needlessly increase the costs of litigation. They should be sanctioned under Rule 11. Fed. R. Civ. P. 11(b)(1).

---

[7] *See, e.g.,* Alex Kane, *Israel Lobby Group Compiles Secret Dossiers on Pro-Palestine Speakers*, MONDOWEISS (February 25, 2014), http://mondoweiss.net/2014/02/compiles-palestinian-speakers.

Recent developments in another frivolous case against WESPAC must be noted in this context. Specifically, on August 7, 2025, a federal court in Chicago dismissed all claims against WESPAC and all other defendants, with prejudice, for failure to state a claim. Critically, the court found that Rule 11 sanctions were warranted for filings "presented for the improper purpose of harassment" that "made legal contentions that were neither supported by existing law nor nonfrivolous arguments in favor of the extension or modification of existing law." *Manhart* v. *WESPAC Foundation, Inc.*, No. 24-cv-08209, 2025 WL 2257408 at *15 (N.D. Ill. Aug. 7, 2025). The court also noted that the plaintiff's counsel in that case had approvingly cited portions of an article describing that litigation "as a vehicle through which Plaintiff's counsel 'may make a dent in the [D]efendants' resources' via a 'slow' discovery process…." *Id.* at *16. Given that, and "Plaintiff's request for $36 million on behalf of the putative class, [] the Court [was] persuaded that Plaintiff's intent in bringing this action was not to recover the damages actually sustained, but instead to harass Defendants." *Id.*

The court in that case also noted that, "in the face of "Rule 11 motions explaining the flaws in Plaintiff's legal theories," instead of "taking heed, Plaintiff doubled down on arguments that a reasonable inquiry into the law would have revealed were baseless." *Id.* at 39. The exact same observation is clearly applicable to the conduct of Plaintiffs and their counsel here.

## B. Sanctions Are Also Warranted Under 28 U.S.C. § 1927 Because Plaintiffs' Counsel Unreasonably Multiplied the Proceedings and Recklessly Litigated Frivolous Claims.

Sanctions under 28 U.S.C. § 1927 are proper against "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously." The Ninth Circuit has held "[r]ecklessness suffices for § 1927 sanctions." *Lahiri*, 606 F.3d at 1218–19. The *Lahiri* court held § 1927 sanctions were justified where the plaintiff "knowingly and recklessly pursu[ed] a frivolous copyright infringement claim" with

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION FOR SANCTIONS; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No.: 2-24-cv-06253-SVW-PVCx

an "untenable interpretation of … law." *Id*. As detailed above, Plaintiffs' counsel here did the same as they pursued legally and factually baseless theories of personal jurisdiction, agency, § 1985(3), and the FACE Act.

### C. Pursuant to Its Inherent Authority, the Court May Sanction Plaintiffs and Their Counsel for Acting in Bad Faith.

Plaintiffs and their counsel also may be sanctioned pursuant to the Court's inherent authority, which is a broad inherent power to sanction parties and counsel for improper conduct, including a "full range of litigation abuses." *Fink*, 239 F.3d at 991–94.

Plaintiffs and their counsel have clearly engaged in such litigation abuses here. They recklessly filed frivolous claims and hauled WESPAC into this Court to harass and try to destroy it by their original pleading, and by recklessly persisting in filing and maintaining a second frivolous, facially deficient pleading. *Id*. at 992–94 ("Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose"). Plaintiffs' counsel also proffered "reckless misstatements of law and fact." *Id. See, e.g., ConsumerDirect, Inc. v. Pentius, LLC*, No. 8:21-CV-01968-JVS (ADS), 2023 WL 8876198, at *6–7 (C.D. Cal. Sept. 21, 2023) (levying inherent authority sanctions because the plaintiff misrepresented material facts to the court).

### D. WESPAC Is Also Entitled to Attorneys' Fees and Costs Under 42 U.S.C. § 1988.

Congress enacted 42 U.S.C. § 1988 "'to protect defendants from burdensome [42 U.S.C. § 1985] litigation having no legal or factual basis.'" *Fox*, 563 U.S. at 833 (citing *Christiansburg Garment Co.*, 434 U.S. at 420). Attorneys' fees should be awarded to a defendant upon a showing that a plaintiff's § 1985(3) claim "'was frivolous, unreasonable, or without foundation.'" *Id*. (citing *Christiansburg*, 434 U.S. at 421). In *Margolis v. Ryan*, the Ninth Circuit held § 1988 sanctions were warranted

because the plaintiff "relied solely on allegations that ... are insufficient as a matter of law to support a claim under § 1983." 140 F.3d 850, 854 (9th Cir. 1998). There, had plaintiff "made a reasonable inquiry into the applicable facts and law before filing their case they would have discovered the insufficiency of their civil rights claim." *Id*.

Plaintiffs and their counsel here could have and should have inquired into the law before filing an utterly baseless § 1985(3) claim. *See also Tanasescu*, 2024 WL 4480130, at *1–2 (awarding attorney's fees to defendants because plaintiff's § 1985 claim was "frivolous and legally baseless"). Yet, as addressed above, Plaintiffs did not even attempt to plead the required elements. Thus, Plaintiffs "knew or should have known, from the outset of the litigation, that [their] claim was frivolous." *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1060–62 (9th Cir. 2006) (affirming § 1988 award).

## CONCLUSION

For the reasons addressed above, WESPAC respectfully requests that the Court grant its Motion for Sanctions (i) against Plaintiffs' counsel (excepting Gipson Hoffman & Pancione) pursuant to Rule 11, 28 U.S.C. § 1927, and the Court's inherent authority, and (ii) against Plaintiffs pursuant to Rule 11 and the Court's inherent authority. WESPAC further requests that the Court award attorney's fees and costs to WESPAC pursuant to 42 U.S.C. § 1988.

Respectfully submitted,

Dated: August 21, 2025

By:   /s/ Robert L. Herbst_____
Robert L. Herbst (NYSBN 1333194)
rherbst@herbstlawny.com
HERBST LAW PLLC
420 Lexington Avenue, Suite 300
New York, New York 10170
Tel: 914-450-8163

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ramsey Judah (SBN 342300)
ramsey@judahlawgroup.com
JUDAH LAW GROUP
1026 W. Foothill Blvd
Upland, CA 91786
Tel: 626-899-7667

Joshua Colangelo-Bryan (NYSBN 4162319; *pro hac vice* pending)
colangeloj@humanrightsfirst.org
HUMAN RIGHTS FIRST
121 West 36th Street
PMB 520
New York, NY 10018
Tel: 212-845-5243

Attorneys for Defendant

WESPAC FOUNDATION, INC.

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Defendant WESPAC certifies that this Memorandum of Points and Authorities contains 6,783 words, which complies with the world limit of L.R. 11-6.1.

Respectfully submitted,

Dated: August 21, 2025          HERBST LAW PLLC

By:__/s/ Robert L. Herbst_____
Robert L. Herbst
rherbst@herbstlawny.com
420 Lexington Avenue, Suite 300
New York, New York 10170
Tel: 914-450-8163

Attorney for Defendant
WESPAC FOUNDATION, INC.