Dallin B. Holt*
HOLTZMAN VOGEL BARAN TORCHINSKY
 & JOSEFIAK PLLC
dholt@holtzmanvogel.com
2555 East Camelback Rd, Ste 700
Phoenix, AZ 85016
Telephone: (602) 388-1262
Facsimile: (549) 341-8809
*Admitted Pro Hac Vice

Attorneys for Plaintiffs and Class Members

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOAH POLLAK, on behalf of all others similarly situated, and STANDWITHUS CENTER FOR LEGAL JUSTICE,<br><br>          Plaintiffs,<br><br>v.<br><br>CODEPINK WOMEN FOR PEACE, a California entity; CODEPINK ACTION FUND, a California entity; WESPAC FOUNDATION, a New York entity; HONOR THE EARTH, a Minnesota entity; COURTNEY LENNA SCHIRF; REMO IBRAHIM, d/b/a PALESTINIAN YOUTH MOVEMENT; PALESTINIAN YOUTH MOVEMENT; and DOES #1-100,<br><br>          Defendants. | 2:24-cv-06253-SVW-PVC<br><br>**PLAINTIFFFS' OPPOSITION TO DEFENDANT WESPAC'S MOTION FOR SANCTIONS**<br><br>**Judge: Hon. Stephen V. Wilson**<br>**Hearing Date: Monday, October 27, 2025**<br>**Place: Courtroom 10A**<br><br>    **350 W. 1st Street**<br>    **Los Angeles, California 90012** |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES …………………………………...…………………ii

MEMORANDUM OF POINTS AND AUTHORITIES …………………….....1

   I.     INTRODUCTION ................................................................... 1
   II.    LEGAL STANDARD…………………………………………...2
   III.   ARGUMENT…………………………………………………4
          A. Sanctions Are Not Warranted Because Plaintiffs' Legal and
             Factual Contentions Are Not Frivolous……………………………4
             1. Personal Jurisdiction……………………………….....5
             2. The Underlying Claims……………………………..8
          B. The Cherry Pick and Out of Context Statements WESPAC
             Relies on Do Not Evince an "Improper Purpose" in Filing the
             Complaint…………………………………………………...12
          C. This Court Should Not Award Sanctions Because WESPAC Failed
             to Comply With Rule 11's Safe Harbor Provision………………14
   IV.   CONCLUSION…………………………………………………17

PLFS' OPPOSITION TO DEF WESPAC'S MOT. FOR SANCTIONS
CASE NO. 2:24-CV-06253-SVW-PVC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## CASES

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,

    223 F.3d 1082 (9th Cir. 2000) ........................................................ 13

*Barber v. Miller*, 146 F.3d 707 (9th Cir. 1998) ................................. 22

*Bd. of Trs. v. Quinones (In re Quinones)*,

    543 B.R. 638 (Bankr. N.D. Cal. 2015) ........................................... 22

*Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993) ...................... 17

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ........................................ 11

*Diaz v. Messer*, 742 F. App'x 250 (9th Cir. 2018) .................................. 14

*Doe v. Martucci*, 2024 U.S. Dist. LEXIS 228360 (S.D.N.Y. Dec. 16, 2024) ..... 15

*Doski v. M. Goldseker Co.*, 539 F.2d 1326 (4th Cir. 1976) ............................. 17

*Estate of Blue v. County of Los Angeles*, 120 F.3d 982 (9th Cir. 1997) ............. 10

*Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001) ......................................... 11

*Fox v. Vice*, 563 U.S. 826 ........................................................... 11

*Garment Co. v. EEOC,* 434 U.S. 412 (1978) ............................................ 11

*Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366 (1979) .................... 17

*Griffin v. Breckenridge*, 403 U.S. 88 (1971) ......................................... 17

*Herrera v. Singh*, 103 F. Supp. 2d 1244 (E.D. Wash. 2000) ............................ 11

*Holgate v. Baldwin*, 425 F.3d 671 (9th Cir. 2005) .................................... 21

*Honey Bum, LLC v. Fashion Nova, Inc.*, 63 F.4th 813 (9th Cir. 2023) .............. 18

*In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d (9th Cir. 1996) ........................ 10

*Islamic Shura Council of S. Cal. v. FBI*, 757 F.3d 870 (9th Cir. 2014) .............. 21

*Jenkins v. Arcade Bldg. Maint.*, 44 F. Supp. 2d 524 (S.D.N.Y. 1999) ................ 17

*Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) (en banc) .................. 22

*Lake v. Gates*, 130 F.4th 1064 (9th Cir. 2025) ............................... 10, 19

*Lawrence*, 620 F.3d at 156–59 ......................................... 23

*Lechter v. Aprio, LLP*, 622 F. Supp. 3d 1297 ....................................... 23

*Marsch v. Marsch (In re Marsch)*, 36 F.3d 825 (9th Cir. 1994) ...................... 10

*Martin v. Masters*, 2025 U.S. Dist. LEXIS 4742 (N.D. Cal. Jan. 7, 2025) ......... 17

*Mendocino Env't Ctr. v. Mendocino County*, 192 F.3d 1283 (9th Cir. 1999) ..... 18

*Manhart v. WESPAC Foundation, Inc.*,

   2025 U.S. Dist. LEXIS 152019 (N.D. Ill. Aug. 7, 2025) ........................ 20, 21

*Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336 (9th Cir. 1988) .......... 10

*Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 644 (9th Cir. 1997) .................... 19

*Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772 (9th Cir. 2001) ....................... 22

*Rates Tech. Inc. v. Broad Vox Holding Co., LLC*,

   2014 U.S. Dist. LEXIS 1052 (S.D.N.Y. Jan. 6, 2014) ................................. 23

*Salas v. United States*, 116 F.4th 830 (9th Cir. 2024) ......................... 16

*Schwarzenegger v. Fred Martin Motor Co.*,

   374 F.3d 797 (9th Cir. 2004) .............................................. 12, 13, 14

*Strom v. United States*, 641 F.3d 1051 (9th Cir. 2011) .................... 11, 12, 14, 15

*Tom Growney Equip., Inc. v. Shelley Irr. Dev., Inc.*,

   834 F.2d 833 (9th Cir. 1987) ........................................ 10

*Townsend v. Holman Consulting Corp.*,

   929 F.2d 1358 (9th Cir. 1990) (en banc) ................................. 10, 19

*United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*,

   463 U.S. 825–29 (1983) ...................................... 16

1

## STATUTES AND RULES

2   18 U.S.C. § 248 ............................................................................ 8, 12, 15

3   28 U.S.C. § 1927 .............................................................................. 10, 21

4   42 U.S.C. § 1985 ................................................................. 8, 11, 12, 16

5   42 U.S.C.§ 1988 ................................................................................ 11, 21

6   Federal Rule of Civil Procedure 11 ............................................... *passim*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLFS' OPPOSITION TO DEF WESPAC'S MOT. FOR SANCTIONS
CASE NO. 2:24-CV-06253-SVW-PVC

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

On June 23, 2024, a violent mob descended upon the heart of Los Angeles's Jewish community. *See* Am. Compl. ¶¶ 1-7, 228-230. Armed with bear spray and other weapons, donning the attire of Hamas terrorists, and yelling "Hitler didn't finish the job!", "Intifada!", and "Leave the neighborhood, we are coming!", the rioters used force and threats of force to prevent Jewish congregants from safely entering their house of worship, the Adas Torah Synagogue (the "Synagogue"). *See* Am. Compl. ¶¶ 1, 230-239, 244, 258, 261-269. The rioters were largely successful in this goal: through their violent attacks and intimidating threats, they rendered passage to and from the Synagogue too difficult and hazardous for many congregants to attempt. *See* Am. Compl. ¶¶ 271-307. Plaintiffs brought claims under 18 U.S.C. § 248(a)(2) (the "FACE Act") (Count I) and 42 U.S.C. § 1985(3) (Count II) against the entities and individuals who organized, facilitated, funded, and participated in the riot, including WESPAC—who served as the fiscal sponsor of another Defendant, Palestinian Youth Movement ("PYM"). Specifically, Plaintiffs alleged that as PYM's fiscal sponsor, WESPAC not only facilitated acquiring the necessary funds, but also maintained complete control and discretion of PYM's organization of the riot at issue in this litigation. *See* Am. Compl. ¶¶ 129-137.

Plaintiff Noah Pollak is a resident of Los Angles whose ability to enter the Synagogue on June 23, 2024, was made unreasonably difficult or hazardous by virtue of Defendants' actions. ¶¶ 29, 308-21. Plaintiff StandWithUs Center for Legal Justice ("SCLJ") is a tax-exempt membership organization whose members include congregants from the Synagogue and members of the Los Angeles Jewish community who were forcefully prevented from exercising their First Amendment

PLFS' OPPOSITION TO DEF WESPAC'S MOT. FOR SANCTIONS CASE NO. 2:24-CV-06253-SVW-PVC

right of religious freedom at a place of religious worship due to the riot. *See* Am.
Compl. ¶¶ 8-10, 20-22.

Following the filing of the Complaint, WESPAC sent a letter to Plaintiffs on
October 21, 2024, warning them of Rule 11 sanctions for filing a baseless
complaint. WESPAC did not send a draft sanctions motion or otherwise provide
Plaintiffs with the opportunity to take advantage of Rule 11's 21-day safe harbor
provision. Nor did WESPAC provide Plaintiffs with a new sanctions letter or
motion directed at the First Amended Complaint ("FAC").

Rather, WESPAC filed a Motion to Dismiss the FAC, which the Court
granted on June 13, 2025. In its order, it held among other things, that Plaintiffs
failed to state claims against WESPAC under the FACE Act as well as § 1985(3)
and alternatively, the Court could not exercise personal jurisdiction over WESPAC.
WESPAC then filed this current sanctions motion on August 21, 2025, arguing that
the FAC was frivolous and filed with the intent to harass WESPAC. But WESPAC
does not identify any controlling precedent that foreclose the arguments Plaintiffs
made in its complaint. Instead, in an attempt to demonstrate the action was filed
for an improper purpose, WESPAC cherry picks out of context statements that
merely indicate that Plaintiffs and their attorneys wish to hold all responsible
organizations accountable for violations of Plaintiffs' rights. That plainly does not
meet the "extraordinary" burden required to warrant sanctions. Thus, WESPAC's
motion should be denied.

## II. **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 11, a court may in its sound
discretion impose sanctions only when (1) a filing is "presented for any improper
purpose," (2) the claims are not "warranted by existing law or by a nonfrivolous
argument for extending, modifying, or reversing existing law or for establishing

PLFS' OPPOSITION TO DEF WESPAC'S MOT. FOR SANCTIONS CASE
NO. 2:24-CV-06253-SVW-PVC

new law," or (3) the factual contentions do not "have evidentiary support" and are not likely to have support following discovery. Fed. R. Civ. P. 11(b)(1)–(3). In other words, a filing is sanctionable if it is "frivolous" or "brought for an improper purpose." *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997).

However, when "complaints which initiate actions" are the source of the alleged action that occurred in violation of Rule 11, the Ninth Circuit "ha[s] held that such complaints are not filed for an improper purpose if they are non-frivolous." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc). Essentially, in the Ninth Circuit, "the 'improper purpose' inquiry subsumes the 'frivolousness' inquiry," *id.*, and whether sanctions are warranted "turn[s] entirely on whether the paper or pleading is frivolous." *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 829 (9th Cir. 1994). Therefore, "[t]o impose sanctions under Rule 11" for filing a complaint, "the district court must determine that [the] pleading is '*both* baseless *and* made without a reasonable and competent inquiry.'" *Lake v. Gates*, 130 F.4th 1064, 1068 (9th Cir. 2025) (quoting *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1997)). "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988). Consequently, the party moving for Rule 11 sanctions—as the party who bears the ultimate burden of proof and persuasion—faces an extraordinarily high hurdle. *See Tom Growney Equip., Inc. v. Shelley Irr. Dev., Inc.,* 834 F.2d 833, 837 (9th Cir. 1987).

Under § 1927, an attorney may be sanctioned for "multipl[ying] the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Like Rule 11, sanctions under § 1927 are "extraordinary" and must be "exercised with extreme caution." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d at 437 (9th

Cir. 1996) (cleaned up). Section 1927 requires a finding of "subjective bad faith," meaning the attorney must have "knowingly or recklessly raise[d] a frivolous argument." *Id.* at 436 (cleaned up).

Along with Rule 11 and § 1927, a district court is authorized to sanction parties or their lawyers for improper conduct pursuant to its inherent power. *See Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001). "If conduct can be sanctioned adequately under existing rules, a court ordinarily should rely on the rules rather than on inherent power to impose sanctions." *Herrera v. Singh*, 103 F. Supp. 2d 1244, 1256 (E.D. Wash. 2000) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). Before imposing inherent-power sanctions, the court must find bad faith or conduct tantamount to bad faith. *Fink*, 239 F.3d at 992.

Finally, 42 U.S.C. § 1988 "authorizes a district court to award attorney's fees to a defendant [in a 42 U.S.C. § 1985 action] 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation.'" *Fox v. Vice*, 563 U.S. 826, 833 (2011) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)).

## III.    ARGUMENT

### A.    Sanctions Are Not Warranted Because Plaintiffs' Legal And Factual Contentions Are Not Frivolous.

Rule 11 sets a "low bar" for attorneys to clear. *See Strom v. United States*, 641 F.3d 1051, 1059 (9th Cir. 2011). To constitute a frivolous legal position for Rule 11 sanctions, "it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify, or reverse the

law as it stands." *Strom v. United States*, 641 F.3d 1051, 1059 (9th Cir. 2011) (quoting *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 167 (2d Cir. 1999)). WESPAC contends that the FAC is frivolous because there is no basis for the Court to exercise personal jurisdiction over WESPAC and because the Plaintiffs cannot adequately state claims against WESPAC under 18 U.S.C. § 248(a)(2) (Count I) and 42 U.S.C. § 1985(3) (Count II). However, even under a cursory reading of existing precedent, WESPAC's fiscal sponsorship of PYM provides a colorable basis for both personal jurisdiction and the underlying substantive claims at issue in the FAC. Therefore, sanctions are not warranted.

### 1. Personal Jurisdiction

WESPAC has failed to make the showing that it was "clear" at the time the complaint was filed that this Court lacked personal jurisdiction over WESPAC based on its fiscal sponsorship of PYM's injurious California conduct.

The U.S. Court of Appeals for the Ninth Circuit uses a three-part test to determine whether specific jurisdiction exists. *See id.* First, "[t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof," or perform some other act "by which he purposefully avails himself of the privilege of conducting activities in the forum." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). Second, "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Id.* Third, the exercise of jurisdiction "must be reasonable." *Id.* "The plaintiff bears the burden of satisfying the first two prongs of the test," at which point "the burden then shifts to the defendant to 'present a compelling case' that

the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

At the pleading stage, the Court "only inquire[s] into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id.* at 800 (quoting *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995)). "[U]ncontroverted allegations in the complaint must be taken as true," and to the extent that relevant affidavits exist, conflicts "must be resolved in the plaintiff's favor." *Id.* (citing *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)); *see also Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) ("Because the prima facie jurisdictional analysis requires us to accept the plaintiff's allegations as true, we must adopt [the plaintiff's] version of events for purposes of this appeal.").

While Plaintiffs do not wish to relitigate issues decided by the Court, WESPAC's fiscal sponsorship and the incentive to maintain tax-exempt status, lead to the inference that it maintained "control and discretion" over how donated funds are used. *See* Am. Compl. ¶ 105. In addition, in order to maintain tax-exempt status, WESPAC was required to (among other requirements) "review[] and approve[]" PYM's activities "as being in furtherance of it[s] own exempt purposes," and maintain "adequate documentation or adequate controls over finances to demonstrate that no funds [were] used for non-exempt purposes." Am. Compl. ¶¶ 101-109. Plaintiffs also allege that WESPAC "provided PYM with access to WESPAC's administrative services, staff, and facilities" through its fiscal sponsorship arrangement, and that all these resources "were used to plan and/or carry out PYM's activities" relating to the riot. Am. Compl. ¶ 136.

PLFS' OPPOSITION TO DEF WESPAC'S MOT. FOR SANCTIONS CASE NO. 2:24-CV-06253-SVW-PVC

Therefore, because the complaint alleged that WESPAC fiscally sponsored PYM in the period leading up to the riot and maintained control over funds which were used to perpetuate the injurious conduct in California, there is an arguable basis that WESPAC "purposefully direct[ed]" its activities in California and those activities "related" to Plaintiffs' claims. *Schwarzenegger*, 374 F.3d at 802.

At the very least, sanctions are not warranted because WESPAC failed to identify controlling precedent foreclosing the argument that fiscal sponsorship (coupled with control over funds used to cause the injury) cannot establish personal jurisdiction with the forum state as was its burden under Rule 11. *Strom v. United States*, 641 F.3d 1051, 1059 (9th Cir. 2010) (explaining that Rule 11 sanctions are not warranted when "there is no caselaw" refuting a plaintiff's precise legal theory); *Love v. CHSP TRS S.F. LLC*, No. 20-cv-07259-DMR,, at *13 (N.D. Cal. Feb. 28, 2022) (concluding that claims were not legally or factually baseless due to the "absen[ce] [of] binding appellate authority").

As noted above, WESPAC—as the moving party—must show that it is "*clear* under existing precedents that there is *no* chance of success." *Strom*, 641 F.3d at 1059 (emphasis added). WESPAC attempts to flip this burden on its head by suggesting that sanctions must follow when Plaintiffs fail to cite authority standing for their exact legal theory. Sanctions Mot. at 16. But if that were so, every losing party would face sanctions, for if they had cited persuasive authority, they would not have been the losing party. Thankfully, that is not the result the law requires. *See Diaz v. Messer*, 742 F. App'x 250, 251 (9th Cir. 2018) (unpublished) (explaining that "sanctions should not be applied simply because attorneys advance a novel argument that the Ninth Circuit has not yet considered or perhaps even asserts arguments challenging already existing precedent"). It is WESPAC's duty to show that there was clearly no chance of succeeding on the personal

jurisdiction question. Because it did not do so, the court should deny this sanctions motion.

### 2.    The Underlying Claims

Without citing clearly established precedent that fiscal sponsorship can never support a FACE Act claim, WESPAC incorrectly asserts that Plaintiffs' FACE Act claim was frivolous and therefore sanctionable. In fact, WESPAC fails to identify a single case interpreting the scope of the FACE Act in its sanctions motion, instead opting to simply cite the statutory text. That failure alone is enough to reject WESPAC's frivolousness argument on this ground. *See Strom*, 641 F.3d at 1059; *Doe v. Martucci*, No. 20-CV-02331, 2024 U.S. Dist. LEXIS 228360, at *32 (S.D.N.Y. Dec. 16, 2024) ("[S]anctions motions that fail to show that the purportedly frivolous arguments are foreclosed by binding precedent, and instead 'merely recast the[ir] opposition arguments into a Rule 11-esque form,' are manifestly improper." (quoting *On Time Aviation, Inc. v. Bombardier Capital Inc.*, 570 F. Supp. 2d 328, 332 (D. Conn. 2008))); *Thompson v. Duke*, 940 F.2d 192, 198 (7th Cir. 1991) (explaining that an argument is not legally frivolous unless "foreclosed by the precedent of the Supreme Court or of th[at] circuit").

But even beyond the fact that WESPAC did not attempt to meet its burden to establish frivolousness with controlling precedent, Plaintiffs' complaint provided ample allegations to support a colorable FACE Act claim against WESPAC. Under § 248(a)(2), a plaintiff can state a claim by alleging that a defendant (1) "by force or threat of force or by physical obstruction," (2) "intentionally injure[d], intimidate[d] or interfere[d] with or attempt[ed] to injure, intimidate or interfere with" (3) "any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship." 18 U.S.C. § 248(a)(2). As detailed in the FAC, Plaintiffs tried to practice

PLFS' OPPOSITION TO DEF WESPAC'S MOT. FOR SANCTIONS CASE NO. 2:24-CV-06253-SVW-PVC

their religion at the Synagogue on June 23, 2024 but were prevented from doing so because a violent mob of Defendants attacked them with bear spray, beat them with blunt objects, and physically obstructed their access to the building. *See* Am. Compl. ¶¶ 32-39, 207-248, 271-307. The Amended Complaint alleges that this was not a spontaneous occurrence (although even that would be sufficient) but was instead actively organized and facilitated by Defendants—whom WESPAC was supposed to be overseeing. *See* Am. Compl. ¶¶ 207-230, 236-238. Moreover, Plaintiffs clearly alleged that WESPAC committed an act that "intentionally" interfered with Plaintiffs' access to the Synagogue—namely, providing fiscal support to and controlling PYM's activities, including the riot that PYM promoted, organized, and joined. *See* Am. Compl. ¶¶ 132-136. And at the pleading state where all reasonable inferences must be drawn in Plaintiffs' favor, *see Salas v. United States*, 116 F.4th 830, 845 (9th Cir. 2024), there is at least a *reasonable* basis to conclude that WESPAC intentionally provided financial support to interfere with Plaintiffs' free exercise of religion. That plainly meets the "low bar" to avoid Rule 11 sanctions.

Next, WESPAC claims that Plaintiffs failed to plead the elements required to maintain a 42 U.S.C. § 1985(3) action against WESPAC. WESPAC is correct that to prevail in a § 1985(3) action, four elements must be established: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joinders of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 828–29 (1983). And although WESPAC is likewise correct to note that a conspiracy to violate Plaintiffs'

First and Fourteenth Amendment rights requires Plaintiffs to plead state involvement, that was not Plaintiffs' legal theory. Instead, Plaintiffs' sought to use § 1985(3) to vindicate their *statutory* rights under the FACE Act—an act that guarantees rights against *private* impairment. The U.S. Supreme Court held that purely private conspiracies are actionable when discriminatory animus is present. *See Griffin v. Breckenridge*, 403 U.S. 88, 101-102 (1971); *see also Martin v. Masters*, 2025 U.S. Dist. LEXIS 4742, at *3 (N.D. Cal. Jan. 7, 2025). And, since the early 1990s, the Court has recognized that religious discrimination constitutes the sort of class-based animus necessary for a state-actor-free claim under Section 1985. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993). Said differently, when the only conduct that is prohibited is only prohibited as it applies to a government actor, then yes, you must have a government actor. However, as with the FACE Act, when private actors are also prohibited from conspiring to deprive certain rights, then alleging that multiple private actors conspired together to deprive certain rights is sufficient to allege a Section 1985 claim. Under well-established Supreme Court precedent, Plaintiffs were not required to plead state action. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 274 (1993).

Moreover, while it is an open question as to whether § 1985(3) can vindicate statutory rights, *see Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 370 n.6 (1979) (expressly declining to decide "whether § 1985(3) creates a remedy for statutory rights other than those fundamental rights derived from the Constitution"), litigating open questions cannot and should not be sanctionable conduct. It would border on the absurd to sanction a Plaintiff for pursuing a frivolous legal theory when that exact theory of liability had been cited approvingly by other federal courts. *See, e.g.*, *Doski v. M. Goldseker Co.*, 539 F.2d 1326, 1333

PLFS' OPPOSITION TO DEF WESPAC'S MOT. FOR SANCTIONS CASE NO. 2:24-CV-06253-SVW-PVC

(4th Cir. 1976) (Section 1985(3) "cover[s] rights guaranteed by federal law[] or the Constitution"); *Jenkins v. Arcade Bldg. Maint.*, 44 F. Supp. 2d 524, 532 (S.D.N.Y. 1999) (explaining that "some courts have held" that federal statutory rights "may serve as the substantive basis for a claim brought pursuant to § 1985(3)"). Because WESPAC cannot point to clear precedent establishing that § 1985(3) is unavailable to vindicate violations of the FACE Act, its sanctions motion must fail.

Additionally, Plaintiffs' Amended Complaint made a reasonable argument for establishing the remaining elements of its § 1985(3) claim. Plaintiffs specifically alleged that—as PYM's fiscal sponsor—WESPAC conspired with the other Defendants to violate the FACE Act, which was in turn violated to Plaintiffs' detriment when the riot occurred. *See* Am. Compl. ¶¶ 208, 416-419. This conspiracy and the riot to which it led was motivated by discriminatory animus towards Jews, as evidenced by WESPAC's history of supporting antisemitic causes and organizations and the hateful conduct of the rioters themselves. *See* Am. Compl. ¶¶ 122-129, 261-269.

WESPAC ignores all of these allegations in the complaint, instead stating in conclusory language that Plaintiffs' never alleged that WESPAC "knew of any event at the Synagogue" or "agree[d] to take action to injure Plaintiffs," thereby failing to establish a conspiracy. Sanctions Mot. at 20. However, a complaint need not establish a conspiracy through direct evidence. *See Honey Bum, LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 822 (9th Cir. 2023). Rather, a conspiracy can be proved through circumstantial evidence—including, through the direct control of funds used to perpetuate the violations of rights as well as WESPAC's history of supporting anti-Semitic causes. *See Mendocino Env't Ctr. v. Mendocino County*, 192 F.3d 1283, 1302 (9th Cir. 1999) ("[D]irect evidence of improper motive or an

11

PLFS' OPPOSITION TO DEF WESPAC'S MOT. FOR SANCTIONS CASE
NO. 2:24-CV-06253-SVW-PVC

agreement among the parties to violate a plaintiff's constitutional rights will only rarely be available. Instead, it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action."). At the very least, at the motion to dismiss stage, WESPAC cannot demonstrate that allegations of a conspiracy through its fiscal sponsorship is frivolous. Therefore, its sanctions motion should be denied.

## B. The Cherry Picked and Out of Context Statements WESPAC Relies on Do Not Evince an "Improper Purpose" in Filing the Complaint.

As noted above, the Court cannot impose sanctions pursuant to Rule 11 for filing a non-frivolous complaint. *Townsend*, 929 F.2d at 1362. Because Plaintiffs' Amended Complaint was not frivolous, the Plaintiffs and their attorneys' subjective motivation and good faith are irrelevant. *Lake*, 130 F.4th at 1068. Consequently, the Court should reject WESPAC's Rule 11 argument that the complaint was filed for an improper purpose.

Even if the Court were to consider this argument under its other statutory or inherent authority, sanctions are not warranted. A court can impose sanctions if the action was brought for an improper purpose such as to harass or to needlessly increase the cost of litigation. *Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997). However, neither circumstance is present here. Plaintiffs initiated this action to seek compensation for the injuries they suffered when they were beaten, harassed, and denied entry into their place of worship in violation of their federal statutory rights. WESPAC does not dispute that Plaintiffs suffered these injuries during the riot when individuals blocked their access to the Synagogue. Instead, WESPAC selectively cites to out of context and cherrypicked statements that Plaintiffs and their attorneys made following the lawsuit as evidence that the action was brought with an intent to harass WESPAC. For

PLFS' OPPOSITION TO DEF WESPAC'S MOT. FOR SANCTIONS CASE NO. 2:24-CV-06253-SVW-PVC

instance, WESPAC quotes a social media post from one of Plaintiffs' attorneys stating that he was "proud to have filed three cases that have the potential to take down" WESPAC as well as a press release from an attorney's law firm highlighting that "[t]he evidence is overwhelming that these groups" committed "more than 200 clear-cut violations of federal law and more than 200 clear-cut violations of state law." Sanctions Mot. at 22–23.

The statements at issue were made in direct response to the events giving rise to Plaintiffs' claims, as well as to public statements made by WESPAC, and merely expressed a desire to vindicate their clients' rights as well hold all responsible organizations accountable for violations of federal law. Specifically, the social media post in question was in response to a statement released by WESPAC claiming that the "forces of darkness are now waging legal warfare against us" making "unfounded and untrue claims" and that WESPAC was therefore now "at the precipice." Thus, when Plaintiffs' attorneys responded that they were in fact "proud to be one of the 'forces of darkness' bringing down WESPAC", and explicitly suggesting that "instead of raising money for a legal defense fund, maybe they should just stop supporting bad guys?" they were clearly speaking about seeking damages for violations of federal law and not a general desire to harass WESPAC. In other words, when Plaintiffs' attorneys filed their complaint, they did so with no other purpose other than that of securing the proper adjudication of their clients' claims. The Court should not infer an improper purpose based on statements that attorneys made about the strength of their case or their desire to hold those responsible accountable for violations of federal law. Certainly, these one-off statements do not rise to the level of bad faith required for the Court to impose sanctions.

PLFS' OPPOSITION TO DEF WESPAC'S MOT. FOR SANCTIONS CASE NO. 2:24-CV-06253-SVW-PVC

Moreover, WESPAC's reliance on *Manhart v. WESPAC Foundation, Inc.*, No. 24-cv-08209, 2025 U.S. Dist. LEXIS 152019, at *2 (N.D. Ill. Aug. 7, 2025)— the only case cited for the proposition that Plaintiffs' conduct demonstrates an improper purpose—is misguided. In *Manhart*, the Court sanctioned the plaintiffs for filing a complaint that was presented for the improper purpose of harassment. *Id.* at *42. As WESPAC correctly notes, the Court found an improper purpose based on the plaintiffs' statements that the litigation was a "vehicle" to "make a dent" in defendants' resources via a "slow discovery process" and based on the plaintiffs' extraordinarily high request for damages. *Id.* at *43–44. But here, there is no suggestion that Plaintiffs attempted to engage in litigation abuses to "slow the discovery process" or otherwise drain WESPAC's resources unfairly. Nor is there any evidence that Plaintiffs wish to recover more damages than those actually sustained. Therefore, *Manhart* is inapposite. Plaintiffs did not engage in any litigation abuses and there is not enough factual support for the Court to make the finding that the complaint was filed for an "improper purpose." Consequently, sanction are not warranted.[1]

## C. **This Court Should Not Award Sanctions Because WESPAC Failed to Comply With Rule 11's Safe Harbor Provision.**

Alternatively, this Court should not impose sanctions because WESPAC failed to comply with Rule 11's safe harbor provision. "[S]trict compliance with Rule 11's safe harbor provision" is a prerequisite for a successful sanctions motion.

---

[1] Because Plaintiffs' complaint was not frivolous nor filed for an improper purpose, the Court should deny WESPAC's request for sanctions under Rule 11, 28 U.S.C. § 1927, and the Court's inherent power as well as WESPAC's request for attorney's fees under 42 U.S.C.§ 1988.

*Islamic Shura Council of S. Cal. v. FBI*, 757 F.3d 870, 872 (9th Cir. 2014); *see also Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir. 2005) (holding that the Ninth Circuit "enforce[s] [Rule 11's] safe harbor provision strictly"). The safe harbor provision "provides that any motion for sanctions must be served on the offending party at least 21 days before the motion is filed with the court." *Islamic Shura Council of S. Cal.*, 757 F.3d at 872 (citing Fed. R. Civ. P. 11(c)(2)). That provision further dictates that the sanctions motion may not be filed if the offending party timely "withdraw[s] or appropriately correct[s]" the challenged contention during the safe harbor period." Fed. R. Civ. P. 11(c)(2).

Here, WESPAC served Plaintiffs with a Rule 11 letter—directed at the original complaint—on October 21, 2024. WESPAC, however, was required by the text of Rule 11 to serve plaintiffs with a *motion* for sanctions and not merely an informal warning letter. *See Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 789 (9th Cir. 2001) (holding that "although a defendant had given informal warnings to the plaintiffs threatening to seek Rule 11 sanctions, these warnings did not satisfy the strict requirement that a motion be served on the opposing party twenty-one days prior to filing"); *Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998) (denying motion for sanctions because, despite sending a letter outlining the defects of plaintiff's claim, Rule 11 requires service of a motion). Therefore, WESPAC's failure to serve Plaintiffs with their sanctions motion 21 days before filing it with the Court bars any award of sanctions.

Additionally, WESPAC failed to comply with Rule 11's safe harbor provision for an additional reason: WESPAC did not serve a new Rule 11 motion after Plaintiffs filed the FAC, thus depriving Plaintiffs of their procedural opportunity to dismiss the FAC within 21 days. A motion under Rule 11 "directed to an earlier version of a complaint cannot satisfy the safe harbor requirements

with respect to a later amended complaint." *Bd. of Trs. v. Quinones (In re Quinones)*, 543 B.R. 638, 647 (Bankr. N.D. Cal. 2015) (citing *Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153, 158 (2d Cir. 2010) (per curium)). That is because "an amended complaint super[s]edes the original complaint and renders it without legal effect." *Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012) (en banc). Therefore, the Rule 11 letter that was served could not have identified any alleged deficiency in the operative complaint, thereby failing to afford the plaintiffs with the required notice under Rule 11. And, since the current sanctions motion was not pre-served before filing, it cannot itself satisfy the safe harbor requirements.

It is therefore no surprise that federal courts across the country have denied Rule 11 motions for failing to serve a new sanctions motion to opposing counsel following the amendment of a complaint. *See, e.g.*, *Lawrence*, 620 F.3d at 156–59; *Rates Tech. Inc. v. Broad Vox Holding Co., LLC*, 2014 U.S. Dist. LEXIS 1052, at *19 (S.D.N.Y. Jan. 6, 2014); *Lechter v. Aprio, LLP*, 622 F. Supp. 3d 1297, 1305–09 (N.D. Ga. 2022). Accordingly, this Court should follow suit and deny WESPAC's Motion for failing to comply with the safe harbor provision. Additionally, if Plaintiffs prevail on this ground, the Court should award "reasonable expenses, including attorney's fees, incurred" for defending the noncompliant motion. Fed. R. Civ. P. 11(c)(2).

## IV.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court deny WESPAC's motion for sanctions and deny WESPAC's request for attorney's fees. Plaintiffs additionally request that this Court award "reasonable expenses, including attorney's fees" for expenses incurred in defending this motion if Plaintiffs prevail. Finally, Plaintiffs request that this Court defer ruling on this motion until after the time to appeal the dismissal of the underlying claims against WESPAC has passed.

Respectfully submitted this 29th day of September 2025.

*/s/ Dallin B. Holt*
Dallin B. Holt*
dholt@holtzmanvogel.com
Holtzman Vogel Baran Torchinsky and Josefiak PLLC
2555 East Camelback Rd, Ste 700
Phoenix, AZ 85016
Telephone: (602) 388-1262
Fax: (549) 341-8809

Jason B. Torchinsky*
jtorchinsky@holtzmanvogel.com
HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK, PLLC
2300 N Street NW, Suite 643
Washington, DC 20037
(202) 737-8808 (telephone)
(540) 341-8809 (facsimile)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mark Goldfeder*
mark@jewishadvocacycenter.org
Ben Schlager*
ben@jewishadvocacycenter.org
NATIONAL JEWISH
ADVOCACY CENTER, INC.
INTERNATIONAL LEGAL
FORUM
3 Times Square
New York, NY 10036
(800) 269-9895 (telephone)
(800) 758-5232 (facsimile)

*Attorneys for Plaintiffs and Class Members*

*\* Admitted Pro Hac Vice*

PLFS' OPPOSITION TO DEF WESPAC'S MOT. FOR SANCTIONS CASE
NO. 2:24-CV-06253-SVW-PVC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on September 29, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Central District of California by using the CM/ECF System.

Participants in the case who are registered CM/ECF Users will be served by the CM/ECF System.

DATED: September 29, 2025

*/s/ Dallin B. Holt*
Dallin B. Holt*
dholt@holtzmanvogel.com
Holtzman Vogel Baran Torchinsky and Josefiak PLLC
2555 East Camelback Rd, Ste 700
Phoenix, AZ 85016
Telephone: (602) 388-1262
Fax: (549) 341-8809

*Admitted Pro Hac Vice*

PLFS' OPPOSITION TO DEF WESPAC'S MOT. FOR SANCTIONS CASE NO. 2:24-CV-06253-SVW-PVC

## **L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Plaintiffs certifies that this brief contains 4,885 words, which complies with the word limit of L.R. 11–6.1.

DATED: September 29, 2025

_/s/ Dallin B. Holt_
Dallin B. Holt*
dholt@holtzmanvogel.com
Holtzman Vogel Baran Torchinsky and Josefiak PLLC
2555 East Camelback Rd, Ste 700
Phoenix, AZ 85016
Telephone: (602) 388-1262
Fax: (549) 341-8809

*Admitted Pro Hac Vice