1  Robert L. Herbst (NYSBN 1333194)
2  rherbst@herbstlawny.com
   HERBST LAW PLLC
3  420 Lexington Avenue, Suite 300
4  New York, New York 10170
   Tel: 914-450-8163 / Fax: 888-482-4676
5
6  Ramsey Judah (SBN 342300)
   ramsey@judahlawgroup.com
7  JUDAH LAW GROUP
8  1026 W. Foothill Blvd
   Upland, CA 91786
9  Tel: 626-899-7667
10
11 Joshua Colangelo-Bryan (NYSBN 4162319)
   colangeloj@humanrightsfirst.org
12 HUMAN RIGHTS FIRST
13 121 West 36th Street
   PMB 520
14 New York, NY 10018
   Tel: 212-845-5243
15
16 Attorneys for Defendant
   WESPAC FOUNDATION
17

18              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
19

| 20 STANDWITHUS CENTER FOR LEGAL JUSTICE | CASE NO: 2:24-cv-06253-SVW-PVCx |
|---|---|
| 21 | Honorable Stephen V. Wilson |
| 22 v. | **DEFENDANT WESPAC FOUNDATION'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS** |
| 23 CODEPINK WOMEN FOR PEACE, et al. | |
| 24 | |
| 25 | **Date:  Monday, October 27, 2025** |
| | **Time:  1:30 p.m.** |
| 26 | **Place:  Courtroom 10A** |
| 27 | **350 W. 1st Street** |
| | **Los Angeles, California 90012** |
| 28 | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................4

ARGUMENT........................................................................................................7

I.     Plaintiffs Have Largely Conceded Arguments About 28 U.S.C. § 1927, the Court's Inherent Power, and 42 U.S.C.§ 1988 ...................................7

II.    Plaintiff's Rule 11 Arguments Underscore the Need for Sanctions ..........8

    A.    Plaintiffs' Counsel Filed This Case in Bad Faith .................................8

    B.    There Is No Colorable Basis for The Fiscal-Sponsor Theory .............10

        1.    *Personal Jurisdiction Based on Fiscal Sponsorship*................11

        2.    *Liability Based on Fiscal Sponsorship*…………...……………13

    C.    The FACE Act Claim Was Baseless.....................................................14

    D.    The 42 U.S.C. § 1985(3) Claim Was Baseless ...................................15

CONCLUSION ..................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Christian v. Mattel, Inc.*,
   286 F.3d 1118 (9th Cir. 2002)...................................................................................11

*Doe v. Martucci*
   2024 WL 5118505 (S.D.N.Y. Dec. 16, 2024).......................................................11

*Fink v. Gomez*,
   239 F.3d 989 (9th Cir. 2001).......................................................................................6

*Fox v. Vice*,
   563 U.S. 826 (2011) ....................................................................................................6

*In re Itel Sec. Litig.*,
   791 F.2d 672 (9th Cir. 1986).......................................................................................7

*Manhart v. WESPAC Foundation, Inc.*,
   No. 24-cv-08209 (N.D. Ill. 2024)..............................................................................8

*Mendocino Env't Ctr. v. Mendocino County*
   192 F.3d 1283, 1302-1303 (9th Cir. 1999)...............................................................13

*Primus Auto. Fin. Servs., Inc. v. Batarse*,
   115 F.3d 644 (9th Cir. 1997).......................................................................................7

*Salas v. United States*,
   116 F.4th 830 (9th Cir. 2024) (*see* Opposition ) ...................................................12

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) (*see* Opposition ) ...................................................10

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
   802 F. Supp. 2d 1125 (C.D. Cal. 2011)......................................................................7

*Thompson v. Duke*
   940 F.2d 192, 198 (7th Cir. 1991)............................................................................11

*New York ex rel. TZAC, Inc. v. New Israel Fund*,
   520 F. Supp. 3d 362 (S.D.N.Y. 2021) .......................................................................9

**INTRODUCTION**

At the outset, we note Plaintiffs appear to be correct about one procedural point. By way of context, WESPAC detailed the fatal defects in Plaintiffs' claims in a comprehensive Rule 11 Letter[1] and in a motion to dismiss Plaintiffs' original complaint that the parties fully briefed. *See* ECF Nos. 49, 59-60. Thus, Plaintiffs were entirely on notice regarding the unreasonableness of their claims *before* filing their Amended Complaint (which did nothing to cure the deficiencies that the Rule 11 Letter and first motion to dismiss explicated). However, WESPAC did not put its position into a formal Rule 11 motion that it served on Plaintiffs. As Plaintiffs point out, this failure forecloses relief under Rule 11 in the Ninth Circuit. Accordingly, WESPAC withdraws the portion of its motion that sought Rule 11 sanctions.

Of course, the instant motion also seeks the imposition of sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent power as well as the awarding of attorney's fees under 42 U.S.C.§ 1988. Plaintiffs' Opposition appears to say little about those grounds for relief,[2] largely confining its argument to a footnote: "Plaintiff's complaint was not frivolous nor filed for an improper purpose." Opposition at 14, n.1. Given that Plaintiffs have not effectively contested the arguments presented in WESPAC's opening brief on those points (EFC No. 134, including at 14, 24-26), WESPAC's motion for sanctions should be granted pursuant to 28 U.S.C. § 1927, the Court's inherent power, and 42 U.S.C.§ 1988.

Even if Plaintiffs intended the arguments made in connection with Rule 11 to be considered as to 28 U.S.C. § 1927, the Court's inherent power, and 42 U.S.C.§ 1988, they would not militate against granting relief. Those arguments actually underscore that Plaintiffs' claims had no reasonable basis and were brought in bad

---

[1] Terms defined in WESPAC's opening brief are given the same meaning herein.

[2] Plaintiffs' Opposition to Defendant WESPAC's Motion for Sanctions will be referred to as "Plaintiffs' Opposition" or "Opposition."

faith, as is clear from the very start of Plaintiffs' Opposition.

In particular, Plaintiffs know full well both that WESPAC had no role in the violence purportedly underpinning their claims, including that WESPAC provided no funding for it, and that this Court rejected their baseless theory of fiscal-sponsor liability. Yet, they continue their public disparagement of WESPAC from the outset of their Opposition, stating, "a violent mob descended upon the heart of Los Angeles's Jewish community," "[a]rmed with bear spray and other weapons, donning the attire of Hamas terrorists, and yelling 'Hitler didn't finish the job!' . . . and '[l]eave the neighborhood, we are coming!'" Opposition at 1. Plaintiffs elaborate, "the rioters used force and threats of force to prevent Jewish congregants from safely entering their house of worship." *Id.* At no point do Plaintiffs acknowledge that they have never even *alleged* WESPAC did *anything* in connection with these asserted actions. That Plaintiffs take this entirely inflammatory approach to opposing sanctions highlights that they brought this action to harass and defame WESPAC.

As to their legal arguments, Plaintiffs never contend the Court was mistaken in finding that the fiscal-sponsor theory purportedly underpinning this case against WESPAC had "no legal authority." Order Granting in Part Defendants' Motions to Dismiss, ECF No. 131 ("Order") at 33. Rather, they essentially ignore the Court's unassailable holding, while offering no remotely adequate argument as to why their litigation positions on personal jurisdiction and liability were not sanctionable, given that those positions were based on a theory for which there is "no legal authority."

In addressing individual claims, Plaintiffs' Opposition – if anything – makes the case for sanctions stronger. On their FACE Act claim, and despite the Court's rejection of the theory that WESPAC had a duty to oversee PYM which Plaintiffs could vindicate, Plaintiffs now contend WESPAC had an obligation to oversee *all* "Defendants." Opposition at 9. A party cannot resist sanctions by taking a position more extreme than a prior one that had "no legal authority."

As to their 42 U.S.C. § 1985(3) claim, Plaintiffs contend it was not based on alleged violations of constitutional rights (which plainly would have violated Supreme Court precedent). Opposition at 9-10. But Plaintiffs' Section 1985(3) claim alleged – in no uncertain terms – that "[t]he Synagogue is a place of religious worship where congregants exercise their *First and Fourteenth Amendment rights* to practice their religion" (Am Compl. ¶ 410 (emphasis added)), and that "Defendants conspired to violate Plaintiff[s'] . . . rights under the *First and Fourteenth Amendments*, as well as the FACE Act." *Id*. ¶ 416 (emphasis added). For Plaintiffs to misrepresent the plain language of this claim in attempting to avoid sanctions is independently sanctionable.

Plaintiffs' Counsel contends that their purpose in bringing this litigation was proper despite having made public statements like, "[i]ncredibly proud to be one of the 'forces of darkness' bringing down WESPAC." ECF No. 134-2, Exhibit B. On that point, Plaintiffs' Counsel makes contratextual arguments that their statements were "about the strength of their case" and also contend that a "one-off statement," no matter how blatantly it evidences bad faith, is an inadequate basis for sanctions. *See* Opposition at 13. Neither argument is remotely availing.

In sum, Plaintiffs filed a case against WESPAC in bad faith, (i) having no reason to believe WESPAC played a role in the underlying events that, as alleged, involved extremely disturbing antisemitic violence, and (ii) relying on a liability theory with "no legal authority." Plaintiffs' Counsel described their purpose in initiating the litigation as "bringing down WESPAC" and spared no effort to claim falsely that WESPAC was involved in what they described as a horrifying attack. Even after WESPAC explained the frivolousness of Plaintiffs' claims (if Plaintiffs' Counsel actually was unaware) via the Rule 11 Letter and its motion to dismiss the original complaint, Plaintiffs filed *another* complaint in bad faith and without foundation that repeated the scandalously false allegations about WESPAC taking

part in a virulent antisemitic attack and the same baseless claims. Now, in contending sanctions are unwarranted, Plaintiffs misrepresent the nature of their claims and repeat their false accusations. If sanctions are not warranted here, it is difficult to imagine when they would be.

## ARGUMENT

### I.   Plaintiffs Have Largely Conceded Arguments About 28 U.S.C. § 1927, the Court's Inherent Power, and 42 U.S.C.§ 1988

WESPAC's opening brief explained why sanctions should be awarded pursuant to 28 U.S.C. § 1927 and the Court's inherent authority, as well as why fees should be awarded under 42 U.S.C.§ 1988. Specifically, 28 U.S.C. § 1927 provides for sanctions against "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously . . ." The Court's inherent power allows it to sanction the "full range of litigation abuses" on a finding of "bad faith or conduct tantamount to bad faith." *Fink v. Gomez*, 239 F.3d 989, 992–94 (9th Cir. 2001).  42 U.S.C. § 1988 "authorizes a district court to award attorney's fees to a defendant upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Fox v. Vice*, 563 U.S. 826, 833 (2011) (internal quotes omitted). WESPAC's brief addressed the applicability of each mechanism here. *See* EFC No. 134 at 14, 24-26.

In response to WESPAC's detailed analysis, Plaintiffs write in a footnote that, "[b]ecause Plaintiffs' complaint was not frivolous nor filed for an improper purpose, the Court should deny WESPAC's request for sanctions under Rule 11, 28 U.S.C. § 1927, and the Court's inherent power as well as WESPAC's request for attorney's fees under 42 U.S.C.§ 1988." Opposition at 14, n.1. They also appear to frame their arguments about "improper purpose" in relation to these other grounds for relief. *Id.* at 12. But Plaintiffs seem not to address the baselessness of their fiscal-sponsor theory in relation to 28 U.S.C. § 1927, the Court's inherent power, or 42 U.S.C.§ 1988. *See*

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("In most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.") (quoting *Sportscare of America, P.C. v. Multiplan, Inc.*, 2011 WL 589955, at *1 (D.N.J. Feb. 10, 2011)).

**II.    Plaintiff's Rule 11 Arguments Underscore the Need for Sanctions**

Even if all of Plaintiffs' Rule 11 arguments were deemed applicable to the evaluation of 28 U.S.C. § 1927, the Court's inherent power, and 42 U.S.C.§ 1988, those arguments would be entirely unavailing. Indeed, those arguments highlight the propriety of sanctions relief.

**A.    Plaintiffs' Counsel Filed This Case in Bad Faith**

While a finding of bad faith is required for sanctions under either Rule 11 or pursuant to the Court's inherent authority, bad faith for the purposes of an exercise of the Court's inherent authority "does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees." *In re Itel Sec. Litig.*, 791 F.2d 672, 675 (9th Cir. 1986) (citing *Lipsig v. National Student Marketing Corp.,* 663 F.2d 178, 182 (D.C.Cir.1980)).

"A finding of bad faith is warranted where an attorney 'knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.'" *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997).

As set forth in WESPAC's opening brief, Plaintiffs' counsel Mark Goldfeder, Ben Schlager, and the NJAC stated that they brought this suit to "bring[] down WESPAC." In addition, they said were "proud to have filed three cases that have the potential to take down" WESPAC. *See* ECF No. 134 at 22. As of the filing of this

brief, Mr. Goldfeder's tweet continues to be available on X, having garnered over 1,500 views. These statements were made in response to an article about how lawsuits such as this posed an existential financial threat to WESPAC. Plaintiffs' counsel Holtzman Vogel and Plaintiff StandWithUs made scandalously false public statements that WESPAC "organized" "more than 200 rioters" to "deprive Jewish citizens of their First Amendment right to freedom of religion using violence and intimidation." *See id.* at 23.

In the face of this extraordinary evidence of bad faith, Plaintiffs' Counsel offers a variety of irrelevant and incorrect arguments. First, they claim "WESPAC does not dispute that Plaintiffs suffered these injuries during the riot when individuals blocked their access to the Synagogue." Opposition at 12. Obviously, this litigation never reached the stage when Plaintiffs' assertions about injuries would be tested. More to the point, it is undisputed that WESPAC had nothing to do with any alleged injuries, rendering Plaintiffs' contention about injuries entirely beside the point.

Second, Plaintiffs' Counsel asserts that WESPAC "selectively cites to out of context and cherrypicked statements." Opposition at 12. But Plaintiff's Counsel does not identify anything that would provide missing "context" or otherwise explain how citing these statements constituted "cherry-picking."

Third, Plaintiffs' Counsel asserts that their statements about "bringing down" and "tak[ing] down" WESPAC: (i) "merely expressed a desire to vindicate their clients' rights as well [*sic*] hold all responsible organizations accountable for violations of federal law"; (ii) "were clearly speaking about seeking damages for violations of federal law and not a general desire to harass WESPAC"; and (iii) were "about the strength of their case." Plaintiffs' Opposition at 13. Given the actual words used by Plaintiffs' Counsel in response to an article about the potential demise of WESPAC, their current attempt to recast those words as being about the vindication of rights, violations of law, and the strength of evidence is farcical.

Fourth, Plaintiffs' Counsel contends that "one-off statements do not rise to the level of bad faith." Plaintiffs' Opposition at 13. No case is cited for this proposition. And, indeed, this cannot be the law. If anything, it is uncommon for lawyers to publicly announce an improper purpose underpinning a litigation and there is no reason why a single such statement is not more than adequate for sanctions.

Finally, Plaintiffs' Counsel argues this case is distinguishable from *Manhart v. WESPAC Foundation, Inc.*, No. 24-cv-08209 (N.D. Ill. 2024), another litigation premised on the baseless fiscal-sponsor theory and one in which sanctions were ordered against counsel for the plaintiffs. According to Plaintiffs' Counsel, *Manhart* is not instructive because the *Manhart* court concluded that litigation had been brought as a "'vehicle' to 'make a dent' in defendants' resources via a 'slow discovery process' and based on the plaintiffs' extraordinarily high request for damages," while "here, there is no suggestion that Plaintiffs attempted to engage in litigation abuses to 'slow the discovery process' or otherwise drain WESPAC's resources unfairly." Plaintiffs' Opposition at 14. That the Court dismissed this case before Plaintiffs were permitted to engage in the "discovery process" is irrelevant, given that the statements of Plaintiffs' Counsel show they intended to cause financial harm to WESPAC through litigation (whether as part of discovery or otherwise).[3]

### B.    There Is No Colorable Basis for The Fiscal-Sponsor Theory

Plaintiffs claim that WESPAC's being a fiscal sponsor to PYM provided a reasonable basis to assert that WESPAC was subject to personal jurisdiction in this District and that WESPAC was responsible for anything PYM did. Opposition at 5 ("even under a cursory reading of existing precedent, WESPAC's fiscal sponsorship of PYM provides a colorable basis for both personal jurisdiction and the underlying substantive claims at issue in the FAC"). But Plaintiffs omit to mention that, as this Court held in rejecting that premise, they "cite[d] *no legal authority* holding that

---

[3] The *Manhart* court dismissed that case (and awarded sanctions) before discovery.

fiscal sponsorship alone creates such liability, and the Court finds *none*." Order, ECF No. 131 at 33 (emphasis added). Moreover, the Court concluded that "[t]he most relevant case Plaintiffs cite, *New York ex rel. TZAC, Inc. v. New Israel Fund*, 520 F. Supp. 3d 362 (S.D.N.Y. 2021), *actually undercuts* their argument." *Id.* (emphasis added). The Court also determined: "There is only one link between the Sponsoring Defendants and California: the Sponsoring Defendants' fiscal sponsorship relationship with PYM. This is not enough for personal jurisdiction." *Id.* at 35.

Notably, the Order did not reflect any parsing of competing readings of a nuanced statute or case that Plaintiffs contended provided support for their position. The Order did not interpret ambiguous words in any controlling authority. Rather, the Court concluded simply that there was "no legal authority" for Plaintiffs' claims, including that the most relevant authority Plaintiffs cited undercut their position. Despite this crystal-clear conclusion – or likely because it is not subject to legitimate dispute – Plaintiffs' Opposition effectively ignores the Court's holdings as to the fiscal-sponsor theory. This tack is entirely unavailing.

### 1.  Personal Jurisdiction Based on Fiscal Sponsorship

Plaintiffs blithely argue that "WESPAC's fiscal sponsorship . . . le[]d to the inference that it maintained 'control and discretion' over how donated funds are used" and "because the complaint alleged that WESPAC fiscally sponsored PYM in the period leading up to the riot and maintained control over funds which were used to perpetuate the injurious conduct in California, there is an arguable basis that WESPAC 'purposefully direct[ed]' its activities in California and those activities 'related' to Plaintiffs' claims." Opposition at 6-7.

In so arguing, Plaintiffs simply disregard the Court's determination that no law supports the position that a fiscal sponsorship can create personal jurisdiction when

a sponsor is not alleged to have done anything in or relating to the forum state. Certainly, Plaintiffs cite no authority to suggest the Court was mistaken on this point.

Moreover, as a factual matter, Plaintiffs have never offered substantiation for the baseless idea that WESPAC "maintained control over funds which were used to perpetuate the injurious conduct in California." *See generally* Amended Complaint; and ECF No. 60 (WESPAC's reply memorandum in support of motion to dismiss original complaint) at 4 ("Plaintiff does not, and cannot, allege that any funds WESPAC ever sent to PYM were used in connection with the events alleged in the Complaint. In fact, Plaintiff does not even allege that PYM itself used funds from any source in connection with the alleged events"), and at 5 ("It would be entirely unreasonable to exercise personal jurisdiction over WESPAC because it . . . is not alleged to have provided funds to PYM elsewhere that PYM used in California, let alone for purposes of starting a "riot.").[4]

In a similar vein, Plaintiffs argue Rule 11 sanctions are not warranted because they alleged "WESPAC 'provided PYM with access to WESPAC's administrative services, staff, and facilities' through its fiscal sponsorship arrangement, and that all these resources 'were used to plan and/or carry out PYM's activities' relating to the riot." Opposition at 6 (citing Am. Compl. ¶ 136). Critically, Plaintiffs made their generic assertion about comingled facilities and staff only on "information and belief" and never offered any allegation to substantiate this assertion, let alone in connection with "the riot." That Plaintiffs point to bald (and false) statements in attempting to argue their pleading had a good-faith basis is telling.

Finally, in putative support of certain contentions they offer about purposeful availment, Plaintiffs cite *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-02 (9th Cir. 2004) (*see* Opposition at 5). Even a cursory review of

---

[4] Plaintiffs never contested these statements, asserting instead that WESPAC's generally serving as a fiscal sponsor sufficed for personal jurisdiction (and liability).

*Schwarzenegger* shows that it militates against Plaintiffs' position. There, the Ninth Circuit provided examples of purposeful availment, such as magazines published in Ohio that were distributed in New Hampshire; fertilizer made in Canada sent to Montana; and music albums from Europe distributed in California. *Id.* at 803. WESPAC did nothing remotely akin to these activities in relation to California, given that it did *nothing* in relation to California or the relevant protest.

### 2.    Liability Based on Fiscal Sponsorship

Plaintiffs offer a passing reference to the fundamental premise supposedly underlying all their claims, *i.e.,* WESPAC's being a fiscal sponsor to PYM makes it strictly liable for anything PYM does to anyone anywhere in the world, even if WESPAC was not aware of and did not fund the activity. *See* Opposition at 5 ("WESPAC's fiscal sponsorship of PYM provides a colorable basis for . . . the underlying substantive claims at issue in the FAC."). Beyond that, Plaintiffs focus entirely on the elements of their individual claims. But this approach misses the forest for the trees, because all of Plaintiffs' substantive claims against WESPAC were predicated on the frivolous notion that a fiscal sponsor is *a priori* legally responsible for anything a sponsoree does. And that position, again in the Court's words, is supported by "*no legal authority*." ECF No. 131 at 33 (emphasis added).

Plaintiffs' Opposition says nothing to call into question the Court's conclusion that Plaintiffs' fundamental liability theory had "no legal authority." There was simply never any chance that Plaintiffs' frivolous liability position could succeed.

On this point, Plaintiffs argue WESPAC must show Plaintiffs' "frivolous arguments are foreclosed by binding precedent." Opposition at 8. While this argument related to Rule 11 and thus no longer requires consideration, we note that it is premised on inapposite authorities and ignores that Plaintiffs "ha[d] a duty prior to filing a complaint . . . to perform adequate legal research that confirms whether the theoretical underpinnings of the complaint are 'warranted by existing law or a

1
2
3
4
5
6
7

good faith argument.'" *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). In *Doe v. Martucci*, the court had rejected the plaintiff's arguments in a reasoned summary judgment order before – unsurprisingly – rejecting them again when offered in a subsequent sanctions motion by the plaintiff. 2024 WL 5118505 at *10–11 (S.D.N.Y. Dec. 16, 2024). *Thompson v. Duke* narrowly holds that "the omission of a citation that arguably does not control, while imprudent and unprofessional, is not, standing alone, a basis for sanctions." 940 F.2d 192, 198 (7th Cir. 1991).

8
9
10
11

For all these reasons, sanctions are warranted as a threshold matter even without examining the specific failures of Plaintiffs' individual claims. However, an analysis of those claims only underscores that they were not remotely reasonable and were utterly without foundation.

12

### C.     The FACE Act Claim Was Baseless

13
14
15
16
17
18
19

Plaintiffs argue they pleaded a nonfrivolous FACE Act claim because they alleged that "Plaintiffs tried to practice their religion at the Synagogue on June 23, 2024 but were prevented from doing so because a violent mob of Defendants attacked them with bear spray, beat them with blunt objects, and physically obstructed their access to the building." Opposition at 8-9. Plaintiffs go on to say this attack was "actively organized and facilitated by Defendants—whom WESPAC was supposed to be overseeing." *Id.*

20
21
22
23
24
25
26

Plaintiffs' attempt to fashion a new argument that WESPAC had some legal obligation to oversee *all* "Defendants" – not just PYM – should be summarily rejected and certainly provides no basis to deny the instant motion. Indeed, making such a legally and factually baseless argument in opposition to a motion for sanctions, if anything, confirms the propriety of sanctions. The same is true for Plaintiffs' serial inflammatory references to violence allegedly committed by Defendants in which they still try to implicate WESPAC, despite knowing WESPAC played no role.

27
28

Plaintiffs go on to assert that they "clearly alleged that WESPAC committed

an act that 'intentionally' interfered with Plaintiffs' access to the Synagogue—namely, providing fiscal support to and controlling PYM's activities, including the riot that PYM promoted, organized, and joined. *See* Am. Compl. ¶¶ 132-136." Opposition at 9. According to Plaintiffs, the cited allegations provided "a reasonable basis to conclude that WESPAC intentionally provided financial support to interfere with Plaintiffs' free exercise of religion." *Id*

Amazingly, however – particularly in the context of opposing a motion for sanctions – paragraphs 132 through 136 of the Amended Complaint simply *do not allege* that WESPAC gave PYM funds to be used for this protest; and as addressed above, Plaintiffs never made such assertions. It is axiomatic that Plaintiffs may not point to non-existent allegations to claim they had a reasonable basis to "conclude" anything, let alone that WESPAC provided funds in relation to the events at issue.[5]

### D.    The 42 U.S.C. § 1985(3) Claim Was Baseless

Plaintiffs' argument with respect to 42 U.S.C. § 1985(3) is a fabrication.[6] Specifically, Plaintiffs contend that "although WESPAC is likewise correct to note that a conspiracy to violate Plaintiffs' First and Fourteenth Amendment rights requires Plaintiffs to plead state involvement, *that was not* Plaintiffs' legal theory." Opposition at 9-10 (emphasis added). This statement is demonstrably false.

In Plaintiffs' Section 1985(3) claim, the Amended Complaint states clearly that "[t]he Synagogue is a place of religious worship where congregants exercise their *First and Fourteenth Amendment rights* to practice their religion." Am Compl. ¶ 410 (emphasis added). It states further, "[n]amed Defendants conspired to violate Plaintiff Pollak's, Class Members', and SCLJ Members' rights under the *First and*

---

[5] Plaintiffs' citation to *Salas v. United States*, 116 F.4th 830, 845 (9th Cir. 2024) (*see* Opposition at 9), for the unremarkable proposition that allegations in a complaint are accepted as true on a motion to dismiss is curious, given that Plaintiffs made *no* allegation about WESPAC's funding the protest that might be accepted as true.

[6] Plaintiffs' discussion of this claim was in their Rule 11 discussion.

1    *Fourteenth Amendments*, as well as the FACE Act." *Id*. ¶ 416 (emphasis added).

2          The Court – naturally – understood this claim as alleging "a conspiracy to

3    violate [Plaintiffs'] 'rights under the First and Fourteenth Amendments,' specifically

4    their 'First and Fourteenth Amendment rights to practice their religion.'" ECF No.

5    131 at 16. The Court held that Plaintiffs "must therefore allege state action," but that

6    "[t]hey do not do so." *Id.* For Plaintiffs now to offer the incredible representation that

7    their theory was not premised at all on an alleged violation of constitutional rights is

8    sanctionable itself – regardless of whether the FACE Act appears as an afterthought

9    in the Section 1985(3) claim.[7]

10         Plaintiffs also contend they "made a reasonable argument for establishing the

11   remaining elements of its § 1985(3) claim" because they "alleged that—as PYM's

12   fiscal sponsor—WESPAC conspired with the other Defendants to violate the FACE

13   Act . . . *See* Am. Compl. ¶¶ 208, 416-419." Opposition at 11. But the cited paragraphs

14   just generically assert that "Defendants" conspired to violate Plaintiffs' constitutional

15   and FACE Act rights – without any specific substantiating factual allegations.

16         Given (i) that Plaintiffs never alleged anyone acting on behalf of WESPAC

17   was aware of or took any action with respect to the protest at issue, and (ii) the

18   baselessness of their fiscal-sponsor theory, Plaintiffs' contention that they made a

19   "reasonable argument" for WESPAC's liability on this claim is easily dispatched.

20   Moreover, for Plaintiffs falsely to assert that WESPAC acted with antisemitic intent,

21   *see* Opposition at 11, when they cannot allege WESPAC took *any* relevant act, is not

22   only unreasonable, but also underscores Plaintiffs' bad faith in targeting WESPAC

23   for its perceived political positions.[8]

24

25   _____

26   [7] In briefing on Defendants' motions to dismiss the Section 1985(3) claim, Plaintiffs
     did not contend the claim was not premised on constitutional rights, but "rel[ied] on

27   *Griffin* to argue that a purely private conspiracy can be actionable under § 1985(3) if
     motivated by discriminatory animus," even without state action. ECF No. 131 at 16.

28   [8] Plaintiffs' citation to *Mendocino Env't Ctr. v. Mendocino County*, only underscores

# CONCLUSION

Plaintiffs and Plaintiffs' Counsel brought this case against WESPAC in bad faith. Their personal-jurisdiction and liability theories, contained in the original complaint, were plainly frivolous, unreasonable, and without foundation. Despite being fully informed of that by WESPAC, Plaintiffs and Plaintiffs' Counsel nevertheless persisted, multiplying the proceedings unreasonably and vexatiously by filing the Amended Complaint, which reflected the same fatal flaws found in the original complaint. For the reasons addressed above and in WESPAC's initial brief on this motion, WESPAC respectfully requests that the Court grant its Motion for Sanctions.

Respectfully submitted,

Dated: October 14, 2025

By:__/s/ Robert L. Herbst_____
Robert L. Herbst (NYSBN 1333194)
rherbst@herbstlawny.com
HERBST LAW PLLC
420 Lexington Avenue, Suite 300
New York, New York 10170
Tel: 914-450-8163 Fax: 888-482-4676

Ramsey Judah (SBN 342300)
ramsey@judahlawgroup.com
JUDAH LAW GROUP
1026 W. Foothill Blvd
Upland, CA 91786
Tel: 626-899-7667

---

the absence of allegations regarding malicious intent here. 192 F.3d 1283, 1302-1303 (9th Cir. 1999) (intent evidence showed police (i) relied on FBI agents' "questionable characterization of the evidence," despite reviewing crime scene and physical evidence themselves; (ii) included misinformation in warrant application; (iii) actively publicized inaccurate information to the media; and (iv) in warrant application, stated the plaintiffs were "members of a violent terrorist group").

DEFENDANT WESPAC'S REPLY MEMO. OF POINTS AND AUTH. IN SUPPORT OF MTN FOR SANCTIONS
Case No.: 2-24-cv-06253-SVW-PVCx

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Joshua Colangelo-Bryan (NYSBN 4162319)
colangeloj@humanrightsfirst.org
HUMAN RIGHTS FIRST
121 West 36th Street
PMB 520
New York, NY 10018
Tel: 212-845-5243

Attorneys for Defendant
WESPAC FOUNDATION

DEFENDANT WESPAC'S REPLY MEMO. OF POINTS AND AUTH. IN SUPPORT OF MTN FOR SANCTIONS
Case No.: 2-24-cv-06253-SVW-PVCx

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Defendant WESPAC certifies that this Memorandum of Points and Authorities contains 4,645 words, which complies with the world limit of L.R. 11-6.1.

Respectfully submitted,

Dated: October 14, 2025            HERBST LAW PLLC

By:__/s/ Robert L. Herbst_____
Robert L. Herbst
rherbst@herbstlawny.com
420 Lexington Avenue, Suite 300
New York, New York 10170
Tel: 914-450-8163 Fax: 888-482-4676

Attorney for Defendant
WESPAC FOUNDATION

DEFENDANT WESPAC'S REPLY MEMO. OF POINTS AND AUTH. IN SUPPORT OF MTN FOR SANCTIONS
Case No.: 2-24-cv-06253-SVW-PVCx