# Exhibit A

Case 2:24-cv-06253-SVW-PVC    Document 159-1    Filed 07/31/26    Page 1 of 61    Page ID #:1471

John Cycon (*Pro Hac Vice*)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK, PLLC
15405 John Marshall Highway
Haymarket, VA 20169
(540) 341-8808 (telephone)
(540) 341-8809 (facsimile)
*jcycon@holtzmanvogel.com*

Attorneys for Plaintiffs and Class Members

(*Additional counsel listed on following page*)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOAH POLLAK, on behalf of all others similarly situated, and STANDWITHUS CENTER FOR LEGAL JUSTICE,<br><br>    Plaintiffs,<br><br>  v.<br><br>CODEPINK WOMEN FOR PEACE, a California entity; CODEPINK ACTION FUND, a California entity; WESPAC FOUNDATION, a New York entity; HONOR THE EARTH, a Minnesota entity; COURTNEY LENNA SCHIRF; REMO IBRAHIM, d/b/a PALESTINIAN YOUTH MOVEMENT; PALESTINIAN YOUTH MOVEMENT; and DOES #1-100,<br><br>    Defendants. | Case No.: 2:24cv6253<br>[referred to Magistrate Judge Pedro Castillo]<br><br>**PLAINTIFFS' PORTION OF LOCAL RULE 37-2 STIPULATION REGARDING DISCOVERY DISPUTE**<br><br>**Date: Tuesday, August 25, 2026**<br>**Time: 10:00 a.m.**<br>**Place: Courtroom 590**<br>   **255 E Temple St,**<br>   **Los Angeles, Ca 90012**<br><br>Discovery Cutoff: Nov. 6, 2026<br>Pretrial<br>Conference: March 12, 2027<br>Trial Date: April 12, 2027 |

1

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

Mark Goldfeder (*Pro Hac Vice*)
*mark@jewishadvocacycenter.org*
Ben Schlager (*Pro Hac Vice*)
*ben@jewishadvocacycenter.org*
NATIONAL JEWISH ADVOCACY CENTER, INC.
INTERNATIONAL LEGAL FORUM
1718 General George Patton Drive
Brentwood, TN 37027
(800) 269-9895 (telephone)
(800) 758-5232 (facsimile)

Jason B. Torchinsky (*Pro Hac Vice*)
*jtorchinsky@holtzmanvogel.com*
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK, PLLC
2300 N Street NW
Suite 643
Washington, DC 20037
(202) 737-8808 (telephone)
(540) 341-8809 (facsimile)

Michael A. Sherman (SBN 94783)
*masherman@stubbsalderton.com*
LAW OFFICES OF MICHAEL A. SHERMAN
15260 Ventura Blvd., 21st Floor
Sherman Oaks, CA 91403
(818) 444-4528 (telephone)

**TABLE OF CONTENTS**

I.     PLAINTIFFS' INTRODUCTORY STATEMENT .....................................7

II.    DEFENDANTS' INTRODUCTORY STATEMENT ...............................13

III.   PLAINTIFFS' REQUESTS FOR ADMISSION TO CODEPINK DEFENDANTS ..................................................................................13

REQUEST FOR ADMISSION NO. 2: ..................................................13

RESPONSE TO REQUEST FOR ADMISSION NO. 2: ........................13

       PLAINTIFFS' RESPONSE TO OBJECTIONS TO REQUEST FOR ADMISSION NO. 2: ..................................................14

CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO REQUEST FOR ADMISSION NO. 2: .............18

REQUEST FOR ADMISSION NO. 4: ..................................................18

RESPONSE TO REQUEST FOR ADMISSION NO. 4: ........................18

       PLAINTIFFS' RESPONSE TO OBJECTIONS TO REQUEST FOR ADMISSION NO. 4: ..................................................19

CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO REQUEST FOR ADMISSION NO. 4: ..................................................................................19

REQUEST FOR ADMISSION NO. 5: ..................................................19

RESPONSE TO REQUEST FOR ADMISSION NO. 5: ........................20

       PLAINTIFFS' RESPONSE TO OBJECTIONS TO REQUEST FOR ADMISSION NO. 5: ..................................................20

CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO REQUEST FOR ADMISSION NO. 5: ..................................................................................21

IV.    PLAINTIFFS' INTERROGATORIES TO CODEPINK DEFENDANTS ..................................................................................21

INTERROGATORY NO. 1: ..................................................................21

RESPONSE TO INTERROGATORY NO. 1: ........................................21

       PLAINTIFFS' RESPONSE TO OBJECTIONS TO

3

INTERROGATORY NO. 1:................................................22

CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO INTERROGATORY NO. 1:...................25

INTERROGATORY NO. 2:................................................25

RESPONSE TO INTERROGATORY NO. 2: ............................25

PLAINTIFFS' RESPONSE TO OBJECTIONS TO INTERROGATORY NO. 2:.....................................26

CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO INTERROGATORY NO. 2:...................26

INTERROGATORY NO. 3:................................................26

RESPONSE TO INTERROGATORY NO. 3: ............................29

PLAINTIFFS' RESPONSE TO OBJECTIONS TO INTERROGATORY NO. 3:.....................................30

CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO INTERROGATORY NO. 3:...................32

INTERROGATORY NO. 4:................................................32

RESPONSE TO INTERROGATORY NO. 4: ............................33

PLAINTIFFS' RESPONSE TO OBJECTIONS TO INTERROGATORY NO. 4:.....................................33

CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO INTERROGATORY NO. 4:...................34

INTERROGATORY NO. 5:................................................34

RESPONSE TO INTERROGATORY NO. 5: ............................34

PLAINTIFFS' RESPONSE TO OBJECTIONS TO INTERROGATORY NO. 5:.....................................35

CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO INTERROGATORY NO. 5:...................35

INTERROGATORY NO. 6:................................................35

4

RESPONSE TO INTERROGATORY NO. 6: ...........................................36

    PLAINTIFFS' RESPONSE TO OBJECTIONS TO INTERROGATORY NO. 6:...............................................36

    CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO INTERROGATORY NO. 6:....................37

INTERROGATORY NO. 7:...................................................................37

RESPONSE TO INTERROGATORY NO. 7: ...........................................37

    PLAINTIFFS' RESPONSE TO OBJECTIONS TO INTERROGATORY NO. 7:...............................................38

    CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO INTERROGATORY NO. 7:....................38

V.    PLAINTIFFS' REQUESTS FOR PRODUCTION TO CODEPINK DEFENDANTS ......................................................38

REQUEST FOR PRODUCTION NO. 1: .................................................39

RESPONSE TO REQUEST FOR PRODUCTION NO. 1:........................39

    PLAINTIFFS' RESPONSE TO OBJECTIONS TO REQUEST FOR PRODUCTION NO. 1: ...............................................40

    CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO REQUEST FOR PRODUCTION NO. 1:........................................................................42

REQUEST FOR PRODUCTION NO. 2: .................................................42

RESPONSE TO REQUEST FOR PRODUCTION NO. 2:........................43

    PLAINTIFFS' RESPONSE TO OBJECTIONS TO REQUEST FOR PRODUCTION NO. 2: ...............................................43

    CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO REQUEST FOR PRODUCTION NO. 2:........................................................................44

REQUEST FOR PRODUCTION NO. 3: .................................................44

RESPONSE TO REQUEST FOR PRODUCTION NO. 3:........................45

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

PLAINTIFFS' RESPONSE TO OBJECTIONS TO REQUEST FOR PRODUCTION NO. 3: ...............................................46

CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO REQUEST FOR PRODUCTION NO. 3:......................................................................................47

REQUEST FOR PRODUCTION NO. 4: .................................................47

RESPONSE TO REQUEST FOR PRODUCTION NO. 4:......................47

PLAINTIFFS' RESPONSE TO OBJECTIONS TO REQUEST FOR PRODUCTION NO. 4: ...............................................48

CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO REQUEST FOR PRODUCTION NO. 4:......................................................................................50

REQUEST FOR PRODUCTION NO. 5: .................................................50

RESPONSE TO REQUEST FOR PRODUCTION NO. 5:......................50

PLAINTIFFS' RESPONSE TO OBJECTIONS TO REQUEST FOR PRODUCTION NO. 5: ...............................................51

CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO REQUEST FOR PRODUCTION NO. 5:......................................................................................52

REQUEST FOR PRODUCTION NO. 6: .................................................52

RESPONSE TO REQUEST FOR PRODUCTION NO. 6:......................53

PLAINTIFFS' RESPONSE TO OBJECTIONS TO REQUEST FOR PRODUCTION NO. 6: ...............................................54

CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO REQUEST FOR PRODUCTION NO. 6:......................................................................................55

REQUEST FOR PRODUCTION NO. 7: .................................................55

RESPONSE TO REQUEST FOR PRODUCTION NO. 7:......................55

PLAINTIFFS' RESPONSE TO OBJECTIONS TO REQUEST

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

FOR PRODUCTION NO. 7: ...............................................56

CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO REQUEST FOR PRODUCTION NO. 7:.........................................................................................58

## I.    PLAINTIFFS' INTRODUCTORY STATEMENT

Plaintiffs submit this introductory statement in support of their positions and to provide a roadmap for the Court in resolving this discovery dispute.[1]

### A.    Procedural history

Plaintiffs sued CodePink Defendants and various other organizations under the FACE Act, 18 U.S.C. § 248, for organizing, inciting, and participating in a violent riot outside and in the vicinity of the Adas Torah Synagogue and the surrounding Pico Robertson neighborhood on June 23, 2024. The Court's ruling on the motions to dismiss left intact claims against CodePink Defendants based on a social media post that placed the name and address of the synagogue and the date and time of an event being held there inside an inverted red triangle. The Court held that Plaintiffs had plausibly alleged that it was a "true threat" and was intended to either:

1. Intimidate Jewish worshipers by conveying a threat of extermination—causing "reasonable apprehension of bodily harm," or

2. Incite others to disrupt access to the Synagogue—thereby "restrict[ing] a person's freedom of movement."

(Order re Motions to Dismiss at 19, 25, Dkt. No. 131.)

The Court left open both interpretations as viable avenues for Plaintiffs: "Either theory is sufficient to satisfy the FACE Act's second and third elements." (*Id.* at 25.)

---

[1] Plaintiffs note that the considerable length of this document is necessary because Local Rule 37-2.1 requires the requests and responses at issue to be included verbatim, and CodePink Women for Peace and CodePink Action Fund (collectively, "CodePink Defendants") objected to nearly every request. In addition, because CodePink Defendants recycle the same small set of objections, Plaintiffs have where possible cross-referenced earlier discussions of the same issues to save space.

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

## B.  Background

On October 31, 2025, Plaintiffs propounded five requests for admission, eight requests for production, and eight interrogatories on CodePink Defendants. CodePink Defendants responded on December 9, 2025. CodePink Defendants objected to nearly every discovery request and declined to turn over a single record in response. Accordingly, on April 21, 2026, Plaintiffs initiated the discovery dispute process found in Local Rules 37-1 and 37-2 by sending a preliminary draft of this letter identifying their concerns with and positions on each of CodePink Defendants' objections to opposing counsel. Transmission of the Rule 37-1 letter triggered a ten-day timeline to meet and confer on the discovery dispute. L.R. 37-1. Counsel for CodePink Defendants finally made himself available for a meet and confer on May 14. This meeting left the parties far apart on the core issues in dispute, which they agreed required resolution by the Court. Opposing counsel did agree, however, to provide a proposed protective order the following week that he advised would enable him to produce certain documents and information he did not dispute Plaintiffs were entitled to.

As contemplated by the Local Rules, opposing counsel agreed to provide his portion of the joint stipulation within one week. L.R. 37-2.2. Eight days later, he had still not turned it over but promised to get it to Plaintiffs later that evening. The next day, having still not received CodePink Defendants' portion, Plaintiffs filed the incomplete joint stipulation as an exhibit to a motion to compel. This Court denied that motion without prejudice in order for the parties to participate in a pre-motion telephonic conference, which took place on June 30. Less than two hours before that conference, CodePink Defendants finally provided a proposed protective order, which Plaintiffs were unable to adequately review before the conference. A copy of the proposed protective order is attached as **Exhibit A-1**. In the conference, this Court directed the parties to meet once more in an effort to narrow the issues.

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

The parties participated in a second meet and confer on July 8. Counsel for CodePink Defendants did not make any concessions with respect to the core objections: irrelevance, proportionality, and First Amendment privilege. Instead, the discussion largely centered on two subjects: (1) rolling production pursuant to an interim attorneys'-eyes-only ("AEO") agreement and (2) the proposed protective order.

As to the first subject, opposing counsel offered to begin producing certain documents and information he admitted Plaintiffs were entitled to provided they were considered temporarily AEO until they could be designated under a formal protective order. Plaintiffs agreed but have still not received a single document from CodePink Defendants.

As to the second, after an opportunity to review the proposed protective order, Plaintiffs ascertained that it deviated significantly from the model order the Court encouraged the parties to use and attempted to enshrine an overly permissive and unfounded AEO designation provision. *Cf.* PVC FORM STIPULATED PROTECTIVE ORDER [Apr 2020] ("[A]ny request for a two-tiered, attorney-eyes-only protective order that designates certain material as 'Highly Confidential' will require a separate and detailed showing of need."). Plaintiffs objected to the broad AEO provision (Ex. 1 ¶ 3.5) and several other aspects of the proposed protective order, including unduly burdensome access, tracking, and handling restrictions (*id.* ¶¶ 8.1–8.7, 9.1–9.6, 11.1–11.4), CodePink Defendants' veto over Plaintiffs' expert selection (*id.* ¶¶ 10.1–10.3), and extreme limitations on showing AEO to witnesses that appear to apply even at trial (*id.* ¶ 13.2). Plaintiffs requested that CodePink Defendants reconfigure their proposed order to work from the Court's model order, tracking changes to address Plaintiffs' concerns in redline, and if it remained unacceptable to Plaintiffs, make their case to the Court for the heightened protections. The undersigned believed we had reached agreement on that point, but

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

counsel for CodePink Defendants instead provided an updated proposed order on July 22 that continued to be based on their original proposed order rather than the Court's model order. A copy of the revised proposed protective order is attached as **Exhibit A-2.**

The revised proposed order retained most of the problematic provisions (removing only a handful of the most onerous restrictions on access and use) and continued to omit important provisions found in the Court's model order, including its requirement that AEO designation "require a separate and detailed showing of need," its prohibition on "[m]ass, indiscriminate, or routinized [confidentiality] designations," and its warning of sanctions for designations "shown to be clearly unjustified or that have been made for an improper purpose." Model Order ¶¶ 2.3, 5.1. This is particularly disappointing in light of Plaintiffs' stated willingness to agree to the Court's model order wholesale or to a substantially conforming order with reasonable and well-supported revisions.

Plaintiffs note, however, that even if they are able to reach agreement with CodePink Defendants on a protective order, or the Court orders one, that will not unlock the floodgates of discovery. CodePink Defendants maintain that a significant portion of what Plaintiffs have asked for in discovery is irrelevant given the order on the motion to dismiss, is privileged against disclosure by the First Amendment, or both. Thus, even with a protective order in place, Plaintiffs do not expect CodePink Defendants to produce information and documents they assign to those categories unless ordered to do so.

Despite efforts to reach a reasonable resolution, opposing counsel has not agreed to a workable path forward, and the dispute therefore regrettably returns to the Court in substantially the same posture as before.

## C. Discussion

CodePink Defendants objected almost uniformly on irrelevance, overbreadth, and proportionality. They also invoked unspecified privacy/associational rights. These objections were for the most part boilerplate and highly cursory: CodePink Defendants offered little more than bare invocations without supporting facts.

### 1. Irrelevance

The objection CodePink Defendants offered the most detail on was irrelevance. As they see it, after the Court's motion-to-dismiss ruling, the only remaining basis for liability is the SELA Chapter social media post with the inverted red triangle, such that discovery into the events at or around Adas Torah are irrelevant, and thus overbroad and disproportionate. That's wrong. Plaintiffs still have claims that CodePink Defendants "[i]ncite[d] others to disrupt access to the Synagogue" (Order re Motions to Dismiss at 25) and claims against individual Doe defendants. The events of the riot and its aftermath are highly relevant to those claims, as addressed at length in Plaintiffs' Response to Objections to Request for Admission No. 2.

### 2. Associational/privacy rights

CodePink Defendants also invoked purported associational/privacy rights implicated by identifying their members. These too consisted of bare invocations, failing to clarify the source of the rights asserted. CodePink Defendants also failed to provide any supporting information necessary for Plaintiffs to evaluate the validity of the privilege invoked. Nor did they provide any on-point case authority in support of a right to withhold relevant information on such grounds, much less demonstrate that the applicable tests were satisfied in this case. First Amendment associational and common-law privacy rights cannot simply be invoked as a categorical bar to disclosure without providing any factual or legal support for their application to the specific information or materials sought. This objection fails for multiple reasons:

(1) waiver for lack of specificity and supporting grounds; (2) lack of members' reasonable expectation of concealing their identities in relation to participating in a well-documented protest in a public place in broad daylight; and (3) these rights must give way to Plaintiffs' substantial interest in using discovery to build factual support for their claims and uncover the identities of unknown defendants.

### 3. Overbreadth/proportionality

Once the irrelevance and associational/privacy rights objections are dispensed with, there is little left of the overbreadth or disproportionality objections. These objections are waived because they are bare invocations without supporting grounds. Even if no waiver applies, Plaintiffs' requests are narrowly tailored and proportionate to the needs of the case: They were limited in number and scope to begin with and have been further narrowed.

### 4. Protective order

Finally, CodePink Defendants' responses suggested that they would be willing to produce certain limited information and documents subject to an appropriate protective order. That was in early December. CodePink Defendants withheld nearly all requested information and documentation[2] for nearly eight months without offering any proposed protective order, despite *their* burden to provide timely, complete responses to discovery requests and *their* exclusive access to what concerns they would want addressed in such an order. Only hours before the discovery dispute teleconference did CodePink Defendants finally proposed a protective order. Plaintiffs pointed out in the July 8 meet and confer that it conflicted with the Court's model order and was inappropriately broad, as described above. With their July 22 revised draft, CodePink Defendants have now essentially doubled down on their initial proposal, with only a few procedural concessions. In the

---

[2] *Cf.* Request for Admission Nos. 1 (denied) & 3 (admitted).

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

meantime, and despite agreeing to begin production under an interim AEO designation, CodePink Defendants have yet to produce a single document.

## II.    DEFENDANTS' INTRODUCTORY STATEMENT

As set forth at length above, CodePink Defendants have had the substance of this joint stipulation since April but have twice now declined to timely provide their portion as required by Local Rule 37-2.2. Their consistent pattern of obstruction, delay, and failure to engage meaningfully in the discovery dispute resolution process created by the Local Rules has forced Plaintiffs to once again proceed without CodePink Defendants' input, in compliance with Local Rule 37-2.4.

## III.    PLAINTIFFS' REQUESTS FOR ADMISSION TO CODEPINK DEFENDANTS

**REQUEST FOR ADMISSION NO. 2:**

Admit that You provided materials, such as clothing, radios, head/face covers, food, water, posters, or megaphones to individuals present at, and in the areas surrounding, the Adas Torah Synagogue on June 23, 2024.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:[3]**

Objection. Irrelevant, disproportionate, and overbroad. Plaintiff is not entitled to responses to discovery which are not to the remaining claims in the action. Blair v. CDCR, No. 1:14-cv-01156-LJO-SAB (PC), 2018 U.S. Dist. LEXIS 69828 (E.D. Cal. Apr. 24, 2018). In partially granting CODEPINK's motion to dismiss the Court ruled that the only surviving basis for liability in the Plaintiff's complaint is the SELA Chapter's social media post that included an inverted red triangle above the addresses where the real estate sales were to be conducted, on the theory that the post could have affected viewers and intimidated them from coming to a house of

---

[3] Women for Peace and Action Fund provided identical responses to each of the requests for admission objected to, so they are not duplicated here.

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

worship for religious purposes. Occurrences at the real estate sales event are not relevant to this inquiry.

**PLAINTIFFS' RESPONSE TO OBJECTIONS TO REQUEST FOR ADMISSION NO. 2:**

CodePink Defendants have asserted three boilerplate objections to nearly every discovery request they objected to, including Request for Admission No. 2: that each is irrelevant, disproportionate, and overbroad. For the reasons that follow, none are a sufficient ground for failure to disclose.

### 1. *Overbreadth and disproportionality*

CodePink Defendants have provided no explanation for either their overbreadth or disproportionality objections. They are therefore waived: "To the extent that this objection was included in Defendants' boilerplate objections to the requests, they are too general to merit consideration and are therefore waived . . . Defendants cannot simply invoke generalized objections without describing, in specific detail, how each request is overbroad and unduly burdensome by submitting affidavits or other evidence describing the nature of the burden." *Jones v. Amicizia Events, Inc.*, No. CV 19-8181 DMG (ASX), 2020 WL 6065927, at *2 (C.D. Cal. Apr. 3, 2020). *See MarketLinx, Inc. v. Indus. Access Inc.*, No. CV123496CBMFMOX, 2013 WL 12133884, at *2 (C.D. Cal. Jan. 2, 2013) ("[I]t is well-settled that all grounds for objection must be stated with specificity." (quoting *Ramirez v. County of Los Angeles*, 231 F.R.D. 407, 409 (C.D. Cal. 2005))).

### 2. *Irrelevance*

CodePink Defendants provide somewhat more detail for their irrelevance objection. As they see it, any discovery about the events at the Adas Torah synagogue on June 23, 2024 is irrelevant because the only claim at issue in the action after the order granting in part the motion to dismiss is based on the intimidating effect of the

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

inverted red triangle posts on viewers.[4] This is wrong for two reasons: (1) other defendants remain in the action and Plaintiffs have claims against them in relation to the events at the synagogue; and (2) CodePink Defendants overlook that the Court's decision left open an incitement theory of liability for the posts.

2.a.    *Events at the synagogue and identities of participants in those events are relevant to Plaintiffs' claims against Doe defendants*

Fed. R. Civil P. 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to *any* party's claim or defense." *Id.* (emphasis added). Thus, "a party must respond to discovery requests seeking information that is only relevant to claims regarding other parties." *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, No. CV S-06-2845 LKK/JFM, 2008 WL 11400759, at *12 (E.D. Cal. Dec. 23, 2008).[5] So even if CodePink Defendants are right that information or documents about the events at the synagogue are not relevant to Plaintiffs' claims against *them* (which Plaintiffs sharply dispute, as set forth in the subsequent section), the events at the synagogue still form the core of Plaintiffs' claims against the *Doe Defendants*, which have not been dismissed. Therefore, Plaintiffs may obtain discovery about the events and identities of participants in those events at the synagogue from CodePink Defendants.

2.b.    *Events at the synagogue and identities of participants in those events are relevant to Plaintiffs' claims against CodePink Defendants*

---

[4] The Court's order leaves intact claims based on posts made by CodePink's Los Angeles and Southeast Los Angeles chapters using inverted red triangles around the date and address of the June 23, 2024 event at the Adas Torah synagogue. (*See* Order re Motions to Dismiss at 3, 19–22, Dkt. No. 131 (referencing "*posts*" at issue).) These are hereafter referred to as the "posts at issue."

[5] In fact, the Ninth Circuit has given special solicitude to discovery identifying defendants named as Does: "Where the identity of alleged defendants will not be known prior to the filing of a complaint . . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642–43 (9th Cir. 1980).

15

It is true that the Court rejected, at this juncture, Plaintiffs' claim that CodePink Defendants are vicariously liable for the acts of their members at the synagogue. But CodePink Defendants mischaracterize which theories of liability remain viable for Plaintiffs' claim that CodePink Defendants are liable for their own threatening social media post. The Court explicitly held as follows:

> the inclusion of these symbols [i.e. the inverted red triangles] could plausibly be seen as an attempt to either:
>
> 1. Intimidate Jewish worshipers by conveying a threat of extermination—causing "reasonable apprehension of bodily harm," or
>
> 2. Incite others to disrupt access to the Synagogue—thereby "restrict[ing] a person's freedom of movement."
>
> Either theory is sufficient to satisfy the FACE Act's second and third elements."

(Order re Motions to Dismiss at 24−25, Dkt. No. 131.)

Thus, whether the social media posts incited others to disrupt access to the Synagogue remains a live issue and viable theory of recovery that Plaintiffs may seek discovery into. It is well settled that "a party is entitled to seek discovery on its theory of the facts and the law, and is not limited in discovery by the opponent's theory." *Big City Dynasty v. FP Holdings, L.P.*, 336 F.R.D. 507, 511 (D. Nev. 2020) (quoting 8 Wright, Miller, & Marcus, Federal Practice and Procedure, § 2011 at 274 (2010)).

Given that Plaintiffs may obtain discovery in support of their claim that CodePink Defendants' posts incited others to unlawfully disrupt access to the synagogue on June 23, 2024, the events that transpired at the synagogue on that date are relevant to Plaintiffs' claim against CodePink Defendants. This is true because under incitement caselaw, post-speech action is relevant to whether the speech at issue was unlawfully inciting. In other words, whether people who viewed or heard

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

the allegedly inciting statement actually carried out the unlawful activity endorsed in the statement is relevant to whether the statement was incitement. *See Doe v. Mckesson*, 71 F.4th 278, 293 (5th Cir. 2023) ("The Court explained that a protest leader could be liable for his actions where it was shown that he or she 'were likely to incite lawless action,' and that 'unlawful conduct . . . in fact followed within a reasonable period.'") (quoting *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 927 (1982)); *Thompson v. Trump*, 590 F. Supp. 3d 46, 111 (D.D.C. 2022), *aff'd sub nom. Blassingame v. Trump*, 87 F.4th 1 (D.C. Cir. 2023) ("[I]f his 'language had been followed by acts of violence, a substantial question would be presented whether [the speaker] could be held liable for the consequences of that lawful conduct.'") (quoting *Claiborne Hardware*, 458 U.S. at 928)). Further augmenting this legal principle is the fact that the Court held that it was reasonable to "infer, based on CodePink and PYM's inflammatory social media posts, that their members likely took part in the unlawful obstruction." (Order re Motions to Dismiss at 25.) Thus, information and documents regarding the events at the synagogue, including those bearing on whether CodePink members or others who viewed the post in fact took part in disrupting access to the Synagogue, are highly relevant to whether CodePink incited them or others to do so.

In addition, Plaintiffs state as follows: Whether CodePink Defendants provided operational, logistical, or material support to individuals participating in disrupting the event at the synagogue is relevant to CodePink Defendants' intent for the post to be acted on. Moreover, even if the boilerplate objections are not waived or otherwise denied outright for lack of detail, CodePink Defendants cannot seriously maintain that providing a simple "admitted" or "denied" is either disproportionate or overbroad.

**Request for relief**: Plaintiffs request that the Court order CodePink Defendants to admit or deny this Request for Admission.

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

**Proposal to resolve issue**: After discussing the issues of what acts or events are relevant in light of the Court's partial dismissal, proportionality/overbreadth, and the nature and scope of privacy/associational privileges, Plaintiffs believe that irreconcilable differences remain that require resolution by this Court.

**CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO REQUEST FOR ADMISSION NO. 2:**

As set forth at length above, CodePink Defendants have had the substance of this joint stipulation since April but have twice now declined to timely provide their portion as required by Local Rule 37-2.2. Their consistent pattern of obstruction, delay, and failure to engage meaningfully in the discovery dispute resolution process created by the Local Rules has forced Plaintiffs to once again proceed without CodePink Defendants' input, in compliance with Local Rule 37-2.4.

**REQUEST FOR ADMISSION NO. 4:**

Admit that individuals affiliated with CodePink WFP were present at, and in the areas surrounding, the Adas Torah Synagogue on June 23, 2024.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Objection. Irrelevant, disproportionate, and overbroad. Plaintiff is not entitled to responses to discovery which are not to the remaining claims in the action. Blair v. CDCR, No. 1:14-cv-01156-LJO-SAB (PC), 2018 U.S. Dist. LEXIS 69828 (E.D. Cal. Apr. 24, 2018). In partially granting CODEPINK's motion to dismiss the Court ruled that the only surviving basis for liability in the Plaintiff's complaint is the SELA Chapter's social media post that included an inverted red triangle above the addresses where the real estate sales were to be conducted, on the theory that the post could have affected viewers and intimidated them from coming to a house of worship for religious purposes. Occurrences at the real estate sales event are not relevant to this inquiry.

**PLAINTIFFS' RESPONSE TO OBJECTIONS TO REQUEST FOR ADMISSION NO. 4:**

See Plaintiffs' response to objections to Request for Admission No. 2 above and hereby incorporated in full. In addition, Plaintiffs state as follows: This request for admission is directly relevant to Plaintiffs' efforts to identify the Doe Defendants, against whom they have existing claims. Moreover, even if the boilerplate objections are not waived or otherwise denied outright for lack of detail, CodePink Defendants cannot seriously maintain that providing a simple "admitted" or "denied" is either disproportionate or overbroad.

**Request for relief**: Plaintiffs request that the Court order CodePink Defendants to admit or deny this Request for Admission.

**Proposal to resolve issue**: After discussing the issues of what acts or events are relevant in light of the Court's partial dismissal, proportionality/overbreadth, and the nature and scope of privacy/associational privileges, Plaintiffs believe that irreconcilable differences remain that require resolution by this Court.

**CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO REQUEST FOR ADMISSION NO. 4:**

As set forth at length above, CodePink Defendants have had the substance of this joint stipulation since April but have twice now declined to timely provide their portion as required by Local Rule 37-2.2. Their consistent pattern of obstruction, delay, and failure to engage meaningfully in the discovery dispute resolution process created by the Local Rules has forced Plaintiffs to once again proceed without CodePink Defendants' input, in compliance with Local Rule 37-2.4.

**REQUEST FOR ADMISSION NO. 5:**

Admit that individuals affiliated with CodePink WFP, by force and physical obstruction intentionally injured, intimidated, and interfered with persons seeking to lawfully exercise their First Amendment rights of religious freedom at, and in the

19

areas surrounding, the Adas Torah Synagogue on June 23, 2024, such that the ability of individuals who wished to enter and exit the Synagogue was rendered unreasonably difficult or hazardous.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Objection. Irrelevant, disproportionate, and overbroad. Plaintiff is not entitled to responses to discovery which are not to the remaining claims in the action. Blair v. CDCR, No. 1:14-cv-01156-LJO-SAB (PC), 2018 U.S. Dist. LEXIS 69828 (E.D. Cal. Apr. 24, 2018). In partially granting CODEPINK's motion to dismiss the Court ruled that the only surviving basis for liability in the Plaintiff's complaint is the SELA Chapter's social media post that included an inverted red triangle above the addresses where the real estate sales were to be conducted, on the theory that the post could have affected viewers and intimidated them from coming to a house of worship for religious purposes. Occurrences at the real estate sales event are not relevant to this inquiry.

**PLAINTIFFS' RESPONSE TO OBJECTIONS TO REQUEST FOR ADMISSION NO. 5:**

See Plaintiffs' response to objections to Request for Admission No. 2 above and hereby incorporated in full. In addition, Plaintiffs state as follows: This request for admission is directly relevant to Plaintiffs' efforts to identify the Doe Defendants, against whom they have existing claims. Moreover, even if the boilerplate objections are not waived or otherwise denied outright for lack of detail, CodePink Defendants cannot seriously maintain that providing a simple "admitted" or "denied" is either disproportionate or overbroad.

**Request for relief**: Plaintiffs request that the Court order CodePink Defendants to admit or deny this Request for Admission.

**Proposal to resolve issue**: After discussing the issues of what acts or events are relevant in light of the Court's partial dismissal, proportionality/overbreadth, and the

nature and scope of privacy/associational privileges, Plaintiffs believe that irreconcilable differences remain that require resolution by this Court.

**CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO REQUEST FOR ADMISSION NO. 5:**

As set forth at length above, CodePink Defendants have had the substance of this joint stipulation since April but have twice now declined to timely provide their portion as required by Local Rule 37-2.2. Their consistent pattern of obstruction, delay, and failure to engage meaningfully in the discovery dispute resolution process created by the Local Rules has forced Plaintiffs to once again proceed without CodePink Defendants' input, in compliance with Local Rule 37-2.4.

**IV.    PLAINTIFFS' INTERROGATORIES TO CODEPINK DEFENDANTS**

**INTERROGATORY NO. 1:**

Identify whom in Your defined organization, or acting on behalf of Your organization, controls Your social media accounts, including, but not limited to, Instagram, X, Facebook, YouTube, and Snapchat since January 1, 2024. To the extent different individuals control the specific accounts for the Southeast Los Angeles and Los Angeles Chapters of CodePink WFP or CodePink Action please identify those individuals.

**RESPONSE TO INTERROGATORY NO. 1:**

Objection. Overbroad, irrelevant, and disproportionate. Santoyo v. Howmedica Osteonics Corp., No. C15-5264 BHS, 2016 U.S. Dist. LEXIS 60012 (W.D. Wash. May 5, 2016) The various CODEPINK affiliates have over seventy social media accounts. The only accounts involved in the social media post which is the subject of the litigation are the SELA affiliate's account. The interrogatory is also overbroad as to time and therefore irrelevant and disproportionate. The real estate sales event held at the subject property was not advertised until May of 2024 at the earliest and therefore not the subject of any planned, designed, or even contemplated post until

21

then. Nor is any time after June 23, 2024 relevant. Finally, identification of the individuals asked about violates their right to associational privacy for their First Amendment-protected activities.

Plaintiffs' use of the verb "controls" is also confusing and renders even those parts of the interrogatory that are relevant impossible to answer. CODEPINK affiliates typically operate on a collaborative basis without any individual exerting "control" over an activity. Once an appropriate protective order is in place CODEPINK will identify those persons involved with the SELA affiliate's social media account from May 1, 2024 through June 23, 2024. If Plaintiffs have evidence that the social media post that contained an inverted red triangle and promoted the demonstration at the subject property, was distributed by any CODEPINK affiliate other than the SELA affiliate, CODEPINK will, subject to the appropriate protective order, furnish further information about those affiliates for the time period during which those affiliates promoted the post.

[CodePink Action Fund only: Subject to and without waiving said objections, CODEPINK Action Fund has no social media presence or involvement with any CODEPINK affiliates.]

**PLAINTIFFS' RESPONSE TO OBJECTIONS TO INTERROGATORY NO. 1:**

Plaintiffs accede in several respects to CodePink Defendants' objections. First, they remain willing to cooperatively fashion a reasonable and appropriate protective order that largely conforms to the Court's model order. Second, they agree that individuals involved with the SELA affiliate's social media account should be identified. Third, they agree that individuals involved with other affiliates' social media accounts who re-posted or otherwise distributed the posts at issue should be identified. Plaintiffs disagree on two other points.

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

First, they do not agree that the only individuals involved with the SELA affiliate's social media account who should be identified are those involved between May 1, 2024 and June 23, 2024. They are, however, willing to set the endpoint of the Relevant Time at July 31, 2024 and ask the Court to order identification of all such individuals involved during that period. These individuals have knowledge of the SELA affiliate's past and subsequent social media activities that is relevant to the motive and intention of CodePink Defendants in making the posts at issue. *See, e.g.*, *Apple Inc. v. Vidal*, 63 F.4th 1, 17 (Fed. Cir. 2023) ("Given that history, it is far from speculative that this sequence will be repeated in the future.").

Second, Plaintiffs disagree as a factual matter that "The only accounts involved in the social media post which is the subject of the litigation are the SELA affiliate's account." The Court has already acknowledged that the posts at issue were made by both the SELA affiliate *and* the Los Angeles affiliate. (*See* Order re Motions to Dismiss at 3, Dkt. No. 131 ("In the days leading up to June 23, 2024, CodePink's Los Angeles and Southeast Los Angeles chapters made multiple-image posts on their Instagram accounts . . . [which] placed the date and address of the Aliyah Event at the Synagogue, which was identified by name, inside of an inverted red triangle."). CodePink Defendants must identify all individuals who stand in the same relation to the Los Angeles affiliate's social media account as those involved in the SELA affiliate's social media account as described in the preceding paragraph.

Third, Plaintiffs strongly contest CodePink Defendants' assertion that before CodePink Defendants are obligated to identify individuals involved with other CodePink affiliates, Plaintiffs must first prove that the posts at issue were distributed by those affiliates. If another of CodePink's affiliates did in fact distribute the posts at issue, that is obviously relevant to Plaintiffs' claim seeking to hold CodePink Defendants (as opposed to a specific affiliate such as the SELA affiliate) liable for the post. For instance, knowing which members of CodePink Defendants may have

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

been involved in creating or distributing the post would permit Plaintiffs to depose such individuals to determine their motive and intention relative to the post. To the extent CodePink Defendants believe Plaintiffs must utilize publicly available sources to conduct their own search for such evidence before attempting to obtain it from CodePink Defendants, that is not the case. See *ML Prods., Inc. v. Aster Graphics, Inc.*, No. 5:23-CV-02094-MEMF (DTB), 2025 WL 2995106, at *9 (C.D. Cal. Oct. 8, 2025) ("Courts have repeatedly rejected the notion that public availability excuses a party from its obligation to produce materials within its possession, custody, or control."). This is especially the case because the information sought is particularly within CodePink Defendants' control: social media posts are not static and may have been taken down or otherwise rendered inaccessible to a member of the general public, to the extent they were ever accessible in the first place. There is simply no obligation under existing law for Plaintiffs to prove a predicate fact before CodePink Defendants must produce relevant information. The burden is on CodePink Defendants to show that the requested information is not relevant or that it does not exist. If it exists and is relevant, Plaintiffs are entitled to its production.

**Request for relief**: Plaintiffs request that the Court order CodePink Defendants to identify whom in their organizations, or acting on their behalf, between May 1, 2024 and July 31, 2024 (1) controlled the social media accounts of the Southeast Los Angeles Chapters of CodePink WFP or CodePink Action; or (2) controlled the social media accounts of other affiliates and re-posted or otherwise distributed the posts at issue.

**Proposal to resolve issue:** In the July 8, 2026 meet and confer, we agreed to make progress toward a mutually acceptable protective order based on the Court's model order to enable production of certain requested materials or information to which opposing counsel's other concerns did not apply. Plaintiffs remain willing to

24

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

cooperatively fashion a reasonable and appropriate protective order that largely conforms to the Court's model order. As stated earlier, however, that would resolve only a portion of the issues in dispute.

**CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO INTERROGATORY NO. 1:**

As set forth at length above, CodePink Defendants have had the substance of this joint stipulation since April but have twice now declined to timely provide their portion as required by Local Rule 37-2.2. Their consistent pattern of obstruction, delay, and failure to engage meaningfully in the discovery dispute resolution process created by the Local Rules has forced Plaintiffs to once again proceed without CodePink Defendants' input, in compliance with Local Rule 37-2.4.

**INTERROGATORY NO. 2:**

Describe any steps during the Relevant Time You took to ensure those attending the Events at your behest did not physically obstruct, intentionally injure, intimidate, interfere, or attempt to injure any person seeking to enter or exit the Adas Torah Synagogue on June 23, 2024.

**RESPONSE TO INTERROGATORY NO. 2:**[6]

Objection. Irrelevant and disproportionate. In partially granting CODEPINK WFP's[7] motion to dismiss the Court ruled that the only surviving basis for liability in the Plaintiff's complaint is the SELA Chapter's social media post that included an inverted red triangle above the addresses where the real estate sales were to be conducted, on the theory that the post could have affected viewers and intimidated them from coming to a house of worship for religious purposes. Occurrences at the

---

[6] Here, CodePink Women for Peace's response contained two sentences missing from Action Fund's response: "Objection. Irrelevant and disproportionate." Despite this lack of introductory language, it is clear that Action Fund's response objects rather than responds to the Interrogatory and does so on relevance and proportionality grounds. Hence it is not separately produced.

[7] CodePink Action Fund's responses throughout are otherwise identical to those of CodePink Women for Peace except that they refer to the *Action Fund's* motion to dismiss, contacts with SELA affiliate, etc. rather than Women for Peace's.

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

real estate sales event are not relevant to this inquiry. It is also not proportional. Dobro v. Allstate Ins., 2016 U.S. Dist. LEXIS 119198 **27-29 (S.D. Cal. Sept. 2, 2016).

**PLAINTIFFS' RESPONSE TO OBJECTIONS TO INTERROGATORY NO. 2:**

See Plaintiffs' response to objections to Request for Admission No. 2 above and hereby incorporated in full. For the reasons discussed therein, the requested information is relevant as to Plaintiffs' claims against both the Doe Defendants and CodePink Defendants. In addition, Plaintiffs state as follows: Discovery is proper as to any matter "relevant to any party's claim or defense." Fed. R. Civil P. 26(b)(1). The information here sought goes to whether CodePink Defendants' post was intended to incite the unlawful events at the synagogue, which is relevant to both Plaintiffs' claim and CodePink Defendants' defense thereto.

**Request for relief**: Plaintiffs request that the Court order CodePink Defendants to fully respond to Interrogatory No. 2.

**Proposal to resolve issue**: After discussing the issues of what acts or events are relevant in light of the Court's partial dismissal, proportionality/overbreadth, and the nature and scope of privacy/associational privileges, Plaintiffs believe that irreconcilable differences remain that require resolution by this Court.

**CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO INTERROGATORY NO. 2:**

As set forth at length above, CodePink Defendants have had the substance of this joint stipulation since April but have twice now declined to timely provide their portion as required by Local Rule 37-2.2. Their consistent pattern of obstruction, delay, and failure to engage meaningfully in the discovery dispute resolution process created by the Local Rules has forced Plaintiffs to once again proceed without CodePink Defendants' input, in compliance with Local Rule 37-2.4.

**INTERROGATORY NO. 3:**

Identify (by name or names of person/people, all addresses associated with such person, all email accounts associated with such person, all Instagram and other social media accounts associated with such person, and all phone numbers associated with such person) all persons who drafted, and/or approved prior to posting, and/or posted the Instagram posts identified in footnotes 64, 75, 83, 84, 90, 93, and 96 of the First Amended Complaint.

[*for clarity and to comply with Local Rule 37-2.1, the relevant posts and their corresponding descriptions in the First Amended Complaint are reproduced below*]

**FN64**: CODEPINK Southeast Los Angeles (@codepinksela) & CODEPINK Los Angeles (@codepinkla), INSTAGRAM, https://www.instagram.com/p/C8c6f8dyplb/?img_index=1 (last visited July 3, 2024)

212. On Friday, June 21, 2024, CodePink Women for Peace's Los Angeles and Southeast Los Angeles chapters issued a collaborative post on Instagram, claiming that "A MEGA ZIONIST REAL ESTATE EVENT IS IN LA THIS WEEK!"

213. The post featured multiple slides, including a slide that urged: "HELP US ADVOCATE THE STOP OF HOMES BEING SOLD ON STOLEN PALESTINIAN LAND!"

214. The posts included the dates and addresses of two events—one at Shaarey Zedek in North Hollywood on June 20 and the second at Adas Torah on June 23.

FN75: CODEPINK Southeast Los Angeles Chapter (@codepinksela), INSTAGRAM, https://www.instagram.com/reel/C8khglxyMw4/?utm_source=ig_web_copy _link& igsh=MzRlODBiNWFlZA== (last visited July 3, 2024).

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

243.    Footage of the violence quickly spread throughout social media.

**FN83**: CODEPINK Southeast Los Angeles Chapter (@codepinksela), INSTAGRAM,https://www.instagram.com/reel/C8khglxyMw4/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA== (last visited July 3, 2024).

326.    On the day of the riot, CodePink's Southeast Los Angeles chapter posted on its Instagram account a video from the riot, confirming its presence outside the Synagogue.

**FN84**: CODEPINK Southeast Los Angeles Chapter (@codepinksela) & CODEPINK Alert (@codepinkalert), INSTAGRAM, https://www.instagram.com/p/C8lLvLIJu9h/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D&img_index=2 (last visited July 3, 2024).

327.    The same day, the Southeast Los Angeles chapter, in collaboration with the CodePink's Los Angeles chapter and CodePink's national organization, posted more footage from the riot, including another slide featuring a giant inverted red triangle with the address of the Synagogue inside it.

328.    The photograph was captioned, in part: "Our comrades witnessed nothing out of the ordinary: madness, chaos, agitation, provoking and the use of physical force by the zi0nist [*sic*] community and LAPD."

**FN90**: CODEPINK Alert (@codepinkalert) & CODEPINK Southeast Los Angeles Chapter (@codepinksela), INSTAGRAM, https://www.instagram.com/p/C8nDkh3y06J/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA== (last visited July 3, 2024).

333.    On June 24, 2024, CodePink's national organization, in collaboration with its own Southeast Los Angeles chapter, posted on its Instagram a slide stating that "there was a peaceful protest against the illegal

28

sale of stolen land in Palestine in a synagogue. Zionists attacked peaceful protesters, stole their phones, and LAPD watched on and helped.

334.   Beneath the slide was a longer caption stating that "[n]o religious services were scheduled at the time of the real estate sale . . . . Contrary to what the media is falsely reporting, the entrance was never blocked by anyone."

**FN93**: CODEPINK Southeast Los Angeles Chapter (@codepinksela), INSTAGRAM, https://www.instagram.com/reel/C8p9LjVSX72/?igsh=ZjRlZHhmY2N2eTI4 (last visited July 5, 2024).

337.   On Tuesday, June 25, 2024, the Southeast Los Angeles chapter posted a video of a press conference with multiple speakers.

338.   The first speaker—whose name is not provided—stated that the Synagogue "is complicit in war crimes through its hosting of this event."

339.   She added: "The attendees of this illegal sale event and the LAPD unleashed violence on protesters for daring to challenge the illegal sale of Palestinian land."

340.   She finished by assuring that "[w]e will continue to challenge the sale of stolen Palestinian land in North American cities, no matter where these events take place."

**FN96**: CODEPINK Southeast Los Angeles Chapter (@codepinksela), INSTAGRAM, https://www.instagram.com/p/C8sWnHZy_R9/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA== (last visited July 3, 2024).

341.   The next day, CodePink's Southeast Los Angeles chapter posted a single slide stating: "FUCK ISRAEL."

**RESPONSE TO INTERROGATORY NO. 3:**

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

Upon entry of an appropriate protective order CODEPINK will respond to this interrogatory as it relates to the Instagram posts referenced in footnotes 64 and 84. The remainder of the interrogatory is objected to upon the following grounds: Irrelevant, overbroad, and unduly burdensome. In partially granting CODEPINK WFP's motion to dismiss the Court ruled that the only surviving basis for liability in the Plaintiff's complaint is the SELA Chapter's social media post that included an inverted red triangle above the addresses where the real estate sales were to be conducted, on the theory that the post could have affected viewers and intimidated them from coming to a house of worship for religious purposes. Inquiry about anything beyond that is not relevant or proportional. CODEPINK WFP further objects because the interrogatory invades the privacy and associational rights of nonparties, with insufficient justification to do so. Dobro v. Allstate Ins., 2016 U.S. Dist. LEXIS 119198 **27-29 (S.D. Cal. Sept. 2, 2016). CODEPINK WFP's answer with respect to the posts identified in footnotes 64 and 85 will be made upon entry of an appropriate protective order that protects applicable rights to freedom of speech, assembly, and association (and therefore of privacy).

**PLAINTIFFS' RESPONSE TO OBJECTIONS TO INTERROGATORY NO. 3:**

Plaintiffs do not agree that the remaining posts are irrelevant, overbroad, or unduly burdensome. See Plaintiffs' response to objections to Request for Admission No. 2 above and hereby incorporated in full. For the reasons discussed therein, the requested information is relevant as to Plaintiffs' claims against both the Doe Defendants and CodePink Defendants. In addition, Plaintiffs state as follows: As to each of the remaining posts (i.e., those referenced in footnotes 83, 90, 93, and 96), CodePink's social media posts containing footage of or describing the events at the synagogue go to the participation of its members in, and its knowledge and approval of, those events, as relevant to Plaintiffs' claims against CodePink Defendants, and

30

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

may bear on the identities and actions of Doe Defendants, as relevant to Plaintiffs' claims against those defendants.

As to the asserted privacy and associational rights of the CodePink members whose identities are sought, CodePink Defendants correctly assess that those rights do not create an absolute privilege to disclosure, given their willingness to identify those individuals involved in drafting, approving, or posting the social media posts at issue. Due to the lack of detail or evidence CodePink Defendants proffer in support of this asserted privilege, it is unclear whether they seek to avoid disclosure of the identities of other CodePink members involved with relevant social media posts on the basis of California privacy rights, First Amendment associational rights, or both. The lone case they cite for this objection, *Dobro v. Allstate Ins. Co.*, No. 16CV1197-AJB (BLM), 2016 WL 4595149 (S.D. Cal. Sept. 2, 2016), addresses only privacy rights and ultimately turns on proportionality rather than an absolute privilege. *See id.* at *6 (holding that "discovery regarding other [insureds' denied] claims, when properly limited to the facts, insurance policy, and claims at issue in this case, is relevant to the Plaintiffs' claims in this case"). Moreover, CodePink Defendants do not explain why the information withheld is subject to these privileges. As this Court has noted, "[f]ailure to provide sufficient information may constitute a waiver of the privilege." *Ramirez v. Cnty. of Los Angeles*, 231 F.R.D. 407, 410 (C.D. Cal. 2005) (citing cases); s*ee also Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) ("boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege."); *Rackliffe v. Rocha*, No. 1:07-CV-00603-AWI, 2012 WL 1158855, at *4 (E.D. Cal. Apr. 6, 2012) (rejecting privilege defense because "Defendants do not explain how identifying these policies and procedures implicates any third party privacy concerns" and Federal Rule of Civil Procedure 26(b)(5) requires "party asserting privilege [to] expressly make and describe

claim"). Because CodePink Defendants do not provide any evidence supporting their claim of associational or privacy rights privilege, it is waived. To the extent such privilege is not waived, it is not absolute and must give way to Plaintiffs' substantial interest in uncovering the identities of the Doe Defendants. *Gillespie*, 629 F.2d at 642–43.

**Request for relief**: Plaintiffs request that the Court order CodePink Defendants to fully respond to Interrogatory No. 3.

**Proposal to resolve issue:** In the July 8, 2026 meet and confer, we agreed to make progress toward a mutually acceptable protective order based on the Court's model order to enable production of certain requested materials or information to which opposing counsel's other concerns did not apply. Plaintiffs remain willing to cooperatively fashion a reasonable and appropriate protective order that largely conforms to the Court's model order. As stated earlier, however, that would resolve only a portion of the issues in dispute.

**CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO INTERROGATORY NO. 3:**

As set forth at length above, CodePink Defendants have had the substance of this joint stipulation since April but have twice now declined to timely provide their portion as required by Local Rule 37-2.2. Their consistent pattern of obstruction, delay, and failure to engage meaningfully in the discovery dispute resolution process created by the Local Rules has forced Plaintiffs to once again proceed without CodePink Defendants' input, in compliance with Local Rule 37-2.4.

**INTERROGATORY NO. 4:**

Identify anyone known by You to be a member of Your organization (in the same manner you expansively use the term "member" on Your website, https://www.codepink.org/am_i_a codepink_member) or otherwise affiliated with Your organization in any way who attended the Events.

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

**RESPONSE TO INTERROGATORY NO. 4:**

Irrelevant, overbroad, and unduly burdensome. In partially granting CODEPINK WFP's motion to dismiss the Court ruled that the only surviving basis for liability in the Plaintiff's complaint is the SELA Chapter's social media post that included an inverted red triangle above the addresses where the real estate sales were to be conducted, on the theory that the post could have affected viewers and intimidated them from coming to a house of worship for religious purposes. Inquiry about anything beyond that is not relevant or proportional. CODEPINK WFP further objects because the interrogatory invades the privacy and associational rights of nonparties, with insufficient justification to do so. Dobro v. Allstate Ins., 2016 U.S. Dist. LEXIS 119198 **27-29 (S.D. Cal. Sept. 2, 2016).

**PLAINTIFFS' RESPONSE TO OBJECTIONS TO INTERROGATORY NO. 4:**

See Plaintiffs' response to objections to Request for Admission No. 2 and response to objections to Interrogatory No. 3 above and hereby incorporated in full. For the reasons discussed therein, the requested information is relevant as to Plaintiffs' claims against both the Doe Defendants and CodePink Defendants. In addition, Plaintiffs state as follows: Even if CodePink Defendants' associational or privacy rights privilege is not waived, they cannot show that members who engaged in unlawful activities outside a house of worship in broad daylight while being documented by photos and videos taken by various individuals have a reasonable expectation in their identities being concealed, especially when CodePink Defendants themselves broadcasted some of these videos. *See* Compl. ¶¶ 326−28; *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 544 (Cal. Ct. App. 1993) ("One's voluntary action in a public place waives one's right of privacy as 'there can be no privacy in that which is already public.'") (quoting *Gill v. Hearst Publishing Co.*, 253 P.2d 441 (Cal. 1953)). And to the extent any members participating in the events

at the synagogue wore face coverings, that did not create a reasonable expectation of privacy because it was unlawful for them to do so while engaged in unlawful activity. *See* Cal. Penal Code § 185 (making unlawful the "wear[ing] any mask . . . or any personal disguise (whether complete or partial) for the purpose of . . . [e]vading or escaping discovery, recognition, or identification in the commission of any public offense."); Cal. Penal Code §§ 405−405 (defining and criminalizing participation in a "riot").

**Request for relief**: Plaintiffs request that the Court order CodePink Defendants to fully respond to Interrogatory No. 4.

**Proposal to resolve issue**: After discussing the issues of what acts or events are relevant in light of the Court's partial dismissal, proportionality/overbreadth, and the nature and scope of privacy/associational privileges, Plaintiffs believe that irreconcilable differences remain that require resolution by this Court.

**CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO INTERROGATORY NO. 4:**

As set forth at length above, CodePink Defendants have had the substance of this joint stipulation since April but have twice now declined to timely provide their portion as required by Local Rule 37-2.2. Their consistent pattern of obstruction, delay, and failure to engage meaningfully in the discovery dispute resolution process created by the Local Rules has forced Plaintiffs to once again proceed without CodePink Defendants' input, in compliance with Local Rule 37-2.4.

**INTERROGATORY NO. 5:**

Describe any and all facts, videos, pictures, etc. to support Your statement that the entrance to the Adas Torah Synagogue "was never blocked by anyone" during the Events.[8]

**RESPONSE TO INTERROGATORY NO. 5:**

---

[8] This statement is cited in footnote 91 of the First Amended Complaint.

34

Irrelevant, overbroad, and unduly burdensome. In partially granting CODEPINK WFP's motion to dismiss the Court ruled that the only surviving basis for liability in the Plaintiff's complaint is the SELA Chapter's social media post that included an inverted red triangle above the addresses where the real estate sales were to be conducted, on the theory that the post could have affected viewers and intimidated them from coming to a house of worship for religious purposes. Inquiry about anything beyond that is not relevant or proportional. CODEPINK WFP further objects because the interrogatory invades the privacy and associational rights of nonparties, with insufficient justification to do so. Dobro v. Allstate Ins., 2016 U.S. Dist. LEXIS 119198 **27-29 (S.D. Cal. Sept. 2, 2016).

**PLAINTIFFS' RESPONSE TO OBJECTIONS TO INTERROGATORY NO. 5:**

See Plaintiffs' response to objections to Request for Admission No. 2 and response to objections to Interrogatory Nos. 3 and 4 above and hereby incorporated in full. For the reasons discussed therein, the requested information as to whether ingress to/egress from the synagogue was blocked is highly relevant for Plaintiffs' claims against both the Doe Defendants and CodePink Defendants.

**Request for relief**: Plaintiffs request that the Court order CodePink Defendants to fully respond to Interrogatory No. 5.

**Proposal to resolve issue**: After discussing the issues of what acts or events are relevant in light of the Court's partial dismissal, proportionality/overbreadth, and the nature and scope of privacy/associational privileges, Plaintiffs believe that irreconcilable differences remain that require resolution by this Court.

**CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO INTERROGATORY NO. 5:**

As set forth at length above, CodePink Defendants have had the substance of this joint stipulation since April but have twice now declined to timely provide their

portion as required by Local Rule 37-2.2. Their consistent pattern of obstruction, delay, and failure to engage meaningfully in the discovery dispute resolution process created by the Local Rules has forced Plaintiffs to once again proceed without CodePink Defendants' input, in compliance with Local Rule 37-2.4.

**INTERROGATORY NO. 6:**

Identify the women alleged in paragraphs 251 – 255 of the First Amended Complaint.

**RESPONSE TO INTERROGATORY NO. 6:**

Irrelevant, overbroad, and unduly burdensome. In partially granting CODEPINK WFP's motion to dismiss the Court ruled that the only surviving basis for liability in the Plaintiff's complaint is the SELA Chapter's social media post that included an inverted red triangle above the addresses where the real estate sales were to be conducted, on the theory that the post could have affected viewers and intimidated them from coming to a house of worship for religious purposes. Inquiry about anything beyond that is not relevant or proportional. CODEPINK WFP further objects because the interrogatory invades the privacy and associational rights of nonparties, with insufficient justification to do so. Dobro v. Allstate Ins., 2016 U.S. Dist. LEXIS 119198 **27-29 (S.D. Cal. Sept. 2, 2016).

**PLAINTIFFS' RESPONSE TO OBJECTIONS TO INTERROGATORY NO. 6:**

See Plaintiffs' response to objections to Request for Admission No. 2 and response to objections to Interrogatory Nos. 3 and 4 above and hereby incorporated in full. For the reasons discussed therein, the requested information is relevant as to Plaintiffs' claims against both the Doe Defendants and CodePink Defendants.

**Request for relief**: Plaintiffs request that the Court order CodePink Defendants to fully respond to Interrogatory No. 6.

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

**Proposal to resolve issue**: After discussing the issues of what acts or events are relevant in light of the Court's partial dismissal, proportionality/overbreadth, and the nature and scope of privacy/associational privileges, Plaintiffs believe that irreconcilable differences remain that require resolution by this Court.

**CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO INTERROGATORY NO. 6:**

As set forth at length above, CodePink Defendants have had the substance of this joint stipulation since April but have twice now declined to timely provide their portion as required by Local Rule 37-2.2. Their consistent pattern of obstruction, delay, and failure to engage meaningfully in the discovery dispute resolution process created by the Local Rules has forced Plaintiffs to once again proceed without CodePink Defendants' input, in compliance with Local Rule 37-2.4.

**INTERROGATORY NO. 7:**

Identify the individuals shown as speakers in the video referenced in paragraphs 337 – 340 of the First Amended Complaint.

**RESPONSE TO INTERROGATORY NO. 7:**

Irrelevant, overbroad, and unduly burdensome. In partially granting CODEPINK WFP's motion to dismiss the Court ruled that the only surviving basis for liability in the Plaintiff's complaint is the SELA Chapter's social media post that included an inverted red triangle above the addresses where the real estate sales were to be conducted, on the theory that the post could have affected viewers and intimidated them from coming to a house of worship for religious purposes. Inquiry about anything beyond that is not relevant or proportional. CODEPINK WFP further objects because the interrogatory invades the privacy and associational rights of nonparties, with insufficient justification to do so. Dobro v. Allstate Ins., 2016 U.S. Dist. LEXIS 119198 **27-29 (S.D. Cal. Sept. 2, 2016).

37

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

**PLAINTIFFS' RESPONSE TO OBJECTIONS TO INTERROGATORY NO. 7:**

See Plaintiffs' response to objections to Request for Admission No. 2 and response to objections to Interrogatory Nos. 3 and 4 above and hereby incorporated in full. For the reasons discussed therein, the requested information is relevant as to Plaintiffs' claims against both the Doe Defendants and CodePink Defendants. In addition, Plaintiffs state as follows: Not only did the speakers in the referenced video engage in a public activity in which they have no expectation of privacy, *see Dora*, 15 Cal. App. 4th at 544, by appearing in the video they voluntarily publicized their likenesses, and therefore their identities, to third parties. *See Carpenter v. United States*, 585 U.S. 296, 308 (2018) (citation omitted); *United States v. Meregildo*, 883 F. Supp. 2d 523, 526 (S.D.N.Y. 2012) (no expectation of privacy in social media posts).

**Request for relief**: Plaintiffs request that the Court order CodePink Defendants to fully respond to Interrogatory No. 7.

**Proposal to resolve issue**: After discussing the issues of what acts or events are relevant in light of the Court's partial dismissal, proportionality/overbreadth, and the nature and scope of privacy/associational privileges, Plaintiffs believe that irreconcilable differences remain that require resolution by this Court.

**CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO INTERROGATORY NO. 7:**

As set forth at length above, CodePink Defendants have had the substance of this joint stipulation since April but have twice now declined to timely provide their portion as required by Local Rule 37-2.2. Their consistent pattern of obstruction, delay, and failure to engage meaningfully in the discovery dispute resolution process created by the Local Rules has forced Plaintiffs to once again proceed without CodePink Defendants' input, in compliance with Local Rule 37-2.4.

## V.    PLAINTIFFS' REQUESTS FOR PRODUCTION TO CODEPINK DEFENDANTS

**REQUEST FOR PRODUCTION NO. 1:**

Any and all documents and communications that concern the terms provided in the Search List during the Relevant Time.

[*for clarity and to comply with Local Rule 37-2.1, the terms provided in the Search List are reproduced below*]

"Search List" refers to the following terms: (1) Adas Torah, (2) Protests, (3) Fiscal Sponsor, (4) Real Estate, (5) PYM, (6) Palestinian Youth Movement, (7) Honor the Earth, (8) CodePink, (9) Schirf, (10) organization and management of PYM, (11) Remo Ibrahim, (12) Pollak, (13) bear spray, (14) synagogue, (15) FACE Act, (16) StandWithUs Center for Legal Justice, (17) StandWithUs, (18) SCLJ, (19) June 23, 2024, (20) 6/23/2024, (21) 6/23/24, (22) June 23, (23) keffiyeh, (24) pepper spray, (25) Madbak, (26) conduit, (27) Pico-Robertson, (28) settler; (29) belly of the beast, (30) intifada, (31) discretion, or (32) Helmann.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

In partially granting CODEPINK WFP's motion to dismiss the Court ruled that the only surviving basis for liability in the Plaintiff's complaint is the SELA Chapter's social media post that included an inverted red triangle above the addresses where the real estate sales were to be conducted, on the theory that the post could have affected viewers and intimidated them from coming to a house of worship for religious purposes. Documents regarding occurrences at the real estate sales event are not relevant to this inquiry. Documents regarding dismissed defendants or CODEPINK WFP's opposition to genocide and apartheid are not relevant to this inquiry. Documents containing terms that were never communicated in any alleged effort to intimidate or threaten persons who would read CODEPINK WFP's invitation to demonstrate by bringing banners and musical instruments are not

relevant. It is also not proportional. CODEPINK WFP's further objects because the Request would invade the privacy and associational rights of nonparties, with insufficient justification to do so. Dobro v. Allstate Ins., 2016 U.S. Dist. LEXIS 119198 **27-29 (S.D. Cal. Sept. 2, 2016). Defendant also objects to Search List items 3, 4, 5, 6, 7, 8, 12, 13, 16, 17, and 18. upon the same grounds as the objection to Plaintiff's definition of "Relevant time."

Defendant further objects to the request that documents be produced from any CODEPINK source other than the SELA affiliate or CODEPINK WFP's contacts with the SELA affiliate from May 1, 2024 through June 23, 2024, and other than for Search List items 1, 2, 9, 10, 11, 14, and 15. CODEPINK WFP's production will be made upon entry of an appropriate protective order that protects applicable rights to freedom of speech, assembly, and association (and therefore of privacy), and that limits discovery to that which is relevant and proportional to the case before this Court, and which places the cost for the discovery on the Plaintiffs.

[CodePink Action Fund only: Subject to and without waiving said objections, CODEPINK Action Fund has no documents responsive to this request.]

**PLAINTIFFS' RESPONSE TO OBJECTIONS TO REQUEST FOR PRODUCTION NO. 1:**

See Plaintiffs' response to objections to Request for Admission No. 2 and response to objections to Interrogatory Nos. 3 and 4 above and hereby incorporated in full. Plaintiffs consent to CodePink Defendants' objections to Search List items 3, 4, 5, 6, 7, and 8, and waive their right to responses as to those items. Plaintiffs agreed to work with CodePink Defendants in an effort to craft a reasonable and appropriate protective order as to Search List items 1, 2, 9, 10, 11, 14, and 15, subject to the following:

First, they do not agree that only documents in the possession of the SELA affiliate or the CodePink Defendants' contacts with the SELA affiliate are relevant.

If another of CodePink's affiliates have responsive information, that is patently relevant to Plaintiffs' claim seeking to hold CodePink Defendants (as opposed to a specific affiliate such as the SELA affiliate) liable.

Second, Plaintiffs contest CodePink Defendants' assertion that a search may be limited to the time period between May 1, 2024 and June 23, 2024, but are willing to set the cutoff at July 31, 2024.

Third, Plaintiffs strongly contest that they bear any obligation to cover the cost of discovery. The longstanding presumption was "that the responding party must bear the expense of complying with discovery requests." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 352 (1978)). In the electronically stored information ("ESI") context, the presumption that the responding party bears production costs remains with respect to "*active* ESI, typically defined as ESI currently or habitually in use by the requested entity," while cost-shifting has been found appropriate as to "inaccessible" ESI, i.e., that which is "damaged," "written in an obscure format," or more generally, that the "expenditure of resources required to access the contents is itself unreasonable." *U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 238−39 (S.D. Cal. 2015). CodePink Defendants make no showing that all, or even some, of the information they have been asked to produce is inaccessible. *See Nehad v. Browder*, No. 15-CV-1386 WQH NLS, 2016 WL 3769807, at *3 (S.D. Cal. July 15, 2016) (rejecting request for cost-shifting when producing party failed to "adequately demonstrate that the cost-shifting analysis even applies to the type of discovery at issue"). Indeed, the fact that they demand cost-shifting in response to all but one of the requests for production shows that this is just another boilerplate objection made in bad faith and unmoored from the actual facts on the ground.

In addition, CodePink Defendants appear to object by default and identify specific Search List items that they will respond to. This leaves Plaintiffs in the dark as to the grounds for CodePink Defendants' objection to any given Search List item.

41

By not specifically identifying their objections to Search List items 19−32, CodePink Defendants have waived any objections to producing items responsive to those search terms. That's because "simply invok[ing] generalized objections without describing, in specific detail" why the objection applies effects a waiver of the objection. *Jones*, 2020 WL 6065927, at *2. *See MarketLinx*, 2013 WL 12133884, at *2 ("[I]t is well-settled that all grounds for objection must be stated with specificity." (quoting *Ramirez*, 231 F.R.D. at 409)).

**Request for relief**: Plaintiffs request that the Court order CodePink Defendants to produce all documents and communications in their possession, custody, or control (including the possession, custody, or control of any CodePink affiliate) that are responsive to Search List items 1, 2, 9, 10, 11, 14, 15, and 19−32 between May 1, 2024 and July 31, 2024, making clear that CodePink Defendants, not Plaintiffs, bear the expenses in producing such records.

**Proposal to resolve issue:** See above.

**CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO REQUEST FOR PRODUCTION NO. 1:**

As set forth at length above, CodePink Defendants have had the substance of this joint stipulation since April but have twice now declined to timely provide their portion as required by Local Rule 37-2.2. Their consistent pattern of obstruction, delay, and failure to engage meaningfully in the discovery dispute resolution process created by the Local Rules has forced Plaintiffs to once again proceed without CodePink Defendants' input, in compliance with Local Rule 37-2.4.

**REQUEST FOR PRODUCTION NO. 2:**

Documents and communications concerning any planning, organizing, funding, or that are associated in any way with the Events, including documents and communications that reference in any way CodePink Action's or any of CodePink Action's affiliates or members presence (planned or actual) at or nearby the Adas

Torah Synagogue located at 9040 West Pico Blvd., Los Angeles, CA, 90035 ("Adas Torah Synagogue") or the surrounding Pico Robertson neighborhood on June 23, 2024.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

In partially granting CODEPINK WFP's motion to dismiss the Court ruled that the only surviving basis for liability in the Plaintiff's complaint is the SELA Chapter's social media post that included an inverted red triangle above the addresses where the real estate sales were to be conducted, on the theory that the post could have affected viewers and intimidated them from coming to a house of worship for religious purposes. Documents regarding occurrences at the real estate sales event are not relevant to this inquiry. The request is also not proportional. CODEPINK WFP further objects because the Request would invade the privacy and associational rights of nonparties, with insufficient justification to do so. Dobro v. Allstate Ins., 2016 U.S. Dist. LEXIS 119198 **27-29 (S.D. Cal. Sept. 2, 2016).

Defendant further objects to the request that documents be produced from any CODEPINK source other than the SELA affiliate or CODEPINK Action Fund's contacts with the SELA affiliate from May 1, 2024 through June 23, 2024.

[CodePink Action Fund only: Subject to and without waiving said objections, CODEPINK Action Fund has no documents responsive to this request.]

**PLAINTIFFS' RESPONSE TO OBJECTIONS TO REQUEST FOR PRODUCTION NO. 2:**

See Plaintiffs' response to objections to Request for Admission No. 2 and response to objections to Interrogatory Nos. 3 and 4 above and hereby incorporated in full. For the reasons discussed therein, the requested documents are relevant as to Plaintiffs' claims against both the Doe Defendants and CodePink Defendants. In addition, Plaintiffs state that as to the latter claims, what kind of planning and preparations CodePink Defendants engaged in with respect to the June 23, 2024

synagogue protest shed additional light on their motive and intention in making or distributing the posts at issue. Moreover, it is not the case that only documents in the possession of the SELA affiliate or the CodePink Defendants' contacts with the SELA affiliate are relevant. If one or more of CodePink's other affiliates (e.g., the Los Angeles chapter) have responsive information, that is patently relevant to Plaintiffs' claim seeking to hold CodePink Defendants (as opposed to a specific affiliate such as the SELA affiliate) liable. Finally, for the reasons discussed in Plaintiffs' response to objections to Request for Production No. 2, above, Plaintiffs bear no obligation to cover the cost of discovery.

**Request for relief**: Plaintiffs request that the Court order CodePink Defendants to produce all documents and communications in their possession, custody, or control (including the possession, custody, or control of any CodePink affiliate) that are responsive to Request for Production No. 2, making clear that CodePink Defendants, not Plaintiffs, bear the expenses in producing such records.

**Proposal to resolve issue:** In the July 8, 2026 meet and confer, we agreed to make progress toward a mutually acceptable protective order based on the Court's model order to enable production of certain requested materials or information to which opposing counsel's other concerns did not apply. Plaintiffs remain willing to cooperatively fashion a reasonable and appropriate protective order that largely conforms to the Court's model order. As stated earlier, however, that would resolve only a portion of the issues in dispute.

**CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO REQUEST FOR PRODUCTION NO. 2:**

As set forth at length above, CodePink Defendants have had the substance of this joint stipulation since April but have twice now declined to timely provide their portion as required by Local Rule 37-2.2. Their consistent pattern of obstruction, delay, and failure to engage meaningfully in the discovery dispute resolution process

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

created by the Local Rules has forced Plaintiffs to once again proceed without CodePink Defendants' input, in compliance with Local Rule 37-2.4.

**REQUEST FOR PRODUCTION NO. 3:**

Documents and communications requested by any interrogatory served by Plaintiffs, identified in Your responses thereto, or consulted or relied upon in the formulation of Your responses thereto.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Objection. Irrelevant, overbroad, and unduly burdensome. Brewer v. BNSF Ry. Co., No. CV-14-65-GF-BMM-JTJ, 2018 U.S. Dist. LEXIS 24402, at *4 (D. Mont. Feb. 14, 2018). ("A party seeking discovery on discovery ('meta discovery') must show a specific deficiency in the other party's production." Citing *The Sedona Conference Commentary on Defense of Process: Principles and Guidelines for Developing and Implementing a Sound E-Discovery Process*, 42 (Sept. 2016) at 118.)

Further objection: In partially granting CODEPINK WFP's motion to dismiss the Court ruled that the only surviving basis for liability in the Plaintiff's complaint is the SELA Chapter's social media post that included an inverted red triangle above the addresses where the real estate sales were to be conducted, on the theory that the post could have affected viewers and intimidated them from coming to a house of worship for religious purposes. Documents regarding occurrences not relevant to the social media post in question are not relevant to this inquiry. The request is also not proportional. CODEPINK WFP further objects because the Request would invade the privacy and associational rights of nonparties, with insufficient justification to do so. Dobro v. Allstate Ins., 2016 U.S. Dist. LEXIS 119198 **27-29 (S.D. Cal. Sept. 2, 2016). Defendant further objects to the request that documents be produced from any CODEPINK source other than the SELA affiliate or CODEPINK Action Fund's contacts with the SELA affiliate from May 1, 2024 through June 23, 2024. CODEPINK WFP's production will be made upon entry of an appropriate protective

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

order that protects applicable rights to freedom of speech, assembly, and association (and therefore of privacy), and that limits discovery to that which is relevant and proportional to the case before this Court, and which places the cost for the discovery on the Plaintiffs.

[CodePink Action Fund only: Subject to and without waiving said objections, CODEPINK Action Fund has no documents responsive to this request.]

**PLAINTIFFS' RESPONSE TO OBJECTIONS TO REQUEST FOR PRODUCTION NO. 3:**

See Plaintiffs' response to objections to Request for Admission No. 2 and response to objections to Interrogatory Nos. 3 and 4 above and hereby incorporated in full. For the reasons discussed therein, the requested records are relevant to Plaintiffs' claims against both the Doe Defendants and CodePink Defendants. In addition, the objection that asking for records responsive to an interrogatory is impermissible "discovery on discovery" is without merit. The court in *Brewer v. BNSF Ry. Co.*, No. CV-14-65-GF-BMM-JTJ, 2018 WL 882812 (D. Mont. Feb. 14, 2018) addressed a request for "description of [responding party's] capabilities and, use of those capabilities, to search for, preserve, and produce information." By contrast, Plaintiffs' request asks for documents and communications. This is a common type of request that courts regularly enforce. *See, e.g.*, *Miranda v. First Reliance Standard Life Ins. Co.*, No. CV 09-4452 RS NJV, 2011 WL 2441762, at *3 (N.D. Cal. June 15, 2011). Moreover, it is not the case that only documents in the possession of the SELA affiliate or the CodePink Defendants' contacts with the SELA affiliate are relevant. If one or more of CodePink's other affiliates (e.g., the Los Angeles chapter) have responsive information, that is patently relevant to Plaintiffs' claim seeking to hold CodePink Defendants (as opposed to a specific affiliate such as the SELA affiliate) liable. Finally, for the reasons discussed in

46

Plaintiffs' response to objections to Request for Production No. 2 above, Plaintiffs bear no obligation to cover the cost of discovery.

**Request for relief**: Plaintiffs request that the Court order CodePink Defendants to produce all documents and communications in their possession, custody, or control (including the possession, custody, or control of any CodePink affiliate) that are responsive to Request for Production No. 3, making clear that CodePink Defendants, not Plaintiffs, bear the expenses in producing such records.

**Proposal to resolve issue:** In the July 8, 2026 meet and confer, we agreed to make progress toward a mutually acceptable protective order based on the Court's model order to enable production of certain requested materials or information to which opposing counsel's other concerns did not apply. Plaintiffs remain willing to cooperatively fashion a reasonable and appropriate protective order that largely conforms to the Court's model order. As stated earlier, however, that would resolve only a portion of the issues in dispute.

**CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO REQUEST FOR PRODUCTION NO. 3:**

As set forth at length above, CodePink Defendants have had the substance of this joint stipulation since April but have twice now declined to timely provide their portion as required by Local Rule 37-2.2. Their consistent pattern of obstruction, delay, and failure to engage meaningfully in the discovery dispute resolution process created by the Local Rules has forced Plaintiffs to once again proceed without CodePink Defendants' input, in compliance with Local Rule 37-2.4.

**REQUEST FOR PRODUCTION NO. 4:**

All documents and communications, including but not limited to drafts and comments, that relate or refer to the Instagram posts referenced in footnotes 64, 75, 83, 84, 86, 90, 92, 93, and 96 of the First Amended Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

Upon entry of an appropriate protective order documents responsive to this request as it relates to the Instagram posts reference in footnotes 64 and 84 from CODEPINK WFP would be produced if any existed. They do not.

The remainder of the Request is objected to upon the following grounds: Irrelevant, overbroad, and unduly burdensome. In partially granting CODEPINK WFP's motion to dismiss the Court ruled that the only surviving basis for liability in the Plaintiff's complaint is the SELA Chapter's social media post that included an inverted red triangle above the addresses where the real estate sales were to be conducted, on the theory that the post could have affected viewers and intimidated them from coming to a house of worship for religious purposes.

Documents regarding occurrences not relevant to the social media post in question are not relevant to this inquiry. The request is also not proportional. CODEPINK WFP further objects because the Request would invade the privacy and associational rights of nonparties, with insufficient justification to do so. Dobro v. Allstate Ins., 2016 U.S. Dist. LEXIS 119198 **27-29 (S.D. Cal. Sept. 2, 2016).

Defendant further objects to the request that documents be produced from any CODEPINK source other than the SELA affiliate or CODEPINK WFP's contacts with the SELA affiliate from May 1, 2024 through June 23, 2024. CODEPINK WFP's production will be made upon entry of an appropriate protective order that protects applicable rights to freedom of speech, assembly, and association (and therefore of privacy), and that limits discovery to that which is relevant and proportional to the case before this Court, and which places the cost for the discovery on the Plaintiffs.

**PLAINTIFFS' RESPONSE TO OBJECTIONS TO REQUEST FOR PRODUCTION NO. 4:**

See Plaintiffs' response to objections to Request for Admission No. 2 and response to objections to Interrogatory Nos. 3 and 4 above and hereby incorporated

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

in full. For the reasons discussed therein, the requested records are relevant to Plaintiffs' claims against both the Doe Defendants and CodePink Defendants. In addition, documentation regarding the remaining posts is not irrelevant, overbroad, or unduly burdensome. See Plaintiffs' response to objections to Request for Admission No. 2 and response to objections to Interrogatory Nos. 3 and 4 above and hereby incorporated in full. For the reasons discussed therein, the requested information is relevant as to Plaintiffs' claims against both the Doe Defendants and CodePink Defendants.

As to each of the remaining posts (i.e., those referenced in footnotes 83, 90, 93, and 96), CodePink's social media posts containing footage of or describing the events at the synagogue go to the participation of its members in, and its knowledge and approval of, those events, as relevant to Plaintiffs' claims against CodePink Defendants, and may bear on the identities and actions of Doe Defendants, as relevant to Plaintiffs' claims against those defendants.

Moreover, it is not the case that only documents in the possession of the SELA affiliate or the CodePink Defendants' contacts with the SELA affiliate are relevant. If one or more of CodePink's other affiliates (e.g., the Los Angeles chapter) have responsive information, that is patently relevant to Plaintiffs' claim seeking to hold CodePink Defendants (as opposed to a specific affiliate such as the SELA affiliate) liable. Finally, for the reasons discussed in Plaintiffs' response to objections to Request for Production No. 2 above, Plaintiffs bear no obligation to cover the cost of discovery.

**Request for relief**: Plaintiffs request that the Court order CodePink Defendants to produce all documents and communications in their possession, custody, or control (including the possession, custody, or control of any CodePink affiliate) that are responsive to Request for Production No. 4, making clear that CodePink Defendants, not Plaintiffs, bear the expenses in producing such records.

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

**Proposal to resolve issue:** In the July 8, 2026 meet and confer, we agreed to make progress toward a mutually acceptable protective order based on the Court's model order to enable production of certain requested materials or information to which opposing counsel's other concerns did not apply. Plaintiffs remain willing to cooperatively fashion a reasonable and appropriate protective order that largely conforms to the Court's model order. As stated earlier, however, that would resolve only a portion of the issues in dispute. CodePink Defendants have not proposed a definition of "relate to" that would address their overbreadth concerns as their counsel for CodePink Defendants advised he would in the May 14 meet and confer.

**CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO REQUEST FOR PRODUCTION NO. 4:**

As set forth at length above, CodePink Defendants have had the substance of this joint stipulation since April but have twice now declined to timely provide their portion as required by Local Rule 37-2.2. Their consistent pattern of obstruction, delay, and failure to engage meaningfully in the discovery dispute resolution process created by the Local Rules has forced Plaintiffs to once again proceed without CodePink Defendants' input, in compliance with Local Rule 37-2.4.

**REQUEST FOR PRODUCTION NO. 5:**

All documents and communications, including but not limited to drafts and comments, that relate or refer to any social media posts (including, but not limited to: X, Facebook, Instagram, TikTok) posted by You concerning the events that took place nearby the Adas Torah Synagogue on June 23, 2024.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Objection. Irrelevant, overbroad, and unduly burdensome. In partially granting CODEPINK WFP's motion to dismiss the Court ruled that the only surviving basis for liability in the Plaintiff's complaint is the SELA Chapter's social media post that included an inverted red triangle above the addresses where the real estate sales were

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

to be conducted, on the theory that the post could have affected viewers and intimidated them from coming to a house of worship for religious purposes. Documents regarding occurrences not relevant to the social media post in question are not relevant to this inquiry. The request is also not proportional.

CODEPINK WFP further objects because the Request would invade the privacy and associational rights of nonparties, with insufficient justification to do so. Dobro v. Allstate Ins., 2016 U.S. Dist. LEXIS 119198 **27-29 (S.D. Cal. Sept. 2, 2016).

Defendant further objects to the request that documents be produced from any CODEPINK source other than the SELA affiliate or CODEPINK WFP's contacts with the SELA affiliate from May 1, 2024 through June 23, 2024. CODEPINK WFP's production will be made upon entry of an appropriate protective order that protects applicable rights to freedom of speech, assembly, and association (and therefore of privacy), and that limits discovery to that which is relevant and proportional to the case before this Court, and which places the cost for the discovery on the Plaintiffs.

[CodePink Action Fund only: Subject to and without waiving said objections, CODEPINK Action Fund has no documents responsive to this request.]

**PLAINTIFFS' RESPONSE TO OBJECTIONS TO REQUEST FOR PRODUCTION NO. 5:**

See Plaintiffs' response to objections to Request for Admission No. 2 and response to objections to Interrogatory Nos. 3 and 4 above and hereby incorporated in full. For the reasons discussed therein, the requested records are relevant to Plaintiffs' claims against the CodePink Defendants. In addition, Plaintiffs state that documentation related to social media posts about the June 23, 2024 synagogue protest sheds additional light on CodePink Defendants' motive and intention in making or distributing the posts at issue.

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

Moreover, it is not the case that only documents in the possession of the SELA affiliate or the CodePink Defendants' contacts with the SELA affiliate are relevant. If one or more of CodePink's other affiliates (e.g., the Los Angeles chapter) have responsive information, that is patently relevant to Plaintiffs' claim seeking to hold CodePink Defendants (as opposed to a specific affiliate such as the SELA affiliate) liable. Finally, for the reasons discussed in Plaintiffs' response to objections to Request for Production No. 2 above, Plaintiffs bear no obligation to cover the cost of discovery.

**Request for relief**: Plaintiffs request that the Court order CodePink Defendants to produce all documents and communications in their possession, custody, or control (including the possession, custody, or control of any CodePink affiliate) that are responsive to Request for Production No. 5, making clear that CodePink Defendants, not Plaintiffs, bear the expenses in producing such records.

**Proposal to resolve issue:** In the July 8, 2026 meet and confer, we agreed to make progress toward a mutually acceptable protective order based on the Court's model order to enable production of certain requested materials or information to which opposing counsel's other concerns did not apply. Plaintiffs remain willing to cooperatively fashion a reasonable and appropriate protective order that largely conforms to the Court's model order. As stated earlier, however, that would resolve only a portion of the issues in dispute. CodePink Defendants have not proposed a definition of "relate to" that would address their overbreadth concerns as their counsel for CodePink Defendants advised he would in the May 14 meet and confer.

**CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO REQUEST FOR PRODUCTION NO. 5:**

As set forth at length above, CodePink Defendants have had the substance of this joint stipulation since April but have twice now declined to timely provide their portion as required by Local Rule 37-2.2. Their consistent pattern of obstruction,

52

delay, and failure to engage meaningfully in the discovery dispute resolution process created by the Local Rules has forced Plaintiffs to once again proceed without CodePink Defendants' input, in compliance with Local Rule 37-2.4.

**REQUEST FOR PRODUCTION NO. 6:**

All documents and communications, including but not limited to drafts and comments, that include, discuss, relate, or refer to the use of an inverted red triangle[9] as a symbol or graphical device since October 7, 2023 until the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Objection: To the extent that this Request calls for production of documents already requested regarding the social media post that Plaintiffs have specifically identified as containing an inverted red triangle and the address of the subject property, from either CODEPINK Action Fund or the SELA or Los Angeles affiliate, it is duplicative.

Further Objection. Irrelevant, overbroad, and unduly burdensome. Documents regarding other social media posts having nothing to do with purported religious services at the subject property are not relevant to this inquiry. The request is also not proportional. CODEPINK Action Fund further objects because the Request would invade the privacy and associational rights of nonparties, with insufficient justification to do so. Dobro v. Allstate Ins., 2016 U.S. Dist. LEXIS 119198 **27-29 (S.D. Cal. Sept. 2, 2016).

Defendant further objects to the request that documents be produced from any CODEPINK source other than the SELA affiliate or CODEPINK Action Fund's contacts with the SELA affiliate from May 1, 2024 through June 23, 2024. CODEPINK Action Fund's production will be made upon entry of an appropriate protective order that protects applicable rights to freedom of speech, assembly, and

---

[9] Defendants CodePink Action and CodePink WFP put the "inverted red triangle" at issue in their Reply in support of their Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 111) at 14:28 to 15:1–3, and at the hearing on the same.

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

association (and therefore of privacy), and that limits discovery to that which is relevant and proportional to the case before this Court, and which places the cost for the discovery on the Plaintiffs.

[CodePink Action Fund only: Subject to and without waiving said objections, CODEPINK Action Fund has no documents responsive to this request.]

**PLAINTIFFS' RESPONSE TO OBJECTIONS TO REQUEST FOR PRODUCTION NO. 6:**

According to CodePink Defendants, their social media post containing an inverted red triangle is the sole basis for liability. Yet they trot out the same boilerplate objections to avoid producing a single document or communication that might shed light on what they or their members understood that symbol to mean. That is in bad faith.

See Plaintiffs' response to objections to Request for Admission No. 2 and response to objections to Interrogatory Nos. 3 and 4 above and hereby incorporated in full. For the reasons discussed therein, the requested records are relevant to Plaintiffs' claims against the CodePink Defendants. In addition, Plaintiffs state that documentation regarding the inverted red triangle symbol sheds additional light on CodePink Defendants' motive and intention in making or distributing the posts at issue.

Moreover, it is not the case that only documents in the possession of the SELA affiliate or the CodePink Defendants' contacts with the SELA affiliate are relevant. If one or more of CodePink's other affiliates (e.g., the Los Angeles chapter) have responsive information, that is patently relevant to Plaintiffs' claim seeking to hold CodePink Defendants (as opposed to a specific affiliate such as the SELA affiliate) liable. Finally, for the reasons discussed in Plaintiffs' response to objections to Request for Production No. 2 above, Plaintiffs bear no obligation to cover the cost of discovery.

**Request for relief**: Plaintiffs request that the Court order CodePink Defendants to produce all documents and communications in their possession, custody, or control (including the possession, custody, or control of any CodePink affiliate) that are responsive to Request for Production No. 6, making clear that CodePink Defendants, not Plaintiffs, bear the expenses in producing such records.

**Proposal to resolve issue:** In the July 8, 2026 meet and confer, we agreed to make progress toward a mutually acceptable protective order based on the Court's model order to enable production of certain requested materials or information to which opposing counsel's other concerns did not apply. Plaintiffs remain willing to cooperatively fashion a reasonable and appropriate protective order that largely conforms to the Court's model order. As stated earlier, however, that would resolve only a portion of the issues in dispute. CodePink Defendants have not proposed a definition of "relate to" that would address their overbreadth concerns as their counsel for CodePink Defendants advised he would in the May 14 meet and confer.

**CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO REQUEST FOR PRODUCTION NO. 6:**

As set forth at length above, CodePink Defendants have had the substance of this joint stipulation since April but have twice now declined to timely provide their portion as required by Local Rule 37-2.2. Their consistent pattern of obstruction, delay, and failure to engage meaningfully in the discovery dispute resolution process created by the Local Rules has forced Plaintiffs to once again proceed without CodePink Defendants' input, in compliance with Local Rule 37-2.4.

**REQUEST FOR PRODUCTION NO. 7:**

All documents and communications that relate or refer to Paula Graciela Kahn.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Paula Graciela Kahn had nothing whatsoever to do with the conception of, design of, planning for, review of, or publication of the social media post which is the

remaining basis for this lawsuit. In partially granting CODEPINK WFP's motion to dismiss the Court ruled that the only surviving basis for liability in the Plaintiff's complaint is the SELA Chapter's social media post that included an inverted red triangle above the addresses where the real estate sales were to be conducted, on the theory that the post could have affected viewers and intimidated them from coming to a house of worship for religious purposes. Documents regarding occurrences at the real estate sales event are not relevant to this inquiry. Further, the request is unlimited as to time. The request is also not proportional. CODEPINK WFP further objects because the Request would invade the privacy and associational rights of nonparties, with insufficient justification to do so. Dobro v. Allstate Ins., 2016 U.S. Dist. LEXIS 119198 **27-29 (S.D. Cal. Sept. 2, 2016).

Defendant further objects to the request that documents be produced from any CODEPINK source other than the SELA affiliate or CODEPINK WFP's contacts with the SELA affiliate from May 1, 2024 through June 23, 2024. Subject to and without waiving said objections, CODEPINK Action Fund has no documents responsive to this request.

In a discussion of this Request Plaintiff's counsel alleged that Kahn was seen in the Pico Robertson area and that while wearing a pink hat she struck someone with a water bottle. CODEPINK WFP points out that not wearing a pink hat does not signify affiliation with CODEPINK, as evidence by the pink hat worn by convicted January 6 felon Rachel Powell (https://www.newsweek.com/meet-pink-hat-lady-capitol-riot-it-was-like-war-1845055).

[CodePink Action Fund only: Subject to and without waiving said objections, CODEPINK Action Fund has no documents responsive to this request.]

**PLAINTIFFS' RESPONSE TO OBJECTIONS TO REQUEST FOR PRODUCTION NO. 7:**

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

See Plaintiffs' response to objections to Request for Admission No. 2 and response to objections to Interrogatory Nos. 3 and 4 above and hereby incorporated in full. For the reasons discussed therein, the requested information is relevant as to Plaintiffs' claims against both the Doe Defendants and CodePink Defendants. With respect to this Request for Production, CodePink Defendants flat-out refuse to produce any documentation, weakly suggesting only that the fact that Paula Graciela Kahn was seen at the scene of the synagogue protest CodePink Defendants drummed up wearing a pink hat does not mean she was affiliated with CodePink Defendants. Perhaps not, but that does not change the fact that Plaintiffs have linked her to the synagogue protest and, because they have live claims against the as-yet unidentified Doe Defendants, are entitled to any documentation CodePink Defendants may have about her bearing on whether she participated in those events. CodePink Defendants may by no means hide behind Ms. Kahn's alleged privacy or associational rights to avoid disclosing documentation bearing on her activities that took place in broad daylight in a crowded public place.

Moreover, it is not the case that only documents in the possession of the SELA affiliate or the CodePink Defendants' contacts with the SELA affiliate are relevant. If one or more of CodePink's other affiliates (e.g., the Los Angeles chapter) have responsive information, that is patently relevant to Plaintiffs' claim seeking to hold CodePink Defendants (as opposed to a specific affiliate such as the SELA affiliate) liable.

**Request for relief**: Plaintiffs request that the Court order CodePink Defendants to produce all documents and communications in their possession, custody, or control (including the possession, custody, or control of any CodePink affiliate) that are responsive to Request for Production No. 7, making clear that CodePink Defendants, not Plaintiffs, bear the expenses in producing such records.

57

**Proposal to resolve issue:** In the July 8, 2026 meet and confer, we agreed to make progress toward a mutually acceptable protective order based on the Court's model order to enable production of certain requested materials or information to which opposing counsel's other concerns did not apply. Plaintiffs remain willing to cooperatively fashion a reasonable and appropriate protective order that largely conforms to the Court's model order. As stated earlier, however, that would resolve only a portion of the issues in dispute. CodePink Defendants have not proposed a definition of "relate to" that would address their overbreadth concerns as their counsel for CodePink Defendants advised he would in the May 14 meet and confer.

**CODEPINK DEFENDANTS' STATEMENT IN SUPPORT OF OBJECTIONS TO REQUEST FOR PRODUCTION NO. 7:**

As set forth at length above, CodePink Defendants have had the substance of this joint stipulation since April but have twice now declined to timely provide their portion as required by Local Rule 37-2.2. Their consistent pattern of obstruction, delay, and failure to engage meaningfully in the discovery dispute resolution process created by the Local Rules has forced Plaintiffs to once again proceed without CodePink Defendants' input, in compliance with Local Rule 37-2.4.

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

DATED this 31st day of July, 2026.

HOLTZMAN VOGEL BARAN

TORCHINSKY & JOSEFIAK, PLLC

*/s/John Cycon*

JOHN CYCON*

Attorneys for Plaintiffs and Class

Members

| | |
|---|---|
| Mark Goldfeder* | Jason B. Torchinsky* |
| *mark@jewishadvocacycenter.org* | *jtorchinsky@holtzmanvogel.com* |
| Ben Schlager* | HOLTZMAN VOGEL BARAN |
| *ben@jewishadvocacycenter.org* | TORCHINSKY & JOSEFIAK, PLLC |
| NATIONAL JEWISH ADVOCACY | 2300 N Street NW |
| CENTER, INC. | Suite 643 |
| INTERNATIONAL LEGAL FORUM | Washington, DC 20037 |
| 1718 General George Patton Drive | (202) 737-8808 (telephone) |
| Brentwood, TN 37027 | (540) 341-8809 (facsimile) |
| (800) 269-9895 (telephone) | |
| (800) 758-5232 (facsimile) | |

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253

Michael Sherman

*masherman@stubbsalderton.com*

STUBBS, ALDERTON &

MARKILES, LLP

15260 Ventura Blvd., 21st Floor

Sherman Oaks, CA 91403

(818) 444-4528 (telephone)

*Attorneys for Plaintiffs and Class*

*Members*

*\*Pro Hac Vice*

JOINT STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LOCAL RULE 37-2
CASE NO. 2:24CV6253