Mark Kleiman (SBN 115919)
mark@krlaw.us
KLEIMAN / RAJARAM
12121 Wilshire Blvd., Ste. 810
Los Angeles, CA 90025
Tel: 310-392-5455 / Fax: 310-306-8491

Attorneys for Defendants
CODEPINK and CODEPINK
WOMEN'S ACTION FUND

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| STANDWITHUS CENTER FOR LEGAL JUSTICE,<br><br>Plaintiff,<br><br>v.<br><br>CODEPINK, PALESTINIAN YOUTH MOVEMENT, and WESPAC FOUNDATION,<br><br>Defendants. | Case No. 2:24-cv-06253-SVW-PVC<br><br>DEFENDANT CODE PINK'S AND CODEPINK'S WOMEN'S ACTION FUND'S RESPONSE TO MINUTE ORDER re: PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES; and RESPONSE TO ORDER TO SHOW CAUSE WHY MOTION SHOULD NOT BE GRANTED IN FULL |

1. On September 8, 2026, this Court ordered CodePink to respond to an Order to Cause noting that defendant's counsel had failed to serve defendant's portion of a joint stipulation and also failed to appear at a scheduled and noticed hearing date.

2. First and most importantly, I apologize to this Court and to Plaintiff's counsel for both failures, which are entirely my responsibility.

3. This response will discuss why this has occurred and the steps that have been taken and are being taken to rectify the situation. It will then briefly address some aspects of the procedural history we ask the Court to consider.

4. I am 76 years old. I began experiencing health problems late this spring for which I have sought and received medical attention. The problems, although intermittent, have led to unexplained and unpredictable periods where I was unable to work. On September 8, 2026, I experienced a loss of consciousness and was directed to the UCLA-Santa Monica Emergency Department where I had a cardiac examination and was treated for a biochemical imbalance. I was given imaging tests, laboratory tests, and a cardiac examination. The attending physician in the Emergency Department wanted to admit me, but I persuaded another attending to let me be discharged upon my promise to return promptly the following morning for further examination and monitoring (which I did). I was referred for a full cardiology evaluation, was examined by a cardiologist on September 14, 2026, placed on a 14-day cardiac monitor and referred to a neurologist for further evaluation.

5. Since May of this year I have been trying to lighten my workload so that I could concentrate my reduced capacity on a smaller number of cases. I have moved to withdraw from one intensively litigated case in the District and although I remain on the pleadings in another one, my role has been entirely taken over by a colleague,

and I have had no actual involvement in that case since late May. I have asked another client to look for other counsel, and that search has begun.

6. Although I had able cocounsel in this case, that cocounsel took a full-time position December 2025 and has not been involved with this case since then. He was recently granted leave of court to withdraw (docket number 163).

7. I am fully mindful of the fact that this does not excuse delay or the plaintiff's right to a judicial resolution of these matters and have been working diligently to remedy this by either recruiting substitute counsel or, at the least, co-counsel who could play an active role in the defense of this case.

8. For the court to understand why this remains a work in progress I must explain a bit about the political economy of civil liberties defense in cases involving Palestine advocacy. I shall be as brief as possible, but I beg the court's patience for a moment:

9. CodePink is not a large well-funded organization. It works across the United States a on a budget of just $1.1-$1.3 million a year. In the last two years it has had to weather three different lawsuits (including this one) and appellate proceedings and has now had to retain counsel to address a subpoena from the Department of the Treasury. It is on track to easily spend ten percent of its budget on lawyers.

10. The only reason that number is so low is that I and other counsel have been willing to work on a "low bono" basis to represent CodePink in the present case, the companion case, and a similar case now before the Eleventh Circuit. (My hourly rate of $950 per hour was approved in a litigated fee petition in the Central District in 2024.)

11. There are not very many attorneys with substantial federal court litigation experience willing to take on a controversial client that champions fiercely contested causes. As this Court may know there are a number of Palestine-related cases in this

and other courthouses throughout the region. As those cases that have not been dismissed go through the discovery process, plaintiffs' firms initiate extensive third-party discovery seeking mailing lists, donor lists, and communications. I shall be fully respectful of this Court's admonition to avoid litigating the merits of discovery in this response, and I point this out only to make the point that each case that enters discovery has a "cluster bomb"-like effect, as witnesses who often cannot afford commercial legal rates are also scrambling for pro bono or low-bono representation.

12. To avoid prejudicing my client or the plaintiffs with my health problems, I have been affirmatively seeking legal assistance with this case and will continue to do so.

13. I cannot promise this Court that I will have this problem solved immediately. But I can promise this court and the Plaintiff that I will continue and will also work to either resolve the discovery dispute or get CodePink’s position fully before the Court in the next fifteen days. To explain why this is a reasonable solution should the Court be so inclined, I need to briefly recount some of the history of the discovery dispute while remaining respectful of the Court’s admonition to avoid litigating the merits here.

14. Plaintiffs are absolutely correct that the delay is intolerable. They omit to mention that nearly five months of that delay was caused by them. CodePink served its discovery responses on December 9, 2025. We heard nothing from Plaintiffs about this until April 21, 2026 -- 133 days later. We repeat that this does not excuse any of the Defendants’ delay, but we hope it places it in some perspective. That 133-day period is almost exactly the amount of time between Mr. Holt’s April 21 response and September 8. We respectfully ask the Court to bear this in mind while considering our proposal.

15. I also want to make the Court aware that as my health and the then-greater

demands on my time allowed, I did at least begin attempts to address these issues and to continue with the Defendant's other obligations regarding discovery.

16. A matter closely related to the discovery responses was the breadth of a proposed protective order, Defendant believes that the very unique aspects of this case require refinement of the Court's template. Defendants sent a draft order to Plaintiff on June 30, 2026. A meet-and-confer video call to discuss the order was foreshortened because one of my medical appointments ran late. We discussed the proposed order and the Plaintiff's objections to it, and I promised to get them a revised order. Although I did so it was very late in coming and was sent after the deadline for the Defendant's material for the Joint Stipulation.

17. I was not idle when the Plaintiffs sent me their portion of the Joint Stipulation. I received it on July 22 and reported to Plaintiffs the next day that it contained an attachment which I had been unable to open despite trying three different programs. (Plaintiffs' counsel was prompt in explaining that it had been sent to me by mistake and that I could disregard it.)

18. Beginning July 26 I had four or five bad days and was unable to meet the Plaintiff's deadline. I was frankly ashamed that I was so weak and unproductive and instead of contacting Plaintiff's counsel to explain the problem, I kept promising myself that I would double down and at least have very substantial progress to show them before embarrassing myself further.

19. During this period, I tried to get help from my cocounsel, who was unable to be of assistance, and our discussions prompted his wise decision to withdraw from the case.

20. Under normal circumstances, in normal litigation there would be only slender grounds for me to beg the Court's tolerance. These circumstances are not normal, and the litigation is not normal. The issues posed by Plaintiff's discovery raise very serious constitutional concerns and it would be a shame if my ailments

stripped the Defendants or numerous third parties of their right to obtain careful judicial consideration of these issues. And after the Plaintiff delayed things seeking further responses for four and a half months, my request for grace – for my client if not for myself -- is not so exceptionable.

21. A change in my medical regimen over the past week has led to real improvement and I have successfully reduced the demands on my time so that even with limited resources I can focus closely and fully on this matter. I respectfully propose to the Court permit the following deadlines:

<u>Defendant's supplemental discovery responses:</u>

Furnished by September 30.

<u>Either a stipulated motion of a motion for a protective order:</u>

Furnished by September 30.

<u>Stipulated Joint Statement Regarding Remaining Discovery in Dispute:</u>

Filed by October 16, 2026.

Respectfully submitted,

KLEIMAN / RAJARAM

Dated: September 15, 2026

By: /Mark Kleiman/ (signature)

Mark Kleiman

Attorneys for Defendants
CODEPINK WOMEN FOR PEACE
CODEPINK ACTION FUND